UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-01013 (ESH) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants, through counsel, the United States Attorney for the District of Columbia,

respectfully move for summary judgment pursuant to Fed R. Civ. P. 56. No genuine issue of

material fact exists, and Defendant is entitled to judgment as a matter of law. In support hereof,

Defendants respectfully refer the Court to the attached memorandum of points and authorities,

statement of material facts not in genuine dispute, attachments, and proposed order.

Respectfully submitted,


_____ /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____ /s/
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____ /s/
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division

555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 07-01013 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The Defendants, the Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), United States Marshals Service (USMS), and Executive Office of U.S. Attorneys (EOUSA), respectfully submit this memorandum of points and authorities in support of their motion for summary judgment.

## I. Background

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and concerns the Plaintiff's separate FOIA requests to the FBI and DEA. Compl. ¶¶ 5, 7, & 16. Plaintiff is a federal prisoner who is currently housed at U.S. Penitentiary McCreary in Pine Knot, Kentucky. Compl. at 2. His requests sought various government records containing information concerning himself. See Exhibit 1 (Second Declaration of David Hardy ("Hardy Dec") (FBI)) at ¶¶ 3, 8; Exhibit 2 (Declaration of Leila I. Wassom ("Wassom Dec") (DEA)) at ¶ 6.[1]

As of this date, the FBI has processed a total of 302 pages responsive to plaintiff's requests, and has released to plaintiff a total of 42 pages in full, and 30 pages in part. Hardy Dec. ¶ 4. Of the

---

[1] All referenced declarations are attached to this memorandum.

remaining 230 pages, 157 pages have been withheld in their entireties and 73 pages have been withheld as duplicates. Id. The information has been withheld pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2), and FOIA Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E), and 7(F), 5 U.S.C. §§ 552 (b)(2), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F). Id.

A total of 118 pages of responsive material was located during the searches conducted by DEA. Wassom Decl. ¶ 27. Of the 118 pages, DEA released portions of 43 pages and 30 pages in their entirety to the plaintiff; 23 pages were withheld in their entirety; and, portions of five (5) pages and 17 pages in their entirety were referred to other agencies. Id. at ¶ 28. Information was withheld by DEA pursuant to FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F), and the Privacy Act Exemption (j)(2).

The DEA referred pages of documents to USMS, FBI, and EOUSA. Wassom Dec. ¶¶ 12,14, 15. The USMS released all of the two pages of documents which the DEA referred to it except for a portion of one page which was withheld pursuant to Exemption 7(C). See Exhibit 3 (Declaration of William E. Bordley ("Bordley Dec.") (USMS)) ¶¶ 2, 3. Of the eighteen pages referred to the FBI, FBI determined that five of these pages were duplicates of public source documents that Plaintiff had already received and the remaining thirteen were exempt from disclosure pursuant to FOIA Exemption (b)(7)(A). Wassom Dec. ¶¶ 14, 20. The DEA referred two pages to EOUSA and it released one page in its entirety while withholding a portion of the other page pursuant to Exemption (b)(7)(C). See Declaration of Dione J. Stearns ("Stearns Dec.") (EOUSA)) ¶ 5.

As set forth in detail in the accompanying Statement of Material Facts and agency declarations, Defendants have fully and appropriately responded to Plaintiff's FOIA requests,

producing to him all reasonably segregable, non-exempt information. Defendants therefore have satisfied their obligations under FOIA, and are entitled to summary judgment.

## II. Legal Standards

### A.    Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in

> support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[2] See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608

---

[2] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

F.2d 1381, 1384, 1386 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980); <u>Church of Scientology v. U.S. Dept. of Army</u>, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" <u>Trans Union LLC v. Federal Trade Commission</u>, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (<u>quoting Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981)); <u>see also</u> <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983); <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1329 (9th Cir. 1995); <u>Bowen v. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991).  When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and when the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  <u>Perry v. Block</u>, 684 F.2d 121 (D.C. Cir. 1982).

**B.    Standards for a Proper Search for Responsive Records**

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993); <u>Weisberg v. U.S. Dept. of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material.  <u>Id.</u> at 777 n.4.  An agency is not required to search every record system, but need only search those systems in which it believes responsive

records are likely to be located. Oglesby, 920 F.2d at 68. Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located. Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'" Miller v. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing National Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973). Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland, 607 F.2d at 352. Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. See Banks v.

6

Department of Justice, Civ. Action No. 06-1950(EGS), 2008 WL 701211, at * 7-8 (D.D.C. Mar. 16, 2008) (A declaration, which states that a "responsible person" searched for responsive records in two field offices, is insufficient to show that the search was adequate, because it in no way "describes the means by which these 'responsible persons' conducted the search or searches, nor adequately explains the systems of records or places searched.").

Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. See Carney, 19 F.3d at 813; SafeCard, 926 F.2d at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

### C.    Standards for A Proper Vaughn Index

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S. C. 1564 (1974). There is no set formula for a Vaughn index.

7

"[I]t is well established that the critical elements of the <u>Vaughn</u> index lie in its function, and not in its form." <u>Kay v. FCC</u>, 976 F. Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." <u>Delaney, Midgail & Young, Chartered v. IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987). <u>See also</u> <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987); <u>Hinton v. Dept. of Justice</u>, 844 F.2d 126, 129 (3d Cir. 1988).[3]

The <u>Vaughn</u> Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. <u>See</u> <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

**D.    Legal Standards for Applicable Exemptions to Release under FOIA.**

**1.    Privacy Act Exemption (j)(2)**

As stated by the Court in <u>Dorsett v. U.S. Dept. of Treasury</u>, 307 F.Supp.2d 28 (D.D.C. 2004), "[e]xemption (j)(2) exempts from disclosure 'any system of records within the agency,' as long as

---

[3] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." <u>Id</u>. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." <u>Information Acquisition Corp. v. Dept. of Justice</u>, 444 F. Supp. 458, 462 (D.D.C. 1978).

the agency that maintains the system of records 'performs as its principal function any activity pertaining to the enforcement of criminal laws....' 5 U.S.C. § 552a(j)(2)." Id. at 35.

### 2.     Exemption 2

Title 5, United States Code, Section 552 (b)(2) ("Exemption 2") exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The information need not be actual rules or practices; agencies can invoke Exemption 2 for matters related to rules and practices as well. Larson v. Department of State, 2005 WL 3276303, 14 (D.D.C. 2005). Exemption 2 envelops two discrete categories of information. Moayedi v. Customs and Border Protection, 510 F.Supp 2d 73 84-85, (D.D.C.2007). They include (a) internal matters of a relatively trivial nature (sometimes referred to as "low 2" information); and (b) more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement (sometimes referred to as "high 2" information). Id.; see also Dept. of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1112 (D.C. Cir. 2007); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."

"Low (b)(2)" information refers to internal procedures and practices of an agency the disclosure of which would constitute an administrative burden unjustified by any genuine and significant public benefit. Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982). "Low b(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v. Dept. of the Air

9

Force, 898 F.2d 793, 795 (D.C. Cir. 1990). Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and similar administrative markings are exempt from disclosure. The reason is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. Martin v. Lauer, 686 F.2d at 34.

The "high (b)(2)" exemption excepts from mandatory disclosure documents relating to more substantive internal matters. See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. See Crooker, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. AT, 631 F.2d 653, 656 (9th Cir. 1980).

Deference has been accorded to law enforcement matters under Exemption 2. Courts have interpreted this exemption to apply to a wide range of information, including general guidelines for conducting investigations (see PHE, Inc. v. Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993)); guidelines for conducting post-investigation litigation (Schiller v. NLRB, 964 F.2d at 1207)); a training manual with information pertaining to surveillance techniques (Crooker, 670 F.2d at 1073); criteria for prison gang-member classification (Jimenez v. FBI, 938 F. Supp. 21, 27 (D.D.C. 1996)); and DEA's drug-violator codes (Albuquerque Publishing Co. v. Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989).

### 3.      Exemption 6

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  In a definitive opinion on the meaning of the term "similar files," the Supreme Court held that exemption (b)(6) "` [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" Judicial Watch Inc. V. Dept of Commerce, 337 F.Supp 2d 146, 176 (D.D.C. 2004) (citing Department of State v. Washington Post Co., 456 U.S 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428)); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989).

Once it is established that the withheld information meets the threshold requirement of exemption (b)(6), a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." This requires balancing of the individual interest in privacy against public interest in disclosure.  See Billington v Dept of Justice, 245 F.Supp 2d 79, 85 (D.D.C. 2003); Lepelletier v. F.D.I.C., 164 F.3d 37, 46 (D.C. Cir. 1999); Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989) (Reporters Committee); Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is]

11

the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Lepelletier, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting United States Dept. of Defense v. FLRA, 510 U.S. 487, 497 (1994). See also Reporters Committee, 489 U.S. at 773. Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775. Further, "something, even a modest privacy interest, outweighs nothing every time." National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); but see Lepelletier, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

### 4. Exemption 7--Threshold Issue

Application of any of FOIA's exemptions in Exemption 7 requires the agency to satisfy the threshold issues of, first, whether the agency has the requisite law enforcement purpose in compiling the records at issue and, second, whether the information gathered has a sufficient nexus to the law enforcement purpose. See, e.g., Banks v. DOJ, No. 06-1950, 2008 WL 701211 (D.D.C. Mar. 16, 2008) at * 9 ("In assessing whether records are compiled for law enforcement purposes, the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding) (internal citations and quotations omitted); see also Tax Analysts v. IRS, 294 F.3d 71, 76-79 (D.C. Cir. 2002); Jefferson v. DOJ, 284 F.3d 172, 176-77 (D.C. Cir. 2002); Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998); Pratt v. Webster, 673 F.2d 408, 419 (D.C. Cir. 1982).

12

In Jefferson, the court drew a distinction between agencies gathering information as part of any government agency's "oversight of the performance of duties by its employees," and information sought as part of investigations into illegal conduct for which the agency might impose criminal or civil sanctions. 284 F.3d at 177. Thus, Jefferson sets forth a broadly applicable distinction based more on the agency's mission and reasons for collecting the information at issue.

Many types of agency activities have been upheld as having law enforcement purpose, even several that arguably go beyond the core law enforcement mission of investigating crimes that have been committed. See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (Robertson, J.) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

In addition, the caselaw in this Circuit is unambiguous that the agency need not tie its collection of information to any specific or ongoing investigation. See Tax Analysts, 294 F.3d at 78; Keys 830 F.2d at 342. This precept is fully consistent with the courts' broad acceptance of the view that the 1986 amendments to the FOIA relaxed the required threshold showing for Exemption 7. See, e.g., United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 780 (1989) (recognizing that the shift from "would constitute" standard to "could reasonably be expected to constitute" standard represents a congressional effort to ease considerably the burden of invoking Exemption 7); S. Rep. No. 221, 98th Cong., 1st Sess. 25 (1983) ("Substitute 'records or information' for 'investigatory records' as the threshold qualification for the exemption:

13

This amendment would broaden the scope of the Exemption to include 'records or information compiled for law enforcement purposes,' regardless of whether they may be investigatory or noninvestigatory."); Hopkinson v. Shillinger, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989) ("The 1986 amendment[s] broadened the scope of exemption 7's threshold requirement.").

### a.    Exemption 7(A)

Exemption 7(A) authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b)(7)(A).  In defending an Exemption 7(A) withholding, the agency must show that (1) a law enforcement proceeding is pending, or reasonably regarded as prospective, see Long v. U.S. Dep't of Justice, No. 00-0211, 2006 WL 2578755, at *26 (D.D.C. Sept. 8, 2006); Manna v. United States Dep't of Justice, 51 F.3d 1158, 1164 (3rd Cir. 1995), or as preventative, see, e.g., Moorefield. v. United States Secret Serv., 611 F.2d 1021, 1026 (5th Cir. 1980), and (2) that the release of the information could reasonably be expected to cause some articulable harm.  Scheer v. U.S. Dep't of Justice, 35 F. Supp. 2d 9, 13 (D.D.C. 1999) (stating that agency "must first prove" existence of law enforcement proceeding and "must next prove" harm), appeal dismissed per stipulation, No. 99-5317 (D.C. Cir. Nov. 2, 2000); Manna, 51 F.3d at 1164.  An articulable harm occurs "whenever the government's case in court . . . would be harmed by the premature release of evidence or information," Nat'l Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 232 (1978), or when disclosure would impede any necessary investigation prior to the enforcement proceeding. See  Dickerson v. U.S. Dep't of Justice, 992 F.2d 1426, 1429 (6th Cir. 1993); see also North v.

Walsh, 881 F.2d 1088, 1100 (D.C. Cir. 1989) (stating that the standard is "whether disclosure can reasonably be expected to interfere in a palpable, particular way" with enforcement proceedings).

Once the first threshold requirement is satisfied, the agency must establish that the release would result in an articulable harm.  See Judicial Watch v. FBI, No. 00-745, 2001 U.S. Dist. LEXIS 25732, at *14 (D.D.C. Apr. 20, 2001) ("Once the agency establishes that an enforcement proceeding is pending, the agency must show that release of the withheld documents is likely to cause some distinct harm.")  To satisfy this burden, the agency must provide at least a general description of the types of documents at issue sufficient to indicate the type of interference threatening the law enforcement proceeding.  See Jefferson v. Reno, No. 96-1284, 1997 U.S. Dist. LEXIS 3064, at *10 (D.D.C. Mar. 17, 1997) (ruling that neither agency's declaration nor its checklist "describes how the release of any or all responsive documents could reasonably be expected to interfere with these enforcement proceedings"); Curran v. U.S. Dep't of Justice, 813 F.2d 473, 475 (1st Cir. 1987); Spannaus v. U.S. Dep't of Justice, 813 F.2d 1285, 1287 (4th Cir. 1987) (holding that a categorical description of the withheld material is sufficient because any further details "would lead to disclosure of the very information sought to be protected").

### b.    Exemption 7(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). See Robinson v. Attorney Gen. of the United States, No. 06-2050, 2008 WL 391244 (D.D.C. Feb. 14, 2008).  This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  Reporters Comm. for Freedom

15

of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release under Exemption 7 ( C ). Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like law enforcement personnel themselves, have privacy interests in their anonymity that is subject to protection. Keys v. Dep't of Homeland Sec., 510 F.Supp.2d 121, 128 (D.D.C.2007)(concluding that personal information about law enforcement personnel is protected under Exemption 7(C)) Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish their privacy interests. Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure. See Banks, 2008 WL 701211, at * 9;

16

Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989). The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ding] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990). See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling, in order to overcome legitimate privacy interests. Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

### c.    FOIA Exemption 7(D)

Title 5, United States Code,  § 552  (hereinafter Exemption 7(D)), exempts from disclosure material that:

> could reasonably be expected to disclose the identity of a confidential source including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

17

Exemption 7(D) recognizes that information furnished by third parties cooperating with federal, state, or local law enforcement investigations is, by its very nature, confidential. Significantly, the statute affords protection from disclosure to all the information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of confidentiality, or circumstances exist from which such an assurance could reasonably be inferred. U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).

This exemption recognizes the distinct likelihood that the identity of a source may often be determined from an analysis of the information furnished by the source himself. Indeed, this becomes more inevitable when the analysis is conducted by a person familiar with the facts and circumstances on which the investigation was predicated. Thus, to disclose the identity of a cooperating individual under such circumstances could result in more than an unwarranted invasion of his privacy; it could breach the confidentiality under which the individual cooperated.

The Landano Court acknowledged that "[t]here may . . . be . . . generic circumstances in which an implied assurance of confidentiality fairly can be inferred." Landano, 508 U.S. at 181. The Court should take into consideration the informant's relation to the crime and the character of the crime for which information has been provided in determining implied grants of confidentiality. Since Landano, courts have identified various crimes which warrant an implied assurance of confidentiality. In Mays v. Drug Enforcement Administration, 234 F.3d 1324 (D.C. Cir. 2000), the Court of Appeals for this Circuit held that the crime of trafficking in cocaine is inherently so dangerous that individuals supplying information about such crimes generally should be entitled to an implied grant of confidentiality.

18

### d.    Exemption 7(E)

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) (reiterating that first clause of Exemption 7(E) provides "'categorical protection'" for law enforcement techniques and procedures (quoting Judicial Watch, Inc. v. FBI, No. 00-745, 2001 U.S. Dist. LEXIS 25732, at *26-27 (D.D.C. Apr. 20, 2001)); Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997) (citing Fisher v. U.S. Dept. of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)).  While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.  See, e.g., Coleman v. FBI, 13 F. Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to behavioral science analysis and details of polygraph examination); Perrone v. FBI, 908 F. Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of polygraph test, type of machine used, and polygraph questions and sequence).  In justifying the application of Exemption 7(E), the agency may describe the general nature of the technique while withholding the full details.  See e.g. Bowen v. FDA, 925 F.2d 1225, 1228 (9th Cir. 1991).  The agency is not, however, required to describe secret law enforcement techniques, even

in general terms, if the description would disclose the very information sought to be withheld. <u>Coleman</u>, 13 F. Supp. 2d at 83; <u>Smith</u>, 977 F. Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the Exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." <u>See</u>, <u>e.g.</u>, <u>PHE, Inc. v. U.S. Dept. of Justice</u>, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); <u>Jimenez v. FBI</u>, 938 F. Supp. 21, 30 (D.D.C. 1996) (applying 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

### e.    Exemption 7(F)

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter "Exemption 7(F)") protects from mandatory disclosure information compiled for law enforcement purposes if disclosure could reasonably be expected to endanger the life or physical safety of any individual. 5 U.S.C. § 552(b)(7)(F). Courts have consistently upheld the application of this exemption to protect information identifying law enforcement officers and special agents, who are especially likely to be in contact with violent suspects. <u>Maroscia v. Levi</u>, 569 F.2d 1000, 1002 (7th Cir. 1977); <u>Albuquerque Publ'g Co.</u>, 726 F. Supp. 851, 858 (D.D.C. 1989); <u>Docal v. Bennsinger</u>, 543 F. Supp. 38, 48 (M.D. Pa. 1981); <u>Nunez v. DEA</u>, 497 F. Supp. 209, 212 (S.D.N.Y. 1980). Although this exemption applies to information that is also subject to the protection of Exemption 7(C), <u>supra</u>,

20

there is no balancing required for the use of Exemption 7(F).  In any event, it is difficult to imagine

any public interest that could outweigh the safety of an individual.

E.    Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua sponte</u>."

<u>Trans-Pacific Policing Agreement v. United States Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir.

1999).  The FOIA requires that, if a record contains information that is exempt from disclosure, any

"reasonably segregable" information must be disclosed after deletion of the exempt information

unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. §

552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir.

1977).

In order to demonstrate that all reasonably segregable material has been released, the agency

must provide a "detailed justification" rather than "conclusory statements."  <u>Mead Data</u>, 566 F.2d

at 261.  The agency is not, however, required "to provide such a detailed justification" that the

exempt material would effectively be disclosed.  <u>Id</u>.  All that is required is that the government show

"with 'reasonable specificity'" why a document cannot be further segregated.  <u>Armstrong v.

Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is

not required to "commit significant time and resources to the separation of disjointed words, phrases,

or even sentences which taken separately or together have minimal or no information content."

<u>Mead Data</u>, 566 F.2d at 261, n.55.

**III.    Each Defendant Complied with FOIA Requirements.**

**A.    The FBI and DEA Conducted An Adequate Search and Found Records Responsive to Plaintiff's Requests.**

To prevail in a FOIA case, a plaintiff must show that an agency has "(1) 'improperly' (2) 'withheld' (3) 'agency records.'"  United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989), quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980); see 5 U.S.C. § 552(a)(4)(B).  To obtain summary judgment in its favor, the agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records. Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the absence and discoverability of documents.  Safeguard Servs., Inc. v. Securities & Exchange Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  The issue is not whether there might exist any other records possibly responsive to the request, but rather whether the actual search for responsive records was reasonable.  Id.; Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).  The agency can establish the reasonableness of its search by affidavits if they are relatively detailed, non-conclusory, and made in good faith.  Weisberg, 745 F.2d at 1485; Perry v. Block, 684 F.2d 121, 125-26 (D.C. Cir. 1982). As long as the agency submits detailed affidavits showing the scope and method of the search, then, in the absence of countervailing evidence, or apparent inconsistency of proof, dismissal or summary judgment is appropriate in its favor.  Perry, 684 F.2d at 127.

The agency's search should be reasonably calculated to uncover all responsive records. Weisberg, 745 F.2d at 1485.  Therefore, an agency should search those offices or components

reasonably likely to have responsive records. <u>Knight v. Food & Drug Admin.</u>, 938 F. Supp. 710, 716 (D. Kan. 1996). The FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place. <u>Marks v. United States Dep't of Justice</u>, 578 F.2d 261, 263 (9th Cir. 1978). Nor does the FOIA require that an agency search every record system. <u>Oglesby v Dep't. of Army</u>, 920 F.2d at 68. Furthermore, the agency is not required to speculate about potential leads to the location of the responsive documents. <u>Kowalczyk v. Department of Justice</u>, 73 F.3d 386, 389 (D.C. Cir. 1996).

In this case, the FBI conducted several searches that were reasonably calculated to uncover all responsive records. In response to Plaintiff's July 8, 2005 request to FBIHQ, the FBI searched the automatic indices to its Central Records System ("CRS") at FBI Headquarters ("FBIHQ") and located three main files responsive to Plaintiff's request: 76-HQ-40319, 76-HQ-51525 and 26-HQ-436858. Hardy Dec. ¶ 30. After Plaintiff requested a search of the FBI's Louisville Field Office ("LSFO") on August 1, 2006, the FBI searched the LSFO indices of the CRS and located one multi-subject main investigative file, 245-LS-64574 request. Hardy Dec. ¶ 31. When a multi-subject file is located, only the documents pertinent to the investigation of the subject of the request are reviewed for processing. All other documents are excluded as "out of scope" of the request. <u>Id.</u> On January 10, 2008, the FBI conducted search of the Electronic Surveillance ("ELSUR") indices. Hardy Dec. ¶ 32. The ELSUR indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. Declaration of David Hardy, executed January 14, 2008, ¶ 7 (Pacer Document 8-3). The ELSUR search located one responsive audio tape. Hardy Dec. ¶ 32. As of this date, the FBI has

processed a total of 302 pages responsive to Plaintiff's requests. <u>Id.</u> ¶ 4. Through the affidavit of

an official responsible for responding to FOIA requests, the FBI clearly established that it has

conducted a search reasonably calculated to uncover all responsive records.

Like the FBI, the DEA also conducted a search that was more than adequate and found 118

pages of information that was responsive to Plaintiff's request. <u>See</u> Wassom Dec. ¶ 42. Criminal

investigative records concerning Plaintiff were reasonably likely to be found in the DEA

Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008 because it contains all

administrative, general, and criminal investigative files compiled by DEA for law enforcement

purposes. Wassom Dec. ¶ 22. The DEA Narcotics and Dangerous Drugs Information System

(NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and

information from IRFS. Wassom Dec. ¶ 24. As an index, NADDIS points to investigative files and

particular DEA Reports of Investigation (ROI), DEA Form-6, or other documents by date, that

contain information regarding a particular individual or subject of an investigation. <u>Id.</u> On January

11, 2007, a NADDIS query was conducted by SARO[4] Freedom of Information Act Specialist, in

response to the Plaintiff's request dated July 8, 2005. <u>Id.</u> ¶ 25. Through NADDIS three (3) criminal

investigative case files were identified as containing information responsive to the Plaintiff's request.

<u>Id.</u> In the course of litigation review, DEA recognized that two (2) additional criminal investigative

case files existed that maintained information responsive to the Plaintiff's request and the

corresponding investigative files maintained in the field could also contain responsive information.

Wassom Dec. ¶ 26. After a search of the field office was conducted in July 2007, an additional 103

---

[4] DEA Freedom of Information Operations Unit (SARO) is, the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA. Wassom Dec. ¶¶ 4,5.

pages were obtained from the DEA field files, and processed. Id. ¶ 27. Thus, a total of 118 pages of responsive material was located during the searches conducted by DEA. Id.

Based on the nature of the request, it was reasonable for these agencies to conduct searches of their automated record systems, using personal identifying information for the Plaintiff, and for each agency to conclude that their record systems properly identified any potentially responsive documents.

**B.    FBI Properly Processed Plaintiff's FOIA Request.**

**1.    FBI Produced an Adequate Vaughn Index.**

FBI produced a declaration describing the pages withheld in full or in part, with excisions made by the FBI pursuant to Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E), and 7(F). Copies of the Vaughned pages released in part and in full are attached to Hardy Declaration as Exhibit Q. Hardy Dec. ¶ 33. Each page of Exhibit Q is consecutively numbered 1- 302 in the lower right-hand corner. Id. Copies of the designated documents contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA. Hardy Dec. ¶ 34. The coded categories are provided to aid the Court's and plaintiff's review of the FBI's explanations of FOIA exemptions used to withhold the protected material. Id. A table in paragraph 35 of the Hardy Declaration contains the coded categories. Hardy Dec. ¶ 35. The subcategory narrows the main category of FOIA Exemption into the more specific subcategory. Id. For example, if "(b)(7)(C)-1" appears on the page, the "(b)(7)(C)" designation refers to "Exemption (b)(7)(C)" of the FOIA concerning "Unwarranted Invasion of Personal Privacy. Id. The subcategory "1" narrows the main category into the more specific subcategory "Names and/or Identifying Information of FBI

25

Special Agents ("SAs") and Support Personnel." Id.  This information and descriptions provide the "reasonable basis to evaluate the claim of privilege" as required by Delaney, 826 F.2d at 128.

### 2.    FBI Properly Applied Privacy Act Exemption (j)(2)

Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . ." Hardy Dec. ¶ 37.  The investigatory records at issue in this matter are part of the FBI's CRS and concern three criminal investigations of Plaintiff.  Id. ¶ 38. These files concern two instances where the FBI investigated plaintiff's escape from a federal prison in violation of 18 U.S.C. § 751a,  and an investigation of narcotics charges in violation of 21 U.S.C. § 841(a)(1).  Id.  Accordingly, these files are exempt from disclosure pursuant to 5 U.S.C. § 552a (j)(2), in conjunction with 28 C.F.R. § 16.96.  Id.  Although access to these records was denied under the Privacy Act, they have been processed under the access provisions of the FOIA.  Id.

### 3.    FBI Properly Applied FOIA Exemption 2.

Exemption 2 justifies in part FBI's withholding of documents.  5 U.S.C. § 552 (b)(2) exempts from disclosure  information "related solely to the internal personnel rules and practices of an agency."  Hardy Dec. ¶ 39.  This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large.  Id. ¶ 40.  Disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures.  Id.

Exemption (b)(2)-1 applies to Techniques/Procedures for Law Enforcement and is cited on the following pages:  Bullock 73, 75, 80, and 82.  Hardy Dec. ¶¶ 35, 41.  Exemption (b)(2)-1  is cited, in conjunction with (b)(7)(E), to withhold certain information on FBI Form FD-515, an

investigative accomplishments report.  Hardy Dec. ¶ 41.  The FD-515 form is submitted by an investigative Special Agent at various stages in an investigation to report statistical results such as indictments, arrests and convictions, or the recovery of stolen property.  Id.  Additionally, this form contains a list of investigative techniques under the heading "Investigative Assistance or Technique Used" which, if utilized during an investigation, are rated numerically to memorialize their effectiveness.  Id.  If the form contains a numerical rating adjacent to one or more of the listed investigative techniques, all columns of rating spacings have been excised in order to preclude disclosure of both the particular investigative techniques used in the investigation and the effectiveness of the individual techniques.  Id.  Accordingly, because this information relates solely to the FBI's internal practices, because disclosure would not serve any public interest, and because disclosure would impede the FBI's effectiveness and potentially aid in circumvention of the techniques if disclosed, the FBI properly withheld this information pursuant to Exemption (b)(2)-1. Id.

Exemption (b)(2)-2 is cited on the following pages:  Bullock 77, 83, 98, 99, 101-103, and 276.  Hardy Dec. ¶ 43.  Exemption (b)(2)-2 has been asserted to protect telephone numbers of an FBI Special Agent and a support employee.  Id. ¶ 42.  The telephone clearly relates to the internal practices of the FBI in that this tool is used by FBI personnel during the performance of their duties. Id.  Disclosure of the business telephone numbers could subject these individuals to harassing telephone calls which could disrupt official business (including impeding ability to conduct and conclude law enforcement investigations in a timely manner).  Id.  Accordingly, because these internal telephone numbers are related solely to the FBI's internal practices, because disclosure would not serve any public interest, and because disclosure would impede the FBI's effectiveness by

subjecting the FBI employees whose telephone numbers were disclosed to the possibility of harassment, the FBI properly withheld this information pursuant to Exemption (b)(2)-2. Hardy Dec. ¶ 43.

### 4.    FBI Properly Applied Exemption 6.

5 U.S.C. § 552 (b)(6) exempts from disclosure "personnel and medical files and similar files disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Hardy Dec. ¶ 44. In asserting this exemption, the FBI scrutinized each piece of information to determine the nature and strength of the privacy interest of any individual whose name and/or identifying information appears in the documents at issue. Id. ¶ 45. In withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. Id. In making this analysis, public interest information was determined to be information which would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. Id. In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest. Id.

Exemption (b)(6)-1 is cited on the following pages: Bullock 1-5, 7, 10-12, 16, 19, 20, 22-25, 27, 29, 31, 34, 36, 38-45, 48, 52, 53, 55, 73, 75-77, 80, 82, 83, 87, 90, 91, 96-103, 106, 107, 111, 112, 114, 131, 132, 135, 140, 144, 146-148, 150, 151, 153-156, 164, 167, 170, 181- 183, 185-187, 197-203, 205, 206, 223, 224, 240-242, 259, 260, 276, 277, 279-281, 286, 291, 292 and 296. Hardy Dec. ¶ 47. Exemption (b)(6)-1 has been asserted, in conjunction with Exemption (b)(2)-2 and (b)(7)(C)-1, to protect the names and identifying information (such as social security numbers,

telephone numbers and extensions) of FBI SAs and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents concerning plaintiff and others. Hardy Dec. ¶ 46. Publicity (adverse or otherwise) regarding any particular investigation to which SAs have been assigned may seriously prejudice their effectiveness in conducting other investigations. Id. The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI. Id. FBI SAs come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. Id. It is possible for an individual targeted by such law enforcement actions may seek revenge on the agents and other federal employees involved in a particular investigation. Id. The publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward a particular agent. Id. There is no public interest to be served by disclosing the identities of the SAs or support personnel to the public. Id.

The names of FBI support employees are also withheld pursuant to FOIA Exemption (b)(6)-1. Hardy Dec. ¶ 47. These employees were assigned to handle tasks relating to the official investigation into the activities of plaintiff and others in the files responsive to plaintiff's request. Id. They were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. Id. These individuals maintain substantial privacy interests in not having their identities disclosed. Id. Because there is no public interest to be served by releasing the identities of these individuals, any such disclosure

29

could constitute an unwarranted invasion of their personal privacy. Id. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy. Id.

Exemption (b)(6)-2 is cited on the following pages: Bullock 9, 37, 40, 41, 43-56, 77, 78, 83-85, 97-99, 101-103, 105, 107, 112, 113, 147, 162-164, 179, 204-206, 224, 242, 259, 260, 276-282, 291, 296 and 297. Hardy Dec. ¶ 50. Exemption (b)(6)-2 has been asserted, in conjunction with Exemption (b)(7)(C)-2, to protect the names and identifying information of third parties who were of investigative interest to the FBI. Id. ¶ 48. The FBI withheld the names of and certain details surrounding its investigation of plaintiff's and others' criminal activities. Id. Information was developed and recorded during interviews conducted with associates of plaintiff. Id. Being linked with any law enforcement investigation carries with it a strong negative connotation and a stigma. Id. To release the identities of these third-party individuals as the subjects of law enforcement interest would not only constitute a clearly unwarranted invasion of their personal privacy, but could subject these individuals to harassment or embarrassment, or result in undue public attention. Id. Accordingly, these individuals maintain a substantial privacy interest in not having their identities disclosed. Id.

In considering the public interest in this information, the FBI determined that there is no public interest to be served by releasing the identities of these third-party individuals because this information will not shed light on the operations and activities of the FBI, but would only reveal sensitive law enforcement information concerning private citizens. Hardy Dec. ¶ 49. See Cano v. DEA, No. 04-935, 2006 WL 1441383, at *4 (D.D.C. May 24, 2006) ("When weighing the privacy interests against plaintiff's purely personal interests in challenging his conviction, the balance clearly

30

favors non-disclosure.")  Any such disclosure would constitute a clearly unwarranted invasion of their personal privacy.  Id.  The FBI, therefore, properly applied Exemption (b)(6)-2.

Exemption (b)(6)-3 is cited on the following pages: Bullock 5, 10, 14-17, 29, 40, 41, 45-51, 53, 56, 107, 112, 113, 151-153, 162, 163, 179, 180, 280 and 294-296.  Hardy Dec. ¶ 51.  Exemption (b)(6)-3 has been asserted in conjunction with Exemption (b)(7)(C)-3 to withhold the names and identifying information of third parties merely mentioned in documents concerning the criminal investigation of plaintiff and others.  Id.  Identifying information includes addresses, license plates numbers and registration information, dates of birth, aliases, as well as career and job titles.  Id.  The FBI obtained information concerning third parties who came into contact with plaintiff during the course of his activities.  Id.  If the FBI disclosed their names and other personal information, the disclosure would reveal that these third parties were connected with the FBI's investigation of plaintiff in some way.  Id.  Disclosure of these third parties' names and identifying information in connection with the FBI's investigation of plaintiff's activities carries an extremely negative connotation and could subject these individuals to possible harassment or criticism.  Id.  Accordingly, the FBI determined that these third parties maintained a substantial privacy interest in not having information about them disclosed.  Id.  After identifying the substantial privacy interests these individuals maintain, the FBI balanced their right to privacy against the public interest in the disclosure.  Id.  The FBI has determined that there is no public interest.  Id.  Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy.  Id.  Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6)-3.

Exemption (b)(6)-4 is cited on the following page: Bullock 18, 23, 24, 27, 31, 40, 43, 48, 107, 131, 132, 140, 144, 276, 291, 294 and 295.  Hardy Dec. ¶ 53.  Exemption (b)(6)-4 has been

asserted in conjunction with Exemption (b)(7)(C)-4 to protect the names and identifying information concerning Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco and Firearms (ATF) and United States Marshals Service employees. Hardy Dec. ¶ 52. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of these individuals and whether there is a public interest in releasing their identities. Id. Disclosure of their identifying information could subject these employees to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy. Id. In balancing the legitimate privacy interest of these individuals against any public interest in disclosure, the FBI determined that there is a complete lack of any bona fide public interest in disclosing this information because it will not shed light on the operations and activities of the federal government. Hardy Dec. ¶ 53. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6)-4.

Exemption (b)(6)-5 is cited on the following pages: Bullock 46, 52, and 279. Hardy Dec. ¶ 54. Exemption (b)(6)-5 has been asserted in conjunction with Exemption (b)(7)(C)-5 and (b)(7)(D) to protect the identity of a Confidential Source ("CS") who provided information to the FBI. Id. The preservation of confidentiality surrounding Confidential Sources ("CS") and Confidential Informants ("CI") are essential to effective law enforcement and is reflected in official FBI policy. Id. A CI is any individual who provides useful and credible information to the FBI regarding felonious criminal activities from whom the FBI expects or intends to obtain additional useful and credible information regarding such activities in the future and a CS is any individual who meets the definition of a Confidential Informant ("CI") but has not agreed to testify in a proceeding as a defendant or potential witness. Id. As a result, it is FBI policy to protect a CS's true identity from

32

unauthorized disclosure "to the same degree as the true identity of a Confidential Informant." Id. Because a CS will face "the same, or even greater risks from exposure as a CI," it is FBI policy that CSs be provided the "same degree of protection." Id. Any information that could possibly identify a confidential source, including dates and places where they have been are protected from disclosure. Id. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6)-5.

Exemption (b)(6)-6 is cited on the following pages: Bullock 29, 40, 43-45, 48, 52, 107, 112, 132, 140, 143, 144, 151, 180, 198, 279, 281 and 296. Hardy Dec. ¶ 55. Exemption (b)(6)-6 has been asserted in conjunction with Exemption (b)(7)(C)-6 to withhold the names and titles of Kentucky State Police, Mount Vernon Police Department, Laurel County Sheriff Office and the Rockcastle County Sheriff's Office law enforcement personnel who assisted in the investigation of plaintiff. Id. Disclosure of these individuals' identities could seriously jeopardize their effectiveness in the performance of their official duties. Id. There is no public interest to be served by releasing this information. Id. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6)-6.

### 5.    FBI Properly Applied Exemption 7.

The FBI records at issue clearly met the Exemption 7 threshold. Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. Hardy Dec. ¶ 56; see 5 U.S.C. § 552 (b)(7).

The FBI records at issue satisfy both prongs of the Exemption 7 threshold. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency.

33

Hardy Dec. ¶ 57. In the records responsive to Plaintiff's request, documents relate to a criminal investigation of Plaintiff's involvement in illegal trafficking of methamphetamine and other illegal narcotics in Southeastern Kentucky and plaintiff's escape from a Federal Prison Camp at Maxwell Air Force Base, Alabama and from the Terre Haute, Indiana, Farm Camp. Id. The FBI has jurisdiction over these types of law enforcement investigations pursuant to 21 U.S.C.§ 841(a)(1) and 18 U.S.C.§ 751, respectively. Id. Thus, prong one of the Exemption 7 threshold is satisfied because there is no doubt that these investigations fall within the law enforcement duties of the FBI.

Exemption 7's second prong is also satisfied because the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy, could reasonably be expected to interfere with enforcement proceedings, revealing the identity of confidential sources, revealing sensitive law enforcement techniques, and endangering the life or physical safety of any individual. Hardy Dec. ¶¶ 56, 58.

### a.    FBI Properly Applied Exemption 7(A)

5 U.S.C. § 552 (b)(7)(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .could reasonably be expected to interfere with enforcement proceedings." In applying the exemption to the documents in question, Bevis v.U.S. Department of State, 801 F. 2d 1386, 1389 (D.C. Cir. 1986), imposes a three-part procedure. Hardy Dec. ¶ 60. The government is required to review each document withheld on a document-by-document basis; to group the documents into functional categories and to describe the categories; and to explain why release of each category would interfere with law enforcement proceedings. Id.

34

The Case Agent in the Louisville Field Office responsible for this investigation has advised that this FBI Narcotics criminal investigation is still being appealed by some of the subjects in this investigation.  Hardy Dec. ¶ 61.  As long as the possibility of one or more retrials exist,  the investigation remains open.  Id.  Although the FBI has determined that public source material in this file may be released, the remaining material may not be released because if these investigative materials were released, it would likely interfere in enforcement proceedings.  Id.  These investigative materials from the pending law enforcement files of the criminal investigation of Plaintiff Johnny Lee Bullock are comprised of the following: (a) Electronic Communication (EC), (b) Miscellaneous Administrative Documents (includes advice of rights forms, bulky exhibit cover sheets, photos, warrant applications, inventory of seized item forms and fingerprint cards), (c) FD 302 (Interview Forms), (d) Local Law Enforcement Material, and (e) Audio Tape.  Hardy Dec. ¶ 62.

b.    **FBI Properly Applied Exemption 7(C)**

5 U.S.C. § 552 (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .could reasonably be expected to constitute an unwarranted invasion of personal privacy." Hardy Dec. ¶ 63.  In withholding information from disclosure pursuant to this exemption, the FBI is required to balance the privacy interests of the individual mentioned in the documents against any public interest in disclosure.  Id. ¶ 64.  In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of each individual's privacy interest. Id.  The FBI identified the public interest in disclosure of the information to be whether the information in question would inform Johnny Lee Bullock or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes and/or how the

35

FBI actually conducts its statutory duties, names, its internal operations and investigations.  Id. Every effort has been made to release all segregable information contained in these pages without infringing upon the privacy rights of the individuals mentioned in these documents.  Id.

The FBI has asserted Exemption 7( C ) in conjunction with Exemption 6 to protect the same documents under the same rationale.  See Hardy Dec. ¶¶ 46-55; 65-72.  For a Discussion of this rationale, see Section III.B.4, supra.

### c.    FBI Properly Applied Exemption 7(D)

5 U.S.C. § 552 (b)(7)(D) provides protection for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source." Hardy Dec. ¶ 73.  Informants may provide information to the FBI under either an express assurance of confidentiality or an implied grant of confidentiality.  Id. ¶ 74.  The latter includes individuals who are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred.  Id.  Information provided by these individuals is singular in nature, and if released, could reveal their identity.  Id.  During the course of the FBI's investigation, various third parties provided information under both express and implied confidentiality.  Id. ¶ 75.  These individuals were placed directly in positions that could subject them to acts of reprisal, harassment, or an unnecessary amount of public attention if the FBI disclosed their cooperation.  Id. ¶ 76.  Individuals who provide investigative information must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information out of fear that their names or their cooperation with the FBI will later be made public.  Id.

36

Using the subcategory system explained in Hardy Declaration ¶ 35, the FBI invokes Exemptions (b)(7)(D)-1 and (b)(7)(D)-2 to protect information provided by informants with implied confidentiality and express confidentiality, respectively. Hardy Dec. ¶¶ 77-80. Exemption (b)(7)(D)-1 has been asserted to protect the names, identifying information for, and information provided by, third parties to the FBI or other law enforcement agencies in the investigative files under an implied grant of confidentiality. Hardy Dec. ¶ 77. These third party sources provided specific detailed information that is singular in nature and assisted in the arrests and convictions of Plaintiff, his associates, or other subjects of this investigation. Id. These third parties provided information of value to the FBI concerning this investigation, and in doing so, have placed themselves in harm's way should plaintiff or his associates become aware of their cooperation with the FBI. Id. Therefore, the FBI properly withheld information pursuant to Exemption (b)(7)(D)-1 on the following pages: Bullock 40, 41, 45-51, 55, 56, 105, 112, 113, 133, 198, 204, 280-282, 296 and 297. Hardy Dec. ¶ 78.

Exemption (b)(7)(D)-2 has been asserted to protect the names, identifying information for, and information provided by, third parties to the FBI or other law enforcement agencies in the investigative files under an express grant of confidentiality. Hardy Dec. ¶ 79. In this case, one third party individual specifically requested his/her identity not be disclosed because he/she feared reprisal. Id. Prior to conducting the interview, the FBI expressly promised the third party interviewee that his/her identities and the information he/she provided would not be disclosed. Id. This is evidenced by the word "protect" when this individual's name is referenced in the file. Id. The words are a positive indication of an express assurance of confidentiality. Id. This source provided valuable information that is detailed and singular in nature and individuals who have knowledge of

37

the activities that gave rise to the FBI's investigation could clearly determine his/her identity.  Id. ¶ 80.  Given the violent nature inherent in the distribution and manufacturing of illegal narcotics in general, disclosure of the identity of this person could subject him/her to violent reprisals.  Id. Furthermore, if FBI disclosed the identities of confidential sources that entered into express agreements, that revelation would have a chilling effect on the activities and cooperation of other FBI confidential sources.  Id.  Therefore, the FBI properly withheld information pursuant to Exemption (b)(7)(D)-2 on the following pages:  Bullock 52-54.  Hardy Dec. ¶ 80.

### d.    FBI Properly Applied Exemption 7(E)

5 U.S.C. § 552(b)(7)(E) provides for the withholding of "law enforcement records which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Hardy Dec. ¶ 81.  The FBI withheld the entire Effectiveness Rating column of Form FD-515.  Id. ¶ 82.  Form FD-515 is submitted at various stages of an investigation to report statistical results such as an arrest, the recovery of stolen property, and so forth.  Id.  At the upper right hand side of this form is a block captioned "Investigative Assistance and Techniques Used."  Id.  This block lists 27 publicly known investigative techniques and/or assistance of which some were used by the investigative personnel during the investigation. Id. Opposite each investigative technique and assistance is a rating column which records a numerical rating from 1 to 4 which evaluates the effectiveness of each technique/assistance used in bringing the investigation to a successful conclusion.  Id.  The entire Effectiveness Rating column was deleted because if it had been released, plaintiff and others involved in criminal violations such as this investigation could change their activities and modus

operandi in order to avoid detection and/or surveillance in the future. Id. Therefore, protection of these rating columns is essential to prevent future circumvention of the law by criminals. Id. The FBI will use the same or similar techniques and/or assistance to bring similar future investigations to successful conclusions. Id. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(E). Id. Exemption (b)(7)(E) is cited in conjunction with (b)(2)-1 on the following pages: Bullock 73, 75, 80 and 82. Id.

### e.    FBI Properly Applied Exemption 7(F)

5 U.S.C. § 552 (b)(7)(F) provides for the withholding of "Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." Hardy Dec. ¶ 83.

Exemption (b)(7)(F) is cited in conjunction with (b)(2), (b)(6), (b)(7)(C) and (b)(7)(D) to protect sources, who provided information to the FBI concerning the criminal activities of plaintiff and/or other individuals of investigative interest in the records responsive to plaintiff's request. Hardy Dec. ¶ 84. These individuals are close contacts of plaintiff, his associates, and/or other subjects of the investigation. Id. Plaintiff and other subjects were arrested and convicted largely on information provided by these individuals. Id. In this case, because the third parties provided information about criminal activities of illegal drug dealers, the third parties' risk for violent reprisals is significantly heightened. Id. The source must be secure in knowing that the authorities will do everything to protect them and their loved ones; without that trust there would be no sources providing information. Id. Therefore, protection of the identity of sources of information is essential

39

to the law enforcement function and falls within the very meaning of Exemption (b)(7)(F) is cited on the following pages: Bullock 40, 41, 45-56, 105, 279-282, 296 and 297.  Id.

### 6.    FBI Properly Segregated Information Where Appropriate.

FBI's declaration specifically addresses the issue of segregability.  See Hardy Dec. ¶ 85. FBIHQ has processed and released all segregable information from the responsive documents pursuant to FOIA Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E) and 7(F); 5 U.S.C. § 552 (b)(2), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E), (b)(7)(F), and Privacy Act Exemption (j)(2).  Id.  Further, the FBI carefully examined all of the pages containing the withheld information and determined that the information withheld from plaintiff, if disclosed, could reasonably be expected to reveal internal administrative information, cause clearly unwarranted invasion of the personal privacy interests of third parties, interfere with law enforcement proceedings, disclose the identities of confidential sources, impede the effectiveness of the FBI's internal law enforcement procedures, and/or endanger the physical safety of sources.  Id.  Accordingly, the FBI has released all reasonably segregable, nonexempt information to plaintiff in response to his FOIA request to the FBI..  Id.

## C.    DEA Properly Processed Plaintiff's FOIA Request.

### 1.    DEA Produced an Adequate Vaughn Index.

FBI produced the Declaration of Leila I. Wassom which described the pages withheld in full or in part, with excisions made by the FBI pursuant to Exemptions 2, 7(C), 7(D), 7(E), and 7(F). Exhibit P attached to the Wassom Declaration is a Vaughn Index which details DEA's withholdings. Wassom Dec. ¶ 28.   The Vaughn Index describes the document's date, purpose, its senders and recipients, the material deleted, the exemption applied, and a description of the contents deleted.

Wassom Dec., Exhibit P. This index is more than adequate because it provides the "reasonable basis to evaluate the claim of privilege" standard set forth in <u>Delaney</u>, 826 F.2d at 128.

### 2. DEA Properly Applied Privacy Act Exemption (j)(2).

IRFS is a Privacy Act System of Records that was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219. Wassom Dec. ¶ 43. In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(2), to exempt records contained in IRFS from access and the release of the accounting of disclosures. <u>Id.</u>; 28 C.F.R. § 16.98(c)(3).

In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information relating to a third-party was released, unless required by the FOIA or pursuant to a routine use. Wassom Dec. ¶ 44. No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third-party information. <u>Id.</u> Therefore, all third-party information was withheld where release was not required by the FOIA. <u>Id.</u>

### 3. DEA Properly Applied Exemption (2).

Exemption 2 justifies in part DEA's withholding of documents. <u>See</u> Wassom Dec. ¶¶ 45-50. The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency. <u>Id.</u> ¶ 45. Pursuant to DEA rules and practices as described in the DEA Agents Manual, the documents requested by Plaintiff in this case contain "violator identifiers" consisting of a G-DEP (Geographical Drug Enforcement Program) code, a NADDIS number, and a DEA confidential informant code. Wassom Dec. ¶ 46. The G-DEP, NADDIS, and confidential informant codes are part of DEA's internal system of identifying information and individuals. <u>Id.</u>

G-DEP codes are assigned to all DEA cases at the time the case file is opened and reflect the

classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.  Wassom Dec. ¶ 46 (a).  The release of the G-DEP code would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings.  Wassom Decl., ¶ 47.  Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to information known to DEA, to avoid detection and apprehension and possibly to fashion alibis for suspected activities.  Id.  Disclosure of the code would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.  Id.

NADDIS numbers are multi-digit codes assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest.  Wassom Dec., ¶ 46(b).  Each number is unique and is assigned to only one violator within the DEA NADDIS indices.  Id.  The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2007).  Id.  Thus, DEA relied on Exemptions (b)(7)(C) and (b)(7)(F), together with exemption (b)(2), to justify withholding a third- party NADDIS number.  Id.

Informant identifier codes are assigned by DEA and other law enforcement agencies to cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence.  Wassom Dec. ¶ 46 (c).  Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in the performance of their law enforcement functions.  Id.  Release of informant identifier codes could permit individuals who present a threat to identify the informant and to learn sensitive information about individuals who cooperate with the DEA.  Id.  Exemptions (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identifiers.  Id.

NADDIS numbers and confidential informant codes are unique and personal to the individual to whom the number applies. Wassom Decl., ¶ 48. They are assigned by DEA for internal use and there is no legitimate public interest in the release of these codes. Id. Accordingly, the DEA properly withheld the documents from disclosure under FOIA Exemption (b)(2).

In addition to G-DEP codes, NADDIS numbers, and confidential informant codes, details regarding law enforcement operations and internal telephone numbers were also withheld. Wassom Dec. ¶¶ 49-50. If details of DEA investigations were known, violators would be aware of how to respond in different situations where detection and/or apprehension are eminent. Id. ¶ 49. They would be able to respond in a manner that would help them avoid detection and arrest. Id. Internal phone numbers were withheld because there is no public interest in their release and because violators could use these phone numbers to identify law enforcement personnel. Id. ¶ 50. Accordingly, the DEA properly withheld this information from disclosure under FOIA Exemption (b)(2).

**4.    DEA Properly Applied Exemption 7.**

As an initial matter, DEA has the requisite law enforcement purpose within the meaning of this exemption. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq*. (hereinafter, the Act) which authorizes DEA to enforce the Act through, for example, the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control. Wassom Dec. ¶ 51.

43

DEA's mission is consistent with the range of the law enforcement purposes of other agencies that have passed judicial scrutiny regarding this threshold issue under Exemption 7.  See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F.Supp. 17, 20-21 (D.D.C. 1992) (background investigations).  The records deemed responsive to Plaintiff's FOIA request are criminal investigative records and were compiled during criminal law enforcement investigations of Plaintiff and several third parties.  Wassom Dec. ¶ 52.

### a.    DEA Properly Applied Exemption 7(C).

In addition to satisfying the general threshold requirements of Exemption 7, DEA also satisfied the specific requirements of Exemption 7 (C).  The FOIA, 5 U.S.C. § 552 (b)(7)(C) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Wassom Dec. ¶ 53.  Many of the documents processed in response to Plaintiff's FOIA request contain names and other identifying information that would reveal the identity of and disclose personal information about individuals who were involved or associated with Plaintiff or with a law enforcement investigation.  Id.  The identities of, and information about, these individuals are protected from disclosure.  Id.  Those protected include third parties, suspects, co-defendants, and confidential sources of information.  Id.

In making the determination whether to release or withhold this information, the DEA balanced the privacy interests of these individuals against any discernible public interest in disclosure

44

of their identities.  Wassom Dec. ¶ 54.  In this instance, Plaintiff made no showing of any public interest that would outweigh the privacy interests of the individuals.  Id.  Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.  Id.

In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue.  Wassom Dec. ¶ 55.  The public interest in disclosure of the information was determined by whether the information in question would inform Plaintiff or the general public about DEA's performance of its mission to enforce federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations.  Id.  In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)(C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.  Id.; See Cole-El v. U.S. Dep't of Justice, No. 03-1013, slip op. at 10 (D.D.C. Aug. 26, 2004) ("[Plaintiff's] interest in attacking his conviction does not constitute a public interest sufficient to overcome [a third party's] privacy interests.") (Exemption 7(C)), aff'd, No. 04-5329, 2005 U.S. App. LEXIS 7358, at *2-3 (D.C. Cir. Apr. 27, 2005) ("As appellant has not demonstrated a public interest in disclosure, the countervailing interest in privacy defeated his request for documents under the Freedom of Information Act.")

The identities of DEA Special Agents, DEA laboratory personnel, and other federal, state or local law enforcement officers were withheld.  Wassom Dec. ¶ 56  Releasing their identities and any information pertaining to these individuals would place DEA Special Agents and other law enforcement officers and personnel in a position where they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law

enforcement investigation.  Id. ¶¶ 57, 58.  Moreover, these government employees could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations.  Id.  DEA Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to an official investigation into the criminal activity of Plaintiff and other individuals.  Wassom Dec. ¶ 57.  They were, and possibly still are, in positions of access to information regarding official law enforcement investigations.  Id.  There is no public interest to be served by releasing the identities of these individuals.  Id.  ¶¶ 57, 58.  Accordingly, Defendant properly withheld the documents under Exemption 7(C).

### b.     DEA Properly Applied Exemption 7(D).

DEA asserts Exemption 7(D) to withhold certain reports in part, and other reports in their entirety, which contained information that would disclose the identity of, and the information provided by, a confidential source.  Wassom Dec. ¶ 59.  Exemption 7(D) recognizes that information furnished by third parties cooperating with federal, state or local law enforcement investigations is, by its very nature, confidential.  Significantly, the statute affords protection from disclosure to all the information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of confidentiality, or circumstances exist from which such an assurance could reasonably be inferred.  U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).  The information at issue here pertains to a coded confidential informant with an express assurance of confidentiality.  Wassom Dec. ¶ 60.

Coded informants are individuals who have a continuing cooperative association, by signed, written agreement, with DEA.  Such cooperative arrangements are established and maintained according to DEA policy and procedure.  Wassom Dec. ¶ 62.  These individuals are expressly assured

confidentiality in their identities and the information they provide to DEA.  Id.  They are also assured that their names will not be used in DEA investigative materials.  Id.  They are assigned an identification code which is used in place of their name or referred to as CI, SOI, or CS.  Id.  Because of the nature of DEA's criminal investigations, any information that could identify the informant, including the informant identifier code, could subject such persons to serious harm, substantial repercussions, and possibly even death.  Wassom Dec. ¶ 61.

In this case, the reports contain information furnished by a third-party source, who was given an explicit assurance of confidentiality.  Therefore, the DEA properly applied Exemption 7(D) to justify withholding these documents.

### c.    DEA Properly Applied Exemption 7(E).

The FOIA, 5 U.S.C. § 552 (b)(7)(E), sets forth an exemption for records or information compiled for law enforcement purposes if their release would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  Wassom Dec. ¶ 63.  Longstanding, successfully proven enforcement techniques and procedures (not routine investigative techniques) that are not commonly known to the public were withheld.  Id.  In the instant case, any release of the technique would compromise its integrity and assist violators in evading detection and apprehension.  Id.

### d.    DEA Properly Applied Exemption 7(F).

DEA properly relies on Exemption 7(F) to withhold the names of  DEA Special Agents, Supervisory Special Agents, FBI Special Agents, a Bureau of Alcohol, Tobacco, and Firearms (ATF) Special Agents, a Deputy United States Marshal (DUSM), United States Customs Service (USCS),

and other Federal law enforcement personnel, a state/local law enforcement officer, and confidential sources of information. Wassom Dec. ¶ 64. Exemption (b)(7)(F) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual. Id. Historically, the release of DEA Special Agents' identities has resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. Wassom Dec. ¶ 65. DEA could, therefore, reasonably anticipate that other law enforcement officers would become targets of similar abuse if they were associated with DEA's enforcement operations. Id. Furthermore, the DEA considers it to be within the public interest not to disclose the identities of Special Agents and investigatory and other personnel because public disclosure of this information would have a detrimental effect on the successful operation of the DEA. Wassom Dec. ¶¶ 66, 67. Exemption 7(F) was also used in conjunction with Exemption 7 (D) to protect all other individuals mentioned who could be potential witnesses or provided information. Id. ¶ 68. The DEA concluded that the history of violence associated with the illicit trade in controlled substances, the fact that several of the plaintiff's accomplices were armed and the investigating agents had prepared and planned for a hostage or stand-off situation, and the plaintiff's history of domestic violence and assault, that the release of the names of third parties could jeopardize their health and/or safety. Id. at ¶ 68. Accordingly, DEA properly applied Exemption 7(F).

  **5. DEA Properly Segregated Exempt from Non-Exempt Information Where Appropriate.**

  DEA's declaration specifically addresses the issue of segregability and attests to the agency's review for segregability as to all pages withheld. See Wassom Dec. ¶¶ 69-79. Pages "8" through "10"

comprise a DEA ROI. Id. ¶ 73. The pages contain information about the drug trafficking interaction between an FBI/Kentucky State Police/Laurel County, Kentucky confidential source, the plaintiff, and third parties. Id. All information withheld from disclosure describes events and incidents that would tend to reveal protected information, so further segregation was not possible without revealing protected information. See Wassom Dec.,¶ 69. Accordingly, DEA complied with its segregation obligations pursuant to Mead Data Central.

> ### D.   USMS Properly Processed Plaintiff's FOIA Request.

In accordance with 28 C.F.R. § 16.4 (c), DEA referred the two-page USM-312, Prisoner Tracking System Personal History of Defendant dated January 24, 2001, to USMS. Bordley Dec. ¶ 2. By letter dated October 31, 2007, the USMS released to plaintiff these two pages of documents pertaining to him with limited information redacted from one page pursuant to exemption 7(C) of the Freedom of Information Act, 5 U.S.C. Section 552(b)(7)(C). Bordley Dec. ¶ 3. The USMS asserted exemption 7(C) to withhold only the names of third party individuals. Id.

Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes to the extent that the production of such records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. Section 552(b)(7)(C). Bordley Dec. ¶ 5. Plaintiff presented no public interest to warrant disclosing the identity of or the names of third-party individuals which could expose these individuals to unnecessary public attention, criticism, harassment, and possible danger to life or physical safety for cooperating in a law enforcement activity, or for being mentioned in connection with an official criminal investigation. Id. ¶ 6. Further, Plaintiff provides no indication as to how disclosure of such information would meet the basic purpose of the FOIA, i.e., to shed light on an agency's performance

of its statutory duties, nor can the USMS discern any public interest in disclosure which would outweigh the privacy of these individuals. Id. Disclosure to plaintiff would be equivalent to disclosure to the public and, as such, could reasonably be expected to constitute an unwarranted invasion of personal privacy since no legitimate public interest would be served by disclosure. 5 U.S.C. § 552(b)(7)(C) Id.

All non-exempt portions of the responsive documents have been segregated and released to plaintiff. Bordley Dec. ¶¶ 3, 8.

### E.    EOUSA Properly Processed Plaintiff's FOIA Request.

On November 6, 2007, EOUSA received a referral of two pages of documents from DEA to process and respond directly to Mr. Bullock. Stearns Dec. ¶4 & Exhibit A. By letter dated November 29, 2007, EOUSA released one page in full and withheld portions of one page in part. Id. ¶ 5 & Exhibits C, D, and E.

EOUSA applied Exemption (b)(7)(C) to withhold the identities of and personal information about third party individuals and individuals such as special federal agents, government employees, and local law enforcement personnel who participated in the investigation and prosecution of this case. Stearns Dec. ¶¶ 8, 9. The release of such information could subject such persons to an unwarranted invasion of their personal privacy. Id. All information at issue in this case was complied for law enforcement purposes in order to prosecute Mr. Bullock and others for violations of illegal drug distribution and other laws. Id. ¶ 8.

EOUSA determined that there is no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of EOUSA. Stearns Dec. ¶ 10. No public interest would counterbalance the individuals' privacy right in the

information withheld under this exemption. Id. Indeed, Mr. Bullock provided this office with no authorizations or consents from any third party individual to release otherwise personal privacy protected materials. Id.

No additional segregable portions were determined releaseable from materials other than what was therein identified as released in part. Stearns Dec. ¶ 10.

## IV.    CONCLUSION

WHEREFORE, the Defendants respectfully request that the Court grant their motion for summary judgment and enter judgment in their favor.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendants

51

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendants' Motion for Summary Judgment, Statement of Material Facts, Memorandum in Support of the Motion, and proposed order were served upon *pro se* plaintiff by depositing copies in the U.S. Mail, first class postage prepaid, addressed to:

**JOHNNY LEE BULLOCK**
**R07890-032**
**MANCHESTER FEDERAL CORRECTIONAL INSTITUTION**
**Inmate Mail/Parcels**
**P.O. BOX 4000**
**MANCHESTER, KY 40962**


on this 24th day of March 2008.


<div style="text-align:right">

_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

</div>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-01013 (ESH) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Defendants, Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), ("IRS"), United States Marshals Service ("USMS"), and Executive Office of United States Attorneys ("EOUSA") respectfully submit this statement of material facts as to which there is no genuine dispute in accordance with this Court's Local Rule 7(h). The declarations of the following officials support this statement:

1.      David M. Hardy, Section Chief, Record/Information Dissemination System ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C.;

2.      Leila I. Wassom, Paralegal Specialist, Drug Enforcement Administration ("DEA"), the Office of Chief Counsel, Administrative Law Section (CCA), DEA Headquarters, Washington, D.C.;

3.      William E. Bordley, Associate General Counsel and Freedom of Information/Privacy Act Officer of the United States Marshals Service ("USMS"), Headquarters, Office of General Counsel, Arlington, Virginia;

4.      Dione J. Stearns, Attorney Advisor, Executive Office of United States Attorneys ("EOUSA"), U.S. Department of Justice ("DOJ").

**I.    FBI**

5.      By letter dated July 8, 2005, Plaintiff submitted a FOIA/PA request to FBIHQ for all records about himself.  Second Declaration of David M. Hardy, March 17, 2008 ("Hardy Dec") ¶ 8.  Plaintiff specifically requested "documentation of any and all money transactions for drug buys in the case of Johnny Lee Bullock" and "any and all audio recording's, statement's [sic], and reports of any kind when it comes to Johnny Lee Bullock." Id. (quoting Exhibit A, Plaintiff's Letter Request under FOIA).  Additionally, Plaintiff advised that he would either "pay any reasonable cost or file in FORMA PAUPERIS if I am indigent." Id.

6.      By letter dated November 3, 2005, FBIHQ advised Plaintiff that a search of the automated indices to the FBI's Central Records System ("CRS") at FBIHQ located no main files responsive to his request.  Hardy Dec. ¶ 10.  Plaintiff was also advised of his right to appeal the FBI's determination to the U.S. Department of Justice ("DOJ"), Office of Information and Privacy ("OIP"). Id.

7.      Plaintiff appealed the FBI's response and by letter dated July 17, 2006, OIP affirmed the FBI's action on partly modified grounds.  Hardy Dec. ¶¶ 11, 13.  OIP affirmed the protection of information pursuant to FOIA Exemption (b)(7)(C). Id. ¶ 13.  OIP stated that the FBI identified an additional file that might be responsive but that file was destroyed on August 20, 1996, in accordance with routine records destruction schedules. Id.  OIP also informed plaintiff that a cross-reference to him which might be responsive to his request was located in the FBI's Louisville Field Office ("LSFO").  OIP suggested that plaintiff submit a new request to LSFO. Id.  OIP also informed

2

plaintiff that since he requested records related to a drug investigation that it was possible that records concerning him may be maintained by the Drug Enforcement Administration ("DEA") and that he could send a request to that Agency. Plaintiff was advised of his right to seek judicial review if he was dissatisfied with this response.  Id.

8.    By routing slip dated August 7, 2006, LSFO  forwarded to FBIHQ a FOIA/Privacy Act request submitted by Plaintiff dated August 1, 2006 for all records about him.  Hardy Dec. ¶ 14.

9.    By letter dated November 22, 2006, FBIHQ advised plaintiff that the material he requested was located in an investigative file which was exempt from disclosure pursuant to 5, U.S.C. § 552 (b)(7)(A).  Hardy Dec. ¶ 16 & Exhibit I.

10.    By letter dated December 4, 2006, plaintiff appealed the denial of his request pursuant to FOIA Exemption (b)(7)(A).  Hardy Dec. ¶ 17.

11.    By letter dated April 30, 2007, OIP affirmed the FBI's action.  OIP stated that the FBI properly withheld this information pursuant to 5 U.S.C. §552(b)(7)(A).   Hardy Dec.¶ 19.

12.    By letter dated September 26, 2007, FBIHQ released 31 pages of public source material with deletions pursuant to FOIA Exemptions (b)(6) and (b)(7)(c).  Hardy Dec. ¶ 20.

13.    By letter dated November 1, 2007, DEA referred documents located within their files that contained FBI information for FBI review and disclosure determination.  Hardy Dec. ¶ 22. DEA also requested the FBI make a direct response to the requester.  Id.

14.    By letter dated January 7, 2008, FBIHQ responded to plaintiff by informing him documents referred were part of file exempt from disclosure pursuant to 5 U.S.C. § 552  (b)(7)(A). Hardy Dec. ¶ 23.  Plaintiff was also advised that five pages were duplicates of the public source documents released with FBI letter dated September 26, 2007.  Id.

15.  As of this date, the FBI has processed a total of 302 pages responsive to plaintiff's requests, and has released to plaintiff a total of 42 pages in full, and 30 pages in part.  Hardy Dec. ¶ 4.  Of the remaining 230 pages, 157 pages have been withheld in their entireties and 73 pages have been withheld as duplicates.  Id.  The information has been withheld pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2), and FOIA Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E), and 7(F), 5 U.S.C. §§ 552 (b)(2), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F).  Id.

## II.    DEA

16.    By letter dated July 8, 2005, Plaintiff requested a search of all records concerning himself.  Declaration of Leila I. Wassom, February 19, 2008 ("Wassom Dec.") ¶ 6.  Plaintiff specifically requested "(1) arrest records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants and/or detaiiners, (5) final and closing investigation reports; and (6) any and all information, data or reports not otherwise exempt by statute. ..."  Id.  Plaintiff stated that the information requested "is the documentation of any and all money transactions for drug buys in the case of Johnny Lee Bullock," and specified that "The information that has been listed ... also refer to any and all audio recordings', statement's, and reports of any kind when it comes to Johnny Lee Bullock."  Id.  In addition, Plaintiff requested that DEA inform him if and to whom the file and/or any material therein contained has been released to any identifiable individual or agency, and if so, their name, title, purpose, and need for such information, the date of release, the specific material that was released, the DEA employee releasing the information, and the specific reference to authority, statute or regulation governing such release. Id.

17.    By letter dated January 16, 2007, DEA released portions of 10 pages to the plaintiff and informed Plaintiff that five (5) pages were withheld in their entirety. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  Wassom Decl. ¶ 11.

18.    By letter dated October 29, 2007, DEA forwarded two pages to the United States Marshals Service (USMS) for direct response to Plaintiff.  Wassom Decl. ¶ 12.

19.    By letter dated November 1, 2007, DEA forwarded 18 pages to the Federal Bureau of Investigation (FBI) for processing and a direct response to Plaintiff.  Wassom Decl. ¶ 14.   On five (5) of the pages, DEA withheld the names of DEA Special Agents, pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(F).  Id.

20.    By letter dated November 6, 2007, DEA forwarded two (2) pages to the Executive Office for United States Attorneys (EOUSA) for processing and a direct response to Plaintiff. Wassom Decl. ¶ 15.

21.    By letter dated November 14, 2007, DEA released portions of 32 pages and 30 pages in their entirety to the plaintiff.  Wassom Decl. ¶ 16.

22.    By letter dated November 28, 2007, pursuant to a final litigation review, DEA released portions of three (3) pages to the plaintiff.  Wassom Decl. ¶ 18.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F).  Id.

23.    A total of 118 pages of responsive material was located during the searches conducted by DEA.  Wassom Decl. ¶ 27.  Of the 118 pages, DEA released portions of 43 pages and 30 pages in their entirety to the plaintiff; 23 pages were withheld in their entirety; and, portions of five (5) pages and 17 pages in their entirety were referred to other agencies.  Id. at ¶ 28.  Information was withheld by DEA pursuant to FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F),

and the Privacy Act Exemption (j)(2). Id. A Vaughn index detailing DEA's withholdings is attached as Exhibit P to the Wassom Declaration.

### III.    USMS

24.    On October 31, 2007, the USMS received from the Drug Enforcement Administration (DEA), two pages of information consisting of a two-page USM-312, Prisoner Tracking System Personal History of Defendant dated January 24, 2001, which were located by DEA during its processing of plaintiffs Freedom of Information Act request to that agency.  Declaration of William E. Bordley, November 7, 2007 ("Bordley Dec.") ¶ 2.  The two pages originated with the USMS and were referred to the USMS for disclosure determination and direct response to plaintiff in accordance with 28 C.F.R. § 16.4(c).  Bordley Dec. ¶ 2 & Exhibit A.

25.    The two pages of documents referred by DEA are records maintained by the USMS in the Prisoner Processing and PopulationManagement/Prisoner Tracking System (PPM/PTS;), JUSTICE/USM-005.  Bordley Dec. ¶ 4.  Records maintained in this system are compiled for law enforcement purposes in connection with the USMS receipt, processing, transportation and custody of prisoners.  Id.; see Rule 4, Fed. R. Cr. Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(j),(k).  As such, this system of records is exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2). Id.; see 28 C.F.R. § 16.101(q).

26.    By letter dated October 31, 2007, the USMS released to plaintiff these two pages of documents pertaining to him with limited information redacted from one page pursuant to exemption 7(C) of the Freedom of Information Act, 5 U.S.C. Section 552(b)(7)(C).  Bordley Dec. ¶ 3 & Exhibit B.  The USMS asserted exemption 7(C) to withhold only the names of third party individuals.  No

other information was withheld and the USMS released all reasonably segregable information to plaintiff.  Id.

27.  Plaintiff presented no public interest to warrant disclosing the identity of or the names of third-party individuals which could expose these individuals to unnecessary public attention, criticism, harassment, and possible danger to life or physical safety for cooperating in a law enforcement activity, or for being mentioned in connection with an official criminal investigation.  Bordley Dec. ¶ 6.  Further, plaintiff provides no indication as to how disclosure of such information would meet the basic purpose of the FOIA, i.e., to shed light on an agency's performance of its statutory duties, nor can the USMS discern any public interest in disclosure which would outweigh the privacy of these individuals.  Id.

## IV.    EOUSA

28.  On November 6, 2007, EOUSA received a referral of two pages of documents from DEA to process and respond directly to Mr. Bullock.  Declaration of Dione J. Stearns ("Stearns Dec.") ¶4 & Exhibit A.  Accompanying the documents was a copy of Mr. Bullock's request to DEA.  Id. & Exhibit B.

29.  By letter dated November 29, 2007, EOUSA released one page in full and withheld portions of one page in part.  Stearns Dec. ¶ 5; see also Exhibits C, D, and E  for a copy of the November 29, 2007 letter and  responsive records.

30.  Exemption (b)(7)(C) of the FOIA exempts from mandatory release records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Stearns Dec. ¶ 7.  All information at issue

in this case was compiled for law enforcement purposes in order to prosecute Mr. Bullock and others for violations of illegal drug distribution and other laws.  Id.

31.    EOUSA applied Exemption (b)(7)(C) to withhold the identities of and personal information about third party individuals, the release of which could subject such persons to an unwarranted invasion of their personal privacy.  Stearns Dec. ¶ 8.

32.    Exemption (b)(7)(C) also applies to withhold identities of individuals such as special federal agents, government employees, and local law enforcement personnel who participated in the investigation and prosecution of this case.  Stearns Dec. ¶ 9.  Individual duties and assignments are not public and such publicity as would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting such individuals to harassment or harm.  Id.  These persons have protected privacy interests in the conduct of law enforcement investigations.  Id.

33.    EOUSA determined that there is no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of EOUSA.  Stearns Dec. ¶ 10.  No public interest would counterbalance the individuals' privacy right in the information withheld under this exemption.  Id.  Indeed, Mr. Bullock provided this office with no authorizations or consents from any third party individual to release otherwise personal privacy protected materials.  Id.

34.    No additional segregable portions were determined releaseable from materials other than what was therein identified as released in part.  Stearns Dec. ¶ 10.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendants

March 24, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK, )
 )
 Plaintiff, )
 )
 v. ) Civil Action No. 07-CV-1013(ESH)
 )
UNITED STATES DEPARTMENT OF )
JUSTICE (FBI), et al., )
 )
 )
 Defendants. )
 )

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002.

Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31,

2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I

had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and

litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge

Advocate at various commands and routinely worked with FOIA matters. I am also an attorney

who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 208

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit

whose collective mission is to effectively plan, develop, direct, and manage responses to requests



for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's treatment of the July 8, 2005 and August 7, 2006 FOIA/Privacy Act requests of plaintiff Johnny Lee Bullock, which seek access to records concerning himself at FBIHQ and the FBI's Louisville Field Office.

(4)    As of this date, the FBI has processed a total of 302 pages responsive to plaintiff's requests, and has released to plaintiff a total of 42 pages in full, and 30 pages in part. Of the remaining 230 pages, 157 pages have been withheld in their entireties and 73 pages have been withheld as duplicates. The purpose of this declaration is to provide the Court and plaintiff with an explanation of the procedures used to search for records responsive to plaintiff's requests and, in accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), provide a justification for the information withheld pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2), and FOIA Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E), and 7(F), 5 U.S.C. §§ 552 (b)(2), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F).

2

## CRIMINAL HISTORY OF JOHNNY LEE BULLOCK

(5)    While plaintiff was serving an 18-month sentence at the Federal Prison Camp in Maxwell Air Force Base, Alabama, for distilling illegal alcohol, prison officials granted him a two-day furlough to attend the funeral of his father. He failed to return as directed and was declared a fugitive on June 15, 1970. The FBI opened a file when he was declared an Escaped Federal Prisoner. Plaintiff voluntarily returned on June 16, 1970, alleging a misunderstanding. The United States Attorney, Montgomery, Alabama declined to prosecute and the complaint was dismissed.

(6)    On November 18, 1974, plaintiff was again declared an Escaped Federal Prisoner when he escaped from the Terre Haute Farm Camp, Terre Haute, Indiana, where he was serving a two-and a-half year sentence for violation of the National Motor Vehicle Theft Act. FBI agents apprehended plaintiff on November 19, 1974 at Sands Springs, Kentucky. Plaintiff was successfully prosecuted and sentenced to 60 days for his escape. Plaintiff was also suspected of, and investigated for, stealing a motor vehicle during the time of his escape but was not charged with this crime.

(7)    In January 2000 plaintiff, along with several co-defendants, was charged with multiple counts of conspiring to manufacture and distribute methamphetamine, a controlled substance. Plaintiff was found guilty of possession with intent to distribute methamphetamine in violation of 21 U.S.C.§ 841 (a)(1) and on September 10, 2002, was sentenced to 19 years, 7 months with 5 years supervised release for the narcotics violations. The Court also required plaintiff to pay a special assessment of $400. Plaintiff appealed his conviction on November 1, 2006. The case is still pending in the Sixth Circuit Court of Appeals.

3

## CORRESPONDENCE REGARDING FOIPA NO. 1025288

(8)    By letter dated July 8, 2005, plaintiff submitted a FOIA/Privacy Act request to

FBIHQ for all records about him. Plaintiff specifically requested:

> documentation of any and all money transactions for drug buys in the case of Johnny Lee Bullock.

> any and all audio recording's, statement's[sic], and reports of any kind when it comes to Johnny Lee Bullock.

**(See Exhibit A.)**

(9 )    By letter dated July 22, 2005, FBIHQ acknowledged receipt of plaintiffs request

and advised plaintiff his request had been assigned FOIPA Request Number 1025288. **(See**

**Exhibit B.)**

(10)    By letter dated November 3, 2005, FBIHQ advised that it had reviewed 37 pages

and was releasing 34 pages with redactions in response to FOIPA Request Number 1025288.

Certain information was being withheld pursuant to (j)(2) of the Privacy Act and FOIA

Exemptions (b)(6) and (b)(7)(C). Plaintiff was also advised that he could file an administrative

appeal by writing to the Co-Director, Office of Information and Privacy ("OIP"), United States

Department of Justice ("DOJ"), Flag Building, Suite 570, Washington, DC 20530. **(See Exhibit**

**C.)**

(11)    By letter dated November 8, 2005, plaintiff appealed the FBI's response. **(See**

**Exhibit D.)**

(12)    By letter dated November 28, 2005, OIP advised plaintiff that his appeal was

received on November 21, 2005. Plaintiff was also informed of OIP's substantial backlog of

pending appeals and that his appeal was assigned Appeal Number 06-0529. **(See Exhibit E.)**

4

(13)    By letter dated July 17, 2006, OIP affirmed the FBI's action on partly modified

grounds. OIP affirmed the protection of information pursuant to FOIA Exemption (b)(7)(C).

OIP stated that the FBI identified an additional file that might be responsive but that file was

destroyed on August 20, 1996, in accordance with routine record's destruction schedules. OIP

also informed plaintiff that a cross-reference to him which might be responsive to his request was

located in the FBI's Louisville Field Office ("LSFO"). OIP suggested that plaintiff submit a new

request to LSFO. OIP also informed plaintiff that since he requested records related to a drug

investigation that it was possible that records concerning him may be maintained by the Drug

Enforcement Administration ("DEA") and that he could send a request to that Agency. Plaintiff

was advised of his right to seek judicial review if he was dissatisfied with this response. **(See**

**Exhibit F.)**

## CORRESPONDENCE REGARDING FOIPA NO. 1056345

(14)    By routing slip dated August 7, 2006, LSFO forwarded to FBIHQ a

FOIA/Privacy Act request submitted by plaintiff dated August 1, 2006 for all records about him.

Plaintiff specifically requested:

> documentation of any and all money transactions for drug buys in the case
> of Johnny Lee Bullock.
>
> the information that has been listed in (1) also refer [sic] to any and all
> audio recording's, statement's[sic], and reports of any kind when it comes
> to Johnny Lee Bullock.

**(See Exhibit G.)**

(15 )    By letter dated August 23, 2006, FBIHQ acknowledged receipt of plaintiff's

request from LSFO and advised plaintiff that his request had been assigned FOIPA Number

1056345. Plaintiff was also advised that the FBI was searching the indices to its Central Records System at FBIHQ. **(See Exhibit H.)**

(16)    By letter dated November 22, 2006, FBIHQ advised plaintiff that the material he requested was located in an investigative file which was exempt from disclosure pursuant to 5, U.S.C. § 552 (b)(7)(A). Plaintiff was also advised that he could file an administrative appeal by writing to DOJ OIP. **(See Exhibit I.)**

(17)    By letter dated December 4, 2006, plaintiff appealed the denial of his request pursuant to FOIA Exemption (b)(7)(A). **(See Exhibit J.)**

(18)    By letter dated February 6, 2007, OIP advised plaintiff that his appeal was received on January 26, 2007 and his appeal had been assigned Appeal Number 07-0551. **(See Exhibit K.)**

(19)    By letter dated April 30, 2007, OIP affirmed the FBI's action. OIP stated that the FBI properly withheld this information pursuant to 5 U.S.C. §552(b)(7)(A). **(See Exhibit L.)**

(20)    By letter dated September 26, 2007, FBIHQ released 31 pages of public source material with deletions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). **(See Exhibit M.)**

(21)    By letter dated October 16, 2007, FBIHQ re-sent the 31-page release to plaintiff's new address. **(See Exhibit N.)**

## CORRESPONDENCE REGARDING DEA REFERRAL TO FBI

(22)    By letter dated November 1, 2007, DEA referred documents located within their files that contained FBI information for FBI review and disclosure determination. DEA also requested the FBI make a direct response to the requester. **(See Exhibit O.)**

6

(23)    By letter dated January 7, 2008, FBIHQ responded to plaintiff by informing him documents referred were part of file exempt from disclosure pursuant to 5 U.S.C. § 552 (b)(7)(A).  Plaintiff was also advised that five pages were duplicates of the public source documents released with FBI letter dated September 26, 2007.  **(See Exhibit P.)**

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(24)    The Central Records System ("CRS") enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  CRS is organized into a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter.  The subject matter of a file may correspond to an individual, organization, company, publication, activity, or foreign intelligence matter (or program).  Certain records in the CRS are maintained at FBIHQ.  Records that are pertinent to specific field offices of the FBI are maintained in those field offices.  Although the CRS is primarily designed to serve as an investigative tool, the FBI utilizes the CRS to conduct searches that are likely to yield documents responsive to FOIA/Privacy Act requests.  The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").

(25)    The ACS was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated.  ACS can be described as an internal computerized subsystem of the CRS.  Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched.

7

More than 105 million records from the CRS were converted from automated systems previously utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(26)    The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[1] The entries in the General Indices fall into two categories:

> (a) A "main" entry --- A "main" entry, or "main" files, carries the name corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry --- "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

(27)    Searches made in the General Indices to locate records concerning a particular subject, such as Johnny Lee Bullock, are made by searching the subject requested in the index.

(28)    The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

> (a)    Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which

---

[1] The General Indices are not only automated but also include index cards which allow a manual search for records that pre-date the implementation of ACS on October 16, 1995.

is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using file number "76-HQ-51525" as an example, an explanation of the UCFN is as follows: "76" indicates the classification for the specific type of investigation, in this case Escaped Federal Prisoner; "HQ" is the abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and "51525" denotes the individual case file number for the particular investigation.

   (b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

   (c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 100.4 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

  (29) The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation,

9

and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Johnny Lee Bullock.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

(30)     In response to plaintiff's July 8, 2005 request to FBIHQ, the FBI searched the FBIHQ indices of the CRS for responsive records and located the following three main files responsive to plaintiff's request: 76-HQ-40319, 76-HQ-51525 and 26-HQ-436858. File 26-HQ-436858 was destroyed on August 8, 1996 pursuant to routine records destruction schedules defined in 44 U.S.C. § 3302 and 36 C.F.R. § 1228. Main files 76-HQ-40319 and 76-HQ-51525 were processed and released to plaintiff on November 3, 2005, and consisted of 37 pages processed and 34 pages released with redactions taken pursuant to Privacy Act Exemption (j)(2), and FOIA Exemptions (b)(6) and (b)(7)(C).[2]

(31)     Plaintiff requested a search of LSFO records on August 1, 2006. The FBI conducted a search of the LSFO indices of the CRS and located one multi-subject main investigative file, 245-LS-64574. When a multi-subject file is located, only the documents pertinent to the investigation of the subject of the request are reviewed for processing. All other

---

[2] This release consists of the following pages: Bullock 1 - 37.

10

documents are excluded as "out of scope" of the request.  This file contained 289 pages which were determined to be responsive to plaintiff's request.  These documents were reviewed and found to be exempt from disclosure pursuant to 5 U.S.C. § 552, (b)(7)(A).  Thirty-one pages of public source material in the file were released to plaintiff on September 26, 2007.

(32)    On January 10, 2008, the FBI conducted an ELSUR[3] search and located one responsive audio tape.  The material on this tape was reviewed and processed and is being withheld from disclosure pursuant to 5 U.S.C. § 552 (b)(6), (b)(7)(A), (b)(7)(C) and (b)(7)(D).

## EXPLANATION OF CODED FORMAT USED FOR THE JUSTIFICATION OF DELETED MATERIAL

(33)    All documents were processed to achieve maximum disclosure consistent with the access provisions of the Privacy Act and the FOIA.  Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material.  No reasonably segregable, nonexempt portions were withheld from plaintiff.  To further describe the information withheld could identify the very material which the FBI seeks to protect.  Copies of the *Vaughned* pages released in part and in full are attached hereto as **Exhibit Q.**  Each page of **Exhibit Q** is consecutively numbered 1- 302 in the lower right-hand corner.  The exemptions asserted by the FBI as grounds for non-disclosure of portions of documents are Exemption (j)(2) of the Privacy Act, and FOIA Exemptions (b)(2), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).

(34)    Copies of the designated documents contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the

---

[3] ELSUR Indices were described in ¶ 7 of the Hardy Declaration, dated January 14, 2008.

FOIA. The coded categories are provided to aid the Court's and plaintiff's review of the FBI's explanations of FOIA exemptions used to withhold the protected material. Accordingly, a review of this information will reveal that all material withheld is exempt from disclosure pursuant to FOIA Exemptions, or it is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.

(35)    Each withholding of information is accompanied by a code that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on the page, the "(b)(7)(C)" designation refers to "Exemption (b)(7)(C)" of the FOIA concerning "Unwarranted Invasion of Personal Privacy. The subcategory "1" narrows the main category into the more specific subcategory "Names and/or Identifying Information of FBI Special Agents ("SAs") and Support Personnel." The coded categories of exemptions used in the processing of documents responsive to plaintiff's requests are set forth as follows:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(2)** | **INTERNAL AGENCY RULES AND PRACTICES** |
| **(b)(2)-1** | Techniques/Procedures for Law Enforcement (May be Cited in conjunction with (b)(7)(E).) |
| **(b)(2)-2** | Telephone Numbers of FBI Personnel |
| **Category (b)(6)** | **UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(6)-1** | Names and/or Identifying Information of FBI SAs and Support Personnel (Cited in conjunction with (b)(7)(C)-1.) |
| **(b)(6)-2** | Names and/or Identifying Information of Third Parties of Investigative Interest (Cited in conjunction with (b)(7)(C)-2.) |
| **(b)(6)-3** | Names and/or Identifying Information concerning Third Parties Merely Mentioned (Cited in conjunction with (b)(7)(C)-3.) |

12

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **(b)(6)-4** | Names and/or Identifying Information of Non-FBI Federal Law Enforcement Employees (Cited in conjunction with (b)(7)(C)-4.) |
| **(b)(6)-5** | Names and/or Identifying Information of Confidential Sources (Cited in conjunction with (b)(7)(C)-5.) |
| **(b)(6)-6** | Names and/or Identifying Information for Local or State Law Enforcement Employees (Cited in conjunction with (b)(7)(C)-6.) |
| **Category (b)(7)(A)** | **PENDING LAW ENFORCEMENT INVESTIGATIONS** |
| **Category (b)(7)(C)** | **UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(7)(C)-1** | Names and/or Identifying information of FBI SAs and Support Personnel (Cited in conjunction with (b)(6)-1.) |
| **(b)(7)(C)-2** | Names and/or Identifying Information of Third Parties of Investigative Interest (Cited in conjunction with (b)(6)-2.) |
| **(b)(7)(C)-3** | Names and/or Identifying Information concerning Third Parties Merely Mentioned (Cited in conjunction with (b)(6)-3.) |
| **(b)(7)(C)-4** | Names and/or Identifying Information of Non-FBI Federal Law Enforcement Employees (Cited in conjunction with (b)(6)-4.) |
| **(b)(7)(C)-5** | Names and/or Identifying Information of Confidential Sources (Cited in conjunction with (b)(6)-5.) |
| **(b)(7)(C)-6** | Names and/or Identifying Information for Local or State Law Enforcement Employees (Cited in conjunction with (b)(6)-6.) |
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE MATERIAL** |
| **(b)(7)(D)-1** | Names and/or Information Provided by Third Parties under "Implied" Assurance of Confidentiality (Cited in conjunction with (b)(6)-2 and (b)(7)(C)-2.) |
| **(b)(7)(D)-2** | Information Provided by a Third Party under "Express" Assurance of Confidentiality (Cited in conjunction with (b)(6)-2 and (b)(7)(C)-2.) |
| **Category (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| **(b)(7)(E)** | Effectiveness Rating- FD-515 (May be cited in conjunction with (b)(2)-1.) |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(7)(F)** | **ENDANGER PHYSICAL SAFETY** |
| **(b)(7)(F)** | Information Release of Which Would Endanger the Safety of Third Parties who Provided Information |

## JUSTIFICATION FOR REDACTIONS

(36)    The paragraphs that follow explain the FBI's rationale for withholding each

particular category of information under the specific exemption categories described above.

## PRIVACY ACT EXEMPTION (j)(2)

(37)    Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of

records "maintained by an agency or component thereof which performs as its principal function

any activity pertaining to the enforcement of criminal laws, including police efforts to prevent,

control, or reduce crime or to apprehend criminals . . ."

(38)    The investigatory records at issue in this matter are part of the FBI's CRS and

concern three criminal investigations of plaintiff. These files concern two instances where the

FBI investigated plaintiff's escape from a federal prison in violation of 18 U.S.C. § 751a, and an

investigation of narcotics charges in violation of 21 U.S.C. § 841(a)(1). Accordingly, these files

are exempt from disclosure pursuant to 5 U.S.C. § 552a (j)(2), in conjunction with 28 C.F.R. §

16.96. Although access to these records was denied under the Privacy Act, they have been

processed under the access provisions of the FOIA.

## EXEMPTION (b)(2)
## INTERNAL AGENCY RULES AND PRACTICES

(39)    5 U.S.C. § 552 (b)(2) exempts from disclosure:

14

information "related solely to the internal personnel rules and practices of an agency."

(40)    This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large. Disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures.

### (b)(2)-1    Techniques/Procedures for Law Enforcement

(41)    Exemption (b)(2)-1 is cited, in conjunction with (b)(7)(E), to withhold certain information on FBI Form FD-515, an investigative accomplishments report. The FD-515 form is submitted by an investigative Special Agent at various stages in an investigation to report statistical results such as indictments, arrests and convictions, or the recovery of stolen property. Additionally, this form contains a list of investigative techniques under the heading "Investigative Assistance or Technique Used" which, if utilized during an investigation, are rated numerically to memorialize their effectiveness. If the form contains a numerical rating adjacent to one or more of the listed investigative techniques, all columns of rating spacings have been excised in order to preclude disclosure of both the particular investigative techniques used in the investigation and the effectiveness of the individual techniques. Accordingly, because this information relates solely to the FBI's internal practices, because disclosure would not serve any public interest, and because disclosure would impede the FBI's effectiveness and potentially aid in circumvention of the techniques if disclosed. The FBI properly withheld this information pursuant to Exemption (b)(2)-1. Exemption (b)(2)-1 is cited on the following pages: Bullock 73, 75, 80, and 82.

15

.

### (b)(2)-2    FBI Telephone Numbers

(42)    Exemption (b)(2)-2 has been asserted to protect telephone numbers of an FBI

Special Agent and a support employee.  The telephone clearly relates to the internal practices of

the FBI in that this tool is used by FBI personnel during the performance of their duties.

Disclosure of the business telephone numbers could subject these individuals to harassing

telephone calls which could disrupt official business (including impeding ability to conduct and

conclude law enforcement investigations in a timely manner).

(43)    Accordingly, because these internal telephone numbers are related solely to the

FBI's internal practices, because disclosure would not serve any public interest, and because

disclosure would impede the FBI's effectiveness by subjecting the FBI employees whose

telephone numbers were disclosed to the possibility of harassment, the FBI properly withheld this

information pursuant to Exemption (b)(2)-2.  Exemption (b)(2)-2 is cited on the following

pages:  Bullock 77, 83, 98, 99, 101-103, and 276.

<div style="text-align:center">

**EXEMPTION (b)(6)**
**CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY**

</div>

(44)    5 U.S.C. § 552 (b)(6) exempts from disclosure:

> personnel and medical files and similar files disclosure of which would
> constitute a clearly unwarranted invasion of personal privacy.

(45)    In asserting this exemption, each piece of information was scrutinized to

determine the nature and strength of the privacy interest of any individual whose name and/or

identifying information appears in the documents at issue.  In withholding the information, the

individual's privacy interest was balanced against the public's interest in disclosure.  In making

this analysis, public interest information was determined to be information which would shed

<div style="text-align:center">16</div>

light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest.

### (b)(6)-1    Names and/or Identifying Information of FBI Special Agents and Support Personnel

(46)    Exemption (b)(6)-1 has been asserted, in conjunction with Exemption (b)(2)-2 and (b)(7)(C)-1, to protect the names and identifying information (such as social security numbers, telephone numbers and extensions) of FBI SAs and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents concerning plaintiff and others. These responsibilities included interviewing cooperating witnesses, and sources and reviewing materials compiled as a result of the investigation of plaintiff and others. Assignments of SAs to any particular investigation are not by choice. Publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations. The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security violation cases. They come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. It is possible for an individual targeted by such law enforcement actions

17

to carry a grudge which may last for years. These individuals may seek revenge on the agents and other federal employees involved in a particular investigation. The publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward a particular agent. There is no public interest to be served by disclosing the identities of the SAs or support personnel to the public.

(47)    The names of FBI support employees are also withheld pursuant to FOIA Exemption (b)(6)-1. These employees were assigned to handle tasks relating to the official investigation into the activities of plaintiff and others in the files responsive to plaintiff's request. They were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. These individuals maintain substantial privacy interests in not having their identities disclosed. Because there is no public interest to be served by releasing the identities of these individuals, any such disclosure could constitute an unwarranted invasion of their personal privacy. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy. Exemption (b)(6)-1 is cited on the following pages: Bullock 1-5, 7, 10-12, 16, 19, 20, 22-25, 27, 29, 31, 34, 36, 38-45, 48, 52, 53, 55, 73, 75-77, 80, 82, 83, 87, 90, 91, 96-103, 106, 107, 111, 112, 114, 131, 132, 135, 140, 144, 146-148, 150, 151, 153-156, 164, 167, 170, 181- 183, 185-187, 197-203, 205, 206, 223, 224, 240-242, 259, 260, 276, 277, 279-281, 286, 291, 292 and 296.

**(b)(6)-2    Names and/or Identifying Information of Third Parties of Investigative Interest**

(48)    Exemption (b)(6)-2 has been asserted, in conjunction with Exemption (b)(7)(C)-2,

to protect the names and identifying information of third parties who were of investigative interest to the FBI. During the course of the FBI's investigation of plaintiff's and others' criminal activities, information was developed and recorded during interviews conducted with associates of plaintiff. Consequently, due to their criminal activities, these third-party individuals were of investigative interest to the FBI. Specifically, the FBI withheld the names of and certain details surrounding the FBI's investigation. Being linked with any law enforcement investigation carries with it a strong negative connotation and a stigma. To release the identities of these third-party individuals as the subjects of law enforcement interest would not only constitute a clearly unwarranted invasion of their personal privacy, but could subject these individuals to harassment or embarrassment, or result in undue public attention. Accordingly, these individuals maintain a substantial privacy interest in not having their identities disclosed.

(49)    In considering the public interest in this information, the FBI determined that there is no public interest to be served by releasing the identities of these third-party individuals because this information will not shed light on the operations and activities of the FBI, but would only reveal sensitive law enforcement information concerning private citizens. Any such disclosure would constitute a clearly unwarranted invasion of their personal privacy.

(50)    In balancing the substantial privacy interest that these individuals have in this information against no legitimate public interest in its disclosure, the FBI properly withheld this information pursuant to Exemption (b)(6)-2. Exemption (b)(6)-2 is cited on the following pages: Bullock 9, 37, 40, 41, 43-56, 77, 78, 83-85, 97-99, 101-103, 105, 107, 112, 113, 147, 162-164, 179, 204-206, 224, 242, 259, 260, 276-282, 291, 296 and 297 .

19

### (b)(6)-3    Names of and/or Identifying Information Concerning Third Parties Merely Mentioned

(51)    Exemption (b)(6)-3 has been asserted in conjunction with Exemption (b)(7)(C)-3 to withhold the names and identifying information of third parties merely mentioned in documents concerning the criminal investigation of plaintiff and others. Identifying information includes addresses, license plates numbers and registration information, dates of birth, aliases, as well as career and job titles. The FBI obtained information concerning third parties who came into contact with plaintiff during the course of his activities. These individuals were not of investigative interest to the FBI. These third parties maintain legitimate privacy interests in not having this information disclosed. If the FBI disclosed their names and other personal information, the disclosure would reveal that these third parties were connected with the FBI's investigation of plaintiff in some way. Disclosure of these third parties' names and identifying information in connection with the FBI's investigation of plaintiff's activities carries an extremely negative connotation. Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. Accordingly, the FBI determined that these third parties maintained a substantial privacy interest in not having information about them disclosed. After identifying the substantial privacy interests these individuals maintain, the FBI balanced their right to privacy against the public interest in the disclosure. The FBI has determined that there is no public interest. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy. Exemption (b)(6)-3 is cited on the following pages: Bullock 5, 10, 14-17, 29, 40, 41, 45-51, 53, 56, 107, 112, 113, 151-153, 162, 163, 179, 180, 280 and 294-296.

20

### (b)(6)-4     Names and/or Identifying Information Pertaining to Non-FBI Federal Law Enforcement Employees

(52)     Exemption (b)(6)-4 has been asserted in conjunction with Exemption (b)(7)(C)-4 to protect the names and identifying information concerning Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco and Firearms (ATF) and United States Marshal Service employees. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of these individuals and whether there is a public interest in releasing their identities. Disclosure of their identifying information could subject these employees to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy. The rationale for protecting non-FBI federal employees is the same as that for FBI employees.

(53)     In balancing the legitimate privacy interest of these individuals against any public interest in disclosure, the FBI determined that there is a complete lack of any bona fide public interest in disclosing this information because it will not shed light on the operations and activities of the federal government. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6)-4. Exemption (b)(6)-4 is cited on the following page: Bullock 18, 23, 24, 27, 31, 40, 43, 48, 107, 131, 132, 140, 144, 276, 291, 294 and 295.

### (b)(6)-5     Names and/or Identifying Information of Confidential Sources

(54)     The preservation of confidentiality surrounding Confidential Informants ("CI") and Confidential Sources ("CS") are essential to effective law enforcement and is reflected in official FBI policy. A CI is any individual who provides useful and credible information to the FBI regarding felonious criminal activities from whom the FBI expects or intends to obtain

additional useful and credible information regarding such activities in the future and a CS is any

individual who meets the definition of a Confidential Informant ("CI") but has not agreed to

testify in a proceeding as a defendant or potential witness. As a result, it is FBI policy to protect

a CS's true identity from unauthorized disclosure "to the same degree as the true identity of a

Confidential Informant." Because a CS will face "the same, or even greater risks from exposure

as a CI," it is FBI policy that CSs be provided the "same degree of protection." Any information

that could possibly identify a confidential source, including dates and places where they have

been are protected from disclosure. Exemption (b)(6)-5 has been asserted in conjunction with

Exemption (b)(7)(C)-5 and (b)(7)(D)-3 to protect the identity of a CS who provided information

to the FBI. Exemption (b)(6)-5 is cited on the following pages: Bullock 46, 52, and 279.

### **(b)(6)-6**    **Names and/or Identifying Information for State and Local Law Enforcement Personnel**

(55)    Exemption (b)(6)-6 has been asserted in conjunction with Exemption (b)(7)(C)-6

to withhold the names and titles of Kentucky State Police, Mount Vernon Police Department,

Laurel County Sheriff Office and the Rockcastle County Sheriff's Office law enforcement

personnel who assisted in the investigation of plaintiff. Disclosure of these individuals'

identities could seriously jeopardize their effectiveness in the performance of their official duties.

There is no public interest to be served by releasing this information. Exemption (b)(6)-6 is cited

on the following pages: Bullock 29, 40, 43-45, 48, 52, 107, 112, 132, 140, 143, 144, 151, 180,

198, 279, 281 and 296.

## **EXEMPTION 7**

## **EXEMPTION 7 THRESHOLD**

(56)    Exemption 7 of the FOIA protects from mandatory disclosure records or

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the harms enumerated in the subpart of the exemption.

See 5 U.S.C. § 552 (b)(7). In this case, the harm that could reasonably be expected to result from

disclosure concerns invasion of personal privacy, could reasonably be expected to interfere with

enforcement proceedings, revealing the identity of confidential sources, revealing sensitive law

enforcement techniques, and endangering the life or physical safety of any individual.

(57)    Before an agency can invoke any of the harms enumerated in Exemption 7, it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the

records at issue are related to the enforcement of federal laws and that the enforcement activity is

within the law enforcement duty of that agency. In the records responsive to plaintiff's request,

documents relate to a criminal investigation of plaintiff's involvement in illegal trafficking of

methamphetamine and other illegal narcotics in Southeastern Kentucky and plaintiff's escape

from a Federal Prison Camp at Maxwell Air Force Base, Alabama and from the Terre Haute,

Indiana, Farm Camp. The FBI has jurisdiction over these types of law enforcement

investigations pursuant to 21 U.S.C.§ 841(a)(1) and 18 U.S.C.§ 751, respectively. Thus, there is

no doubt that these investigations fall within the law enforcement duties of the FBI.

Accordingly, the information readily meets the threshold requirement of Exemption 7.

(58)    Because the records clearly meet the Exemption 7 threshold, the remaining

inquiry is whether its disclosure "could reasonably be expected to interfere with enforcement

proceedings, constitute an unwarranted invasion of personal privacy," "disclose the identity of

23

confidential sources," "reveal law enforcement techniques," or "endanger life or physical safety of any individual."

## EXEMPTION (b)(7)(A)
## PENDING PROSECUTION/LAW ENFORCEMENT PROCEEDINGS

(59)   5 U.S.C. § 552 (b)(7)(A) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings.

(60)   Application of this exemption requires: the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a determination that release of the information could reasonably be expected to interfere with the enforcement proceeding. Furthermore, in applying the exemption to the documents in question, Bevis v.U.S. Department of State, 801 F. 2d 1386, 1389 (D.C. Cir. 1986), imposes a three-part procedure. The government is required to review each document withheld on a document-by-document basis; to group the documents into functional categories and to describe the categories; and to explain why release of each category would interfere with law enforcement proceedings.

### Pending/Prosecutive Law Enforcement Proceedings

(61)   The Case Agent in the Louisville Field Office who has the responsibility for this investigation has advised that this FBI Narcotics criminal investigation is still being appealed by some of the subjects in this investigation. As long as the possibility one or more retrials exist, the investigation remains open. A review of this file has determined that it contains public source material that can be released to plaintiff, but until these pending appeal proceedings are concluded and resolved, there is no other information contained in this file which can be released

24

because it will likely interfere with enforcement proceedings. This investigative material is comprised of the following types of document:

### Law Enforcement Records

(62)    Certain of the responsive material has been withheld pursuant to Exemption (b)(7)(A). These law enforcement records are from the pending law enforcement files of the criminal investigation of Johnny Lee Bullock. This investigative material is comprised of the following types of documents:

(a)    **Electronic Communication (EC):** The EC is a Word Perfect macro, which has replaced the traditional FBI correspondence (i.e., Memoranda and Letters) as the primary vehicle of correspondence within the FBI. The purpose of this document is to communicate within the FBI in a consistent format which can be uploaded onto the computer network. There are nine electronic communications in the documents at issue.

(b)    **Miscellaneous Administrative Documents:** Various Types of forms are used throughout this investigation, which include advice of rights forms, bulky exhibit cover sheets, photos, warrant applications, inventory of seized item forms and fingerprint cards. There are 64 various types of miscellaneous administrative documents at issue.

(c)    **FD 302 (Interview Forms):** These are forms on which information is recorded that may later become testimony. These forms are usually incorporated into investigative reports. The contents of these forms may also be incorporated into teletypes, memoranda and/or letters for investigative lead purposes. There

25

are 10 FD-302's in the documents at issue.

(d)      **Local Law Enforcement Material:** This is a document which was produced by a local law enforcement agency with information on plaintiff's criminal background information.  There are 7 documents from local law enforcement agencies at issue.

(e)      **Audio Tape:** This tape has information on a drug transaction that was recorded by a source of information.

## EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

(63)      5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.

(64)      In withholding information from disclosure pursuant to this exemption, the FBI is required to balance the privacy interests of the individual mentioned in the documents against any public interest in disclosure.  In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of each individual's privacy interest.  The FBI identified the public interest in disclosure of the information to be whether the information in question would inform Johnny Lee Bullock or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes and/or how the FBI actually conducts its statutory duties, names, its internal operations and investigations.  Every effort has been made to release all segregable information contained in these pages without infringing upon the privacy rights of the individuals mentioned in these documents.

26

### (b)(7)(C)-1    Names and Identifying Information for FBI SAs and Support Personnel

(65)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemption (b)(6)-1 to protect the names and identifying information of FBI SAs who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the files responsive to plaintiff's request. Identifying information includes social security numbers, telephone numbers, and telephone extensions of FBI SAs. Assignment of SAs to any particular investigation is not by choice. Publicity (adverse or otherwise) regarding any particular investigation they have been assigned to may seriously prejudice their effectiveness in conducting other investigations. The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning regarding this and/or other investigations, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security cases. They come into contact with all strata of society. They conduct searches and make arrests, both of which constitute reasonable, but nonetheless serious intrusions into peoples' lives. Many of these people carry grudges which last for years and they may seek any excuse to harass the SA they deem responsible for these intrusions. The publicity associated with the release of an SA's identity in connection with a particular law enforcement investigation could rekindle animosity toward that SA. Accordingly, SAs maintain substantial privacy interests in not having their identities disclosed. The public would not be served by the disclosure of the SAs' identities. Thus, any such disclosure could constitute an unwarranted invasion of their personal privacy.

27

(66)    The names of FBI support employees are also withheld pursuant to FOIA

Exemption (b)(7)(C)-1. These employees were assigned to handle tasks relating to the official

investigation into the activities of plaintiff and others in the files responsive to plaintiff's request.

They were, and possibly are, in positions of access to information regarding official law

enforcement investigations, and therefore could become targets of harassing inquiries for

unauthorized access to investigations if their identities were released. These individuals maintain

substantial privacy interests in not having their identities disclosed. Because there is no public

interest to be served by releasing the identities of these individuals, any such disclosure could

constitute an unwarranted invasion of their personal privacy. Thus, the FBI has properly

withheld this information pursuant to FOIA Exemption (b)(7)(C)-1. Exemption (b)(7)(C)-1 is

cited on the following pages: Bullock 1-5, 7, 10-12, 16, 19, 20, 22-25, 27, 29, 31, 34, 36, 38-45,

48, 52, 53, 55, 73, 75-77, 80, 82, 83, 87, 90, 91, 96-103, 106, 107, 111, 112, 114, 131, 132, 135,

140, 144, 146-148, 150, 151, 153-156, 164, 167, 170, 181- 183, 185-187, 197-203, 205, 206,

223, 224, 240-242, 259, 260, 276, 277, 279-281, 286, 291, 292 and 296.

### (b)(7)(C)-2    Names and Identifying Information Concerning Third Parties of Investigative Interest

(67)    Exemption (b)(7)(C)-2 has been asserted in conjunction with Exemption (b)(6)-2

to protect the names and identifying information concerning third parties of investigative interest

to the FBI or other law enforcement agencies in the records responsive to plaintiff's request.

Identifying information withheld concerning these third parties includes addresses, dates of birth,

social security numbers, aliases, telephone numbers, FBI arrest numbers, license plate numbers,

police department numbers, fingerprint classifications, and personal characteristics. Numerous

individuals were mentioned as individuals who were of investigative interest to the FBI or other

law enforcement agencies due to their association with the subjects of this investigation.

Therefore, to release the identities of these third parties as subjects of FBI interest resulting from

its investigation of illegal narcotics trafficking could subject these individuals to harassment and

embarrassment and could further result in undue public attention. Disclosure of such information

could be an unwarranted invasion of their personal privacy. Furthermore, plaintiff has not

provided the FBI with any written notarized authorizations from these third parties waiving their

rights to personal privacy. Therefore, continued protection of their identities is warranted.

(68)    After identifying the substantial privacy interests of these third parties, the FBI

balanced their privacy interests against the public interest in disclosure. The FBI determined that

the disclosure of the names of these third parties would shed no light on the FBI's performance of

its FBI's statutory duties. Accordingly, the FBI could not identify any discernible public interest

in disclosure. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption

(b)(7)(C)-2. Exemption (b)(7)(C)-2 is cited on the following pages: Bullock 9, 37, 40, 41, 43-

56, 77, 78, 83-85, 97-99, 101-103, 105, 107, 112, 113, 147, 162-164, 179, 204-206, 224, 242,

259, 260, 276-282, 291, 296 and 297.

### (b)(7)(C)-3    Names and/or Identifying Information for Third Parties Merely Mentioned

(69)    Exemption (b)(7)(C)-3 has been asserted in conjunction with Exemption (b)(6)-3

to withhold the names and identifying information of third parties merely mentioned in the law

enforcement investigatory records responsive to plaintiff's request. Identifying information

concerning these individuals includes addresses, license plate numbers and registration

information, dates of birth, aliases, as well as career and job titles. During the course of the FBI's law enforcement investigation, the FBI obtained information pertaining to individuals who interacted with plaintiff or other individuals mentioned in these files. These individuals were not of investigative interest to the FBI. To release this type of information about private citizens without notarized authorizations permitting such release violates the individual legitimate privacy interests. If the FBI disclosed their names and other personal information, the disclosure would reveal these third parties were connected with the FBI's investigation of plaintiff and others. Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. Accordingly, the FBI determined that these third parties maintained a substantial privacy interest in not having information about them disclosed. After identifying the substantial privacy interests of these third party individuals, the FBI balanced their right to privacy against the public interest in the disclosure. The FBI determined that there is no such public interest. Thus, disclosure of this information could constitute an unwarranted invasion of their personal privacy. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(C)-3. Exemption (b)(7)(C)-3 is cited on the following pages: Bullock 5, 10, 14-17, 29, 40, 41, 45-51, 53, 56, 107, 112, 113, 151-153, 162, 163, 179, 180, 280 and 294-296.

### (b)(7)(C)-4    Names/and Identifying Information Pertaining to Non-FBI Federal Law Enforcement Employees

(70)    Exemption (b)(7)(C)-4 has been asserted in conjunction with Exemption (b)(6)-4 to protect the names of DEA, ATF and United States Marshal Service law enforcement employees. The rationale for protecting FBI SAs and support personnel identities found at ¶¶ 51

and 52, supra, also pertains to withholding the names of these federal non-FBI law enforcement individuals. There is little public interest in the names of these employees; therefore, the privacy interests of these employees outweigh any public interest in disclosure. To release the identities of these federal non-FBI law enforcement employees could subject them as individuals to unnecessary, unwarranted harassment which could constitute an unwarranted invasion of privacy. Furthermore, they could become prime targets for compromise, if their identities were known. There is no public interest to be served in releasing the identities of these individuals. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(C)-4. Exemption (b)(7)(C)-4 is cited on the following pages: Bullock 18, 23, 24, 27, 31, 40, 43, 48, 107, 131, 132, 140, 144, 276, 291, 294 and 295.

### (b)(7)(C)-5    Names and/or Identifying Information of Confidential Sources

(71)    The preservation of confidentiality surrounding Confidential Informants ("CI") and Confidential Sources ("CS") are essential to effective law enforcement and is reflected in official FBI policy. A CI is any individual who provides useful and credible information to the FBI regarding felonious criminal activities from whom the FBI expects or intends to obtain additional useful and credible information regarding such activities in the future and a CS is any individual who meets the definition of a Confidential Informant ("CI") but has not agreed to testify in a proceeding as a defendant or potential witness. As a result, it is FBI policy to protect a CS's true identity from unauthorized disclosure "to the same degree as the true identity of a Confidential Informant." Because a CS will face "the same, or even greater risks from exposure as a CI," it is FBI policy that CSs be provided the "same degree of protection." Any information that could possibly identify a confidential source, including dates and places where they have

31

been are protected from disclosure. Exemption (b)(7)(C)-5 has been asserted in conjunction with Exemption (b)(6)-5 and (b)(7)(D)-1 to protect the identity of a CS who provided information to the FBI. Exemption (b)(7)(C)-5 is cited on the following pages: Bullock 46, 52, and 279.

### (b)(7)(C)-6    Names and/or Identifying Information for State and Local Law Enforcement Personnel

(72)    Exemption (b)(7)(C)-6 has been asserted in conjunction with (b)(6)-6 to withhold the names and titles of Kentucky State Police, Mount Vernon Police Department, Laurel County Sheriff Office and the Rockcastle County Sheriff's Office law enforcement employees. These employees were acting in their official capacities and aided the FBI in the law enforcement investigations of plaintiff. The rationale for protecting the identities of FBI SAs and support personnel found at paragraphs 43 and 44 supra, also pertains to withholding the names and identifying information of these local law enforcement employees. There is little public interest in the names of these employees; therefore, the privacy interests of these employees outweighs any public interest in disclosure. To release the identities of these law enforcement employees could subject them as individuals to unnecessary, unwarranted harassment which could constitute an unwarranted invasion of privacy. Furthermore, these individuals could become a prime target for compromise if their identities were known. There is no public interest to be served in releasing the identities of these individuals. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(C)-6. Exemption (b)(7)(C)-6 is cited on the following pages: Bullock 29, 40, 43-45, 48, 52, 107, 112, 132, 140, 143, 144, 151, 180, 198, 279, 281 and 296.

### EXEMPTION (b)(7)(D)
### CONFIDENTIAL SOURCE MATERIAL

32

(73)    5 U.S.C. § 552 (b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

(74)    Numerous informants report to the FBI on a regular basis and are informants in the common meaning of the term. Some of the sources provide information under an express assurance of confidentiality. Further, during the course of an investigation, other individuals are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred. These individuals are considered to be confidential informants or sources since they furnish information only with the understanding that their identities and the information provided will not be divulged outside the FBI. Information provided by these individuals is singular in nature, and if released, could reveal their identity.

(75)    During the course of the FBI's investigation, FBI SAs sought the assistance of numerous individuals in obtaining information to aid its investigation. Information was provided by certain third parties under an implied grant of confidentiality and by other third parties who provided information under an expressed assurance of confidentiality.

(76)    These individuals were placed directly in positions that could subject them to acts of reprisal, harassment, or an unnecessary amount of public attention if the FBI disclosed their cooperation. The FBI has learned through experience that individuals who provide information about subjects under investigation must be free to do so without fear of reprisal should their

33

identities or information they provided be disclosed outside their confidential relationship with the FBI. Individuals who provide investigative information must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information out of fear that their names or their cooperation with the FBI will later be made public. Those who provide information in these investigations must be secure in the knowledge that their assistance and their identities will be held in confidence.

### **(b)(7)(D)-1    Names and Information Provided by Third Parties to the FBI (Implied Confidentiality)**

(77)    Exemption (b)(7)(D)-1 has been asserted to protect the names, identifying information for, and information provided by, third parties to the FBI or other law enforcement agencies in the investigative files under an implied grant of confidentiality. These third parties provided information concerning the criminal activities of plaintiff or other subjects who were of interest to the FBI or other law enforcement agencies. These third party sources provided specific detailed information that is singular in nature concerning the criminal activities involving plaintiff, his associates, and/or other subjects of this investigation. Plaintiff and other subjects were arrested and convicted on information provided by these individuals. The disclosure of the identities of these individuals could have disastrous consequences. Given the violent nature inherent in the distribution and manufacturing of illegal narcotics in general, disclosure of the identities of these cooperating witnesses could subject them to violent reprisals. These third parties provided information of value to the FBI concerning this investigation, and in doing so, have placed themselves in harm's way should plaintiff or his associates become aware of their cooperation with the FBI.

34

(78)    The information the third parties provided under an assurance of confidentiality warrants the protection of the third party names as well as the singular information they provided. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(D). Exemption (b)(7)(D)-1 is cited on the following pages: Bullock 40, 41, 45-51, 55, 56, 105, 112, 113, 133, 198, 204, 280-282, 296 and 297.

### (b)(7)(D)-2    Information Provided by Third Party to the FBI (Express Confidentiality).

(79)    Exemption (b)(7)(D)-2 has been asserted to protect the name, identifying information for and information provided by a third party to the FBI during the course of the FBI's investigation under an express grant of confidentiality. In this case, one third party individual specifically requested his/her identity not be disclosed because he/she feared reprisal. Prior to conducting the interview, the FBI expressly promised the third party interviewee that his/her identities and the information he/she provided would not be disclosed. This is evidenced by the word "protect" when this individual's name is referenced in the file. The words are a positive indication of an express assurance of confidentiality.

(80)    The FBI protected the contents of the interview conducted with this third party because individuals who have knowledge of the activities that gave rise to the FBI's investigation could clearly determine his/her identity. This source provided valuable information that is detailed and singular in nature. The disclosure of the identity of this individual could have disastrous consequences. Given the violent nature inherent in the distribution and manufacturing of illegal narcotics in general, disclosure of the identity of this person could subject him/her to violent reprisals. In addition, disclosure of the identity of a confidential source who was

35

expressly promised confidentiality has wider implications. If the FBI disclosed the identities of

confidential sources that entered into express agreements, that revelation would have a chilling

effect on the activities and cooperation of other FBI confidential sources. The FBI has found that

it is only with the understanding of complete confidentiality that the aid of such sources can be

enlisted, and only through this confidence that these sources can be persuaded to continue

providing valuable assistance in the future. Thus, the identity of, and the information provided

by source who was expressly promised confidentiality were properly withheld pursuant to FOIA

Exemption (b)(7)(D)-2. Exemption (b)(7)(D)-2 is cited on the following pages: Bullock 52-54.

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(81)    5 U.S.C. § 552(b)(7)(E) provides for the withholding of:

> law enforcement records which would disclose techniques and
> procedures for law enforcement investigations or prosecutions,
> or would disclose guidelines for law enforcement investigations
> or prosecutions if such disclosure could reasonably be expected
> to risk circumvention of the law.

### (b)(7)(E)    Effectiveness Rating-FD 515

(82)    Form FD-515 is a form used by FBI SAs to report investigative accomplishments.

This form is submitted at various stages of an investigation to report statistical results such as an

arrest, the recovery of stolen property, and so forth. At the upper right hand side of this form is a

block captioned "Investigative Assistance and Techniques Used." This block lists 27 publicly

known investigative techniques and/or assistance of which some were used by the investigative

personnel during the investigation. Opposite each investigative technique and assistance is a

rating column which records a numerical rating from 1 to 4 to rate each technique/assistance used

by investigative personnel during the course of the investigation. The numerical rating evaluates

the effectiveness of each technique/assistance used in bringing the investigation to a successful

conclusion. The entire rating column has been deleted to protect from release the various

techniques and assistance used in the investigation of plaintiff and others in records responsive to

plaintiff's request. If the rating columns were released along with the ratings of each technique

and assistance used, plaintiff and others involved in criminal violations such as this investigation

could change their activities and modus operandi in order to avoid detection and/or surveillance

in the future. Therefore, protection of these rating columns is essential to prevent future

circumvention of the law by criminals. The FBI will use the same or similar techniques and/or

assistance to bring similar future investigations to successful conclusions. Thus, the FBI has

properly withheld this information pursuant to FOIA Exemption (b)(7)(E). Exemption (b)(7)(E)

is cited in conjunction with (b)(2)-1 on the following pages: Bullock 73, 75, 80 and 82.

## EXEMPTION (b)(7)(F)
### ENDANGER PHYSICAL SAFETY

(83)     5 U.S.C. § 552 (b)(7)(F) provides for the withholding of:

> Records or information compiled for law enforcement purposes,
> but only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to
> endanger the life or physical safety of any individual.

(84)     Exemption (b)(7)(F) is cited in conjunction with (b)(2), (b)(6), (b)(7)(C) and

(b)(7)(D) to protect sources, who provided information to the FBI concerning the criminal

activities of plaintiff and/or other individuals of investigative interest in the records responsive to

plaintiff's request. These individuals are close contacts of plaintiff, his associates, and/or other

subjects of the investigation. Each had valid reason to fear assisting the FBI in its investigation

37

of plaintiff and others in this investigation.   Plaintiff and other subjects were arrested and

convicted largely on information provided by these individuals.  In this case, because the third

parties provided information about criminal activities of illegal drug dealers, the third parties'

risk for violent reprisals is significantly heightened.  The danger posed to individuals who

provide information to law enforcement officials is highly significant and cannot be

overemphasized especially in a case involving a complex drug conspiracy such as this. Physical

harm is a potent tool to warn away those who would cooperate in bringing about the end of a

criminal enterprise. Protection of the identity of a person who is a source of information  extends

even after death in order to keep their family out of harm's way. The source must be secure in

knowing that the authorities will do everything to protect them and their loved ones; without that

trust there would be no sources providing information. Therefore, protection of the identity of

sources of information is essential to the law enforcement function and falls within the very

meaning of Exemption (b)(7)(F) is cited on the following pages: Bullock 40, 41, 45-56, 105,

279-282, 296 and 297.

## CONCLUSION

(85)    FBIHQ has processed and released all segregable information from the responsive

documents pursuant to FOIA Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E) and 7(F); 5 U.S.C. § 552

(b)(2), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E), (b)(7)(F), and Privacy Act Exemption

(j)(2). Further, the FBI carefully examined the designated 289 pages and determined that the

information withheld from plaintiff, if disclosed, could reasonably be expected to reveal internal

administrative information, cause clearly unwarranted invasion of the personal privacy interests

of third parties, interfere with law enforcement proceedings, disclose the identities of confidential

38

sources, impede the effectiveness of the FBI's internal law enforcement procedures, and/or

endanger the physical safety of sources.  Accordingly, the FBI has released all reasonably

segregable, nonexempt information to plaintiff in response to his FOIA request to the FBI.

(86)    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct, and Exhibits A through Q attached hereto are true and correct copies.

Executed this ___17th___ day of March, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

39

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK, )
)
)
Plaintiff, )
) Civil Action No. 07-CV-1013(ESH)
v. )
)
UNITED STATES DEPARTMENT OF )
JUSTICE (FBI), et al., )
)
)
Defendants. )
)

# EXHIBIT A

GENCIES:
) UNITED STATES PAROLE COMMISSION
() FEDERAL BUREAU OF INVESTIGATION
) BUREAU OF INDIAN AFFAIRS
) OFFICE OF PROFESSIONAL RESPONSIBILITY
) DRUG ENFORCEMENT ADMINISTRATION
) TREASURY DEPARTMENT
) FEDERAL BUREAU OF PRISONS
) STATE AGENCY
) OTHER_____

DIRECT RESPONSE TO:

Johnny Lee Bullock
Reg. No.:
Terre Haute Penitentiary
P.O.Box 12015
Terre Haute, IN 47801

IDENTIFICATION OF REQUESTOR

NAME. Johnny Lee Bullock
D.O.B.5/23/47
PLACE OF BIRTH. Mt. Vernon, Ky
SOCIAL SECURITY NO.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

REEDOM OF INFORMATION
U.S.C. 552) PRIVACY ACT
5 U.S.C. 552a(d)(1)
EQUEST: EXEMPTIONS
5 U.S.C. 552(6)(c)(b)(7),
ENERAL (U.S.C. 552a(j)(2),
R SPECIFIC (U.S.C. 552a(k)
2) NOT APPLICABLE TO THIS
EQUEST,



[          !          ]
[          !          ]
[          !          ]
[          !          ]
[          !          ]
[          !          ]
[          !          ]
[___RT._____!____RI.____]

ear Sir/Ms:
his letter will serve as my request pursuant to the provisions of the
reedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C.
52a (d)(1), and the applicable State Statutes governing freedom of
nformation request If State Agency request,for full disclosure and
elease of all records and/or an identifier assigned to my name. This
equest is sought specifically for amendment,deletion and/or expungment
5 U.S.C. 552a (d)(2)(a) of records maintained by your agency. The
ecords sought, but not limited to, is the completed file containing (1)
rrest records, (2) Investigation and/or investigatory reports, (3)
eports or evidentiary and/or scientific information findings, (4) wants,
arrants and/or detainers, (5) final and closing Investigation reports;
nd (6) any and/or all Information, data or reports not otherwise exempt
y statute (5 U.S.C. (66)(c)(b)(7), (5 U.S.C. 552a (j)(2), (k)(2), or
law Tarlton v. Saxbe, 507 F. 2d 1116, U.S. App. D.C. 293 (1974), Sullivan
. Murphy, 478 F. 2d 938, 156 U.S. App. D.C. 28 (1973). Your agency is
advised that the investigation reports in toto are no longer accorded
exempt status unless specific exemption noted, and only with reference
to specific citation of authority, Paton v. La Prade, 524 F. 2d 862, 868–
69 (CA. 3 1973).

1.

Examples of specific requests:

1. _____ The information that is under request is the documentation of any and all money transactions for drug buys in the case of Johnny Lee Bullock.

2. _____ The information that has been listed in (1) also refer to any and all audio recording's, statement's, and reports of any kind when it comes to Johnny Lee Bullock.

3. _____

4. _____

5. _____

6. _____

7. _____

2

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and/or any material therein contained has been released to any identifiable
individual or agency, there name, titled, purpose and need for such information, the date of such release, the specific material that was released, the person within you Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d)(1), Paton v. LaParde, 524 F.2d 862 (CA3 1975) Tarlton v. Saxbe, 507 F.2d 1116, 165 U.S. App. D.C. 293 (1974), of Linda R.S. v. Richard D. 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d 536 (1973)

It is further requested that your Agency provide me with a copy of specific regulations or your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a)(together with the alternate means of access), to permit access to records on file with your Agency. If for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. (6)(c)(b)(7), 552a (j)(2), (k)(2), or by regulation Menard v. Mitchell, 430 F.2d 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 466 F. Supp. 102) I request specific citations to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from material for release. Paton v. LaParde, 524 F.2d 862 (CA3 1975). Chastain v. Kelly 510 F. 2d 1232. I further agree to pay any reasonable cost, or file in FORMA PAUPERIS if I am indigent. Provided by statute or regulation of your Agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. (6)(1)(1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulation and the date as to when your Agency will be able to act upon request.

Yours truly,

*Johnny Lee Bullock*

Dated: 7-8-05

3.

[CERTIFICATION OF IDENTITY]

**privacy act statement;** In accordance with 28 CFR 16.41, personal data sufficient to identify the individual submitting a request by mail under the **PRIVACY ACT** of 1974, **5 U.S.C. 552a**, is required. The purpose of this solicitation is to ensure that the records of the individuals who are subject of U.S. Department of Justice systems of records are not wrongfully disseminated by the Department. Failure to furnish the information will result in no action being taken on the request by the systems manager. False information on this form may subject the requester to criminal penalties under 18 U.S.C. section 1001 and/or 5 U.S.C. 552a(I)(3)by a fine of no more than $5,000.

FULL NAME OF REQUESTER___JOHNNY LEE BULLOCK_____

CURRENT ADDRESS__P.O.Box 12015 Terre Haute, IN 47801_____

DATE OF BIRTH___ ·5/23/47                  _____

PLACE OF BIRTH__Mt. Vernon, KY 40456_____

I certify that I am the person above and I understand that any falsification of this statement is punishable under the provision of 18 U.S.C. 1001 by a fine of not more than $10.000 or by imprisonment of not more than five years or both, and that requesting or obtaining any records under false pretense is punishable under provisions of 5 U.S.C. 552a(I)(3) by a fine of no more than $5.000.

SIGNATURE: *Johnny Lee Bullock*

[AFFIDAVIT OF INDIGENCE]

In as much as the requested information is in the **"PUBLIC INTEREST"** and I have declared myself to be indigent, I ask that you **"WAVE ALL FEES, COST, AND/OR CHARGES"** in pursuant to 5 U.S.C. 552a (I)(3) et. Seq.

I__JOHNNY LEE BULLOCK_____, swear that the afore going FOIA/PA request is true and correct to the best of my knowledge and belief.

*Johnny Lee Bullock*

REG.#*07890-032*_____

P.O. BOX*12015*____,UNIT *F-2*

STATE *Indiana*_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-1013(ESH) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE (FBI), et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

# EXHIBIT B



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

July 22, 2005

MR JOHNNY LEE BULLOCK
**07890-032
UNIT F-2
POST OFFICE BOX 12015
TERRE HAUTE, IN 47801

Request No.: 1025288- 000
Subject: BULLOCK, JOHNNY LEE

Dear Mr. Bullock:

☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐    For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☐    We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-1013(ESH) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE (FBI), et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT C



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

November 3, 2005

MR JOHNNY LEE BULLOCK
**07890-032
UNIT F-2
POST OFFICE BOX 12015
TERRE HAUTE, IN 47801

Subject: BULLOCK, JOHNNY LEE

FOIPA No. 1025288-000

Dear Mr. Bullock:

      The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

### Section 552

| | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☒(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

37 **page(s)** were reviewed and 34 **page(s)** are being released.

☐  Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☐  referred to the OGA for review and direct response to you.

    ☐  referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

◻ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

◻ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s) 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE (FBI), <u>et al</u>.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 07-CV-1013(ESH)<br>)<br>)<br>)<br>)<br>)<br>) |

# EXHIBIT D

November 8, 2005

Co-Director - Office of Information & Privacy
U.S. Dept. of Justice
Flag Bldg.   Suite 570
Washington, D.C.  20530-0001

                              RE: Johnny Lee Bullock
                                  FOIPA No. 1025288-000

Dear Sir:

        Please be advised that the undersigned hereby registers
an appeal, to your office, from the decision of the Federal
Bureau of Investigation, denying access to records maintained
by that agency on the undersigned. The records provided by
correspondence dated November 3, 2005 were limited to to a
period covered by the 1970's, whereas a request was made for
records and information obtained and collected, against the
undersigned, during calendar years 2000 and 2001. I hereby
appeal the denial of providing me with those 302s', maintained
by said agency.

        Kindly advise of your decision.

                              Sincerely,

                              *Johnny Lee Bullock*

                              JOHNNY LEE BULLOCK
                              #07890-032
                              U.S. Penitentiary
                              P.O. Box 12015
                              Terre Haute, IND.   47801


OFFICE OF INFORMATION
    AND PRIVACY

NOV 2 1 2005

RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-1013(ESH) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE (FBI), et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

# EXHIBIT E



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**NOV 2 8 2005**


Mr. Johnny L. Bullock
Register No. 07890-032
United States Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

      Re:  Request No. 1025288

Dear Mr. Bullock:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation on your request for information from the files of the Department of Justice was received by this Office on November 21, 2005.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **06-0529**. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

                       Sincerely,

                       Priscilla Jones
                       Chief, Administrative Staff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-1013(ESH) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE (FBI), et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT F



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**JUL 1 7 2006**

Mr. Johnny Lee Bullock
Register No. 07890-032
United States Penitentiary          Re:    Appeal No. 06-0529
Post Office Box 12015                       Request No. 1025288
Terre Haute, IN 47801                       BVE:ADW:JTR

Dear Mr. Bullock:

You appealed from the action of the Headquarters Office of the Federal Bureau of
Investigation on your request for access to records pertaining to yourself, including records
related to "money transactions for drug buys" in your case.

After carefully considering your appeal, I am affirming, on partly modified grounds, the
FBI's action on your request. The records responsive to your request are exempt from the access
provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R. § 16.96
(2005). Because these records are not available to you under the Privacy Act, your request has
been reviewed under the Freedom of Information Act in order to afford you the greatest possible
access to them.

In its response of November 3, 2005, the FBI informed you that it found thirty-seven
pages of records responsive to your request. On appeal you seemingly raise a concern about the
limited number of pages located. A member of my staff has looked into this matter and
confirmed that the FBI could locate no additional records responsive to your request at the FBI's
Headquarters Office. Although the FBI identified an additional file that may have been
responsive to your request -- File No. 26-436858, related to the interstate transportation of a
stolen motor vehicle -- that file was destroyed on August 20, 1996 in accordance with routine
records destruction schedules. See 44 U.S.C. § 3302 (2000) and 36 C.F.R. § 1228 (2005).

With regard to those records that the FBI did locate and process, it properly withheld
certain information that is protected from disclosure under the FOIA pursuant to 5 U.S.C.
§ 552(b)(7)(C). This provision concerns records or information compiled for law enforcement
purposes the release of which could reasonably be expected to constitute an unwarranted
invasion of the personal privacy of third parties. Two of the three pages withheld from you in
full are actually duplicate pages of other records provided to you.

Additionally, FBI personnel have advised a member of my staff that the Louisville Field
Office may have a file that includes a cross-reference to you that is responsive to your request. If
you have not done so already, I suggest that you submit a new request directly to the Louisville

- 2 -

Field Office. <u>See</u> 28 C.F.R. §§ 16.3(a) and 16.41(a) (2005) (requests for records held by FBI field offices must be submitted to the field offices directly). You may appeal any further adverse determination by the FBI. The address for the Louisville Field Office is:

> Federal Bureau of Investigation
> Louisville Field Office
> Room 500
> 600 Martin Luther King Jr. Place
> Louisville, KY 40202-2231

Because you also requested records that related to a drug investigation, it is also possible that records concerning you are maintained by the Drug Enforcement Administration (DEA). If you wish to obtain records maintained by DEA, and have not already done so, you may send a new request to the following address:

> Ms. Katherine L. Myrick
> Chief, Freedom of Information Operations Unit
> Drug Enforcement Administration
> Department of Justice
> 700 Army Navy Drive
> Arlington, VA 22202

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

> Sincerely,
>
> Daniel J. Metcalfe
> Director

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK, )
)
)
Plaintiff, )
) Civil Action No. 07-CV-1013(ESH)
v. )
)
UNITED STATES DEPARTMENT OF )
JUSTICE (FBI), et al., )
)
)
Defendants. )
)

# EXHIBIT G

Routing Slip
FD-4 (Rev. 8-27-02)

Date 8/7/06

To: ☐ Director

Attn.: __RMD, SRU, Room 6359__
☐ ADIC _____        File # _____
☐ SAC _____
☐ ASAC _____        Title _____
☐ Supv. _____
☐ Agents _____        _____
☐ AO/SAS _____
☐ File Assistant _____        _____
☐ Steno/AO _____
☐ Mr./Mrs./Ms. _____        _____
   Room _____        Re: _____
                                          _____

☐ Acknowledge        ☐ For Information        ☐ Return File   ☐ Serial
☐ Assign  ☐ Reassign  ☐ Handle                ☐ _____
☐ Bring File          ☐ Initial and Return    ☐ Return With Action Taken
☐ Call Me             ☐ Leads Need Attention   ☐ Return With Explanation
☐ Correct             ☐ Open Case             ☐ Search and Return
☐ Deadline            ☐ Mark For Indexing      ☐ See Me
☐ Delinquent          ☐ Recharge File ☐ Serial  ☐ Type
☐ Discontinue         ☐ _____  ☐ Upload
☐ Expedite            ☐ Send to _____
☐ File                _____

Please Handle.

Thank you,

SAC _Jesse Harkins_

_____ See reverse side        Office LOUISVILLE _____

AGENCIES:
( ) UNITED STATES PAROLE COMMISSION
(X) FEDERAL BUREAU OF INVESTIGATION
( ) BUREAU OF INDIAN AFFAIRS
( ) OFFICE OF PROFESSIONAL RESPONSIBILITY
( ) DRUG ENFORCEMENT ADMINISTRATION
( ) TREASURY DEPARTMENT
( ) FEDERAL BUREAU OF PRISONS
( ) STATE AGENCY
( ) OTHER_____

DIRECT RESPONSE TO:



Johnny Lee Bullock
Reg.No.: 07890-032
United States Penitentiary
P.O. Box 3000
Pine Knot, Ky. 42635

IDENTIFICATION OF REQUESTOR

NAME. Johnny Lee Bullock
D.O.B.5/23/47
PLACE OF BIRTH. Mt. Vernon, KY
SOCIAL SECURITY NO. 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

FREEDOM OF INFORMATION
(U.S.C. 552) PRIVACY ACT
(5 U.S.C. 552a(d)(1)
REQUEST: EXEMPTIONS
(5 U.S.C. 552(6)(c)(b)(7),
GENERAL (U.S.C. 552a(j)(2),
OR SPECIFIC (U.S.C. 552a(k)
(2) NOT APPLICABLE TO THIS
REQUEST,

```
-----------------------------
[                !              ]
[                !              ]
[                !              ]
[                !              ]
[                !              ]
[                !              ]
[                !              ]
[___RT._____!____RI._____]
```

De   Sir/Ms:
This letter will serve as my request pursuant to the provisions of the
Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C.
552a (d)(1), and the applicable State Statutes governing freedom of
Information request if State Agency request,for full disclosure and
release of all records and/or an identifier assigned to my name. This
request is sought specifically for amendment,deletion and/or expungment
(5 U.S.C. 552a (d)(2)(a) of records maintained by your agency. The
records sought, but not limited to, is the completed file containing (1)
arrest records, (2) Investigation and/or investigatory reports, (3)
reports or evidentiary and/or scientific information findings, (4) wants,
warrants and/or detainers, (5) final and closing investigation reports;
and (6) any and/or all information, data or reports not otherwise exempt
by statute (5 U.S.C. (66)(c)(b)(7), (5 U.S.C. 552a (j)(2), (k)(2), or
law Tarlton v. Saxbe, 507 F. 2d 1116, U.S. App. D.C. 293 (1974), Sullivan
v. Murphy, 478 F. 2d 938, 156 U.S. App. D.C. 28 (1973). Your agency is
advised that the investigation reports in toto are no longer accorded
exempt status unless specific exemption noted, and only with reference
to specific citation of authority, Paton v. La Prade, 524 F. 2d 862, 868-
69 (CA. 3 1973).

1.

Examples of specific requests:

1. _____ The information that is under request is the documentation of any and all money transactions for drug buys in the case of Johny Lee Bullock. _____

2. _____ The information that has been listed in (1) also refer to any and all audio recording's, statement's, and reports of any kind when it comes to Johnny Lee Bullock. _____

3. _____

4. _____

5. _____

6. _____

7. _____

2

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and/or any material therein contained has been released to any identifiable
individual or agency, there name, titled, purpose and need for such information, the date of such release, the specific material that was released, the person within you Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d)(1), Paton v. LaParde, 524 F.2d 862 (CA3 1975) Tarlton v. Saxbe, 507 F.2d 1116, 165 U.S. App. D.C. 293 (1974), of Linda R.S. v. Richard D. 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d 536 (1973)

It is further requested that your Agency provide me with a copy of specific regulations or your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a)(together with the alternate means of access), to permit access to records on file with your Agency. If for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. (6)(c)(b)(7), 552a (j)(2), (k)(2), or by regulation Menard v. Mitchell, 430 F.2d 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 466 F. Supp. 102) I request specific citations to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from material for release. Paton v. LaParde, 524 F.2d 862 (CA3 1975). Chastain v. Kelly 510 F. 2d 1232. I further agree to pay any reasonable cost, or file in FORMA PAUPERIS if I am indigent. Provided by statute or regulation of your Agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. (6)(1)(1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulation and the date as to when your Agency will be able to act upon request.

Yours truly,

Dated: 08-01-06

3.

[CERTIFICATION OF IDENTITY]

privacy act statement; In accordance with 28 CFR 16.41, personal data sufficient to identify the individual submitting a request by mail under the PRIVACY ACT of 1974, 5 U.S.C. 552a, is required. The purpose of this solicitation is to ensure that the records of the individuals who are subject of U.S. Department of Justice systems of records are not wrongfully disseminated by the Department. Failure to furnish the information will result in no action being taken on the request by the systems manager. False information on this form may subject the requester to criminal penalties under 18 U.S.C. section 1001 and/or 5 U.S.C. 552a(i)(3)by a fine of no more than $5,000.

FULL NAME OF REQUESTER **JOHNNY LEE BULLOCK**

CURRENT ADDRESS *P.o. Box 3000 Pine Knot, Ky. 42635*

DATE OF BIRTH **5/23/47**

PLACE OF BIRTH **Mt. Vernon, KY 40456**

I certify that I am the person above and I understand that any falsification of this statement is punishable under the provision of 18 U.S.C. 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any records under false pretense is punishable under provisions of 5 U.S.C. 552a(i)(3) by a fine of no more than $5,000.

SIGNATURE *Johnny Lee Bullock*

[AFFIDAVIT OF INDIGENCE]

In as much as the requested information is in the "PUBLIC INTEREST" and I have declared myself to be indigent, I ask that you "WAVE ALL FEES, COST, AND/OR CHARGES" in pursuant to 5 U.S.C. 552a (i)(3) et. Seq.

I **JOHNNY LEE BULLOCK**, swear that the afore going FOIA/PA request is true and correct to the best of my knowledge and belief.

*Rebecca Woods* 08-01-06        *Johnny Lee Bullock*

REG.# *07890-032*

P.O. BOX *3000*        UNIT *6-A*

STATE *Kentucky*

"Notary Public"
Rebecca Woods
State at Large, Kentucky
My Commission Expires on 12·22·0

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK,                    )
                                        )
        Plaintiff,                      )
                                        )
                                        )  Civil Action No. 07-CV-1013(ESH)
        v.                              )
                                        )
UNITED STATES DEPARTMENT OF             )
    JUSTICE (FBI), et al.,              )
                                        )
                                        )
        Defendants.                     )
                                        )

# EXHIBIT H



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

August 23, 2006

JOHNNY LEE BULLOCK
**07890-032
UNITED STATES PENITENTIARY MCCREARY
POST OFFICE BOX 3000
PINE KNOT, KY 42635

Request No.: 1056345- 000
Subject: BULLOCK, JOHNNY LEE

Dear Requester:

☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request
to the FBI's Louisville Field Office. The FOIPA number listed above has been assigned to
your request.

☐    For an accurate search of our records, please provide the complete name, alias, date and
place of birth for the subject of your request. Any other specific data you could provide
such as prior addresses, or employment information would also be helpful. If your
subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your
notarized signature or, in place of a notarized signature, a declaration pursuant to Title
28, United States Code 1746. For your convenience, the reverse side of this letter
contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for
your arrest record, please follow the enclosed instructions in Attorney General Order
556-73. You must submit fingerprint impressions so a comparison can be made with the
records kept by CJIS. This is to make sure your information is not released to an
unauthorized person.

☒    We are searching the indices to our central records system at FBI Headquarters for the
information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the
FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all
correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-1013(ESH) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE (FBI), et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT I



U.S. ⌣epartment of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

*November 22, 2006*

MR. JOHNNY LEE BULLOCK
**07890-032
UNITED STATES PENITENTIARY MCCREARY
POST OFFICE BOX 3000
PINE KNOT, KY 42635
UNITED STATES

Request No.: 1056345- 000
Subject: BULLOCK, JOHNNY LEE

Dear Requester:

This is in reference to your Freedom of Information-Privacy Acts (FOIPA) request which was forwarded to FBIHQ from our Louisville Field Office for information pertaining to the above subject.

The material you requested is located in an investigative file which is exempt from disclosure pursuant to Title 5, United States Code, Section 552, subsection (b)(7)(A). For an explanation of this exemption see enclosed Form OPCA-16a. Please note if this file is reviewed under FOIPA in the future, additional exemptions may be applied at that time.

You may appeal this denial by writing to the Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may easily be identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK,              )
                                 )
                                 )
         Plaintiff,              )
                                 )  Civil Action No. 07-CV-1013(ESH)
         v.                      )
                                 )
UNITED STATES DEPARTMENT OF      )
  JUSTICE (FBI), et al.,         )
                                 )
                                 )
         Defendants.             )
                                 )

# EXHIBIT J

United States Department of Justice
c/o Office of Information and Privacy
1425 New York Avenue, N.W., Suite 11050
Washington, D.C.
20530-0001

December 7 2006

RE: 1056345-000

## APPEAL FROM THE DENIAL OF FIOA/PA REQUEST

Dear Sir/Madam:

On or about November 22nd, 2006, I received the agencies
denial of my FIOA/PA Request pursuant to Title 5 USC §552(b)(7)(A),
which states, in relevant part:

"could be reasonably expected to interfere with enforcement
proceedings."

## ARGUMENT FOR APPEAL

The information/documentation being requested through my
FIOA/Pa Request is:

1) information/documentation relating to the fraudulent
submission of evidence in a criminal trial, for which, I
was never indicted;

   (a) said "fraudualent submission" was prepetuated upon
   me to validate the crime, for which, I was indicted
   therefore, due to the death of the individual (C.I.
   and/or C.W., etc.) who would have given testimony
   at my trial, but, due to the death, other means had
   to be contrived to justify the indicted crime;

   (b) said "fraudulent submission" was condoned by those
   governmental agents involved with my criminal case;

**RECEIVED**

**JAN 2 6 2007**

Office of Information and Privacy

      (c)    said "fraudulent submission" did validate the crime, for which, the evidence was unavailable and/or which could not be submitted in the criminal trial due to the death of the C.T. and/or C.W., etc.;

2)    the information/documentation being requested does specifically relate to:

      (a)    "money transactions for drug buys" which were and/or were not used in my criminal case;

      (b)    "audio recordings, statements, and, reports, of any kind" which were and/or were not used in my criminal case;

3)    the information/documentation being requested will prove that the governmental agents did use the evidence of an unindicted controlled buy to convict me on an indicted controlled buy wherein the necessary and/or key government witness had, prior to the trial, died;

4)    the requested information/documentation will, in fact, uncover a crime being perpetuated against me by various governmental agents;

5)    the requested information/documentation being denied to me does subject those justifying the denial, to being, potentially held guilty of conspiracy to defraud me of life and/or liberty, which, is, in an or itself, a criminal act;

6)    I do hereby charge this agency to investigate the criminal conduct, which, brought about a criminal conviction, by using the evidence of an unindicted controlled buy, to justify the conviction and sentence for an indicted controlled buy where the key government witness had died.

7)    since there are no further governmental investigations being held on the facts associated with the controlled buys in question, there would be no enforcement proceedings harmed through the disclosure of this infomation and/or documentation.

Page 3
12-4-06
1056345

## REMEDY

The only remedy available is the total release of the inform-
ation/documentation being requested, as there is no enforcement
proceeding in place due to my being convicted and/or sentenced on
the and/or by the information/documentation being requested.

Unless, of course, this agency is denying the requested
information/documentation for the continuation of a fraudulent
conviction?

### CERTIFICATE OF IDENTITY

I, Johnny Lee Bullock, do hereby attest and confirm, under
the penalties of perjury, that I am the individual making this
instant request for information and/or appeal from the denial of
said request. And, further, I do hereby state that the information
and/or documentation being requested is to prove my innocence
of the crime charged, and, will be used for that purpose and no
improper purpose.

Respectfully,

_Johnny Lee Bullock_
#07890-032
USP-McCreary
P.O. Box 3000
Pine Knot, Kentucky
42635-3000

NOTARY PUBLIC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK,                    )
                                       )
                                       )
        Plaintiff,                     )
                                       )  Civil Action No. 07-CV-1013(ESH)
        v.                             )
                                       )
UNITED STATES DEPARTMENT OF            )
 JUSTICE (FBI), et al.,                )
                                       )
                                       )
        Defendants.                    )
                                       )

# EXHIBIT K



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

FEB 0 6 2007

Mr. Johnny Lee Bullock
Register No. 07890-032
United States Penitentiary
P.O. Box 3000
Pine Knot, KY 42635-3000

      Re: Request No. 1056345

Dear Mr. Bullock:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation was received by this Office on January 26, 2007.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number 07-0551. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

                      Sincerely,

                      Priscilla Jones
                      Supervisory Administrative Specialist

FBI

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK,

       Plaintiff,

       v.

UNITED STATES DEPARTMENT OF
JUSTICE (FBI), et al.,

       Defendants.

Civil Action No. 07-CV-1013(ESH)

# EXHIBIT L



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

**APR 3 0 2007**

Mr. Johnny Lee Bullock
Register No. 07890-032
United States Penitentiary            Re:    Appeal No. 07-0551
Post Office Box 3000                          Request No. 1056345
Pine Knot, KY 42635-3000                      ADW:TEH

Dear Mr. Bullock:

    You appealed from the action of the Louisville Field Office of the Federal Bureau of Investigation on your request for access to records pertaining to yourself.

    After carefully considering your appeal, I am affirming the FBI's action on your request. The FBI properly withheld this information because it is protected from disclosure under the Freedom of Information Act pursuant to 5 U.S.C. § 552(b)(7)(A). This provision concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings.

    If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                    Sincerely,

                    Janice Galli McLeod
                    Associate Director

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-1013(ESH) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE (FBI), et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT M



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

SEPTEMBER 26, 2007

MR. JOHNNY LEE BULLOCK
**07890-032
UNITED STATES PENITENTIARY MCCREARY
POST OFFICE BOX 3000
PINE KNOT, KY 42635
UNITED STATES

Request No.:   1056345- 002
Subject:   BULLOCK, JOHNNY LEE

Dear Requester:

This is in reference to your Freedom of Information/Privacy Acts (FOIPA) request for information from our Louisville Field Office pertaining to yourself.

As stated in our November 22, 2006 letter, material located in the file remains exempt from disclosure pursuant to Title 5, United States Code , Section 552, subsection (b)(7)(a). However, upon closer review of this file, 31 pages of public source material was located and is being released to you with material deleted pursuant to subsections (b)(6) and (b)(7)(c). For an explanation of these exemptions see enclosed Form OPCA-16a.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
 Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK,  )
 )
 )
Plaintiff,  )
 ) Civil Action No. 07-CV-1013(ESH)
v.  )
 )
UNITED STATES DEPARTMENT OF  )
JUSTICE (FBI), et al.,  )
 )
 )
Defendants.  )
 )

# EXHIBIT N



**U.S. Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

MR. JOHNNY LEE BULLOCK
**07890-032                                            OCTOBER 16, 2007
FCI-MANCHESTER
POST OFFICE BOX 4000
MANCHESTER, KY 40962

Request No.:   1056345- 002
Subject:   BULLOCK, JOHNNY LEE

Dear Requester:

     This is in reference to your Freedom of Information/Privacy Acts (FOIPA) request for information from our Louisville Field Office pertaining to yourself.

     As stated in our November 22, 2006 letter, material located in the file remains exempt from disclosure pursuant to Title 5, United States Code , Section 552, subsection (b)(7)(a).  However, upon closer review of this file, 31 pages of public source material was located and is being released to you with material deleted pursuant to subsections (b)(6) and (b)(7)(c). For an explanation of these exemptions see enclosed Form OPCA-16a.  For your information, this material was originally mailed to you on September 26, 2007, and was recently returned to this office because of no forwarding address.

     Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK,          )
                                   )
          Plaintiff,         )
                                   )  Civil Action No. 07-CV-1013(ESH)
          v.               )
                                   )
UNITED STATES DEPARTMENT OF    )
  JUSTICE (FBI), et al.,        )
                                   )
                                   )
          Defendants.      )
                                   )

# EXHIBIT O



**U. S. Department of Justice**

Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

_www.dea.gov_

NOV  1 2007

Mr. David Hardy
Chief, FOI/PA Section
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W.
Room 6941
Washington, D.C. 20535

    Re: _Johnny L. Bullock v. Department of Justice, et al.,_ C.A. 07-1013 ESH
       DEA FOIA Request No. 05-1301-F

Dear Mr. Hardy:

    Enclosed please find portions of five (5) pages and 13 pages in their entirety, numbered 99 through 116 and, for reference, a copy of the associated Freedom of Information Act (FOIA), 5 U.S.C. § 552, request submitted to the Drug Enforcement Administration (DEA) by Johnny L. Bullock. Please acknowledge receipt by contacting me at (202) 353-9680 or by e-mail at william.c.little@usdoj.gov, or Ms. Leila Wassom at (202) 307-7605 or leila.i.wassom@usdoj.gov.

    The 18 pages, consisting of one (1) Federal Bureau of Investigation (FBI) Form FD-249, two (2) FBI Forms FD-302, one (1) Application and Affidavit for Search Warrant, and one (1) FBI Facsimile Coversheet with accompanying page from an FBI OPS plan, were located during a search of a DEA investigative file. On five (5) of the pages, numbered 100, 103, 104, 111 and 115, DEA has withheld the names of DEA Special Agents, pursuant to FOIA Exemptions (b)(7)(C) and (b)(7)(F). Since the pages appear to have originated with the FBI, they are referred for processing and a direct response to the requester.

    Since this matter is the subject of litigation, please process the document as soon as possible and provide this office a copy of your response to the requester. Also, a declaration that attests to the actions taken by your agency that provides the justification for any FOIA and PA exemptions asserted may be necessary for submission to the United States District Court for the District of Columbia, in the near future. The request may come from my office or that of the Assistant United States Attorney handling the case, Mr. Alexander Shoaibi, who may be reached at (202) 514-7236.

Mr. David Hardy                                                           Page 2
November 1, 2007

     If you have any questions concerning this matter or require further assistance, please contact
me  or Leila Wassom at the above mentioned telephone numbers or e-mail addresses.

                              Sincerely,

                              William C. Little, Jr.
                              Senior Attorney
                              Administrative Law Section

Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-1013(ESH) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE (FBI), et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT P



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

January 7, 2008


MR. JOHNNY LEE BULLOCK
  07890-032
UNITED STATES PENITENTIARY MCCREARY
POST OFFICE BOX 3000
PINE KNOT, KY 42635

                    Request No.: 1056345-003
                    Subject: JOHNNY LEE BULLOCK


Dear Requester:

        This is in reference to the November 19, 2007 referral
to the FBI from the Drug Enforcement Administration (DEA).  DEA
located FBI documents in their file and referred them to us for
release determination and direct response to you.

        The material referred were copies of documents located
in the file the FBI processed for you as part of FOIA No.
1056345-2.  As stated in our November 22, 2007 and September 26,
2007 letters, material located in the file remains exempt from
disclosure pursuant to Title 5, United States Code, Section 552,
subsection (b)(7)(A).  Five pages of the referred material are
duplicates of public source documents you received with our
release dated September 26, 2007.


                         Sincerely yours,


                         David M. Hardy
                         Section Chief
                         Record/Information
                          Dissemination Section
                         Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-1013(ESH) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE (FBI), et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT Q

FD-36 (Rev. 5-22-64)

F B I

Date:   **6/16/70**

Transmit the following in _____
                                    *(Type in plaintext or code)*

Via ____ **AIRTEL** _____ **AIR MAIL** _____
                                    *(Priority)*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TO:        DIRECTOR, FBI                          b6 -1
                                                  b7C -1
FROM:      SAC, MOBILE (76-1498)(P)

SUBJECT:   JOHNNY LEE BULLOCK - *Note*
           FUGITIVE
           EFP
           (OO: MOBILE)


        Subject, who has been confined to the Federal Prison
Camp, Maxwell AFB, Ala., since 4/22/70, serving 18 months
sentence for possession of Still and distilling, was granted a
two-day furlough commencing 8:03 A.M., 6/13/70, to visit his
home at Mt. Vernon, Ky., to attend the funeral of his father.
Under conditions of furlough, he was to return 12:17 A.M.,
6/15/70.  Travel to and from his home scheduled with Delta
Air Lines.  It was agreed that any departure from the con-
ditions of his furlough would require prior approval of
prison authorities.

        BULLOCK failed to return as directed and was
declared an Escaped Federal Prisoner at 11:00 A.M., 6/15/70.

        On 6/15/70, USA IRA DEMENT, MDA, Montgomery, Ala.,
authorized prosecution of the subject.

        On the same date an authorized complaint was filed
before USC JAMES M. GUTTERY, Title 18, Section 751, USC.

        Subject surrendered prior to being entered into
NCIC or FFL being submitted.  Mobile claiming fugitive credit
re subject.   REC-126

        Mobile will follow prosecution of subject.

                                        **6 JUN 18 1970**

2 - Bureau
3 - Mobile
FAG:agf
  (4)

Approved: _____    Sent _____ M   Per _____
            Special Agent in Charge

BULLOCK-1

FD-263 (Rev. 12-19-67)

# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD |
|---|---|---|---|
| MOBILE | MOBILE | 6/25/70 | 6/15-24/70 |

| TITLE OF CASE | REPORT MADE BY | TYPED BY |
|---|---|---|
| JOHNNY LEE BULLOCK, - FUGITIVE | SA | -alb |

b6 -1
b7C -1

cns MO q/t/x
6-16-70

**CHARACTER OF CASE**

ESCAPED FEDERAL PRISONER

7-7-70

REFERENCES:    Mobile teletype to Louisville, 6/15/70
               Mobile teletype to Louisville, 6/16/70
               Mobile airtel to Bureau, 6/16/70

-C-

## ADMINISTRATIVE:

Subject surrendered prior to being entered in NCIC or FFL being submitted.  Mobile is claiming fugitive credit.

Copy of this report is not being furnished to USA, Montgomery, Ala., as his opinions were confirmed by letters.

| ACCOMPLISHMENTS CLAIMED | | | | | □ NONE | ACQUIT-TALS | CASE HAS BEEN: |
|---|---|---|---|---|---|---|---|
| CONVIC. | AUTO. | FUG. | FINES | SAVINGS | RECOVERIES | | |
| | | 1 | | | | | PENDING OVER ONE YEAR □ YES ☒ NO |
| | | | | | | | PENDING PROSECUTION OVER SIX MONTHS □ YES ☒ NO |

| APPROVED | SPECIAL AGENT IN CHARGE | DO NOT WRITE IN SPACES BELOW |
|---|---|---|
| COPIES MADE: | | |

(2) - Bureau
1 - Mobile (76-1498)

76- 40319 - 2      REC- 36

EX-115

12 JUN 29 1970

| Dissemination Record of Attached Report | | | | | Notations |
|---|---|---|---|---|---|
| Agency | | | | | |
| Request Recd. | | | | | |
| Date Fwd. | | | | | |
| How Fwd. | | | | | |
| By | | | | | |

FUG. SUP.
STAT. SECT.

66 AUG 3 1970

A*
**COVER PAGE**

GPO : 1968 O - 290-885

BULLOCK-2

FD-204 ( .ev. 3-3-59)

# UNiTED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION

Copy to:

| | | | |
|---|---|---|---|
| **Report of:** | SA [          ] | **Office:** MOBILE | b6 -1 |
| **Date:** | JUNE 25, 1970 | | b7C -1 |
| **Field Office File #:** | MO 76-1498 | **Bureau File #:** | |
| **Title:** | JOHNNY LEE BULLOCK | | |

**Character:**    ESCAPED FEDERAL PRISONER

**Synopsis:**

JOHNNY LEE BULLOCK, WM, born 5/23/47, FBI #181419H, confined
FPC, Maxwell AFB, Ala., since 4/22/70, serving eighteen months
for Possession of Still and Distilling. Was granted two day
furlough, 6/13/70, to attend  funeral of father, Mt. Vernon,
Ky., under conditions he return to Montgomery, Ala., via
Delta Airlines, arriving 12:17 AM, 6/15/70. He failed to
return and was declared escapee 11:30 AM, 6/15/70. An
authorized complaint was filed 6/15/70 before USC, Montgomery,
Ala., charging subject with violation T-18 Section 751, USC.
Subject voluntarily appeared at FPC, Maxwell AFB, Ala., 2:25
AM 6/16/70, claiming he understood he was to return to
Montgomery 12:17 AM 6/16/70. USA, Montgomery, Ala. declined
prosecution and complaint dismissed 6/19/70.

-C-

**DETAILS:**

    AT MONTGOMERY, ALABAMA:

    At approximately 11:30 AM, June 15, 1970, T. D.
BRADLEY, Superintendent, Federal Prison Camp, Maxwell Air
Force Base, Alabama, advised that inmate JOHNNY LEE BULLOCK
had failed to return from a two day furlough and had been
declared an escapee.

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to
your agency; it and its contents are not to be distributed outside your agency.

U. S. GOVERNMENT PRINTING OFFICE : 1969 O - 351-076

FD-3 (Rev. 4-15-64)

## FEDERAL BUREAU OF INVESTIGATION

**1**                                                    Date ___June 25, 1970___

    T. D. BRADLEY, Superintendent, Federal Prison Camp, Maxwell Air Force Base, Alabama, telephonically advised as follows:

    JOHNNY LEE BULLOCK, #21494-157, was convicted in United States District Court, Eastern District of Kentucky, on charges of Possession of a Still and Distilling on April 6, 1970, and was sentenced to serve eighteen months in custody at that camp since April 22, 1970.

    Under the provisions of Title 18 Section 4082, BULLOCK was granted a two day furlough to attend the funeral of his father, JAMES ROBERT BULLOCK, at Mt. Vernon, Kentucky. In connection with this furlough, BULLOCK executed an agreement setting forth the conditions that he would depart Montgomery, Alabama, 8:03 AM, June 13, 1970, via Delta Airlines and would return to Montgomery via same airlines, arriving 12:17 AM, June 15, 1970. Further that he would reside with his wife, Mrs. DORA BULLOCK, Route 1, Mt. Vernon, Kentucky during his stay there, and it would require prior approval of certain prison authorities before any departure from these conditions could be taken. It was further agreed that any unapproved departure from these conditions would result in his being declared an escaped prisoner.

    BULLOCK did not arrive in Montgomery as directed nor did he make any attempt to obtain approval for this delay, and, as a result, was considered an escapee as of time of call.

    BULLOCK is described as white male, born May 23, 1947, Kentucky, place unknown, 5'10", 123 pounds, brown hair, green eyes, and has FBI #181419H.

_____

On __6/15/70__ at __Montgomery, Ala.__ ___ File # ___MO 76-1498___

by __SA [ ]__ ___ __-alb__ ___ Date dictated __6/19/70__

b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

2

MO 76-1498

On June 15, 1970, facts of this case were tele-
phonically presented to Mr. IRA DE MENT, United States
Attorney, Middle District of Alabama, Montgomery, Alabama,
and a complaint charging BULLOCK with violation Title 18
Section 751, United States Code was authorized.

A complaint was filed June 15, 1970 by SA [                ]
[                ] with United States Commissioner JAMES M. GUTTERY,    b6 -1
Montgomery, Alabama, charging subject with violation Title    b7C -1
18 Section 751, United States Code.

On June 16, 1970, T. D. BRADLEY, Superintendent,
Federal Prison Camp, Maxwell Air Force Base, Alabama,
telephonically advised BULLOCK voluntarily appeared at that
camp 2:25 AM June 16, 1970. BULLOCK claimed it was his
understanding that he was to return via Delta Airlines,
arriving at Montgomery, 12:17 AM June 16, 1970 instead of
same time June 15, 1970.

BRADLEY further advised that it is his opinion,
after questioning BULLOCK, that the latter actually misunder-
stood the conditions of his furlough and his late arrival
was not intentional. BRADLEY stated that it was his recommenda-
tion that no prosecutive action be taken against BULLOCK.

Mr. IRA DE MENT, United States Attorney, Montgomery,
Alabama, was telephonically informed of foregoing on June
16, 1970. He advised that he was declining prosecution
in this case and that complaint against subject would be
dismissed.

On June 23, 1970, [                                    ]
Office of United States Attorney, Montgomery, advised complaint    b6 -3
filed against subject June 16, 1970, was dismissed by United    b7C -3
States District Judge FRANK M. JOHNSON, JR., Middle District
of Alabama, on June 19, 1970.

In view of foregoing this case is being closed
in the Mobile Division.

3*

BULLOCK-5

FD-65 (Rev. 7-9-73)
OPTIONAL FORM NO. 10
MAY 1962 EDITION
GSA GEN. REG. NO. 27

5010-106

# UNITED STATES GOVERNMENT
# *Memorandum*

DEC 4 1974

INSTRUCTIONS - Reverse side

TO        : Director, FBI

Att: Special Investigative Division

DATE:  **11/21/74**

FROM    : SAC,  **INDIANAPOLIS   (76-5809)**

SUBJECT:  **JOHNNIE LEE BULLOCK**
**FUGITIVE**
**ESCAPED FEDERAL PRISONER**

**(OO: IP)**

☒ Initial Submission
☐ Supplements FD-65 dated _____
☐ Photograph not needed

Indicate following:
☐ Extremist (Black)
☐ Extremist (White)
☐ Rev. Act.
☐ Other Security background
☒ None of these

| Caution | | MKE | Name | | | | NAM | Sex | SEX | Race | RAC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | ☐ | | JOHNNIE LEE BULLOCK | | | | | M | | W | |
| Place of Birth | | | | POB | Birth Date | DOB | Height | HGT | Weight | | WGT |
| Mt. Vernon, Kentucky | | | | | 5/23/47 | | 5'10" | | 130 | | |
| Eye Color | | EYE | Hair Color | | HAI | FBI No. | | FBI | Skin Tone | | SKN |
| Blue | | | Brown | | | 181419 H | | | | | |
| Scars, Marks, Tattoos, etc. | | | | | | | | | | | SMT |
| Tattoos: Left arm | | | | | | | | | | | |
| NCIC Fingerprint Classification | | | FPC | Other Identifying Number | | | MNU | Social Security # | | | SOC |
| Operator's License Number | | | OLN | Operator's License State | | | OLS | Year Expire | | | OLY |

Offense Charged **OFF  ESCAPED FEDERAL PRISONER**

U. S. Code, Title and Section _____

Warrant Issued By _____ on _____ **DOW** | F.O. File # | **OCA**

Date PBV or Bond Default Case Referred to Office **November 18, 1974**

Miscellaneous Including Bond Recommended **MIS** | Fingerprint Classification (Henry System)

MCT-30 REC-43 76 - 51525

| License Plate Number | LIC | State | | LIS | Year Expires | | | | License Plate Type | | LIT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Vehicle Identification # | VIN | Year | VYR | Make | VMA | Model | | VMO | Style | VST | Color | VCO |
| Aliases | | | | | | Additional Identifiers | | | | | |

NCIC #

DEC 20 1974

NIC

① -- Bureau
1 -- Indianapolis
TLP/lz (2)

BULLOCK-6

I&P                    12-3-74/a

1  Name Searching Unit - Room 6527
   Service Unit - Room 655
S  Forward to File Review
   Attention
3  Return to _____
          Supervisor     Room    E...

be -1
b7C -1

Type of References Requested:
☐ Regular Request (Analytical Search)
☐ All References (Subversive & Nonsubversive)
☐ Subversive References Only
☐ Nonsubversive References Only
☒ Main  C & S  References Only

Type of Search Requested:
☐ Restricted to Locality of _____
☐ Exact Name Only (On the Nose)
☐ Buildup        ☐ Variations

Subject Bullock, Johnnie Lee
Birthdate & Place _____
Address _____

Localities _____
R __ 123 __ Date 12-5  Searcher Initials 140
Prod. _____        DEC  619

| | FILE NUMBER | SERIAL |
|---|---|---|
| ✓ | 26-436858 | 00 |
| | Johnnie Lee | |
| ✓ | 76-40319 | I Identical |

DEC 19 1974

BULLOCK-7

NRO16 IP PLAIN

1255AM 11/18/74 SENT 11/19/74 NITEL DNP

FEDERAL BUREAU OF INVESTIGATION
COMMUNICATIONS SECTION
NOV 19 1974

TELETYPE

TO:     DIRECTOR

        LOUISVILLE

        NEW HAVEN                    Bureau of Prisons    TAC

FROM:   INDIANAPOLIS

JOHNNIE LEE BULLOCK - FUGITIVE.  EFP. OO:' INDIANAPOLIS

    BULLOCK DECLARED ESCAPED FEDERAL PRISONER 4:40PM, NOV. 18,

1974, FROM TERRE HAUTE FARM CAMP, TERRE HAUTE, IND. SUBJECT

SENTENCED JUNE 24, 1974, OUT OF EASTERN DISTRICT OF KENTUCKY TO

TWO YEARS AND SIX MONTHS FOR NATIONAL MOTOR VEHICLE THEFT ACT.

    SUBJECT DESC. AS WM, DOB MAY 23, 1947, AT MT. VERNON, KY.,

5'10'', 130 LBS., EYES BLUE, HAIR BROWN, TATTOO LEFT ARM, USP NO.

00124-166, FBI NO. 181419H, ADDRESS RURAL ROUTE THREE, MT. VERNON, KY.

    FOLLOWING IS A LIST OF RELATIVES TAKEN FROM SUBJECTS FILE:

HAZEL BULLOCK- MOTHER, RESIDES ON FAIRGROUND HILL, NEAR CHILDERS

GARAGE, MT. VERNON, KY., FRANCIS PRICKELL, HALF SISTER, DAYTON,

KY., HALF BROTHER - GEORGE KIRK, BRIDGE    REC-16 76 - 5/5585

PORT, CONN., BROTHER- EDWARD BULLOCK, RESIDES WITH MOTHER AT MT.

VERNON, KY., BROTHER- JAMES BULLOCK, ROUTE ONE, MT. VERNON, KY.,

VIVIAN SULFRIDGE- SISTER, RESIDES NEAR SAND SPRINGS, MR. VERNON,

21  NOV 20 1974

BULLOCK-8

Assoc. Dir.
Dep.-A.D.-Adm.
Dep.-A.D.-Inv.
Asst. Dir.:
  Admin.
  Comp. Syst.
  Ext. Affairs
  Files & Com.
  Gen. Inv.
  Ident.
  Inspection
  Intell.
  Laboratory
  Plan. & Eval.
  Spec. Inv.
  Training
Legal Coun.
Telephone Rm.
Director Sec'y

IP 76-NEW

PAGE TWO

KY., MOLLY MONK-SISTER, MT. VERNON, KY., BETTY MONK-SISTER, MT.
VERNON, KY., DORA FAYE BULLOCK, NEE MASON-WIFE, ROUTE THREE, MT.
VERNON, KY., HALF MILE UP NEGRO HILL.

ON NOV. 17, 1974, A TELEPHONE CALL WAS MADE BY SUBJECT TO
[                ] MT. VERNON, KY.

AN INFORMANT, USP, TERRE HAUTE, IND., SUBJECT MAY BE WITH
[                              ] SUBJECTS CO-DEFENDANTS IN INSTANT                b6 -2
                                                                                  b7C -2
OFFENSE, NAMES WERE [                                    ]
[                              ]

LOUISVILLE AT LOUISVILLE, REVIEW CASE FILE ON SUBJECT FOR
ITSMV TO DEVELOPE LEADS.  ATTEMPT TO IDENTIFY [              ]
[                  ] AND AT MT. VERNON AND DAYTON, KY., USING TELEPHONE
NUMBER AND RELATIVES, ATTEMPTS TO LOCATE SUBJECT.

NEW HAVEN, AT BRIDGEPORT, CONN., ATTEMPT TO LOCATE [        ]          b6 -2
[        ]                                                            b7C -2

INDIANAPOLIS, AT RICHMOND, IND., THRU LOGICAL SOURCES,
ATTEMPT TO IDENTIFY [              ] TO LOCATE SUBJECT.

PHOTOS FOLLOW BY DIRECT MAIL.

END

MAH FBIHQ ACKFOR TWO

WA CLR

cc-6                                                    BULLOCK-9

FEDERAL BUREAU OF INVESTIGATION
COMMUNICATIONS SECTION

DEC 03 1974

TELETYPE

NR001 LS PLAIN

148PM URGENT DECEMBER 3, 1974 CLH

TO DIRECTOR, FBI

INDIANAPOLIS

NEW HAVEN

FROM LOUISVILLE (76-4443)

JOHNNIE LEE BULLOCK - FUGITIVE; EFP; OO: LS.

RE INDIANAPOLIS TEL TO BUREAU, NOVEMBER 19, 1974.

DISCONTINUE. SUBJECT APPREHENDED THIS DATE WITHOUT

INCIDENT AT RESIDENCE OF

SUBJECT LODGED MADISON COUNTY JAIL, RICHMOND, KY. U. S.

MARSHAL'S OFFICE, LEXINGTON, KY., ADVISED.

REPORT FOLLOWS.

CREDIT LOUISVILLE ONE FUGITIVE.

ESCAPE RISK.      P

END

KAC FBIHQ CLR

Bureau of Prisons LA

Memo to Ident

DATE  12-3-74

prep

REC-16  26-515525-2X

26-515525-7

EX-112   5 DEC 4 1974

BULLOCK-10

5 7 DEC 27 1974
CC: FUG. SUPVR.

Assoc. Dir.
Dep.-A.D.-Adm.
Dep.-A.D.-Inv.
Asst. Dir.:
 Admin.
 Comp. Syst.
 Ext. Affairs
 Files & Com.
 Gen. Inv.
 Ident.
 Inspection
 Intell.
 Laboratory
 Plan. & Eval.
 Spec. Inv.
 Training
Legal Coun.
Telephone
Director

b6 -1
b7C -1

b6 -3
b7C -3

b6 -1
b7C -1

FD-263 (Rev. 1-7-72)

# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD | |
|---|---|---|---|---|
| LOUISVILLE | INDIANAPOLIS | 12/6/74 | 11/18/74 – 12/3/74 | |
| TITLE OF CASE | | REPORT MADE BY | | TYPED BY |
| JOHNNIE LEE BULLOCK<br>FUGITIVE | | SA | | b6 -1<br>b7C -1 |
| | | CHARACTER OF CASE | | |
| | | EFP | | |

12-18-7

REFERENCE:

Indianapolis nitel to Bureau, 11/18/74

– RUC –

LEAD:

INDIANAPOLIS:

AT TERRE HAUTE, INDIANA:

Will present this matter to U. S. Attorney.

| ACCOMPLISHMENTS CLAIMED | | | | ☐ NONE | | ACQUIT-TALS | CASE HAS BEEN: | | |
|---|---|---|---|---|---|---|---|---|---|
| CONVIC. | FUG. | FINES | SAVINGS | RECOVERIES | | | PENDING OVER ONE YEAR ☐YES ☒NO | | |
| | 1-LS | | | | | | PENDING PROSECUTION OVER SIX MONTHS ☐YES ☐NO | | |

| APPROVED | SPECIAL AGENT IN CHARGE | DO NOT WRITE IN SPACES BELOW |
|---|---|---|
| COPIES MADE: | | |

REC 17

2-Bureau (RM)

3-Indianapolis (76-5039)(RM)
   (1-USA, Indianapolis, Indiana)

DEC 17 1974

1-Louisville (76-4440)

| Dissemination Record of Attached Report | | | | Notations |
|---|---|---|---|---|
| Agency | | | | |
| Request Recd. | | | | |
| Date Fwd. | | | | |
| How Fwd. | | | | |
| By | | | | |

DATA PROCESSING

BULLOCK-11

–A*–
COVER PAGE

FD-204 (Rev. 3-3-59)

# UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION

Copy to:  1-U. S. Attorney, Indianapolis, Indiana (RM)

b6 -1
b7C -1

Report of:  SA [                    ]                Office:  **LOUISVILLE**
Date:  12/6/74

Field Office File #:  **LS 76-4443**                Bureau File #:

Title:  **JOHNNIE LEE BULLOCK**

Character:  **ESCAPED FEDERAL PRISONER**

Synopsis:

> JOHNNIE LEE BULLOCK declared Escaped Federal Prisoner 4:40 PM, 11/18/74, from Terre Haute, Indiana, Farm Camp. He had been sentenced 6/24/74 out of the Eastern District of Kentucky to 2 years and 6 months for violation of National Motor Vehicle Theft Act. BULLOCK arrested without incident by BuAgents at Sand Springs, Ky. USM's office Lexington, Ky., advised of BULLOCK's apprehension. BULLOCK lodged Madison County Jail, Richmond, Ky. Escape Risk.

- RUC -

## DETAILS:

> By communication dated November 19, 1974, the Indianapolis Division advised as follows:

BULLOCK-12

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

U. S. GOVERNMENT PRINTING OFFICE : 1970  O - 406-840

LS 76-4443


JOHNNIE LEE BULLOCK was declared an Escaped Federal Prisoner at 4:40 PM, November 18, 1974, from Terre Haute Farm Camp, Terre Haute, Indiana. BULLOCK was sentenced June 24, 1974, out of the Eastern District of Kentucky, to two years and six months for National Motor Vehicle Theft Act violation.

BULLOCK is described as follows:

| | |
|---|---|
| Race: | White |
| Sex: | Male |
| Date of Birth: | May 23, 1947 |
| Place of Birth: | Mt. Vernon, Kentucky |
| Height: | 5' 10" |
| Weight: | 130 pounds |
| Eyes: | Blue |
| Hair: | Brown |
| Tattoos: | Tattoo left arm |
| U. S. Penitentiary Number: | 00124-166 |
| FBI Number: | 181 419 H |
| Address: | Rural Route 3 Mt. Vernon, Kentucky |

Following is a list of relatives taken from BULLOCK's file:

| | |
|---|---|
| Mother: | HAZEL BULLOCK resides on Fairground Hill near Childers Garage, Mt. Vernon, Kentucky |
| Half sister: | FRANCIS PRICKELL Dayton, Kentucky |
| Half brother: | GEORGE KIRBY Bridgeport, Connecticut |
| Brother: | EDWARD BULLOCK resides with mother at Mt. Vernon, Kentucky |
| Brother: | JAMES BULLOCK Route 1, Mt. Vernon, Kentucky |
| Sister: | VIVIAN SULFRIDGE resides near Sand Springs, Mt. Vernon, Kentucky |
| Sister: | MOLLY MONK Mt. Vernon, Kentucky |

-2-

BULLOCK-13

LS 76-4443

```
Sister:              BETTY MONK
                     Mt. Vernon, Kentucky

Wife:                DORA FAYE BULLOCK nee MASON
                     Route 3, Mt. Vernon, Kentucky
                     (half mile up Negro Hill)
```

On November 17, 1974, a telephone call was made by subject BULLOCK to [          ] Mt. Vernon, Kentucky.

On December 3, 1974, an inquiry at the U. S. Post Office, Mt. Vernon, Kentucky, revealed that [          ] resided on [          ]

b6 -3
b7C -3

On December 3, 1974, [          ] was contacted and she advised that she had not seen the subject since he was sentenced in U. S. District Court, London, Kentucky, in early summer, 1974. She advised that she had written BULLOCK one letter and that was approximately 2 weeks prior to his escape.

She listed the following group of individuals whom she felt were close associates of BULLOCK:

b6 -3
b7C -3

b6 -3
b7C -3

[          ] also related that BULLOCK had previously lived in the Sand Springs, Kentucky, area and again related that she had not seen him since he escaped.

On December 3, 1974, [          ] of Graves Grocery Store, Sand Springs, Kentucky, advised that he had not

b6 -3
b7C -3

-3-
BULLOCK-14

LS 76-4443

seen BULLOCK but had heard that BULLOCK had escaped prison.
He added that BULLOCK had 2 relatives living near [          ]
He stated that [                    ] an aunt of BULLOCK, could possibly
furnish information as to where the subject might be located.

b6 -3
b7C -3

On the same date [                    ]
advised that she had not seen the subject since he escaped
but that she had heard that the subject was staying at the
residence of [                ] and that [      ] lived on the [          ]
[                              ]

-4-

FD-302 (REV. 11-27-70)

**1**

FEDERAL BUREAU OF INVESTIGATION

Date of transcription _____ December 6, 1974

    JOHNNIE LEE BULLOCK was located at the residence of _____ He was found by Special Agent _____ hiding in a closet. He was immediately advised of the identity of the agents and that he was under arrest for escape from a federal institution.

    He was immediately taken to the Federal Bureau of Investigation (FBI) vehicle where he was furnished an Interrogation; Advice of Rights and Waiver form which was read to him by SA _____ BULLOCK advised that he understood the form, had no question about it, but refused to sign it.

    BULLOCK stated he did not care to make any statement about his escape, but would furnish information regarding his background.

    The following description was obtained through observation and interview:

| | |
|---|---|
| Name: | JOHNNIE LEE BULLOCK |
| Race: | White |
| Sex: | Male |
| Date of Birth: | May 23, 1947 |
| Place of Birth: | Mt. Vernon, Kentucky |
| Social Security Account Number: | 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 |
| Height: | 5' 10½" |
| Weight: | 135 pounds |
| Eyes: | Bluish-green |
| Hair: | Brown, long |
| Tattoos: | "JOHNNIE" left arm; "13" left arm |
| Wife: | DORA FAYE MASON BULLOCK, _____ address - Negrotown Hill, Mt. Vernon, Kentucky |
| Father: | ROBERT BULLOCK (deceased) |
| Mother: | HAZEL MOLLER BULLOCK Fairground Hill Mt. Vernon, Kentucky |
| Brothers: | GEORGE KIRBY, _____ Bridgeport, Connecticut |

b6 -1, ?
b7C -1, ?

b6 -1, 3
b7C -1, 3

Interviewed on ___12/3/74___ at Sand Springs, Kentucky ___ File # LS 76-4443

by ___ SA _____
     SA _____ EJR/mla _____ Date dictated ___12/3/74___

—5—

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

BULLOCK-16

LS 76-4443
2

| Brothers<br>continued: | CHARLES EDWARD BULLOCK, [_____]<br>Mt. Vernon, Kentucky<br>(with HAZEL)<br>JAMES BULLOCK, [_____]<br>Horse Shoe Bend,<br>Mt. Vernon, Kentucky | b6 -3<br>b7C -3 |
|---|---|---|
| Sisters: | MARY FRANCIS PRICKETT, [_____]<br>Dayton, Kentucky<br>BERNICE VIVIAN BULLOCK SUFFERAGE, [__]<br>Horse Shoe Bend,<br>Mt. Vernon, Kentucky<br>MOLLY LOU BULLOCK MONK, [_____]<br>Mt. Vernon, Kentucky<br>BETTY JEAN BULLOCK<br>resides with mother | b6 -3<br>b7C -3 |

Upon arrival at the Madison County Jail, Richmond, Kentucky, BULLOCK was fingerprinted and lodged.

-6-

LS 76-4443

b6 -4
b7C -4

     On December 3, 1974, [         ], U. S. Marshal's Office, Lexington, Kentucky, was advised of BULLOCK's incarceration at the Madison County Jail, Richmond, Kentucky.

9-10 (Rev. 1-28-71)

## MEMORANDUM FOR IDENTIFICATION DIVISION

| | | | Date _12-3-74_ |
|---|---|---|---|
| Bu file _76-51525_ | Name of Subject _Johanie Lee Bullock_ | | Fugitive Index # _58581_ |
| FBI # _181 419 H_ | Serial # | Other Identifying # | Subject Located ✓ |

Prosecution dismissed

City _SandSprings, RV_     Reason and/or by whom:

Date _12-3-74_     _Madison Coo Jail_

Action to be taken

Cancel fugitive stops for Index

[✓] Gen'l Fug                    ____ Add additional aliases

[ ] SS                          I. O. # _____

[ ] Deserter                    Date of Fug Card _12-2-74_

Ident Memo Received [ ] Yes  [✓] No

[ ] Description

_per LS itel 12-3-74_

_76-51521_

NOT RECORDED

Remarks                         19 DEC 12 1974

P DEC 5 1974

b6 -1
b7C -1

FD-263 (Rev. 1-7-72)

# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD |
|---|---|---|---|
| INDIANAPOLIS | INDIANAPOLIS | 1/3/75 | 11/18 – 12/3/74 |

| TITLE OF CASE | REPORT MADE BY | TYPED BY |
|---|---|---|
| JOHNNIE LEE BULLOCK | | -rtw |

CHARACTER OF CASE

EFP

b6 -1
b7C -1

REFERENCE:    LS teletype to Director, IP, New Haven 12/3/74;
LSrep of SA [ ] 12/6/74.

b6 -1
b7C -1

– P –

LEADS:

INDIANAPOLIS
At Terre Haute, Indiana

Will present this matter to the next sitting of the
FGJ, SDI, IP.

ADMINISTRATIVE:

The purpose of this report is to supplement re report
to show official investigation at the U. S. Penitentiary Farm
Camp, Terre Haute, Indiana.

| ACCOMPLISHMENTS CLAIMED | ☑ NONE | | ACQUIT-TALS | CASE HAS BEEN: | |
|---|---|---|---|---|---|
| CONVIC. | FUG. | FINES | SAVINGS | RECOVERIES | | | |

PENDING OVER ONE YEAR ☐YES ☒NO
PENDING PROSECUTION
OVER SIX MONTHS ☐YES ☒NO

APPROVED
SPECIAL AGENT IN CHARGE

DO NOT WRITE IN SPACES BELOW

COPIES MADE:

2 - Bureau   (76-51525)

1 - USA, Indianapolis

2 - Indianapolis   (76-5089)

76-5135
REC-5

FUC

BULLOCK-20

| Dissemination Record of Attached Report | | | | Notations |
|---|---|---|---|---|
| Agency | | | | |
| Request Recd. | | | | |
| Date Fwd. | | | | |
| How Fwd. | | | | |
| By | | | | |

IP 76-5089

In the interest of brevity, negative investigation by OO and auxiliary offices to apprehend BULLOCK not being included in this report but being maintained in IP case file.

B*
(COVER PAGE)

FD-204 (Rev. 3-3-59)

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION

Copy to: 1 - USA, Indianapolis

b6 -1
b7C -1

Report of: 
Date: 1/3/75

Office: **INDIANAPOLIS**

Field Office File #: **IP 76-5089**

Bureau File #: **76-51525**

Title: **JOHNNIE LEE BULLOCK**

ESCAPED FEDERAL PRISONER

Character:

Synopsis:
JOHNNIE LEE BULLOCK was declared an escaped federal prisoner from the Terre Haute Farm Camp, Terre Haute, Indiana on 11/18/74. BULLOCK was sentenced on 6/24/74 out of the Eastern District of Kentucky to two years, six months for National Motor Vehicle Theft Act.

- P -

Details:

This case is predicated upon a receipt of a telephone call from officials at the Terre Haute Farm Camp, Terre Haute, Indiana, on November 18, 1974 to the Terre Haute Resident Agency of the Federal Bureau of Investigation indicating that JOHNNIE LEE BULLOCK was declared an escaped federal prisoner as of 4:40 PM November 18, 1974.

BULLOCK-22

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302 (REV. 11-27-70)

## FEDERAL BUREAU OF INVESTIGATION

**1**

Date of transcription _____**11/27/74**_____

[ ]    **Farmcamp supervisor, Terre Haute**    b6 -4
Farmcamp, Terre Haute, Indiana, advised that Inmate    b7C -4
JOHNNIE LEE BULLOCK, Inmate Number 00124-166, was officially
declared an escaped federal prisoner from the Terre Haute
Farmcamp, Terre Haute, Indiana, as of 4:40 PM November 18,
1974.

Interviewed on ___**11/18/74**___ at **Terre Haute, Indiana**    File # __**IP 79-5089**__

SA [ ]    —TMW    **11/22/74**    b6 -1
b7C -1

by _____    Date dictated _____

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302 (REV. 11-27-70)

**FEDERAL BUREAU OF INVESTIGATION**

**1**

Date of transcription ___**11/27/74**___

Farmcamp supervisor, **Terre Haute**      b6 -4
**Farmcamp, Terre Haute, Indiana,** made available for review      b7C -4
the official prison file of JOHNNIE LEE BULLOCK, Inmate
Number 00124-166. A review of this file by interviewing
Agent indicated the following information:

BULLOCK was sentenced on June 24, 1974 out of
the Eastern District of Kentucky to two years, six months,
for National Motor Vehicle Theft Act, which is Title 18,
Section 2312. BULLOCK is described as follows:

| | |
|---|---|
| Name | JOHNNIE LEE BULLOCK |
| Race | White |
| Sex | Male |
| Date of birth | May 23, 1947 |
| Place of birth | Mount Vernon, Kentucky |
| Height | 5'10" |
| Weight | 130 pounds |
| Eyes | Blue |
| Hair | Brown |
| Tattoo | Left arm |
| United States Penitentiary Number | 00124-166 |
| FBI Number | 181419 B |

Interviewed on ___**11/18/74**___ at **Terre Haute, Indiana**   File # **IP 76-5089**

b6 -1
b7C -1

by ___SA_____ -rtw_____ Date dictated ___**11/22/74**___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

3*

BULLOCK-24

FD-263 (Rev. 1-7-72)

# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD |
|---|---|---|---|
| INDIANAPOLIS | INDIANAPOLIS | 3/7/75 | 11/23/74 - 2/28/75 |

| TITLE OF CASE | REPORT MADE BY | TYPED BY |
|---|---|---|
| JOHNNIE LEE BULLOCK | | -jsh |

CHARACTER OF CASE

EFP - ITSMV

b6 -1
b7C -1

REFERENCE:   Indianapolis report of SA [            ]  1/3/75.

- P -

b6 -1
b7C -1

L E A D S

LOUISVILLE

At Saud Springs, Kentucky

Will conduct neighborhood investigation to attempt to place subject in 1967 Ford, 1974 Indiana License 77BS24.

INDIANAPOLIS

At Terre Haute, Indiana

Will maintain contact with AUSA HUDGINS in presenting

| ACCOMPLISHMENTS CLAIMED | [X] NONE | | ACQUIT-TALS | CASE HAS BEEN: | | |
|---|---|---|---|---|---|---|
| CONV C. | FUG. | FINES | SAVINGS | RECOVERIES | | PENDING OVER ONE YEAR [ ]YES [X]NO |
| | | | | | | PENDING PROSECUTION OVER SIX MONTHS [ ]YES [X]NO |

| APPROVED | SPECIAL AGENT IN CHARGE | DO NOT WRITE IN SPACES BELOW |
|---|---|---|

COPIES MADE:

2 - Bureau (76-51525)
1 - USA, Indianapolis
2 - Louisville (76-4443)
2 - Indianapolis (76-5089)

76 - ....                    REC-10

2: MAR 17 1975

Rec return to Bureau of Prisons
by R-6 ___ ____ 3/24/75
                (Initials)

| Dissemination Record of Attached Report | | | | | Notations |
|---|---|---|---|---|---|
| Agency | | | | | |
| Request Recd. | | | | | |
| Date Fwd. | | | | | |
| How Fwd. | | | | | |
| By | | | | | BULLOCK-25 |

DATA PROC.

IP 76-5089

       details of ITSMV violation to U.S. District Court
       Judge DILLIN.

ADMINISTRATIVE

       Additional captioned ITSMV being added to character
of this case since subsequent investigation indicates strong
possibility subject may have been involved with theft of a
1967 Ford, VIN 7A42S225031, 1974 Indiana License 77B824,
while he was in escape status.

      - B* --
     (COVER PAGE)

BULLOCK-26

FD-204 (Rev. 3-3-59)

<p align="center"># UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION</p>

Copy to:  **1 – UNITED STATES ATTORNEY, INDIANAPOLIS, INDIANA**
          **(Attention:  AUSA JOHN L. HUDGINS)**

b6 -1
b7C -1

| | | |
|---|---|---|
| Report of: | | Office:  **INDIANAPOLIS** |
| Date: | March 7, 1975 | |

| | | |
|---|---|---|
| Field Office File #: | IP 76-5089 | Bureau File #:  **76-51525** |

Title:  **JOHNNIE LEE BULLOCK**

Character:  **ESCAPED FEDERAL PRISONER –**
            **INTERSTATE TRANSPORTATION OF STOLEN MOTOR VEHICLE**

b6 -4
b7C -4

Synopsis:  Indiana State Police Trooper [          ] advised while
subject in escaped status, that a 1967 Ford, two-door, bearing
1974 Indiana License 77B 824, was stolen near the area subject
seen on 11/21/74.  On 12/30/74, AUSA JOHN L. HUDGINS, SDI,
Indianapolis, Indiana, advised that subject would not be
presented to the Federal Grand Jury in January.  The 1967
Ford, VIN 7A42S225031 recovered, burned, in the vicinity
where subject had been arrested on 12/30/74.  The facts in
this matter (regarding subject's escape violation) were
presented to the Federal Grand Jury, SDI, on 2/19/75.  True
bill returned by Federal Grand Jury 2/24/75, charging the
subject with violation Title 18, Section 751a.  On 2/26/75,
AUSA HUDGINS granted permission for subject to be interviewed.
On 2/28/75, subject arraigned in U. S. District Court,
Terre Haute Division, before U. S. District Court Judge
CALE J. HOLDER, and pleaded guilty.  Sentencing was deferred
by Judge DILLIN, as he wanted ITSMV violation handled at
time of sentencing for Escape.  On 2/28/75, subject inter-
viewed, at which time he denied any involvement with theft
of the 1967 Ford.

<p align="center">- P -</p>

**DETAILS:**

On November 23, 1974, [          ]  Indiana State Police
Trooper, Terre Haute, Indiana, advised that JOHNNIE LEE BULLOCK
may have been seen by him on November 21, 1974, near the Breed
Power Plant. [          ] stated on November 23, 1974, a 1967 Ford,
two-door, hardtop, metallic green with a loud exhaust system,
bearing 1974 Indiana License 77B 824, was stolen.  Vehicle
Identification Number on this automobile was 7A42S225031.

b6 -4
b7C -4

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

U. S. GOVERNMENT PRINTING OFFICE : 1970  O - 405-840

IP 76-4089

On December 30, 1975, Assistant United States Attorney JOHN L. HUDGINS, Southern District of Indiana, Indianapolis, Indiana, advised he did not believe BULLOCK's case should be brought before the Federal Grand Jury that would sit in January.

On January 20, 1975, United States Attorney STANLEY B. MILLER advised that the case of JOHNNIE LEE BULLOCK would not be presented to the Federal Grand Jury in January but would be presented in February.

The Louisville Division on January 29, 1975, provided the following information:

A 1967 Ford, 2-door, Vehicle Identification Number 7A43225031 recovered and presently stored Cromer Body Shop, R. R. 1, Mount Vernon, Kentucky. Vehicle burned and not in running condition. Vehicle was originally found in vicinity where JOHNNIE LEE BULLOCK was arrested.

- 2 -

FD-302 (REV. 11-27-70)

**FEDERAL BUREAU OF INVESTIGATION**

**1**
—

Date of transcription ___ **2/21/75** ___

[                    ] Trooper, Indiana State Police, Post 32,
Terre Haute, Indiana, provided the following information:

On November 21, 1974, at approximately 11 AM,
[                ] was hunting in the vicinity three-quarter miles
north of Fairbanks, Indiana, [            ] stated that he saw
an individual, who [        ] later discovered was JOHNNIE LEE
BULLOCK, walking near the railroad tracks.

[                ] stated that this individual asked of
[            ] where he, BULLOCK, was since he had been dropped
off by a trucker and was lost.

[                ] stated that when he saw JOHNNIE LEE BULLOCK,
BULLOCK was approximately ½ mile from the location where a green
1967 Ford, Vehicle Identification Number 7A42S225031, bearing
Indiana License 77B824 was stolen on November 23, 1974.

[            ] was then shown an escape flyer which was
issued by the U. S. Penitentiary, Terre Haute, Indiana, on
November 18, 1974, and [            ] identified the photograph
thereon as being the individual he saw on November 21, 1974.
[            ] then provided information from an Indiana State Police
Case Report Number 32-287S regarding the theft of the 1967
Ford as follows:

On November 23, 1974, [            ] address [        ]
[            ], reported the theft of a 1967 Ford, 2-
door, hardtop, metallic green in color, Vehicle Identification
Number 7A42S225031 bearing Indiana License 7477B824.
stated that this automobile was stolen between the hours of
12:30 AM and 8:00 AM, November 23, 1974. The keys were left
in the ignition and no suspects were developed.

[            ] advised that he interviewed [        ]
on November 23, 1974, at which time [        ] stated that he
had no suspects in this matter.

[            ] advised that he did notify [        ]
of the location and the condition of the car.

---

Interviewed on ___ **2/11/75** ___ at ___ Terre Haute, Indiana ___ File # ___ IP 76-5089 ___

by ___ SA [            ] —jsh ___ Date dictated ___ **2/17/75** ___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency. **3**

b6 -6
b7C -6

b6 -6
b7C -6

b6 -3, 6
b7C -3, 6

b6 -3, 6
b7C -3, 6

b6 -3, 6
b7C -3, 6

b6 -1
b7C -1

BULLOCK-29

IP 76-5089

On February 19, 1975, the facts in this matter were presented (escape of BULLOCK) to Federal Grand Jury, Southern District of Indiana, Indianapolis, Indiana.

On February 25, 1975, Assistant United States Attorney JOHN L. HUDGINS advised that a true bill was returned against JOHNNIE LEE BULLOCK charging BULLOCK with Title 18, Section 751a on February 24, 1975, by the Federal Grand Jury, Southern District of Indiana, Indianapolis, Indiana.

On February 26, 1975, Assistant United States Attorney JOHN L. HUDGINS, Southern District of Indiana, Indianapolis, granted permission to interview JOHNNIE LEE BULLOCK since BULLOCK had already been appointed counsel.

On February 28, 1975, BULLOCK was arraigned in U. S. District Court, Terre Haute Division, Terre Haute, Indiana, before the Honorable Judge CALE J. HOLDER at which time BULLOCK entered a plea of guilty.

Judge DILLIN deferred sentenceing until the outcome of the Interstate Transportation of Stolen Motor Vehicle viola- tion was resolved. Judge DILLIN indicated that he saw no reason why this case should be prosecuted in the Louisville, Kentucky Division and that if all parties involved were willing he would handle this matter at time of sentencing.

On February 28, 1975, permission was obtained from BULLOCK's court appointed attorney NORMAN L. LOWEY to interview BULLOCK regarding the theft of a 1967 Ford from the State of Indiana that was transported to the State of Kentucky.

4

FD-302 (REV. 11-27-70)

FEDERAL BUREAU OF INVESTIGATION

1

Date of transcription _____ 3/10/75

      JOHNNIE LEE BULLOCK was interviewed at the Terre Haute Resident Agency of the Federal Bureau of Investigation, Terre Haute, Indiana, in the presence of [                    ] U. S. Marshal, Southern District of Indiana, Indianapolis, Indiana, and BULLOCK's attorney, NORMAN L. LOWERY. BULLOCK was advised of his rights as set out on the "Interrogation: Advice of Rights" form by Special Agent [              ] BULLOCK stated he understood his rights, wanted his attorney present during interview, and signed said form. BULLOCK then provided the following information:

      At the time of his arrest on December 3, 1974, he was driving a 1962 Thunderbird which BULLOCK stated he bought from his sister. BULLOCK stated he did not know what happened to this Thunderbird after his arrest since it was left in the Kentucky area.

      BULLOCK denied stealing a 1967 Ford, 2-door hardtop, metallic green in color with a loud exhaust system, bearing 1974 Indiana License 77B824 on November 23, 1974, during his escape status. BULLOCK stated that he did not steal this car nor did he know who stole the car.

      BULLOCK stated that he had no idea how this 1967 Ford came to be located in the area that he was arrested in Sand Springs, Kentucky.

      When asked by interviewing agent if he remembered talking to an individual, near some railroad tracks, on November 21, 1974, who was hunting, BULLOCK stated that he talked to several individuals while he was in an escape status but did seem to recall asking directions of an individual who had been hunting.

      When asked by interviewing agent how BULLOCK got from the U. S. Penitentiary Farm Camp, Terre Haute, Indiana, to Sand Springs, Kentucky, BULLOCK declined to answer.

      BULLOCK was then transported back to the U. S. Penitentiary, Terre Haute, Indiana, by interviewing agent and U. S. Marshal, [          ]

b6 -1, 4
b7C -1, 4

Interviewed on ____2/28/75____ at ___Terre Haute, Indiana___ File # __IP 76-5089__

by SAs [                              ] Date dictated ____3/5/75____
TLP-jsn

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

\_\_2\_\_ Page(s) were not considered for release as they are duplicative of \_Bullock 29-30.\_

_____ Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

```
XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX
```

XXXXXX
XXXXXX

Bullock 32-33

Case 1:07-cv-01018-ESH    Document 12-3    Filed 03/24/2008    Page 117 of 318

FD-263 (Rev. 1-7-72)

# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD |
|---|---|---|---|
| INDIANAPOLIS | INDIANAPOLIS | 3/27/75 | 3/17/75 |

| TITLE OF CASE | REPORT MADE BY | TYPED BY |
|---|---|---|
| JOHNNIE LEE BULLOCK | | —ksm |
| | CHARACTER OF CASE | |
| | EFP — ITSMV | b6 —1<br>b7C —1 |

REFERENCE:    Indianapolis report of SA [                ] 3/7/75;
Indianapolis telephone call to Louisville, 3/17/75.

- C -

## ADMINISTRATIVE

Final Disposition Report (R-84) being submitted separately.

Louisville Division advised no material evidence obtained to place BULLOCK in stolen 1967 Ford bearing 1974 Indiana license 77B824. Louisville Division not presenting this matter to U. S. Attorney's Office, Louisville Division.

Due to lack of material evidence re ITSMV violation U. S. District Court Judge S. HUGH DILLIN not advised of facts at

| ACCOMPLISHMENTS CLAIMED | | | | | ☐ NONE | ACQUIT-TALS | CASE HAS BEEN: | | |
|---|---|---|---|---|---|---|---|---|---|
| CONVIC. | FUG. | FINES | SAVINGS | RECOVERIES | | | PENDING OVER ONE YEAR ☐ YES ☒ NO | | |
| 1-IP | | | | | | | PENDING PROSECUTION OVER SIX MONTHS ☐ YES ☒ NO | | |

| APPROVED | SPECIAL AGENT IN CHARGE | DO NOT WRITE IN SPACES BELOW |
|---|---|---|

COPIES MADE:

2 - Bureau (76-51525)
1 - USA, Indianapolis
1 - Louisville (76-4443) (Info)
1 - Indianapolis (76-5089)

Ice report to Bureau of Prisons
by O-6 [          ] 4/4/75
(initials)

RE0 35

EX 104

15 MAR 31 1975

FUG/SUP.
DATA PROC

| Dissemination Record of Attached Report | | | | | Notations |
|---|---|---|---|---|---|
| Agency | | | | | |
| Request Recd. | | | | | |
| Date Fwd. | | | | | |
| How Fwd. | | | | | |
| By | | | | | |

5 0 APR 25 1975

COVER PAGE

BULLOCK-34

IP 76-5089

time of sentencing for escape.

B*
(COVER PAGE)

BULLOCK-35

FD-204 (Rev. 3-3-59)

# UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION

Copy to: 1 – USA, Indianapolis (ATTENTION: AUSA JOHN L. HUDGINS)

| | |
|---|---|
| Report of: | Office: **INDIANAPOLIS** |
| Date: **March 27, 1975** | |
| Field Office File #: **76-5089** | Bureau File #: **76-51525** |

Title: **JOHNNIE LEE BULLOCK**

Character: ESCAPED FEDERAL PRISONER – INTERSTATE TRANSPORTATION OF STOLEN MOTOR VEHICLE

Synopsis: On 3/17/75, JOHNNIE LEE BULLOCK sentenced by USDCJ S. HUGH DILLIN, SDI, Terre Haute, Indiana, to 60 days consecutive for his escape from the U. S. Farm Camp, Terre Haute, on 11/18/74.

- C -

DETAILS:

On March 17, 1975, JOHNNIE LEE BULLOCK appeared in United States District Court, Southern District of Indiana, Terre Haute, Indiana, before the Honorable United States District Court Judge S. HUGH DILLIN. Judge DILLIN sentenced BULLOCK to 60 days to run consecutive to his existing sentence for BULLOCK's escape from the United States Farm Camp, Terre Haute, Indiana, on November 18, 1974.

–1*–

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

U. S. GOVERNMENT PRINTING OFFICE : 1970 O - 406-840

BULLOCK-36

OPCA-20 (12-3-96)

<div align="right">
XXXXXX<br>
XXXXXX<br>
XXXXXX
</div>

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

___1___    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C)-2 | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒b)(6)-2 | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____    Page(s) were not considered for release as they are duplicative of _____

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

<div align="right">
XXXXXXXXXXXXXXXXXXX<br>
X    Deleted Page(s)    X<br>
X    No Duplication Fee    X<br>
X    for this page    X<br>
XXXXXXXXXXXXXXXXXXX
</div>

XXXXXX
XXXXXX                    Bullock-37

b7A

b6 -1
b7C -1

FD-350 (Rev. 5-8-81)

(Mount Clipping in Space Below)

(Indicate page, name of newspaper, city and state.)

The Sentinel Echo
London, KY

Date. 04/18/2001
Edition

Title "10 Indicted for Rockcastle
        Methamphetamine Operation"

Character
   or         245F-LS-64574
Classification:
Submitting Office    London RA

Indexing

# 10 indicted for Rockcastle methamphetamine operation

BY NITA JOHNSON
STAFF WRITER

Ten people were indicted in U.S. District Court in London on Monday for an alleged scheme to make and distribute methamphetamine.

The indictment names Troy Kirby, James Earl Gray, Johnny Lee Bullock, Phillip Kirby, Jennifer Kirby, Jonathan Cromer, Jason Bullock, Brian Pittman, Gary Elliott, and William Baker for allegedly planning to manufacture and distribute more than 500 grams of methamphetamine in Rockcastle County between January 2000 and April 2001. They are also charged with possessing with the intent to distribute methamphetamine, OxyContin, and marijuana, as well as possession of pseudoephedrine,

which is used to manufacture methamphetamine.

Troy Kirby was also charged with being a convicted felon in possession of a firearm and possessing an unregistered firearm. Jonathan E. Cromer, Phillip Kirby, and Troy Kirby are also named in forfeiture charges over $13,000.

If convicted of the charges, the maximum penalties could include life imprisonment, a $4 million fine, or both; and supervised release of up to five years.

The investigation preceding the indictment was conducted by the Kentucky State Police, the Bureau of Alcohol, Tobacco, and Firearms, the Drug Enforcement Administration, and the Federal Bureau of Investigation. Assistant United States Attorney Stephen C. Smith presented the case to the federal grand jury.

b6 -1
b7C -1

UPV.

BULLOCK-39

245F-LS-64574-340

F81/00J

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**



b6 -1, 2, 4, 6
b7C -1, 2, 4,
b7D -1
b7F

b7A

b6 -1, 2, 3
b7C -1, 2, 3
b7D -1
b7F

b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

BULLOCK-40

FD-302a (Rev. 10-6-95)



b6 -2
b7C -2
b7D -1
b7F

b6 -2, 3
b7C -2, 3
b7D -1
b7F

b6 -2, 3
b7C -2, 3
b7D -1
b7F

b7A

b6 1, 2, 3
b7C -1, 2, 3
b7D -1
b7F

BULLOCK-41

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

b7A

b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

BULLOCK-42

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**



b6 -2
b7C -2

b7A

b6 -1, 4, 6
b7C -1, 4,

Inves

File

by

b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

BULLOCK-43

b7A

b6 -6
b7C -6

b6 -1, 2
b7C -1, 2

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**



b6 -1, 2, 6
b7C -1, 2, 6
b7D -1
b7F

b7A

b6 -1, 2, 3, 6
b7C -1, 2, 3, 6
b7D -1
b7F

b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)



b6 -2
b7C -2
b7D -1
b7F

b6 -2, 3
b7C -2, 3
b7D -1
b7F      b7A

b6 -2, 3, 5
b7C -2, 3,
b7D -1
b7F

BULLOCK-46

FD-302a (Rev. 10-6-95)



b6 -2, 3
b7C -2, 3
b7D -1
b7F

b6 -2, 3
b7C -2, 3
b7D -1
b7F

b7A

BULLOCK-47

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**



b6 -1, 2, 3, 4, 6
b7C -1, 2, 3, 4, 6
b7D -1
b7F

b7A

b6 -1, 2
b7C -1, 2
b7D -1
b7F

b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

BULLOCK-48

FD-302a (Rev. 10-6-95)



b6 -2, 3
b7C -2, 3
b7D -1
b7F

b7A

b6 -2, 3
b7C -2, 3
b7D -1
b7F

BULLOCK-49

FD-302a (Rev. 10-6-95)



b6 -2
b7C -2
b7D -1
b7E

b7A

b6 -2, 3
b7C -2, 3
b7D -1
b7E

BULLOCK-50

FD-302a (Rev. 10-6-95)

b7A

b6 -2, 3
b7C -2, 3
b7D -1
b7F

BULLOCK-51

PD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**



b7A

b6 -1, 2, 5, 6
b7C -1, 2, 5, 6
b7D -2
b7F

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

BULLOCK-52

FD-302a (Rev. 10-6-95)



b6 -2
b7C -2
b7D -2
b7F

b7A

b6 -1, 2, 3
b7C -1, 2, 3
b7D -2
b7F

BULLOCK-53

FD-302a (Rev. 10-6-95)



b6 -2
b7C -2
b7D -2
b7F

b7A

b6 -2
b7C -2
b7D -2
b7F

BULLOCK-54

FD-302 (Rev. 10-6-95)

- 1 -

### FEDERAL BUREAU OF INVESTIGATION



b6 -1, 2
b7C -1, 2
b7D -1
b7F

b7A

b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

BULLOCK-55

FD-302a (Rev. 10-6-95)



*defendant*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

UNITED STATES OF AMERICA

V.                                SUPERCEDING INDICTMENT NO. 1-21-SS

TROY KIRBY
JAMES EARL GRAY
JOHNNY LEE BULLOCK
PHILLIP KIRBY
JENNIFER KIRBY
JONATHAN CROMER
JASON BULLOCK
BRIAN PITTMAN
GARY ELLIOTT
WILLIAM BAKER

Eastern D. ..... of Kentucky
F I L E D

JUL 2 6 2001

AT LONDON
LESLIE G WHITLER
CLERK US DISTRICT COURT

* * * * * * * * * *

<u>COUNT 1</u>
[T. 21 U.S.C. § 846]

THE GRAND JURY CHARGES:

That beginning on a day in January, 2000, the exact date unknown, through April 4, 2001, in Rockcastle County, in the Eastern District of Kentucky, and elsewhere,

TROY KIRBY,
JAMES EARL GRAY,
JOHNNY LEE BULLOCK,
PHILLIP KIRBY,
*JENNIFER KIRBY,*
JONATHAN CROMER,
JASON BULLOCK,
BRIAN PITTMAN,
GARY ELLIOTT, and
WILLIAM BAKER,

defendants herein, did conspire with other persons known and

1

BULLOCK-57

unknown to the Grand Jury to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally manufacture over 500 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

<u>COUNT 2</u>
[T. 21 U.S.C. § 846]

**THE GRAND JURY FURTHER CHARGES:**

That beginning on a day in January, 2000, the exact date unknown, through April 4, 2001, in Rockcastle County, in the Eastern District of Kentucky, and elsewhere,

TROY KIRBY,
JAMES EARL GRAY,
JOHNNY LEE BULLOCK,
PHILLIP KIRBY,
JENNIFER KIRBY,
JONATHAN CROMER,
JASON BULLOCK,
BRIAN PITTMAN,
GARY ELLIOTT, and
WILLIAM BAKER,

defendants herein, did conspire with other persons known and unknown to the Grand Jury to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally possess with intent to distribute and to distribute over 500 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

BULLOCK-58

2

## COUNT 3
[T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about March 2, 2000, in Rockcastle County, in the Eastern District of Kentucky,

### JONATHAN E. CROMER,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 17.31 grams of methamphetamine, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT 4
[T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about March 2, 2000, in Rockcastle County, in the Eastern District of Kentucky,

### JONATHAN E. CROMER,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 95 tablets of Oxycontin, a Schedule II controlled substance, as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

BULLOCK-59

3

## COUNT 5
### [T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about March 2, 2000, in Rockcastle County, in the Eastern District of Kentucky,

### JONATHAN E. CROMER,

defendant herein, did knowingly and intentionally possess with the intent to distribute a measurable quantity of marijuana, a Schedule I controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT 6
### [T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about March 3, 2000, in Rockcastle County, in the Eastern District of Kentucky,

### JONATHAN E. CROMER,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 14 tablets of Oxycontin, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

BULLOCK-60

4



COUNT 7
[T. 21 U.S.C. § 846]
[T.18 U.S.C. § 2]

**THE GRAND JURY FURTHER CHARGES:**

That on or about October 11, 2000, in Rockcastle County, in the Eastern District of Kentucky,

**TROY KIRBY,**
**JAMES EARL GRAY, and**
**JENNIFER KIRBY,**

defendants herein, aided and abetted by each other, did attempt to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally manufacture approximately 360 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

COUNT 8
[T. 18 U.S.C. § 922(g)(1)]
[T. 18 U.S.C. § 924(a)(2)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about October 11, 2000 in Rockcastle County, in the Eastern District of Kentucky,

**TROY KIRBY,**

defendant herein, having been convicted of a crime punishable by imprisonment for a term exceeding one year, as defined by Title 18, United States Code, Section 921(a)(20), did knowingly possess in and affecting commerce the following firearm, that is, a Norinco

BULLOCK-61

5

7.62 mm caliber, SKS semi-automatic rifle, Serial Number 1503334;
all in violation of Title 18, United States Code, Sections
922(g)(1) and 924(a)(2).

## COUNT 9
[T. 18 U.S.C. § 922(g)(3)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about October 11, 2000, in Rockcastle County,
Kentucky, in the Eastern District of Kentucky,

### JAMES EARL GRAY,

defendant herein, while an unlawful user of a controlled substance,
as listed in Title 21, United States Code, Section 812, did
knowingly possess in and affecting commerce the following firearms,
that is, a CZ, model VZOR 70, 7.65 caliber pistol, serial number
705949; a Smith & Wesson, model 60, .38 caliber revolver, serial
number R55737; a Sig-Sauer, Model P226, 9mm semi-automatic handgun,
serial number 358763; a Carcano, model 1891, 6.5 caliber rifle,
serial number L440; a Winchester model 1912, 12 gauge shotgun,
serial number 140091; and a Smith and Wesson, model SW380, .380
caliber semi-automatic handgun, serial number RAJ6358; which had
been shipped and transported in interstate commerce; all in
violation of Title 18, United States Code, Section 922(g)(3).

## COUNT 10
[T. 18 U.S.C. § 922(g)(1)]
[T. 18 U.S.C. § 924(a)(2)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about October 11, 2000, in Rockcastle County,

6

Kentucky, in the Eastern District of Kentucky,

## JAMES EARL GRAY,

defendant herein, having been convicted of a crime punishable by imprisonment for a term exceeding one year, as defined by Title 18, United States Code, Section 921(a)(20), did knowingly possess in and affecting commerce the following firearm, that is, a CZ, model VZOR 70, 7.65 caliber pistol, serial number 705949; a Smith & Wesson, model 60, .38 caliber revolver, serial number R55737; a Sig-Sauer, Model P226, 9mm semi-automatic handgun, serial number 358763; a Carcano, model 1891, 6.5 caliber rifle, serial number L440; a Winchester model 1912, 12 gauge shotgun, serial number 140091; and a Smith and Wesson, model SW380, .380 caliber semi-automatic handgun, serial number RAJ6358; which had been shipped and transported in interstate commerce; all in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## COUNT 11
[T. 21 U.S.C. § 846]
[T.18 U.S.C. § 2]

**THE GRAND JURY FURTHER CHARGES:**

That on or about October 18, 2000, in Rockcastle County, in the Eastern District of Kentucky,

## PHILLIP KIRBY
## and
## JENNIFER KIRBY,

BULLOCK-63

defendants herein, aided and abetted by each other, did attempt to commit an offense defined in Title 21, United States Code, Section

7

841(a)(1), that is, to knowingly and intentionally manufacture approximately 65 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

### COUNT 12
[T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about December 7, 2000, in Rockcastle County, in the Eastern District of Kentucky,

#### JOHNNY LEE BULLOCK,

defendant herein, did knowingly and intentionally possess with the intent to distribute and did distribute approximately 7 grams of methamphetamine, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

### COUNT 13
[T.21 U.S.C. § 841(d)(2)]
[T.18 U.S.C. § 2]

**THE GRAND JURY FURTHER CHARGES:**

That on or about January 1, 2001, in Rockcastle County, in the Eastern District of Kentucky, and elsewhere,

#### JASON BULLOCK
and
BRIAN PITTMAN,

defendants herein, aided and abetted by each other, did knowingly and intentionally possess approximately 131 grams of pseudoephedrine, a list (1) chemical under 21 C.F.R. §1310.04,

8

BULLOCK-64

knowing or having reasonable cause to believe that the pseudoephedrine, list (1) chemical, will be used to manufacture a controlled substance, as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT 14
[T.21 U.S.C. § 841(d)(2)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about January 3, 2001, in Rockcastle County, in the Eastern District of Kentucky, and elsewhere,

### JASON BULLOCK,

defendant herein, did knowingly and intentionally possess approximately 457 grams of pseudoephedrine, a list (1) chemical under 21 C.F.R. §1310.04, knowing or having reasonable cause to believe that the pseudoephedrine, list (1) chemical, will be used to manufacture a controlled substance, as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT 15
[T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about January 16, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### JOHNNY LEE BULLOCK,

defendant herein, did knowingly and intentionally possess with the

9

intent to distribute and did distribute approximately 14 grams of methamphetamine, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

### COUNT 16
### [T. 21 U.S.C. § 841(a)(1)]

THE GRAND JURY FURTHER CHARGES:

That on or about January 23, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### JOHNNY LEE BULLOCK,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 10.7 grams of methamphetamine, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

### COUNT 17
### [T. 21 U.S.C. § 846]
### [T. 18 U.S.C. § 2]

THE GRAND JURY FURTHER CHARGES:

That on or about February 12, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### TROY KIRBY,
### GARY ELLIOT, and
### WILLIAM BAKER,

defendants herein, aided and abetted by each other, did attempt to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally manufacture

10

approximately 188 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

### COUNT 18
[T. 26 U.S.C. § 5861(d)]
[T. 26 U.S.C. § 5845(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about February 12, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### WILLIAM BAKER,

defendant herein, did knowingly possess a firearm which is not registered in the National Firearms Registration and Transfer Record, to wit, a .22 caliber rifle, serial number B313941; all in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(1).

### COUNT 19
[T. 26 U.S.C. § 5861(d)]
[T. 26 U.S.C. § 5845(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about February 12, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### TROY KIRBY,

defendant herein, did knowingly possess a firearm which is not registered in the National Firearms Registration and Transfer Record, to wit, a .22 caliber rifle, serial number B313941; all in violation of Title 26, United States Code, Sections 5861(d) and

11

5845(a)(1).

## COUNT 20
### [T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about February 26, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### PHILLIP KIRBY,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 60 capsules of Tylox, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT 21
### [T. 21 U.S.C. § 846]
### [T. 18 U.S.C. § 2]

**THE GRAND JURY FURTHER CHARGES:**

That on or about April 4, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### TROY KIRBY
### and
### JENNIFER KIRBY,

defendants herein, aided and abetted by each other, did attempt to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally manufacture approximately 8 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812;

12

all in violation of Title 21, United States Code, Section 846.

## COUNT 22
[T. 21 U.S.C. § 853]

**THE GRAND JURY FURTHER CHARGES:**

In committing one or more of the felony offenses alleged in Counts 1-6 of this Indictment, which are punishable by imprisonment for more than one year, JONATHAN E. CROMER used and intended to use the below-described property to commit and facilitate the said controlled substance violations, and the below described property constitutes and is derived from proceeds obtained directly or indirectly as a result of the commission of the aforesaid violations of Title 21, United States Code, Sections 841(a)(1)and 846, including but not limited to the following:

CURRENCY:

1.    One thousand five hundred twenty-five dollars ($1,525.00).

2.    Nine thousand one hundred seventy-seven dollars ($9,177.00).

By virtue of the commission of one or more of the felony offenses charged in this indictment by the defendant, JONATHAN E. CROMER, any and all interest JONATHAN E. CROMER has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 21, United States Code, Section 853.

13

BULLOCK-69

## COUNT 23
[T. 21 U.S.C. § 853]

**THE GRAND JURY FURTHER CHARGES:**

In committing one or more of the felony offenses alleged in Counts 1, 2, and 20 of this Indictment, which are punishable by imprisonment for more than one year, **PHILLIP KIRBY** used and intended to use the below-described property to commit and facilitate the said controlled substance violation, and the below described property constitutes and is derived from proceeds obtained directly or indirectly as a result of the commission of the aforesaid violations of Title 21, United States Code, Sections 841(a)(1) and 846, including but not limited to the following:

**CURRENCY:**

One thousand seven hundred eighty-eight dollars ($1,788.00).

By virtue of the commission of one or more of the felony offenses charged in this indictment by the defendant, **PHILLIP KIRBY,** any and all interest **PHILLIP KIRBY** has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 21, United States Code, Section 853.

## COUNT 24
[T. 21 U.S.C. § 853]

**THE GRAND JURY FURTHER CHARGES:**

In committing one or more of the felony offenses alleged in Counts 1, 2, 17 and 21 of this Indictment, which are punishable by imprisonment for more than one year, **TROY KIRBY** used and intended

14

BULLOCK-70

to use the below-described property to commit and facilitate the said controlled substance violations, and the below described property constitutes and is derived from proceeds obtained directly or indirectly as a result of the commission of the aforesaid violations of Title 21, United States Code, Sections 841(a)(1) and 846, including but not limited to the following:

**CURRENCY:**

Six hundred eighty-two dollars ($682.00).

By virtue of the commission of one or more of the felony offenses charged in this indictment by the defendant, **TROY KIRBY**, any and all interest **TROY KIRBY** has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 21, United States Code, Section 853.

A TRUE BILL

_____

FOREPERSON

APPROVED:

FRANCES E. CATRON
UNITED STATES ATTORNEY

15                     BULLOCK-71

## PENALTIES

Counts 1 & 2:
     NL than 10 years, NM than life in prison/ $4,000,000 fine/
     both/ term of supervised release of at least 5 years.

     If prior conviction: NL than 20 years, NM than life in prison/
     $8,000,000 fine/ both/ term of .supervised release of at least
     10 years.

Count 3:
     NM than 5 years in prison/$250,000 fine/both/term of
     supervised release of at least 2 years.

     If prior conviction: NM than 10 years in prison/$500,000
     fine/both/term of supervised release of least 4 years.

Counts 4, 6, 12, 20, & 21:
     NM than 20 years in prison/$1,000,000 fine/both/term of
     supervised release of at least 3 years.
     If prior conviction: NM than 30 years in prison/$2,000,000
     fine/both/term of supervised release of at least 6 years.

Count 5:
     NM than 5 years in prison/$250,000 fine/both/term of
     supervised release of NL than 2 years.
     If prior conviction: NM 10 years in prison/$500,000
     fine/both/term of supervised release of NL 4 years.

Counts 13 & 14
     NM than 20 years in prison/$250,000 fine/both.

Counts 7, 11, 15, 16, & 17:
     NL than 5 years, NM than 40 years in prison/$2,000,000
     fine/both/term of supervised release of at least 4 years.

     If prior conviction: NL than 10 years, NM than life in
     prison/$4,000,000 fine/both/term of supervised release of at
     least 8 years.

Counts 8, 9, 10, 18, & 19:
     NM than 10 years in prison/$250,000.00 fine/both/term of
     supervised release of NL than 3 years.

Count 22, 23, & 24:
     Forfeiture of all listed assets.

**Plus:**    Mandatory Special Assessment of $100.00 on each count.

BULLOCK-72

FD-515 (Rev 8-1-00)

**Accomplishment Report**
(Accomplishment must be reported and loaded into ISRAA within 30 days from date of accomplishment)

Squad supervisor approval (please initial)

Date Prepared 01-17-02
Date Loaded 01-17-02
Data Loader's Initials

**Accomplishment involves** (check all that apply)

| | |
|---|---|
| Drugs | ☒ |
| A Fugitive | ☐ |
| Bankruptcy Fraud | ☐ |
| Computer Fraud/Abuse | ☐ |
| Corruption of Public Officials | ☐ |
| Money Laundering | ☐ |
| Sub invest Asst by FO (s) | ☐ |

Asst FO(s) ___ ___ ___ ___
A, B, C, D

Task Force
HIDTA

Assisting Agencies x●
1. FEDERAL/STATE
2. LOCAL

**File Number**
245F-LS-64574

Stat Agent Soc. Sec. No

Stat Agent Name

| RA | Squad |
|---|---|
| LONDON | 2170 |

Assisting Agents Soc Sec No x

1 ___
Name

2 ___
Name

b6 -1
b7C -1

**Investigative Assistance or Technique Used**

1-Used, but did not help    3- Helped, substantially
2- Helped, minimally    4 - Absolutely essential
For Sub Invest Assist by other FO (s) indicate A,B,C,D for corresponding FO

| | Rate FO | IAT | | Rate FO | IAT | | Rate FO | IAT | | Rate FO | IAT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Fin Analyst | | | Lab Div Exam | | | UCO - Group I | | | Ft Mon - ITC | | |
| Aircraft Asst | | | Lab Field Sup | | | UCO - Group II | | | For Lang Asst | | |
| Computer | | | Pen Registers | | | UCO - Nat Back | | | Non FBI Lab Ex | | |
| Consen Mon | | | Photo Cover | | | NCAVC / VI - CA | | | Vict-Witn Coor | | |
| Elsur / FISC | | | Polygraph | | | Crim/NS Intel Ass | | | IO Wanted Flyer | | |
| Elsur / T III | | | Search Warrant | | | Criss Neg - Fed | | | SARs | | |
| Eng Field Spt | | | Show Money | | | Criss Neg - Loca | | | CART | | |
| Eng Tape Ex | | | SOG Asst | | | ERT Asst | | | | | |
| Legats Asst | | | Swat Team | | | Butte - ITC | | | | | |
| Evid Purchase | | | Tech Ag/Equip | | | Sav - ITC | | | | | |
| Int/CW Info | | | Phone Toll Req | | | Poc - ITC | | | | | |

b2 -1
b7E

**A. Complaint / Information / Indictment**
☐ Federal  ☐ Local  ☐ International
Complaint Date: _____
Check if Civil Rico Complaint ☐
Information Date: _____
Indictment Date: _____

**B. Locate/ Arrest**
☐ Federal  ☐ Local  ☐ International
Subject Priority: ☐ A  ☐ B  ☐ C
Locate Date: _____
Arrest Date: _____
☐ Subject Resisted Arrest
☐ Subject Arrested was Armed

**C. Summons Date:** _____
☐ Federal  ☐ Local

**D. Recovery/Restitution/PELP X**
☐ Federal  ☐ Local  ☐ International
Recovery Date: _____
Code ● ✓ Amount $_____
Restitution Date: _____
☐ Court Ordered  ☐ Pretnal Diversion
Code ● ✓ Amount $_____
PELP Date: _____
Code ● ✓ Amount $_____

**E. Hostage(s) Released Date:** _____
Released by: ☐ Terrorist  ☐ Other
Number of Hostages: _____
Child Located Date: _____

**F. Conviction**
☒ Federal  ☐ Local  ☐ International
Conviction Date: 1/16/2002
Subject Description Code: 8A ●( )●
For 6F, G, H-Include Agency Code
☒ Felony  or  ☐ Misdemeanor
☐ Plea  or  ☒ Trial
State: KY  Judicial District: EASTERN

**G. U.S. Code Violation**
Required for sections A,B,F,and J
(Federal Only)

| Title | Section | # Counts |
|---|---|---|
| 21 | 846 | |
| 21 | 841(a) | 3 |

**H. Sentence Date:** _____
Sentence Type: _____
In Jail _____ Years _____ Months _____
Suspended _____ Years _____ Months _____
Probation _____ Years _____ Months _____
Fines: $_____

**I. Disruption/Dismantlement:**
Disruption Date: _____
Dismantlement Date: _____
Completion of FD-515a Side 2 Mandatory

**J. Civil Rico Matters Date:** _____
Also Complete "Section G"
Other Civil Matters Date: _____
Judgment ___ ___ ___ ●
Judicial Outcome ___ ___ ___ ●x
Amount $_____
Suspension. Years _____ Months _____

**K. Administrative Sanction Date:** _____
Subject Description Code _____ ●
Type       Length:
☐ Suspension  ☐ Permanent
☐ Debarment _____ or
☐ Injunction _____ Year _____ Months
☐ _____

**L. Asset Seizure Date:** _____
Asset Forfeiture Date: _____
CATS # Mandatory _____
Check one of the three:
☐ Asset Forfeiture - Administrative
☐ Asset Forfeiture - Civil Judicial
☐ Asset Forfeiture - Criminal
Do not indicate $ value in Section D

**M. Acquittal / Dismissal / Pretrial Diversion**
Acquittal Date: _____
Dismissal Date: _____
Pretnal Diversion Date: _____

**N. Subject Information** (Required for all Sections excluding Section D (Recovery/PELP), Section E (Hostage), Section I, and Section L).

| Name | Race ● | Sex | Date of Birth | Social Security No (if available) |
|---|---|---|---|---|
| JOHNNY LEE BULLOCK | W | M | 5/23/4? | 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 |

For Indictments/Convictions only
☐ Subject related to an LCN, Asian Organized Crime (AOC), Italian Organized Crime (IOC), Russian/Eastern European, Caribbean, or Nigerian Organized Crime Group - Complete FD-515a, Side 1 Blocks A-E mandatory, F-H as appropriate
☐ Subject related to an OC/Drug Organization, a VCMO Program National Gang Strategy target group, or a VCMO Program National Priority Initiative target group - Complete FD-515a, Side 1 Blocks A-C only

x  Additional information may be added by attaching another form or a plain sheet of paper for additional entries
●  See codes on reverse side
✓  Requires that an explanation be attached and loaded into ISRAA for recovery over $1m and PELP over $5m

**Serial No of FD-515**
394

BULLOCK-73

**For Further Instructions See: MAOP, Part ? Sections 3-5 thru 3-5.3.**

## PROPERTY CODES

| | |
|---|---|
| 01 | Cash |
| 02 | Stocks, Bonds or Negot. Instruments |
| 03 | General Retail Merchandise |
| 04 | Vehicles |
| 05 | Heavy Machinery & Equipment |
| 06 | Aircraft |
| 07 | Jewelry |
| 08 | Vessels |
| 09 | Art, Antiques or Rare Collections |
| 11 | Real Property |
| 20 | All Other |

## SENTENCE TYPES

| | |
|---|---|
| CP | Capital Punishment |
| JS | Jail Sentence |
| LP | Life Parole |
| LS | Life Sentence |
| NS | No Sentence (Subject is a Fugitive, Insane, has Died, or is a Corporation) |
| PB | Probation |
| SJ | Suspension of Jail Sentence |
| YC | Youth Correction Act |

## PELP CODES

| | |
|---|---|
| 22 | Counterfeit Stocks/Bonds/Currency/ Negotiable Instruments |
| 23 | Counterfeit/Pirated Sound Recordings or Motion Pictures |
| 24 | Bank Theft Scheme Aborted |
| 25 | Ransom, Extortion or Bribe Demand Aborted |
| 26 | Theft From or Fraud Against Government Scheme Aborted |
| 27 | Commercial or Industrial Theft Scheme Aborted |
| 30 | All Other |

## ORGANIZED CRIME SUBJECTS

| | |
|---|---|
| 1F | Boss |
| 1G | Underboss |
| 1H | Consigliere |
| 1J | Acting Boss |
| 1K | Capodecina |
| 1L | Soldier |

## KNOWN CRIMINALS

| | |
|---|---|
| 2A | Top Ten or 10 Fugitive |
| 2B | Top Thief |
| 2C | Top Con Man |

## FOREIGN NATIONALS

| | |
|---|---|
| 3A | Legal Alien |
| 3B | Illegal Alien |
| 3C | Foreign Official W/out Diplomatic Immunity |
| 3D | U N Employee W/out Diplomatic Immunity |
| 3E | Foreign Student |
| 3F | All Others |

## OTHERS

| | |
|---|---|
| 8A | All Other Subjects |
| 8B | Company or Corporation |

## RACE CODES

| | |
|---|---|
| A | Asian/Pacific Islander |
| B | Black |
| I | Indian/American |
| U | Unknown |
| W | White |
| X | Nonindividual |

## AGENCY CODES

| | |
|---|---|
| AFOIS | Air Force Office of Special Investigations |
| ACIS | Army Criminal Investigative Service |
| BATF | Bureau of Alcohol, Tobacco & Firearms |
| BIA | Bureau of Indian Affairs |
| DCAA | Defense Contract Audit Agency |
| DCIS | Defense Criminal Investigative Service |
| DEA | Drug Enforcement Administration |
| DOC | Department of Corrections |
| DOI | Dept of Interior |
| EPA | Environmental Protection Agency |
| FAA | Federal Aviation Administration |
| FDA | Food and Drug Administration |
| HHS | Dept of Health & Human Services |
| HUD | Dept of Housing & Urban Development |
| INS | Immigration and Naturalization Service |
| IRS | Internal Revenue Service |
| NASA | Nat'l Aeronautics & Space Admin |
| NBIS | Nat'l NARC Border Interdiction |
| NCIS | Naval Criminal Investigative Service |
| RCMP | Royal Canadian Mounted Police |
| SBA | Small Business Administration |
| USBP | U S Border Patrol |
| USCG | U S Coast Guard |
| USCS | U S Customs Service |
| USDS | U S Department of State |
| USMS | U S Marshals Service |
| USPS | U S Postal Service |
| USSS | U S Secret Service |
| USTR | U S Treasury |
| LOC | Local |
| CITY | City |
| COUN | County |
| ST | State |
| OTHR | Other |

## SUBJECT DESCRIPTION CODES

## TERRORISTS

| | |
|---|---|
| 4A | Known Member of a Terrorist Organization |
| 4B | Possible Terrorist Member or Sympathizer |

## UNION MEMBERS

| | |
|---|---|
| 5D | President |
| 5E | Vice-President |
| 5F | Treasurer |
| 5G | Secretary/Treasurer |
| 5H | Executive Board Member |
| 5I | Business Agent |
| 5J | Representative |
| 5K | Organizer |
| 5L | Business Manager |
| 5M | Financial Secretary |
| 5N | Recording Secretary |
| 5P | Office Manager |
| 5Q | Clerk |
| 5R | Shop Steward |
| 5S | Member |
| 5T | Trustee |
| 5U | Other |

## JUDGMENT CODES

| | |
|---|---|
| CJ | Consent Judgment |
| CO | Court Ordered Settlement |
| DF | Default Judgment |
| DI | Dismissal |
| JN | Judgment Notwithstanding |
| MV | Mixed Verdict |
| SJ | Summary Judgment |
| VD | Verdict for Defendant |
| VP | Verdict for Plaintiff |

## JUDICIAL OUTCOME

| | |
|---|---|
| AG | Agreement |
| BR | Barred/Removed |
| CC | Civil Contempt |
| DC | Disciplinary Charges |
| FI | Fine |
| PI | Preliminary Injunction |
| PR | Temporary Restraining Order |
| PS | Pre-filing Settlement |
| RN | Restitution |
| SP | Suspension |
| VR | Voluntary Resignation |
| OT | Other |

## SUBJECT PRIORITY

A   Subject wanted for crimes of violence (i e , murder, manslaughter, forcible rape) against another individual or convicted of such a crime in the past five years

B   Subject wanted for crimes involving loss or destruction of property valued in excess of $25,000 or convicted of such a crime in the past five years

C   All other subjects

## GOVERNMENT SUBJECTS
(6F,6G,6H- Include Agency Code)

| | |
|---|---|
| 6A | Presidential Appointee |
| 6B | U S Senator/Staff |
| 6C | U S Representative/Staff |
| 6D | Federal Judge/Magistrate |
| 6E | Federal Prosecutor |
| 6F | Federal Law Enforcement Officer |
| 6G | Federal Employee - GS 13 & Above |
| 6H | Federal Employee - GS 12 & Below |
| 6J | Governor |
| 6K | Lt Governor |
| 6L | State Legislator |
| 6M | State Judge/Magistrate |
| 6N | State Prosecutor |
| 6P | State Law Enforcement Officer |
| 6Q | State - All Others |
| 6R | Mayor |
| 6S | Local Legislator |
| 6T | Local Judge/Magistrate |
| 6U | Local Prosecutor |
| 6V | Local Law Enforcement Officer |
| 6W | Local - All Others |
| 6X | County Commissioner |
| 6Y | City Councilman |

## BANK EMPLOYEES

| | |
|---|---|
| 7A | Bank Officer |
| 7B | Bank Employee |

SENSITIVE / UNCLASSIFIED

b6 -1
b7C -1

| | | |
|---|---|---|
| Case Number: 245F-LS-64574 | Stat Agent Name | Report Date 01/17/2002 |
| Serial No.: | Stat Agent SOC. | Accom Date. 01/16/2002 |

| Does Accomplishment Involve | Assisting Joint Agencies | Assisting Agents SOC | Subject Name |
|---|---|---|---|
| Drugs . . . . . . . . . . . . : Y | ST | | BULLOCK, JOHNNY, LEE |
| A Fugitive. . . . . . . . : N | LOC | | |
| Bankruptcy Fraud. . . . . . : N | DEA | | |
| Computer Fraud/Abuse. . . : N | | | RA    Squad    Task Force |
| Corruption of Public Officials: N | | | ----    -----    ---------- |
| Money Laundering. . . . . . : N | | | LO    LO    HIDTA |

Sub  Invest. Asst by Other FOs:

1 = Used, but did not help
2 = Helped, Minimally
3 = Helped, Substantially
4 = Absolutely Essential

Investigative Assistance or Technique Used
------------------------------------------

| FINAN ANALYST | LAB DIV EXAMS | UCO-GROUP I | FT. MON-NRCSC |
|---|---|---|---|
| AIRCRAFT ASST | LAB FIELD SUP | UCO-GROUP II | FOR LANG ASST |
| COMPUTER ASST | PEN REGISTERS | UCO-OTHER | NON FBI LAB EX |
| CONSEN MONITR | PHOTO COVERGE | NCAVC/VI-CAP | VICT-WITN COOR |
| ELSUR/FISC | POLYGRAPH | CRIM/NS INTEL | IO WANTED FLYR |
| ELSUR/III | SRCH WAR EXEC | CRIS NEG-FED | SARS |
| ENG FIELD SUP | SHOW MONEY | CRIS NEG-LOC | CART |
| ENG TAPE EXAM | SOG ASST | CRT ASST | |
| LEGATS ASST. | SWAT TEAM | BUTTE-ITC | |
| EVIDNCE PURCH | TECH AG/EQUIP | SAVANNAH-ITC | |
| INFORMANT/CW | TEL TOLL RECS | POC-WRCSC | |

b2 -1
b7E

Date of Conviction (MM/DD/YYYY) . . . . . . . . . . .: 01/16/2002
Subject Description Code. . . . . . . . . . . . .: 8A

Federal, Local, or International (F/L/I) . .  . . . .  F
Felony or Misdemeanor (F/M) . . . . . . . . . . . .  F

Plea or Trial (P/T) . . . . . . . . . . . . . . .  T
Judicial State. . . . . . . . . . . . . . . . . : KY
Judicial District . . . . . . . . . . . . . . .: ED

U. S. Code Violation(s)
=======================

| Title | Section | Counts | Form FD-515a |
|---|---|---|---|
| ----- | ------- | ------ | Subject's Role = |
| 21 | 846 | 1 | |
| 21 | 841A1 | 3 | |

Accomplishment Narrative
------------------------

SENSITIVE / UNCLASSIFIED

BULLOCK-75

b7A

b6 −1
b7C −1

b7A



b2 -2
b6 -1
b7C -1

b6 -2
b7C -2

BULLOCK-77

RS207084A

245F-WS-64574-443

b7A



b6 -2
b7C -2

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

__1__    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☒(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3) _____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____    Page(s) were not considered for release as they are duplicative of _____

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX    Bullock-79

b7A



b6 -1
b7C -1

b2 -1
b7E

x  Additional information may be added by attaching another form or a plain sheet of paper for additional entries.
•  See codes on reverse side.
✓  Requires that an explanation be attached and loaded into ISRAA for recovery over $1m and PELP over $5m.

BULLOCK-80

Serial No. of FD-515
458

BULLOCK-81

b7A

b6 -1
b7C -1

b2 -1
b7E

b7A



b2 -2
b6 -1
b7C -1

b6 -2
b7C -2

BULLOCK-83

RS20927B

245F-LS-64574-4l6

b7A



b6 -2
b7C -2

b7A



b6 -2
b7C -2

b6 -2
b7C -2

R-84 (Rev. 08-31-1999)                    **FINAL DISPOSITION REPORT**                    Leave Blank

Note: This vital report must be prepared on each individual whose arrest fingerprints have been forwarded to the FBI Criminal Justice Information Services Division without final disposition noted thereon. If no final disposition is available to arresting agency, complete left side and forward the form when case referred to prosecutor and/or courts. Agency on notice as to final disposition should complete this form and submit to: **FBI, CJIS Division, Clarksburg, WV 26306.**
(See instructions on reverse side)

| FBI No. | Final Disposition & Date (If convicted or subject pleaded guilty to lesser charge, include this modification with disposition.) |
|---|---|
| **Name on fingerprint Card Submitted to FBI** Last    First    Middle | Arrest: 1/23/2001 Indictment: 2/22/2001 Conviction by trial: 1/16/2002 Sentence: 9/10/2002 |
| Bullock Johnny Lee | |
| Date of Birth 05/23/1947    Sex  M | 19 years, 7 months incarceration 5 years supervised release $400.00 special assessment |
| Henry Fingerprint Classification From FBI 1-B Response | Final Disposition Date:    09/10/2002 |
| State Bureau No. (SID) | Social Security No. (SOC) 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 | This Form Submitted By: (Name, Title, Agency, ORI No., City & State) |
| Contributor of Fingerprints (Include complete name and location of agency together with ORI number.) Federal Bureau of Investigation 201 County Extension Road London, Kentucky 40741 606-878-8922 ORI No.:  KYFBILSOO | | J. Stephen Tidwell Special Agent in Charge Federal Bureau of Investigation Louisville, KY |
| | | 9/30/02 Signature    Date |
| | | Special Agent in Charge Title |
| **Arrest No. (OCA)** 245F-LS-64574 | **Date Arrested or Received** 01/23/2001 | ☐ COURT ORDERED EXPUNGEMENT: Certified or Authenticated Copy of Court Order Attached. |

Offenses Charged at Arrest
Title 21 U.S.C. 841 (a) (1)

Possession with the intent to
distibute and distribution of methamphetamine.

1 - Bureau
3 - Louisville ①- 245F-LS-64574)
    (1 - LS NCIC Operator)
    (1 - Case Agent)
TSB:tsb
RS20A2MF

BULLOCK-86

245F-LS-64574-472

b7A

b6 -1
b7C -1

b6 -1
b7C -1

BULLOCK, JOHNNY          BULLOCK, JOHNNY L          BULLOCK-87
BULLOCK, JOHNNY LEE      BULLOCK, LEE
BULLOCK, LEE

BULLOCK-88

b7A

BULLOCK-89

BULLOCK-90

b7A

b6 -1
b7C -1

BULLOCK-91

b7A

BULLOCK-92

b7A

BULLOCK-93

D-7A

BULLOCK-94

BULLOCK-95

b6 -1
b7C -1

BULLOCK-96

b7A



b6 -1
b7C -1

b6 -2
b7C -2

BULLOCK-97

RS2675G

245F-LS-64574-515

(Rev. 01-31-2003)

b7A

FEDERAL BUREAU OF INVESTIGATION

b2 -2
b6 -1
b7C -1

b6 -2
b7C -2

RS20119B

(Rev. 01-31-2003)

b7A

b2 -2
b6 -1
b7C -1

b6 -2
b7C -2

BULLOCK-99

Tim.EC

245 F-LS-64574-525

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file. One or more of the following
statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable
material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request
or the subject of your request is listed in the title only.

▣  Document(s) originated with another Government agency(ies). These documents were
referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be
advised by the FBI as to the releasability of this information following our consultation with the
other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be
advised as to the disposition at a later date.

_____    Page(s) were not considered for release as they are duplicative of _____

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX

XXXXXX                    Bullock-100

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION



b7A

b2 -2
b6 -1
b7C -1

b6 -2
b7C -2

BULLOCK-101

RS71202A

245F-LS-64574-527

b7A



b2 -2
b6 -1
b7C -1

b6 -2
b7C -2

b7A 

(Rev. 01-31-2003)

## FEDERAL BUREAU OF INVESTIGATION

b2 -2
b6 -1
b7C -1

b6 -1
b7C -1

245F-LS - 64574 -530

BULLOCK-104



b7A

b6 -2
b7C -2
b7D -1
b7F

BULLOCK-105



b6 -1
b7C -1

b7A



b7A

b6 -1, 2, 3, 4, 6
b7C -1, 2, 3, 4, 8

b6 -3
b7C -3

BULLOCK-107

b7A

BULLOCK-108

b7A    **BULLOCK-109**

b7A

BULLOCK-110

b7A

b6 -1
b7C -1



BULLOCK-111



b6 -1, 6
b7C -1, 6

b6 -6
b7C -6

b6 -2, 3
b7C -2, 3

b7A

b7D -1

b7D -1
b7A

b6 -2, 3
b7C -2, 3

b7A

b6 -1
b7C -1

BULLOCK-114

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

___10___    Page(s) withheld entirely at this location in the file. One or more of the following
statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable
material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request
or the subject of your request is listed in the title only.

☒ Document(s) originated with another Government agency(ies). These documents were
referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be
advised by the FBI as to the releasability of this information following our consultation with the
other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be
advised as to the disposition at a later date.

_____    Page(s) were not considered for release as they are duplicative of _____

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX          Bullock-115-124

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  **Section 552** | | **Section 552a** |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

___6___    Page(s) were not considered for release as they are duplicative of __Bullock 191-196__

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX        Bullock-125-130

b7A



b6 -1, 4
b7C -1, 4

BULLOCK-131



b7C -1, 4,

b7A



b7D -1

b7A

2

BULLOCK-133



b7A

3



b7A

b6 -1
b7C -1

4

BULLOCK-135

b7A

b7A

b7A

BULLOCK-138

b7A

BULLOCK-139

b7A
b6 -1, 4, 6
b7C -1, 4, 6

b7A

b6 -1, 6
b7C -1, 6

BULLOCK-140

BULLOCK-141

b7A

BULLOCK-142

b7A

b6 -6
b7C -6

BULLOCK-143

b7A

b6 -1, 4, 6
b7C -1, 4, 6

**BULLOCK-144**
b6 -1, 6
b7C -1, 6

BULLOCK-145

b7A

b6 -1
b7C -1

1A (125)

b7A

b2 -2
b6 -1, 6
b7C -1, 6

b6 -2
b7C -2

BULLOCK-147

b7A

b6 -1
b7C -1

BULLOCK-148

b7A

BULLOCK-149

b7A

b6 -1
b7C -1

BULLOCK-150

b7A

b6 -1
b7C -1

b6 -3, 6
b7C -3, 6

b6 -3
b7C -3

b7A

BULLOCK-152

b6 -3
b7C -3

b7A

b6 -1
b7C -1

BULLOCK-153

b7A

b6 -1
b7C -1

BULLOCK-154

b6 -1
b7C -1

b6
b7C

BULLOCK-155

b6 -1
b7C -1

b7A

BULLOCK-157

BULLOCK-158

b7A

BULLOCK-159

BULLOCK-160

BULLOCK-161



b6 -2, 3
b7C -2, 3

b7A

1A Envelope
Case ID 245F-IS-64574-1A



b7A

b6 -2, 3
b7C -2, 3

BULLOCK-163

b7A

b6 -1, 2
b7C -1, 2

BULLOCK-164

b7A

BULLOCK-165

b7A

BULLOCK-166

b7A

b7A

b6 -1
b7C -1

b7A

BULLOCK-168

b7A

BULLOCK-169

b7A

b6 -1
b7C -1

BULLOCK-170

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__6___    Page(s) were not considered for release as they are duplicative of _Bullock 191-196_

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

BULLOCK-177

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file. One or more of the following
statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable
material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request
or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were
referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be
advised by the FBI as to the releasability of this information following our consultation with the
other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be
advised as to the disposition at a later date.

___1___    Page(s) were not considered for release as they are duplicative of _Bullock 105_

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee   X
X    for this page    X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX    Bullock-178

b7A

1A Envelope

b6 -2
b7C -2

b6 -3
b7C -3

b7A



b6 -3, 6
b7C -3, 6

b7A

b6 -1
b7C -1

b7A

**BULLOCK - 182**

b6 -1
b7C -1

b6 -1
b7C -1

b6 -1
b7C -1

b7A



BULLOCK - 184

b7A

b7A

b6 -1
b7C -1

(Signature)

(Signature)

BULLOCK-185

b7A

b6 -1
b7C -1

B7A

b6 -1
b7C -1

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

___1___    Page(s) were not considered for release as they are duplicative of _Bullock 144_____

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX                Bullock-188

b7A

BULLOCK-189

b7A



b7A

b7A

BULLOCK-192



b7A

b7A

b7A

b7A

b6 -1
b7C -1

b6 -1, 6
b7C -1, 6

b7A

b7D -1

245F-LS-64574-1B



1B ③⑧

BULLOCK-198

b7A



b6 -1
b7C -1

b6 -1
b7C -1

Case Number:    245F-LS-64574-1B
Owning Office:  LOUISVILLE

*245F-LS-64574- 1B*

*1B (39)*

# FILE COPY

BULLOCK-199

b7A

b6 -1
b7C -1

FILE COPY

BULLOCK-200

b7A

b6 -1
b7C -1

Case Number:   245F-LS-64574-1B
Owning Office:   LOUISVILLE

FILE COPY

245F-(S-64574-1B

1B(41)

BULLOCK-201

b7A

b6 -1
b7C -1

---

**Case Number:** 245F-LS-64574-1B
**Owning Office:** LOUISVILLE

245F-LS-64574-1B

1B 402

BULLOCK-202

b7A

b6 -1
b7C -1

BULLOCK-203

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

___1___    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☒(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C)-2,5 | ☐(k)(1) |
| _____ | ☒(b)(7)(D)-3 | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☒(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6)-2,5 | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____    Page(s) were not considered for release as they are duplicative of _____

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX    Bullock-204

Classification No. *RS-64574-FFI*    b7A

Volume Number *I*

Serials *1*

b6 -1, 2
b7C -1, 2

b6 -1
b7C -1

FD-634 (Rev.2-4-98)

**FEDERAL BUREAU OF INVESTIGATION**
Forfeiture/Seized Property

b7A

b6 -2
b7C -2

b6 -1
b7C -1

BCA:rg
(4)

FBI/DOJ

b7A

**Date/Time:** 05/01/01 15:33:01

**Seizure Form**

BULLOCK-207

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__15___    Page(s) were not considered for release as they are duplicative of __Bullock 226-240___

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X.
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

FD-245.1 (Rev. 1-9-91)

b7A

b6 -1
b7C -1
5/7/01
BULLOCK-223



b7A

b6 -2
b7C -2

b6 -1
b7C -1

BULLOCK-224

b7A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

UNITED STATES OF AMERICA

V.

SUPERCEDING INDICTMENT NO. 1-21-S

Eastern District of Kentucky

F I L E D

APR 1 1 2001

AT LONDON
LESLIE WHITMER
CLERK, U.S. DISTRICT COURT

TROY KIRBY
JAMES EARL GRAY
JOHNNY LEE BULLOCK
PHILLIP KIRBY
JENNIFER KIRBY
JONATHAN CROMER
JASON BULLOCK
BRIAN PITTMAN
GARY ELLIOTT
WILLIAM BAKER

* * * * * * * * * *

<u>COUNT 1</u>
[T. 21 U.S.C. § 846]

THE GRAND JURY CHARGES:

That beginning on a day in January, 2000, the exact date
unknown, through April 4, 2001, in Rockcastle County, in the
Eastern District of Kentucky, and elsewhere,

TROY KIRBY,
JAMES EARL GRAY,
JOHNNY LEE BULLOCK,
PHILLIP KIRBY,
JENNIFER KIRBY,
JONATHAN CROMER,
JASON BULLOCK,
BRIAN PITTMAN,
GARY ELLIOTT, and
WILLIAM BAKER,

defendants herein, did conspire with other persons known and
unknown to the Grand Jury to commit an offense defined in Title 21,

United States Code, Section 841(a)(1), that is, to knowingly and intentionally manufacture over 500 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

## COUNT 2
### [T. 21 U.S.C. § 846]

**THE GRAND JURY FURTHER CHARGES:**

That beginning on a day in January, 2000, the exact date unknown, through April 4, 2001, in Rockcastle County, in the Eastern District of Kentucky, and elsewhere,

TROY KIRBY,
JAMES EARL GRAY,
JOHNNY LEE BULLOCK,
PHILLIP KIRBY,
JENNIFER KIRBY,
JONATHAN CROMER,
JASON BULLOCK, –
BRIAN PITTMAN,
GARY ELLIOTT, and
WILLIAM BAKER,

defendants herein, did conspire with other persons known and unknown to the Grand Jury to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally possess with intent to distribute and to distribute over 500 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

## COUNT 3
[T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about March 2, 2000, in Rockcastle County, in the Eastern District of Kentucky,

### JONATHAN E. CROMER,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 17.31 grams of methamphetamine, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT 4
[T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about March 2, 2000, in Rockcastle County, in the Eastern District of Kentucky,

### JONATHAN E. CROMER,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 95 tablets of Oxycontin, a Schedule II controlled substance, as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT 5
[T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about March 2, 2000, in Rockcastle County, in the Eastern District of Kentucky,

JONATHAN E. CROMER,

defendant herein, did knowingly and intentionally possess with the intent to distribute a measurable quantity of marijuana, a Schedule I controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

### COUNT 6
[T. 21 U.S.C. § 841(a)(1)]

THE GRAND JURY FURTHER CHARGES:

That on or about March 3, 2000, in Rockcastle County, in the Eastern District of Kentucky,

JONATHAN E. CROMER,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 14 tablets of Oxycontin, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

### COUNT 7
[T. 21 U.S.C. § 846]
[T.18 U.S.C. § 2]

THE GRAND JURY FURTHER CHARGES:

That on or about October 11, 2000, in Rockcastle County, in the Eastern District of Kentucky,

TROY KIRBY,
JAMES EARL GRAY, and
JENNIFER KIRBY,

defendants herein, aided and abetted by each other, did attempt to

commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally manufacture approximately 360 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

<div align="center">

**COUNT 8**
[T. 18 U.S.C. § 922(g)(1)]
[T. 18 U.S.C. § 924(a)(2)]

</div>

**THE GRAND JURY FURTHER CHARGES:**

That on or about October 11, 2000 in Rockcastle County, in the Eastern District of Kentucky,

<div align="center">

**TROY KIRBY,**

</div>

defendant herein, having been convicted of a crime punishable by imprisonment for a term exceeding one year, as defined by Title 18, United States Code, Section 921(a)(20), did knowingly possess in and affecting commerce the following firearm, that is, a Norinco 7.62 mm caliber, SKS semi-automatic rifle, Serial Number 1503334; all in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

<div align="center">

**COUNT 9**
[T. 18 U.S.C. § 922(g)(3)]

</div>

**THE GRAND JURY FURTHER CHARGES:**

That on or about October 11, 2000, in Rockcastle County, Kentucky, in the Eastern District of Kentucky,

<div align="center">

**JAMES EARL GRAY,**

</div>

defendant herein, while an unlawful user of a controlled substance,

as listed in Title 21, United States Code, Section 812, did knowingly possess in and affecting commerce the following firearms, that is, a CZ, model VZOR 70, 7.65 caliber pistol, serial number 705949; a Smith & Wesson, model 60, .38 caliber revolver, serial number R55737; a Sig-Sauer, Model P226, 9mm semi-automatic handgun, serial number 358763; a Carcano, model 1891, 6.5 caliber rifle, serial number L440; a Winchester model 1912, 12 gauge shotgun, serial number 140091; and a Smith and Wesson, model SW380, .380 caliber semi-automatic handgun, serial number RAJ6358; which had been shipped and transported in interstate commerce; all in violation of Title 18, United States Code, Section 922(g)(3).

## COUNT 10
### [T. 21 U.S.C. § 846]
### [T.18 U.S.C. § 2]

**THE GRAND JURY FURTHER CHARGES:**

That on or about October 18, 2000, in Rockcastle County, in the Eastern District of Kentucky,

### PHILLIP KIRBY
### and
### JENNIFER KIRBY,

defendants herein, aided and abetted by each other, did attempt to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally manufacture approximately 65 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

## COUNT 11
### [T. 21 U.S.C. § 841(a)(1)]

THE GRAND JURY FURTHER CHARGES:

That on or about December 7, 2000, in Rockcastle County, in the Eastern District of Kentucky,

**JOHNNY LEE BULLOCK,**

defendant herein, did knowingly and intentionally possess with the intent to distribute and did distribute approximately 7 grams of methamphetamine, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

**COUNT 12**
[T.21 U.S.C. § 841(d)(2)]
[T.18 U.S.C. § 2]

THE GRAND JURY FURTHER CHARGES:

That on or about January 1, 2001, in Rockcastle County, in the Eastern District of Kentucky, and elsewhere,

**JASON BULLOCK**
**and**
**BRIAN PITTMAN,**

defendants herein, aided and abetted by each other, did knowingly and intentionally possess approximately 131 grams of pseudoephedrine, a list (1) chemical under 21 C.F.R. §1310.04, knowing or having reasonable cause to believe that the pseudoephedrine, list (1) chemical, will be used to manufacture a controlled substance, as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(d)(2).

**COUNT 13**
[T.21 U.S.C. § 841(d)(2)]

THE GRAND JURY FURTHER CHARGES:

That on or about January 3, 2001, in Rockcastle County, in the Eastern District of Kentucky, and elsewhere,

JASON BULLOCK,

defendant herein, did knowingly and intentionally possess approximately 457 grams of pseudoephedrine, a list (1) chemical under 21 C.F.R. §1310.04, knowing or having reasonable cause to believe that the pseudoephedrine, list (1) chemical, will be used to manufacture a controlled substance, as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(d)(2).

## COUNT 14
[T. 21 U.S.C. § 841(a)(1)]

THE GRAND JURY FURTHER CHARGES:

That on or about January 16, 2001, in Rockcastle County, in the Eastern District of Kentucky,

JOHNNY LEE BULLOCK,

defendant herein, did knowingly and intentionally possess with the intent to distribute and did distribute approximately 14 grams of methamphetamine, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT 15
[T. 21 U.S.C. § 841(a)(1)]

THE GRAND JURY FURTHER CHARGES:

That on or about January 23, 2001, in Rockcastle County, in

the Eastern District of Kentucky,

JOHNNY LEE BULLOCK,

defendant herein, did knowingly and intentionally possess with the
intent to distribute approximately 10.7 grams of methamphetamine,
a Schedule II controlled substance as listed in Title 21, United
States Code, Section 812; all in violation of Title 21, United
States Code, Section 841(a)(1).

COUNT 16
[T. 21 U.S.C. § 846]
[T. 18 U.S.C. § 2]

**THE GRAND JURY FURTHER CHARGES:**

That on or about February 12, 2001, in Rockcastle County, in
the Eastern District of Kentucky,

TROY KIRBY,
GARY ELLIOT, and
WILLIAM BAKER,

defendants herein, aided and abetted by each other, did attempt to
commit an offense defined in Title 21, United States Code, Section
841(a)(1), that is, to knowingly and intentionally manufacture
approximately 188 grams of methamphetamine, a Schedule II
controlled substance as listed under Title 21, United States Code,
Section 812; all in violation of Title 21, United States Code,
Section 846.

COUNT 17
[T. 26 U.S.C. § 5861(d)]
[T. 26 U.S.C. § 5845(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about February 12, 2001, in Rockcastle County, in

the Eastern District of Kentucky,

### TROY KIRBY,

defendant herein, did knowingly possess a firearm which is not registered in the National Firearms Registration and Transfer Record, to wit, a .22 caliber rifle, serial number B313941; all in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(1).

### COUNT 18
[T. 21 U.S.C. § 841(a)(1)]

**THE GRAND JURY FURTHER CHARGES:**

That on or about February 26, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### PHILLIP KIRBY,

defendant herein, did knowingly and intentionally possess with the intent to distribute approximately 60 capsules of Tylox, a Schedule II controlled substance as listed in Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

### COUNT 19
[T. 21 U.S.C. § 846]
[T. 18 U.S.C. § 2]

**THE GRAND JURY FURTHER CHARGES:**

That on or about April 4, 2001, in Rockcastle County, in the Eastern District of Kentucky,

### TROY KIRBY
and
### JENNIFER KIRBY,

·defendants herein, aided and abetted by each other, did attempt to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally manufacture approximately 8 grams of methamphetamine, a Schedule II controlled substance as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 846.

<div align="center">

**COUNT 20**
**[T. 21 U.S.C. § 853]**

</div>

**THE GRAND JURY FURTHER CHARGES:**

In committing one or more of the felony offenses alleged in Counts 1-6 of this Indictment, which are punishable by imprisonment for more than one year, *JONATHAN E. CROMER* used and intended to use the below-described property to commit and facilitate the said controlled substance violations, and the below described property constitutes and is derived from proceeds· obtained directly or indirectly as a result of the commission of the aforesaid violations of Title 21, United States Code, Sections 841(a)(1)and 846, including but not limited to the following:

**CURRENCY:**

1.   One thousand five hundred twenty-five dollars ($1,525.00).

2.   Nine thousand one hundred seventy-seven dollars ($9,177.00).

By virtue of the commission of one or more of the felony offenses charged in this indictment by the defendant, **JONATHAN E. CROMER**, any and all interest **JONATHAN E. CROMER** has in the above-described property is vested in the United States and hereby

forfeited to the United States pursuant to Title 21, United States Code, Section 853.

### COUNT 21
### [T. 21 U.S.C. § 853]

**THE GRAND JURY FURTHER CHARGES:**

In committing one or more of the felony offenses alleged in Counts 1, 2, and 18 of this Indictment, which are punishable by imprisonment for more than one year, **PHILLIP KIRBY** used and intended to use the below-described property to commit and facilitate the said controlled substance violation, and the below described property constitutes and is derived from proceeds obtained directly or indirectly as a result of the commission of the aforesaid violations of Title 21, United States Code, Sections 841(a)(1) and 846, including but not limited to the following:

**CURRENCY:**

One thousand seven hundred eighty-eight dollars ($1,788.00).

By virtue of the commission of one or more of the felony offenses charged in this indictment by the defendant, **PHILLIP KIRBY**, any and all interest **PHILLIP KIRBY** has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 21, United States Code, Section 853.

### COUNT 22
### [T. 21 U.S.C. § 853]

**THE GRAND JURY FURTHER CHARGES:**

In committing one or more of the felony offenses alleged in Counts 1, 2, and 16 of this Indictment, which are punishable by imprisonment for more than one year, TROY KIRBY used and intended to use the below-described property to commit and facilitate the said controlled substance violations, and the below described property constitutes and is derived from proceeds obtained directly or indirectly as a result of the commission of the aforesaid violations of Title 21, United States Code, Sections 841(a)(1) and 846, including but not limited to the following: —

CURRENCY:

Six hundred eighty-two dollars ($682.00).

By virtue of the commission of one or more of the felony offenses charged in this indictment by the defendant, TROY KIRBY, any and all interest TROY KIRBY has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 21, United States Code, Section 853.

A TRUE BILL

_____
FOREPERSON

APPROVED:

JOSEPH K. FAMULARO
UNITED STATES ATTORNEY

## PENALTIES

Counts 1 & 2:
NL than 10 years, NM than life in prison/ \$4,000,000 fine/ both/ term of supervised release of at least 5 years.

If prior conviction: NL than 20 years, NM than life in prison/ \$8,000,000 fine/ both/ term of supervised release of at least 10 years.

Count 3:
NM than 5 years in prison/\$250,000 fine/both/term of supervised release of at least 2 years.

If prior conviction: NM than 10 years in prison/\$500,000 fine/both/term of supervised release of least 4 years.

Counts 4, 6, 11, 18, & 19:
NM than 20 years in prison/\$1,000,000 fine/both/term of supervised release of at least 3 years.

If prior conviction: NM than 30 years in prison/\$2,000,000 fine/both/term of supervised release of at least 6 years.

Count 5:
NM than 5 years in prison/\$250,000 fine/both/term of supervised release of NL than 2 years.

If prior conviction: NM 10 years in prison/\$500,000 fine/both/term of supervised release of NL 4 years.

Counts 12 & 13
NM than 20 years in prison/\$250,000 fine/both.

Counts 7, 10, 14, 15, & 16:
NL than 5 years, NM than 40 years in prison/\$2,000,000 fine/both/term of supervised release of at least 4 years.

If prior conviction: NL than 10 years, NM than life in prison/\$4,000,000 fine/both/term of supervised release of at least 8 years.

Counts 8, 9, & 17 :
NM than 10 years in prison/\$250,000.00 fine/both/term of supervised release of NL than 3 years.

Count 20, 21, & 22:
Forfeiture of all listed assets.

**Plus:** Mandatory Special Assessment of \$100.00 on each count.

BULLOCK-239

b7A

b6 -1
b7C -1

Classification No. 64574-FF3    b7A

Volume Number

Serials    1

b6 -1
b7C -1

See also    BULLOCK-241

FD-245.1 (Rev.

245F

FD-634 (Rev 2-4-98)

b7A

b6 -2
b7C -2

b6 -1
b7C -1

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file.  One or more of the following
statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable
material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request
or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were
referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies).  You will be
advised by the FBI as to the releasability of this information following our consultation with the
other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made.  You will be
advised as to the disposition at a later date.

__15__    Page(s) were not considered for release as they are duplicative of __Bullock 226-240__

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX                Bullock-244-258

b7A

b6 -1, 2
b7C -1, 2

FD-634 (Rev.2-4-98)

b7A

# FEDERAL BUREAU OF INVESTIGATION
### Forfeiture/Seized Property



b6 -1, 2
b7C -1, 2

BCA:rg
(4)

BULLOCK-260

FBI/DOJ

Seizure Form

b7A

BULLOCK-261

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file. One or more of the following
statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable
material available for release to you.

**Section 552**                                                              **Section 552a**

| | | |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request
or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were
referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies).  You will be
advised by the FBI as to the releasability of this information following our consultation with the
other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made.  You will be
advised as to the disposition at a later date.

__15__    Page(s) were not considered for release as they are duplicative of __Bullock 226-240____

_____    Page(s) withheld for the following reason(s):  _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX                    **Bullock-262-275**

b6 -2, 4
b7C -2, 4

b6 -4
b7C -4

b7A

b6 -2
b6 -1
b7C -1

b6 -1
b7C -1

1 - Addressee
1 - 245F-LS-64574-FF4
1 - Seizure File 3420-01-F-140
BCA:rg (3)

BULLOCK-276

b7A

b6 -1, 2
b7C -1, 2

BULLOCK-277

b6 -2
b7C -2

b7A



b6 -2, 5, 6
b7C -2, 5, 6
b7F

BULLOCK-279

b6 -1
b7C -1



b7A

b7C -2
b7D -1
b7E

b6 -2
b7C -2

b6 -2
b7C -2

b6 -1, 2, 3
b7C -1, 2, 3

BULLOCK-280



b6 -1, 2, 6
b7C -1, 2, 6
b7D -1
b7F

b6 -2, 6
b7C -2
b7D -1
b7F

b7A

b6 -1, 2
b7C -1, 2
b7D -1
b7F

BULLOCK-281



b6 -2
b7C -2
b7D -1
b7E

b7A

b6 -2
b7C -2
b7D -1
b7E

BULLOCK-282

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__3__    Page(s) were not considered for release as they are duplicative of __Bullock 45-47____

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

Bullock-283-285

b6 -1
b7C -1

b7A

Classification No.

BULLOCK-286

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made.  You will be advised as to the disposition at a later date.

__3__    Page(s) were not considered for release as they are duplicative of __Bullock 77-79__

_____    Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)       X
X    No Duplication Fee    X
X      for this page         X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX    Bullock-287-289

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__1__ Page(s) were not considered for release as they are duplicative of _Bullock 170_

_____ Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX          Bullock-290

b7A



b6 -1, 4, 6
b7C -1, 4, 6

b6 -2, 3
b7C -2, 3

b6 -1
b7C -1

FD-302a (Rev. 10-6-95)

b6 -1
b7C -1

b7A

b6 -1, 6
b7C -1, 6

1 0 1

BULLOCK-292

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

———— Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

———— Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

———— Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__1__ Page(s) were not considered for release as they are duplicative of __Bullock 167__

———— Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

Bullock-293

FD-302a (Rev. 10-6-95)



b6 -3, 4
b7C -3, 4

b6 -3
b7C -3

b7A

b6 -3, 4
b7C -3, 4

b6 -3
b7C -3

FD-302a (Rev. 10-6-95)



b6 -3, 4
b7C -3, 4

b7A

b6 -3
b7C -3

FD-302 (Rev. 10-6-95)



b6 -1, 2, 6
b7C -1, 2, 6
b7D -1
b7F

b6 -2, 3, 6
b7C -2, 3, 6
b7D -1
b7F

b7A

b6 -1, 2
b7C -1, 2
b7D -1
b7F

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7A



b6 -2
b7C -2
b7D -1
b7F

b6 -2
b7C -2
b7D -1
b7F

BULLOCK-297

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____   Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐   Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____   Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____   Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

___1___   Page(s) were not considered for release as they are duplicative of _ Bullock 136 _____

_____   Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X     Deleted Page(s)     X
X     No Duplication Fee     X
X     for this page     X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

Bullock-298

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Document(s) originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__4__ Page(s) were not considered for release as they are duplicative of __Bullock 132-135__

_____ Page(s) withheld for the following reason(s): _____

_____

☐ The following number(s) is (are) to be used for reference regarding these pages:

_____

XXXXXXXXXXXXXXXXXXX
X     Deleted Page(s)     X
X     No Duplication Fee     X
X     for this page     X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
Bullock-299-302

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOHNNY L. BULLOCK ,                    )
                                       )
        Plaintiff,                )
                                       )
    v.                              )
                                       ) Civil Action No. 06-1013 ESH
DEPARTMENT OF JUSTICE, *et al.,*       )
                                       )
        Defendants.               )
_____        )

## DECLARATION OF LEILA I. WASSOM

1. I am a Drug Enforcement Administration (DEA) Paralegal Specialist, currently assigned to

the Office of Chief Counsel, Administrative Law Section (CCA),  DEA Headquarters,

Washington, D.C.  From August 1991 to June 2005,  I was assigned to the Freedom of

Information and Records Management Section,  DEA Headquarters.


2. I review for litigation purposes both the initially processed and appealed Freedom of

Information Act (FOIA) and Privacy Act (PA) requests received by DEA.  I have performed

these duties at DEA since 1991.


3. My duties require that I am familiar with the policies and practices of DEA regarding the

processing and release of information requested under the FOIA/PA, and the application of the

FOIA/PA and exemptions for which I have received formal and on the job training.



GOVERNMENT
EXHIBIT
2

4. In preparing this declaration, I have read and am familiar with the complaint, in the above entitled action, and the records maintained by the DEA Freedom of Information Operations Unit (SARO).

5. SARO is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA. I am familiar with the policies, practices and procedures employed by SARO that relate to the search for, and the processing and release of information responsive to FOI/PA requests received by the DEA.

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

### DEA FOIA Request No. 07-0222-P

6. By letter dated July 8, 2005, the plaintiff requested a search of all records concerning himself. The plaintiff specifically requested "(1) arrest records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants and/or detainers, (5) final and closing investigation reports; and (6) any and all information, data or reports not otherwise exempt by statute . . . ." The plaintiff stated that the information requested "is the documentation of any and all money transactions for drug buys in the case of Johnny Lee Bullock," and specified that "The information that has been listed . . . also refer to any and all audio recordings', statement's, and reports of any kind when it comes to Johnny Lee Bullock." In addition, the plaintiff requested that DEA inform him if and to whom the file and/or any material therein contained has been released to any identifiable individual or agency, and if so, their name, title, purpose, and need for such information, the date of release, the specific

material that was released, the DEA employee releasing the information, and the specific

reference to authority, statute or regulation governing such release. The plaintiff also requested

specific regulations of DEA as provided for by 5 U.S.C. § 552. The plaintiff declared himself to

be indigent, and requested a fee waiver. A copy of the plaintiff's letter dated July 8, 2005, is

attached as Exhibit A.


7. By letter dated August 12, 2005, DEA denied the plaintiff's request for a fee waiver, stating

that it had reviewed his request based on the disclosure of the information contributing

significantly to the public interest, and had determined that the waiver of fee requirements, 28

C.F.R. § 165.11(k), had not been met. DEA further informed the plaintiff that indigence alone,

without a showing of a public benefit, is insufficient to warrant a waiver of fees. DEA stated that

before it could begin processing the plaintiff's request, it would be necessary for him to submit a

statement expressing his intent to satisfy all fees incurred while processing his request. A copy

of the DEA letter dated August 12, 2005, is attached as Exhibit B.


8. By letter dated September 5, 2005, the plaintiff appealed DEA's denial of his request for a fee

waiver to the Department of Justice, Office of Information and Privacy (OIP), alleging that "the

subject of the requested records is pertinent and unquestionably concerns the illegal operations

and activities of agents in the government . . ." and that "[t]he disclosure of the requested

documents will undeniably contribute to the clearly understanding of various government

operations and/or activities of unscrupulous federal agents. . . ." A copy of the plaintiff's letter

dated September 5, 2005, is attached as Exhibit C.

-3-

9. By letter dated September 21, 2005, OIP acknowledged the plaintiff's appeal, assigned it appeal number 05-2794, and informed him that it would be handled in approximate order of receipt. A copy of the OIP letter dated September 21, 2005, is attached as Exhibit D.

10. By letter dated December 5, 2006, OIP remanded the plaintiff's request to DEA for processing, stating that, since the plaintiff had modified his request to include only the first 100 pages of his records and there would be no fee for the first 100 pages, the need for OIP to adjudicate DEA's fee waiver denial, as it related to his request, was moot. OIP informed the plaintiff that upon DEA's receipt of its copy of the letter, it would estimate the fees necessary to process the remaining pages responsive to his request. OIP requested that the plaintiff contact DEA upon receipt of its estimate and agree to pay the estimated fees or provide it with an amount he would be willing to pay for the remaining records, and DEA would process additional pages up to that limit. A copy of the OIP letter dated December 5, 2006, is attached as Exhibit E.

11. By letter dated January 16, 2007, DEA released portions of 10 pages to the plaintiff and informed the plaintiff that five (5) pages were withheld in their entirety. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). A copy of the DEA letter dated January 16, 2007, is attached as Exhibit F.

12. By letter dated October 29, 2007, DEA forwarded two pages to the United States Marshals Service (USMS) for direct response to the plaintiff. A copy of the DEA letter dated October 29, 2007, is attached as Exhibit G.

-4-

13.  By letter dated October 31, 2007, USMS released portions of two (2) pages to the plaintiff.

Information was withheld pursuant to FOIA exemption (b)(7)(C).  A copy of the USMS letter

dated October 31, 2007, is attached as Exhibit H.

14.  By letter dated November 1, 2007, DEA forwarded 18 pages to the Federal Bureau of

Investigation (FBI) for processing and a direct response to the plaintiff.  On five (5) of the pages,

DEA withheld the names of DEA Special Agents, pursuant to FOIA exemptions (b)(7)(C) and

(b)(7)(F).  A copy of the DEA letter dated November 1, 2007, is attached as Exhibit I.

15.  By letter dated November 6, 2007, DEA forwarded two (2) pages to the Executive Office for

United States Attorneys (EOUSA) for processing and a direct response to the plaintiff.  A copy of

the DEA letter dated November 6, 2007, is attached as Exhibit J.

16.  By letter dated November 14, 2007, DEA released portions of 32 pages and 30 pages in their

entirety to the plaintiff.  A copy of the DEA letter dated November 14, 2007, is attached as

Exhibit K.

17.  After the FBI failed to acknowledge receipt, contact was made with the FBI FOI/PA unit on

November 16, 2007.  Since it was learned that the letter and attached documents had not arrived

in the FBI FOI/PA unit, the 18 pages were re-sent on November 19, 2007.  A copy of the DEA

letter dated November 19, 2007, is attached as Exhibit L.

18. By letter dated November 28, 2007, pursuant to a final litigation review, DEA released portions of three (3) pages to the plaintiff. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F). A copy of the DEA letter dated November 28, 2007, is attached as Exhibit M.

19. By letter dated November 29, 2007, EOUSA released one page in its entirety and portions of one page to the plaintiff. A copy of the EOUSA letter dated November 29, 2007, is attached as Exhibit N.

20. By letter dated January 7, 2008, the FBI responded to the plaintiff regarding the DEA referral, informing him that the material referred was exempt for disclosure pursuant to FOIA exemption (b)(7)(A), and that five pages of the material were duplicates of public source documents he had previously received. A copy of the FBI letter dated January 7, 2008, is attached as Exhibit O.

## ADEQUACY OF SEARCH

21. The plaintiff's letter dated July 8, 2005, was construed as a request for criminal investigative information maintained by DEA concerning himself, and an accounting of disclosures.

22. Criminal investigative records concerning the plaintiff were reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes.

-6-

23. No other DEA record system is reasonably likely to maintain records responsive to the plaintiff's request.

24. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6, or other documents by date, that contain information regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

25. On January 11, 2007, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated July 8, 2005. The search was conducted by a SARO Freedom of Information Specialist, who used the plaintiff's name, Social Security Number, and date of birth. Through NADDIS three (3) criminal investigative case files were identified as containing information responsive to the plaintiff's request. As a result of the NADDIS query, SARO retrieved 15 pages of responsive material.

26. In the course of the litigation review, the plaintiff's request, the results of the NADDIS query and the correspondence contained in the FOIA request file were reviewed. Based on the plaintiff's request, it was recognized that two (2) additional criminal investigative case files existed that maintained information responsive to the plaintiff's request and the corresponding investigative files maintained in the field could also contain responsive information.

–7–

27. Upon request, in July 2007, a search of the field file was conducted. An additional 103 pages were obtained from the DEA field files, and processed. Thus, a total of 118 pages of responsive material was located during the searches conducted by DEA.

28. Of the 118 pages, DEA released portions of 43 pages and 30 pages in their entirety to the plaintiff; 23 pages were withheld in their entirety; and, portions of five (5) pages and 17 pages in their entirety were referred to other agencies. Information was withheld by DEA pursuant to FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F), and the Privacy Act Exemption (j)(2). A *Vaughn* index detailing DEA's withholdings is attached as Exhibit P.

29. With regard to the disclosure accounting, IRFS is exempt from the release of the disclosure accounting provision of the PA pursuant to Exemption (j)(2).

## DESCRIPTION OF RESPONSIVE MATERIAL

30. All information responsive to the plaintiff's request is criminal investigatory data compiled for law enforcement purposes. The information was compiled and contained in criminal investigative case files that are maintained in the IRFS. The information is gathered pursuant to DEA's law enforcement responsibility which is the enforcement of Federal drug laws, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq*.

31.  DEA investigative case files, maintained in IRFS, are established by the office commencing

an investigation.  The files are titled according to the name of the principal suspect violator or

entity known to DEA at the time the file is opened.  DEA does not maintain a separate dossier

investigative case files on every individual or entity that is of investigative interest.


32.  Information gathered during the course of a DEA investigation is systematically gathered

and included in the investigative case file.  This information relates to the case subject and may

also include other individuals such as those who are suspected of engaging in criminal activity in

association with the subject of the file.


33.  Investigative case files maintained in IRFS contain several records that include, in pertinent

part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a,

(2) the DEA Personal History Report, DEA Form 202, (3) the DEA Defendant Disposition

Report, and other documents that may serve as a substitute for the forms.


34.  The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA ROI.

The forms are used by DEA to memorialize investigative and intelligence activities, and

information.  The DEA Form 6 is the initial page of the ROI and consists of 15 numbered blocks.

Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom.  The middle of

the page is the narrative section in which investigative and intelligence information is recorded.

35. The DEA Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section, in which investigative and intelligence information is recorded, that extends to the bottom of the page.

36. The DEA Form 6, Block 4, and DEA Form 6a, Block 2, contain a G-DEP identifier. The DEA Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. The DEA Form 6, Block 6, and DEA Form 6a, Block 3, contain the file title, which is generally the subject of the investigation.

37. The narrative may be broken into several sections which include a "Synopsis," "Details," "Evidence," and/or "Indexing" sections. The "Synopsis" and "Details" sections document events that often contain names of third parties and law enforcement personnel, and information about individuals. The "Evidence" section is used to document and note the collection of evidence and the disposal of items.

38. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate those individuals and entities of investigative interest that the agent or intelligence analyst designates to be listed in NADDIS. In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entities that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations.

39. The DEA Personal History Report, DEA Form 202, The DEA Personal History Report, DEA Form 202, 11-87 version, is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index. The form consists of 71 blocks that are completed depending on the circumstances.

40. Block 1 contains the file title, which is generally the subject of the investigation. Block 2 or 5 contains a G-DEP identifier; blocks 59, 60, 62, 63, 65, and 68 normally contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. Block 6 through 57 contain identifying information about the individual to whom the form pertains. Block 58 contains information related to and explaining the action being taken.

41. DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA defendants. A separate DEA Form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts. The DEA Form consists of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16-20, personal information and identifiers of the defendant; and Blocks 24 and 25, the names and signatures of a DEA Special Agent and/or other law enforcement officers.

-11-

42. In this case, the 118 pages of responsive information consist of:

    (a). one (1) DEA Defendant Disposition Report;

    (b). one (1) Superceding Indictment;

    (c). one DEA Detroit Field Division Enforcement Operational Plan;

    (d). one (1) Judgment in a Criminal Case;

    (e.) one (1) FBI Rap Sheet;

    (f). one (1) Fingerprint Card;

    (g). one (1) Detroit Field Division Enforcement Operational Plan;

    (h). one (1) Search Warrant;

    (i). three (3) pages containing photographs;

    (j). one (1) Evidence Recovery Log;

    (k) . one (1) sheet listing Criminal Penalties;

    (l). one Office of Inspections Investigative File Review Checklist;

    (m). one (1) sheet containing the plaintiff's arrest information;

    (n). one (1) United States Attorney's Office Fax Cover Sheet with accompanying Media Release;

    (o). one (1) FBI Form FD-249;

    (p). two (2) FBI investigative reports;

    (q). one (1) Application and Affidavit for Search Warrant;

    (r). one (1) FBI affidavit; and,

    (s). one (1) FBI Fax cover sheet with accompanying page frm FBI OPS plan.

## DISCUSSION AND JUSTIFICATION FOR WITHHOLDINGS

### Privacy Act Exemption (j)(2)

43. Material is also withheld pursuant to the Privacy Act, exemption (j)(2). IRFS is a Privacy
Act System of Records that was last reported at 66 Fed. Reg. 8425 and last published in its
entirety at 61 Fed. Reg. 54219. In accordance with the Privacy Act, rules were promulgated,
pursuant to 5 U.S.C. §552a(j)(2), to exempt records contained in IRFS from access and the
release of the accounting of disclosures. 28 C.F.R. § 16.98(c)(3)

44. In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request
by, or with prior written consent of, the individual to whom the record pertains, no information
relating to a third-party was released, unless required by the FOIA or pursuant to a routine use.
No routine use exists for and the plaintiff did not provide a release authorization or proof of
death for the release of any third-party information. Therefore, all third-party information was
withheld where release was not required by the FOIA.

### Withholding Pursuant to FOIA Exemption (b)(2)

45. The FOIA, 5 U.S.C. § 552(b)(2), exempts from disclosure information relating to the
internal rules and practices of any agency.

46. Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, many of the
pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug

Enforcement Program) codes, NADDIS numbers, and confidential informant numbers. The G-DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.

(a)  G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

(b)  NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest. Each number is unique and is assigned to only one violator within the DEA NADDIS indices. (The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. § 16.98 (2007). Thus, Exemptions (b)(7)(C) and (b)(7)(F) were used in conjunction with (b)(2) to withhold third-party NADDIS numbers.

(c)  Informant identifier codes are assigned to DEA and other law enforcement agencies to cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence. Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out their law enforcement functions. Knowledge of informant identifier codes can assist in identifying the informant and provide sensitive information about individuals who cooperate with DEA in carrying out its law

enforcement functions. Exemptions (b)(7)(C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identities.

47. The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings. Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension and create excuses for suspected activities. Disclosure of the codes would, therefore, a thwart the Drug Enforcement Administration's investigative and law enforcement efforts. All G-DEP codes found in the responsive pages are withheld.

48. NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies. They are assigned by DEA for internal use and there is no public interest in the release of these codes.

49. Details regarding law enforcement operations were withheld. Release of any of the information could allow violators to avoid apprehension, and could place law enforcement personnel in danger. If details of DEA investigations were known, violators would be aware of how to respond in different situations where detection and/or apprehension are eminent. They would be able to respond in a manner that would help them avoid detection and arrest.

50. Internal telephone numbers were withheld. There is no public interest in the release of the telephone numbers. Release of the telephone numbers could enable violators to identify law enforcement personnel.

## RECORDS OR INFORMATION COMPILED FOR LAW ENFORCEMENT PURPOSES

### Exemption (b)(7) Threshold

51.  DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq*., (hereinafter, the Act) which authorizes DEA to enforce the Act through, for example, the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control.

52. The records deemed responsive to the plaintiff's FOIA request are criminal investigative records.  The records were compiled during criminal law enforcement investigations of the plaintiff and several third parties.

### Withholding Pursuant to FOIA Exemption (b)(7)(C)

53.  The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Many of the documents processed in response to plaintiff's FOIA request contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were

-16-

involved or associated with the plaintiff or with a law enforcement investigation. The

individuals are protected from the disclosure of their identities and information about them.

These individuals include third parties, suspects, co-defendants, and confidential sources of

information.


54. In making the determination to release or withhold this information, the individuals' privacy

interests were balanced against any discernible public interest in disclosure of the individuals'

identities. In this instance, the plaintiff provided no facts to show any public interest for which

any potential public interest would outweigh the privacy interests of the individuals. Thus,

disclosure of the identities would be an unwarranted invasion of their personal privacy.


55. In asserting this exemption, each piece of information was examined to determine the degree

and nature of the privacy interest of any individual whose name and/or identifying data appeared

in the documents at issue. The public interest in disclosure of the information was determined by

whether the information in question would inform the plaintiff or the general public about DEA's

performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act,

and/or how DEA conducts its internal operations and investigations. In this case, it was

determined that there was no legitimate public interest in the information withheld under

exemption (b)(7)(C), and release of any information about a third-party would constitute an

unwarranted invasion of that third-party's personal privacy.

56. The identities of DEA Special Agents, DEA laboratory personnel, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory investigation.

57. The Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of these individuals.

58. Government employees were assigned to handle tasks relating to the official investigations into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees.

-18-

**Withholding Pursuant to FOIA Exemption (b)(7)(D)**

59. The FOIA, 5 U.S.C. § 552 (b)(7)(D), sets forth an exemption for the information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source. Exemption (b)(7)(D) was employed to withhold certain reports in part, and others in their entirety, that contained information that would disclose the identity of and the information provided by the source.

60. Sources of information include those to whom express confidentiality was granted and those about whom, based upon the facts and circumstances, confidentiality could be implied. Each document or group of related pages that contain material provided by individual(s), other than a DEA agent, was examined in light of exemption (b)(7)(D) to determine whether confidentiality was express or implied.

61. As an agency charged with law enforcement authority, DEA relies on the (b)(7)(D) exemption to protect source-identifying and source-supplied investigative information. The information at issue here pertains to coded confidential informants with express assurances of confidentiality. Because of the nature of DEA's criminal investigations, any information that could identify these informants, including the informant identifier codes, could subject them to serious harm, substantial repercussions, and possibly even death.

62. Coded informants are individuals who have a continuing cooperative association, by written signed agreement, with DEA. Such cooperative arrangements are established and maintained according to DEA policy and procedure. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA. They are also assured that their names will not be used in DEA investigative materials. They are assigned an identification code which is used in place of their name or referred to as CI, SOI, or CS.

### Witholding Pursuant to FOIA Exemption (b)(7)(E)

63. The FOIA, 5 U.S.C. § 552 (b)(7)(E), sets forth an exemption for records or information compiled for law enforcement purposes if its release would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. Routine investigative techniques known to the general public such as fingerprints and the existence of undercover surveillance procedures were not the types of techniques that were detailed in the processing of the plaintiff's request. Longstanding, successfully proven enforcement techniques and procedures that are not commonly known to the public were withheld. In the instant case, any release of the technique would compromise its integrity and assist violators in evading detection and apprehension.

### Witholding Pursuant to FOIA Exemption (b)(7)(F)

-20-

64. The FOIA, 5 U.S.C. 552(b)(7)(F), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual. Exemption (b)(7)(F), in conjunction with (b)(7)(C), was employed to withhold the names of DEA Special Agents, Supervisory Special Agents, FBI Special Agents, a Bureau of Alcohol, Tobacco, and Firearms (ATF) Special Agents, a Deputy United States Marshal (DUSM), United States Customs Service (USCS), and other Federal law enforcement personnel, a state/local law enforcement officer, and confidential sources of information.

65. DEA Special Agents and Supervisory Special Agents, as well as members of other law enforcement entities, are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Special Agents and other law enforcement officers are routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations.

66. In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public

realm. DEA considers it to be within the public interest not to disclose the identity of special

agents so that they may effectively pursue their undercover and investigatory assignments. These

assignments are a necessary element in support of DEA's objective -- the suppression of the illicit

traffic of narcotic and dangerous drugs.


67. Public disclosure of the identities of investigatory and other personnel, as well as

confidential sources of information, would have a detrimental effect on the successful operation

of DEA, as well as risk harassment and danger to special agents, other law enforcement

personnel, and confidential sources of information.


68. The exemption was also used in this case to protect all other individuals mentioned who

could be potential witnesses or provided information. The exemption was used in conjunction

with Exemption (b)(7)(D) where confidentiality was asserted. It was concluded, given the

history of violence associated with the illicit trade in controlled substances, the fact that several

of the plaintiff's accomplices were armed and the investigating agents had prepared and planned

for a hostage or stand-off situation, and the plaintiff's history of domestic violence and assault,

that the release of the names of third parties could jeopardize their health and/or safety.


## SEGREGABILITY


69. All of the responsive information was examined to determine whether any reasonably

segregable information could be released. Pages were withheld in their entirety where, based

-22-

upon the review, the release of any additional information would (1) result in the disclosure of no

useful information, or incomprehensible words and/or phrases that would not shed any light on

how the Government conducts business, (2) could result in compromising the identity of and

information provided by sources of information who were granted express confidentiality or,

because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted

invasion of personal privacy when balanced against the public interest in the release of

information gathered during the course of a criminal investigation, and/or (4) place in jeopardy

the lives and safety of third parties which includes sources of information, individuals associated

with or mentioned in investigative reports, DEA agents and other law enforcement personnel.


70.    Reasonably segregable also involved consideration of the time and effort that would be

expended to exclude or include information in a record or document being processed.  The

current redaction process employed by DEA entails the use of translucent red cellophane tape.

After the tape is applied, the document is copied and the information intended to be withheld is

blackened in the copying process.


71.  Once tape is applied, it generally cannot be removed.  The tape lifts the print from the paper, if

removal is attempted or if it inadvertently touches print not intended to be withheld.  The page

must then be recopied and the process begun again.  The process of applying a thin strip of tape is

tedious, cumbersome and time consuming; however, it is the most effective and efficient means

currently available to DEA to withhold information based upon the manner and methods in which

DEA records information and maintains its records. Consequently, the importance of releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page.

72. In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business. Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.

73. Pages "8" through "10" comprise a three-page Report of Investigation (ROI), DEA Form 6, describing the acquisition of a drug exhibit from the plaintiff. The pages contain information about the drug trafficking interaction between an FBI/Kentucky State Police/Laurel County, Kentucky confidential source, the plaintiff, and third parties. Information about the plaintiff is found throughout pages "8" and "9", and as the file title and in the Indexing Section on page "10". The information about the plaintiff is inextricably intertwined with information about the confidential source and third parties. Release of any of the information could enable the plaintiff to identify the confidential source. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).

74. Pages "13" through "15" comprise a three-page describing the acquisition of a drug exhibit from the plaintiff. The pages contain information about the drug trafficking interaction between an FBI/Kentucky State Police/Laurel County, Kentucky confidential source, the plaintiff, and

third parties. Information about the plaintiff is found throughout pages "13" and "14", and as the file title and in the Indexing Section on page "15." The information about the plaintiff is inextricably intertwined with information about the confidential source and third parties. Release of any of the information could enable the plaintiff to identify the confidential source. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).

75. Pages "16" and "17" comprise a Personal History Report, DEA Form 202, of a third-party. The plaintiff's name is mentioned only as the source of supply on page "16", and his name is not mentioned on page "17". The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F).

76. Pages "18" through "20" comprise a three-page ROI, containing an interview of a named confidential source, who provided information about the investigation of a third-party. Information about the plaintiff is found in one sentence on page "18", in two sentences on page "19", and in the Indexing Section. The information about the plaintiff is inextricably intertwined with information about the confidential source. Release of any information could enable the plaintiff to identify the confidential source. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).

77. Pages "25" through "28" comprise a four-page ROI containing an interview of a named confidential source, who provided information about the drug trafficking activities of

himself/herself and third parties. Information about the plaintiff is found in one sentence on page "27" and in the Indexing Section on page "28." The plaintiff's name is not mentioned on pages "25" and "26." The information about the plaintiff is inextricably intertwined with information about the confidential source and third parties. Release of any information could enable the plaintiff to identify the confidential source. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).

78. Pages "48" through "57" comprise the third through twelfth pages of a twelve-page Arrest Plan. Pages "48 " through "51" contains identifying information about third parties. Pages "52" through "57" contain administrative information about the arrest plan. The plaintiff's name is not mentioned on the pages. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F). Information on page "56" is also withheld pursuant to FOIA exemption (b)(7)(E).

79. Page "84" is the fifth page of a seven-page Detroit Field Division Enforcement Operational Plan. The page contains information about a DEA investigation, including the names of the involved law enforcement personnel. The plaintiff's name is not mentioned on the page. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F).

80. The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

I declare under the penalty of perjury that the foregoing is true and correct.

_2-19-08_
DATE

_Leila I. Wassom_
Leila I. Wassom
Paralegal Specialist
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C. 20537

# EXHIBIT A

AGENCIES:

( ) UNITED STATES PAROLE COMMISSION
(⬤) FEDERAL BUREAU OF INVESTIGATION
( ) BUREAU OF INDIAN AFFAIRS
( ) OFFICE OF PROFESSIONAL RESPONSIBILITY
(X) DRUG ENFORCEMENT ADMINISTRATION
( ) TREASURY DEPARTMENT
( ) FEDERAL BUREAU OF PRISONS
( ) STATE AGENCY
( ) OTHER_____

DIRECT RESPONSE TO:

Johnny Lee Bullock
Reg. No.:
Terre Haute Penitentiary
P.O.Box 12015
Terre Haute, IN 47801

IDENTIFICATION OF REQUESTOR

NAME. Johnny Lee Bullock
D.O.B.5/23/47
PLACE OF BIRTH. Mt. Vernon, Ky
SOCIAL SECURITY NO.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

FREEDOM OF INFORMATION
(U.S.C. 552) PRIVACY ACT
(5 U.S.C. 552a(d)(1)
REQUEST: EXEMPTIONS
(5 U.S.C. 552(6)(c)(b)(7),
GENERAL (U.S.C. 552a(j)(2),
OR SPECIFIC (U.S.C. 552a(k)
(2) NOT APPLICABLE TO THIS
REQUEST,



Dear Sir/Ms:
This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a (d)(1), and the applicable State Statutes governing freedom of Information request if State Agency request,for full disclosure and release of all records and/or an identifier assigned to my name. This request is sought specifically for amendment,deletion and/or expungment (5 U.S.C. 552a (d)(2)(a) of records maintained by your agency. The records sought, but not limited to, is the completed file containing (1) arrest records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants and/or detainers, (5) final and closing investigation reports; and (6) any and/or all information, data or reports not otherwise exempt by statute (5 U.S.C. (66)(c)(b)(7), (5 U.S.C. 552a (j)(2), (k)(2), or law Tarlton v. Saxbe, 507 F. 2d 1116, U.S. App. D.C. 293 (1974), Sullivan v. Murphy, 478 F. 2d 938, 156 U.S. App. D.C. 28 (1973). Your agency is advised that the investigation reports in toto are no longer accorded exempt status unless specific exemption noted, and only with reference to specific citation of authority, Paton v. La Prade, 524 F. 2d 862, 868-69 (CA. 3 1973).

Examples of specific requests:

1. _____ The information that is under request is the documentation of any and all money transactions for drug buys in the case of Johnny Lee Bullock.

2. _____ The information that has been listed in (1) also refer to any and all audio recording's, statement's, and reports of any kind when it comes to Johnny Lee Bullock.

3. _____

4. _____

5. _____

6. _____

7. _____

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and/or any material therein contained has been released to any identifiable
individual or agency, there name, titled, purpose and need for such information, the date of such release, the specific material that was released, the person within you Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d)(1), Paton v. LaParde, 524 F.2d 862 (CA3 1975) Tarlton v. Saxbe, 507 F.2d 1116, 165 U.S. App. D.C. 293 (1974), of Linda R.S. v. Richard D. 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d 536 (1973)

It is further requested that your Agency provide me with a copy of specific regulations or your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a)(together with the alternate means of access), to permit access to records on file with your Agency. If for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. (6)(c)(b)(7), 552a (j)(2), (k)(2), or by regulation Menard v. Mitchell, 430 F.2d 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 466 F. Supp. 102) I request specific citations to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from material for release. Paton v. LaParde, 524 F.2d 862 (CA3 1975). Chastain v. Kelly 510 F. 2d 1232. I further agree to pay any reasonable cost, or file in FORMA PAUPERIS if I am indigent. Provided by statute or regulation of your Agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. (6)(1)(1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulation and the date as to when your Agency will be able to act upon request.

Yours truly,

*Johnny Lee Bullock*

Dated: 7-8-05

3.

[CERTIFICATION OF IDENTITY]

**privacy act statement;** In accordance with **28 CFR 16.41**, personal data sufficient to identify the individual submitting a request by mail under the **PRIVACY ACT** of 1974, 5 U.S.C. 552a, is required. The purpose of this solicitation is to ensure that the records of the individuals who are subject of U.S. Department of Justice systems of records are not wrongfully disseminated by the Department. Failure to furnish the information will result in no action being taken on the request by the systems manager. False information on this form may subject the requester to criminal penalties under **18 U.S.C. section 1001** and/or 5 U.S.C. 552a(i)(3) by a fine of no more than $5,000.

FULL NAME OF REQUESTER  JOHNNY LEE BULLOCK

CURRENT ADDRESS  P.O.Box 12015 Terre Haute, IN 47801

DATE OF BIRTH   5/23/47

PLACE OF BIRTH  Mt. Vernon, KY 40456

I certify that I am the person above and I understand that any falsification of this statement is punishable under the provision of **18 U.S.C. 1001** by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any records under false pretense is punishable under provisions of 5 U.S.C. 552a(i)(3) by a fine of no more than $5,000.

SIGNATURE Johnny Lee Bullock

[AFFIDAVIT OF INDIGENCE]

In as much as the requested information is in the **"PUBLIC INTEREST"** and I have declared myself to be indigent, I ask that you **"WAVE ALL FEES, COST, AND/OR CHARGES"** in pursuant to 5 U.S.C. 552a (i)(3) et. Seq.

I  JOHNNY LEE BULLOCK          , swear that the afore going **FOIA/PA** request is true and correct to the best of my knowledge and belief.

Johnny Lee Bullock

REG.# 07890 — 032

P.O. BOX 12015       , UNIT F-2

STATE Indiana

# EXHIBIT B



**U. S. Departme    of Justice**

Drug Enforcement Administration

AUG 1 2 2005    'AUG 1

*www.dea.gov*

Johnny Lee Bullock  #07890-032
USP Terre Haute
P.O. Box 12015
Terre Haute, IN  47801


DEA Case Number:  05-1301-P

Subject:  Johnny L. Bullock

Dear Johnny L. Bullock:

This is in response to your Freedom of Information Act/Privacy Act (FOI/PA) request dated July 8, 2005, seeking information from the Drug Enforcement Administration (DEA) pertaining to the above subject.

We have reviewed your request for waiver of fees based on the disclosure of the requested information contributing significantly to the public interest and have determined that the waiver of fees requirement, 28 CFR §16.11(k), has not been met; thus rendering a denial of your request for waiver of fees.

The statutory fee waiver standard as amended in 1968 contains *two* basic requirements:  (1) the public interest requirement, and (2) the requirement that the requester's commercial interest in the disclosure, if any, be less than the public interest in it.  Please note that the requester bears the burden of satisfying both requirements.  In this instance, you have made no showing of how the requested information would be disseminated; nor have you demonstrated how the disclosure of the subject matter is likely to contribute significantly to public understanding of the operations and activities of the government.  We also seek further clarification on whether disclosure of the information would primarily be in your commercial interest.

In addition to requesting a waiver of fees based on the above public interest requirement, you stated that *"... I have declared myself indigent; I ask that you "WAVE ALL FEES ...."*  Please be advised that a requester's particular financial situation is not a factor entitling him or her to a waiver of fees.  Indigence alone, without a showing of a public benefit, is insufficient to warrant a waiver of fees.

79

Before DEA can begin processing your request, it will be necessary for you to submit a statement which expresses your intent to satisfy all fees incurred while processing your request. For the purpose of assessing fees, your request has been categorized as "*all others,*" in which you will be afforded two (2) hours of search and 100 pages of duplication at no charge. You will be responsible for all other fees incurred beyond the above threshold. You will be notified of any/all applicable fees in which payment will be required prior to the release of any records.

Until this office is in receipt of a promise to pay all processing fees incurred, no further action will be initiated on this request. Please mail your response to this letter to the following address:

> Drug Enforcement Administration
> FOI/Records Management Section
> Washington, D.C. 20537

If you wish to appeal our response to your request, you may do so within 60 days pursuant to 28 CFR 16.9. The appeal should be sent to the following address, with the envelope marked "FOIA Appeal."

> Co-Director
> Office of Information and Privacy
> FLAG Building, Suite 570
> Washington, D.C. 20530

> Sincerely,

> Katherine L. Myrick
> Chief, Operations Unit
> FOI/Records Management Section

# EXHIBIT C

9/15/05

September 5, 2005

United States Department of Justice
Drug Enforcement Administration
ATTN:  Co-Director
Office of Information and Privacy
FLAG Building, Suite 570
Washington, D.C. 20530

        Re:  Notice of Appeal Regarding Waiver
             of Fees in Case Number 05-1301-P

Mr. Johnny Lee Bullock
Reg. No. 07890-032
P.O. Box 12015
USP Terre Haute
Terre Haute, IN 47801

OFFICE OF INFORMATION
AND PRIVACY

SEP 1 5 2005

RECEIVED

To Whom It May Concern:

        I am in receipt of your letter dated August 12, 2005, in
which the Drug Enforcement Administration has denied my request
concerning the waiver of fees for documents. With all due respect,
I respectfully appeal that decision for the below cited reasons
pursuant to 28 CFR § 16.11(K), (2)(i)(ii).

    1)  The subject of the requested records is per-
        tinent and unquestionably concerns the illegal
        operations and activities of agents of the
        government. The subject matter in question
        will unequivocally reflect a direct and
        concise connection with numerous government
        agents;

    2)  The disclosure of the requested documents will
        undeniably contribute to the clearly under-
        standing of various government operations and/
        or activities of unscrupulous federal agents.
        The sought after records and documents are
        meaningfully informative regarding question-
        able government operations and/or activities.

        In conclusion, for the reasons cited herein, this appellant
respectfully seeks a reversal of the earlier decision concerning

1

payment of fees for the requested documents.

Respectfully submitted,

Johnny Lee Bullock

# EXHIBIT D



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

SEP 2 1 2005

Mr. Johnny L. Bullock
Register No. 07890-032
United States Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

     Re: Request No. 05-1301-P

Dear Mr. Bullock:

     This is to advise you that your administrative appeal from the action of the Drug Enforcement Administration on your request for information from the files of the Department of Justice was received by this Office on September 15, 2005.

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **05-2794**. Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

               Sincerely,

               Priscilla Jones
               Chief, Administrative Staff



# EXHIBIT E



**U.S. Department ( ustice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

DEC - 5 2006

Mr. Johnny Bullock
Register No. 07890-032
United States Penitentiary          Re:    Appeal No. 05-2794
Post Office Box 12015                       Request No. 05-1301-P
Terre Haute, IN 47801                       JGM:RMF

Dear Mr. Bullock:

      You appealed from the fee waiver determination made by the Drug Enforcement Administration (DEA) on your request for access to records pertaining to yourself. Subsequently, in a letter addressed to this Office you modified your request to include only the first 100 pages of your records.

      After careful consideration of your appeal, I am remanding your request so that DEA may process it up to the page limitation you now have set. Because there will be no fee for the first 100 pages, the need for this Office to adjudicate DEA's fee waiver denial as it relates to this request is moot.

      Although you also indicated in your appeal that you should "be billed for any remaining copying costs" beyond the first 100 pages, that amount is currently unknown. Upon its receipt of a copy of this letter, therefore, DEA will estimate the fees necessary to process the remaining records for you. Please contact DEA directly upon your receipt of its estimate and inform DEA of your commitment to pay the estimated fees or provide it with an amount that you are willing to pay for those remaining records (and it will process additional pages up to that limit).

      If DEA does not hear from you within sixty days of the date of its letter providing you with a fee estimate it may assume that you are not longer interested in pursuing this matter and close your request file.

      If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Daniel J. Metcalfe
Director

2006 DEC -7 PM 12: 25

SARO
OPERATIONS UNIT

NFA

# EXHIBIT F

**U.S. Depar'   ent of Justice**

Drug Enforcement Administration



JAN 1 6 2007

Case Number: 05-1301-P

Subject: BULLOCK, JOHNNY L. (REMANDED APPEAL)

Johnny L. Bullock
Reg. No. 07890-032
USP Terre Haute
P.O. Box 12015
Terre Haute, Indiana  47801

Dear Mr. Bullock:

Your Freedom of Information/Privacy Act request seeking information from the Drug Enforcement Administration has been processed.

The processing of your request identified certain materials that will be released to you. Portions not released are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. 552, and/or the Privacy Act, 5 U.S.C. 552a.  Please refer to the list enclosed with this letter that identifies the authority for withholding the deleted material, which is indicated by a mark appearing in the block next to the exemption.  An additional enclosure with this letter explains these exemptions in more detail.  The documents are being forwarded to you with this letter.

The rules and regulations of the Drug Enforcement Administration applicable to Freedom of Information Act requests are contained in the Code of Federal Regulations, Title 28, Part 16, as amended.  They are published in the Federal Register and are available for inspection by members of the public.

If you wish to appeal any denial of your request, you may do so within sixty (60) days pursuant to 28 C.F.R. 16.9.  The appeal should be sent to the following address, with the envelope marked "FOIA Appeal":

DEPARTMENT OF JUSTICE
OFFICE OF INFORMATION AND PRIVACY
NYAV BUILDING, 11TH FLOOR
WASHINGTON, D.C.  20530

For further information, see attached enclosure.

Sincerely,

Katherine J.

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Number of pages withheld:    5

Number of pages released:    10

Number of pages referred:    0

**APPLICABLE SECTIONS OF THE FREEDOM OF INFORMATION AND/OR PRIVACY ACT:**

Freedom of Information Act
5 U.S.C. 552

Privacy Act
5 U.S.C. 552a

| | | | | |
|---|---|---|---|---|
| [ ] (b)(1) | [ ] (b)(5) | [X] (b)(7)(C) | [ ] (d)(5) | [ ] (k)(2) |
| [X] (b)(2) | [ ] (b)(6) | [X] (b)(7)(D) | [X] (j)(2) | [ ] (k)(5) |
| [ ] (b)(3) | [ ] (b)(7)(A) | [ ] (b)(7)(E) | [ ] (k)(1) | [ ] (k)(6) |
| [ ] (b)(4) | [ ] (b)(7)(B) | [X] (b)(7)(F) | | |

FREEDOM OF INFORMATION ʌ
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(b)(2)  Materials related solely to the internal rules and practices of DEA.

(b)(3)  Information specifically exempted from disclosure by another federal statute.

(b)(4)  Privileged or confidential information obtained from a person, usually involving commercial or financial matters.

(b)(5)  Inter-agency or intra-agency documents which are subject to a privilege, such as documents the disclosure of which would have an inhibitive effect upon the development of policy and administrative direction, or which represent the work product of an attorney, or which reflect confidential communications between a client and an attorney.

(b)(6)  Materials contained in sensitive records such as personnel or medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

(b)(7)  Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement  proceedings; (B) would deprive a person of a right to a fair trial or an impartial adjudication; (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis; and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source; (E) would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

PRIVACY ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  Materials compiled in reasonable anticipation of a civil action or proceeding.

(j)(2)  Material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.

(k)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(k)(2)  Material compiled during civil investigations for law enforcement purposes.

(k)(5)  Investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to an express promise that his identity would be held in confidence, or pursuant to an implied promise of confidentiality if such information was furnished prior to September 27, 1975.

# EXHIBIT G



**U. S. Department of J~~~ice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

_www.dea.gov_

OCT 2 9 2007

Mr. William E. Bordley
Associate General Counsel/FOIPA Officer
United States Marshals Service
Office of the General Counsel
1750 Crystal Drive
Crystal City, VA 22202

   Re: _Johnny L. Bullock v. Department of Justice, et al.,_ C.A. 07-1013 ESH
      DEA FOIA Request No. 05-1301-F

Dear Mr. Bordley

    Enclosed is a two-page United States Marshals Prisoner Tracking System Personal History Defendant Form (USM 312) and a copy, for reference, of the associated Freedom of Information Act (FOIA) request. The pages, marked as pages 117 and 118, are referred for processing and a direct response to the requester. Please acknowledge receipt by contacting me at (202) 353-9680 or by e-mail at william.c.little@usdoj.gov, or Ms. Leila Wassom at (202) 307-7605 or leila.i.wassom@usdoj.gov .

    Since this matter is the subject of litigation, please process the document as soon as possible and provide a copy of your response to this office. Finally, a declaration that attests to the actions taken by your agency and provides justification for any FOIA and PA exemptions asserted may be necessary for submission to the United States District Court for the District of Columbia, in the near future. The request may come from my office or that of the Assistant United States Attorney handling the case, Mr. Alexander Shoaibi, who may be reached at (202) 7514-7236.   .

    If you have any questions concerning this matter or require further assistance, please contact Leila Wassom at (202) 307-7606 or leila.i..wassom@usdoj.gov Or me at (202) 353-9680 or william.c.little@usdoj.gov.

                        Sincerely,


                        William C. Little, Jr.
                        Senior Attorney
                        Administrative Law Section

Enclosures

cc: CCA Chron
    CCA File _JB_ 10/29/07
    Document name: H:/wclittle/MyDocuments/Litigation/Cases/A-C/Bullock/FinalUSMSRefltr:10/29/07

# EXHIBIT H



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

*Washington, DC 20530-1000*

October 31, 2007

Johnny Lee Bullock
07890-032
U. S. Penitentiary
PO Box 12015, Unit F2
Terre Haute, IN 47801

   **Re: Freedom of Information/Privacy Act Request No. 2008USMS11093**
   **Subject of Request: Self**

Dear Requester:

  The United States Marshals Service is responding to your request for records in this agency's files pertaining to the above subject.

  Pursuant to your request, [] the Marshals Service conducted a search of its files and located documents which are responsive, or [X] the Marshals Service received documents referred from another agency for disclosure determination and direct response to you. The paragraphs checked below apply:

[] All documents located or [] all documents referred from another agency are being released to you without deletions.

[X] Documents are being released to you; however, certain documents or portions of documents are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and/or the Privacy Act, 5 U.S.C. § 552a. Please refer to the list on page 2 of this letter for a description of information being withheld and the basis for withholding.

[] Our search located document(s) which originated with or contain(s) information which originated with (an)other component (s) of the Department of Justice or with (an)other government agency(ies).

  [] Information contained in Marshals Service records which originated with (an)other agency(ies) and a copy of your request have been referred to the originator(s) for consultation in accordance with 28 C.F.R. § 16.4 and/or § 16.42. The Marshals Service will correspond with you again upon completion of this consultation.

  [] Records which originated with (an)other agency(ies) and a copy of your request have been referred to the originator(s) for disclosure determination and direct response to you in accordance with 28 C.F.R. § 16.4 and/or § 16.42.

[] Your request is being denied pursuant to the Freedom of Information Act and/or Privacy Act exemption(s) identified by mark(s) on the following list.

[X] If you are dissatisfied with my action on this request, you may appeal from this (partial) denial by writing to the Director, Office of Information and Privacy, Office of Information and Privacy, Suite 11050, 1425 New York Avenue, N.W., Department of Justice, Washington, D.C. 20530-0001, within 60 days of the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

[X] The enclosed material is provided for your further information.

Sincerely,

William E. Bordley
Associate General
Counsel/FOIPA Officer
Office of General Counsel

Enclosures

Number of Documents Located or referred from another agency:  2
Number of Documents Released:  2
Number of Documents Referred to another agency:  0
Number of Documents Withheld:  0

Freedom of Information Act          Privacy Act
5 U.S.C. § 552                      5 U.S.C. § 552a

Exemptions cited                    Description of Information
                                    Withheld:

[] (b)(1)  [] (b)(2)  [] (b)(3)  [] (d)(5)  [] (j)(2)      [] Administrative marking(s)
[] (b)(4)  [] (b)(5)  [] (b)(6)  [] (k)(1)  [] (k)(2)      [] Names of and/or information on
[] (b)(7)(A)  [] (b)(7)(B)      [] (k)(5)  [] (k)(6)          government employees
[X] (b)(7)(C)  [] (b)(7)(D)                                 [X] Names of and/or information
[] (b)(7)(E)  [] (b)(7)(F)                                  pertaining to third-party individual(s)
                                                            [] Confidential source information
                                                            [] Other:_____

# FREEDOM OF INFORMATION ACT
## 5 U.S.C. § 552

Disclosure mandates of the Freedom of Information Act do not apply to matters that are—

(b)(1) specifically authorized and properly classified pursuant to an Executive order to be kept secret in the interest of national defense or foreign policy;

(b)(2) related solely to the internal rules and practices of an agency;

(b)(3) specifically exempted from disclosure by another statute;

(b)(4) privileged or confidential trade secrets and commercial or financial information obtained from a person;

(b)(5) predecisional information, including attorney work-product and attorney-client material, reflective of the deliberative process and contained in inter-agency or intra-agency correspondence which is not routinely available to a private party in litigation with an agency;

(b)(6) personnel, medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes to the extent that the production of such records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and , in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigation or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

# PRIVACY ACT
## 5 U.S.C. § 552a

(d)(5) Nothing in the Privacy Act shall allow an individual access to any information compiled in reasonable anticipation of civil action or proceeding.

Further, an agency may exempt from the access provisions and other provisions of the Privacy Act: (j)(2) Material related to the enforcement of criminal laws including efforts to prevent, control or reduce crime or to apprehend criminals;

(k)(1) Material specifically authorized and properly classified pursuant to an Executive order to be kept secret in the interest of national defense or foreign policy;

(k)(2) Material compiled during civil investigations for law enforcement purposes;

(k)(5) Investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, the disclosure of which would reveal the identity of a source who furnished information to the Government under an express promise that the source's identity would be held in confidence, or pursuant to an implied promise of confidentiality if such information was furnished prior to September 27, 1975.

(k)(6) Testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service.

# EXHIBIT I



**U. S. Department of Justice**

Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

NOV  1 2007

Mr. David Hardy
Chief, FOI/PA Section
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W.
Room 6941
Washington, D.C.  20535

Re: *Johnny L. Bullock v. Department of Justice, et al.,*  C.A. 07-1013 ESH
     DEA FOIA Request No. 05-1301-F

Dear Mr. Hardy:

Enclosed please find portions of five (5) pages and 13 pages in their entirety, numbered  99 through 116 and, for reference, a copy of the associated Freedom of Information Act (FOIA), 5 U.S.C. § 552, request submitted to the Drug Enforcement Administration (DEA) by Johnny L. Bullock.  Please acknowledge receipt by contacting me at (202) 353-9680 or by e-mail at william.c.little@usdoj.gov, or Ms. Leila Wassom at (202) 307-7605 or leila.i.wassom@usdoj.gov.

The 18 pages, consisting of one (1) Federal Bureau of Investigation (FBI) Form FD-249, two (2) FBI Forms FD-302, one (1) Application and Affidavit for Search Warrant, and one (1) FBI Facsimile Coversheet with accompanying  page from an FBI OPS plan, were located during a search of a DEA investigative file.  On five (5) of the pages, numbered 100, 103, 104, 111 and 115, DEA has withheld the names of DEA Special Agents, pursuant to FOIA Exemptions (b)(7)(C) and (b)(7)(F).  Since the pages appear to have originated with the FBI, they are referred for processing and a direct response to the requester.

Since this matter is the subject of litigation, please process the document as soon as possible and provide this office a copy of your response to the requester.  Also, a declaration that attests to the actions taken by your agency that provides the justification for any FOIA and PA exemptions asserted may be necessary for submission to the United States District Court for the District of Columbia, in the near future.  The request may come from my office or that of the Assistant United States Attorney handling the case, Mr. Alexander Shoaibi, who may be reached at (202) 514-7236.

Mr. David Hardy                                                        Page 2
November 1, 2007

     If you have any questions concerning this matter or require further assistance, please contact me or Leila Wassom at the above mentioned telephone numbers or e-mail addresses.

                     Sincerely,


                     William C. Little, Jr.
                     Senior Attorney
                     Administrative Law Section

Enclosures

cc: CCA Chron
    CCA File _____ 11/1/07
    Document name: H:/wclittle/MyDocuments/Litigation/Cases/A-C/Bullock/FinalFBIrefltr:11/1/07

# EXHIBIT J



**U. S. Department of       ce**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

[NOV  6 2007]

Mr. William Stewart
Assistant Director
Freedom of Information Section
Executive Office for United States Attorneys
600 E Street, N.W., Rm. 7300
Washington, D.C.  20530

Re: *Johnny L. Bullock v. Department of Justice,  et al.,*  C.A. 07-1013 ESH
     DEA FOIA Request No. 05-1301-F

Dear Mr. Stewart:

Enclosed are two (2) pages, numbered 97 and 98 and a reference copy of the associated Freedom of Information Act (FOIA), 5 U.S.C. § 552, request received by the Drug Enforcement Administration.  Since it appears that the pages originated with your component of the Department of Justice, they are forwarded for processing and a direct response to the requester.  Please acknowledge receipt and, once a final determination and a release are made, provide this office with a copy of your response to the requester.

The enclosed pages consist of a Fax Transmission Sheet, produced by the United States Attorney's Office for the Eastern District of Kentucky, with accompanying Media Release.  Since the pages are associated with a FOIA request that is the subject of litigation, please process the document as soon as possible.  Finally, a declaration that attests to the actions taken by your agency and provides justification for any FOIA and PA exemptions asserted may be necessary for submission to the United States District Court for the District of Columbia, in the near future.  The request may come from my office or that of the Assistant United States Attorney handling the case, Mr. Alexander Shoaibi, who may be reached at (202) 7514-7236.

If you have any questions concerning this matter or require further assistance, please contact Leila Wassom at (202) 307-7606 or leila.i.wassom@usdoj.gov or me at (202) 353-9680 or william.c.little@usdoj.gov.

Thanking you in advance for your prompt attention to this matter,

Sincerely,

William C. Little, Jr.
Senior Attorney
Administrative Law Section

Enclosures

cc: CCA Chron
    CCA File *11/6/07*
    Document name: H:/wclittle/MyDocuments/ILitigation/Cases/A-C/Bullock/eousarefltr:11/6/07

# EXHIBIT K



**U. S. Department of Justice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

NOV 1 4 2007

Mr. Johnny L. Bullock
#07890-032
USP McCreary
P.O. Box 3000
Pine Knot, KY 42635

Re: *Johnny L. Bullock v. Department of Justice, et al.,* CA No. 07-1013 ESH

Dear Mr. Bullock:

Enclosed please find portions of 32 pages and 30 pages in their entirety. These pages are released in further responsive to your Freedom of Information Privacy Act/Request dated July 8, 2005, to the Drug Enforcement Administration (DEA), that is the subject of the above entitled litigation. Included in this release are additional portions of page 11. Portions of page 11 were previously released to you by letter dated January 16, 2007. Pursuant to a litigation review, it was determined that additional information could be released. In total, 118 pages of material responsive to your request have now been located during the course of the searches conducted by DEA, of which 61 pages have been released to you by DEA. Information was withheld pursuant to Privacy Act (PA), 5 U.S.C. § 552a, Exemption (j)(2), and the Freedom of Information (FOIA), 5 U.S.C. § 552, Exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).

During the litigation review it was surmised that, based on your request, it was reasonably likely that records could also be maintained in the DEA field office investigative case file. The additional 103 pages of responsive material were located in the field, of which 20 pages were withheld in their entirety. Of the 103 pages, 18 pages were referred to the Federal Bureau of Investigation, two (2) pages were referred to the United States Marshals Service, and two (2) pages were referred to the Executive Office for United States Attorneys for direct response to you.

Sincerely,

William C. Little, Jr.
Senior Attorney
Administrative Law Section

Enclosures

cc: CCA Chron
    CCA File *MBl 11/14/07*
    Document name: H:/wclittle/MyDocuments/ILitigation/Cases/A-C/Bullock/BulloclrelltrNCICltr:11/14/07

# EXHIBIT L



**U. S. Department of Justice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

.NOV 1 9 2007.

Ms. Peggy Belando
Unit Chief, FOI/PA
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W., Rm 6975
Washington, D.C. 20535

 Re: *Johnny L. Bullock v. Department of Justice, et al.,* C.A. 07-1013 ESH
  DEA FOIA Request No. 05-1301-F

Dear Ms. Belando:

 Enclosed please find portions of five (5) pages and 13 pages in their entirety, numbered  99 through 116 and, for reference, a copy of the associated Freedom of Information Act (FOIA), 5 U.S.C. § 552, request submitted to the Drug Enforcement Administration (DEA) by Johnny L. Bullock. These documents were originally sent to David Hardy in error by letter dated November 1, 2007. You may disregard that letter and the attached pages should they finally arrive at your office. Please acknowledge receipt of this referral by contacting me at (202) 353-9680 or by e-mail at <u>william.c.little@usdoj.gov</u>, or Ms. Leila Wassom at (202) 307-7605 or <u>leila.i.wassom@usdoj.gov</u>.

 The 18 pages, consisting of one (1) Federal Bureau of Investigation (FBI) Form FD-249, two (2) FBI Forms FD-302, one (1) Application and Affidavit for Search Warrant, and one (1) FBI Facsimile Coversheet with accompanying page from an FBI OPS plan, were located during a search of a DEA investigative file. On five (5) of the pages, numbered 100, 103, 104, 111 and 115, DEA has withheld the names of DEA Special Agents, pursuant to FOIA Exemptions (b)(7)(C) and (b)(7)(F). Since the pages appear to have originated with the FBI, they are referred for processing and a direct response to the requester.

 Since this matter is the subject of litigation, please process the document as soon as possible and provide this office a copy of your response to the requester. Also, a declaration that attests to the actions taken by your agency that provides the justification for any FOIA and PA exemptions asserted may be necessary for submission to the United States District Court for the District of Columbia, in the near future. The request may come from my office or that of the

Ms. Peggy Belando                                                    Page 2
November 19, 2007

Assistant United States Attorney handling the case, Mr. Alexander Shoaibi, who may be reached at (202) 514-7236.

If you have any questions concerning this matter or require further assistance, please contact me or Leila Wassom at the above mentioned telephone numbers or e-mail addresses.

Sincerely,

William C. Little, Jr.
Senior Attorney
Administrative Law Section

Enclosures

# EXHIBIT M



**U. S. Department of J᠆᠆.ce**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

NOV ᠆ ᠆ 2007

Mr. Johnny L. Bullock
#07890-032
USP McCreary
P.O. Box 3000
Pine Knot, KY 42635

   Re: *Johnny L. Bullock v. Department of Justice, et al.,* CA No. 07-1013 ESH

Dear Mr. Bullock:

   Enclosed please find portions of three (3) pages, in further response to your Freedom of Information Privacy Act/Request dated July 8, 2005, to the Drug Enforcement Administration (DEA), that is the subject of the above entitled litigation. During the final litigation review, it was determined that portions of these three (3) pages, previously withheld in their entirety, could be released. Information is withheld pursuant to the Privacy Act (PA), 5 U.S.C. § 552a, (j)(2), and the Freedom of Information Act, 5 U.S.C. § 552, Exemptions (b)(2), (b)(7)(C), and (b)(7)(F). In total, DEA has released portions of 43 pages and 30 pages in their entirety, and 23 pages were withheld in their entirety.

                                   Sincerely,


                                   William C. Little, Jr.
                                   Senior Attorney
                                   Administrative Law Section



Enclosures


CCA Chron
OCA File ᠆᠆/23/2007
Document name:H:MyDocuments:lwassom/correspondence/bullocksuprelltr.wpd/11/28/07

# EXHIBIT N



**U.S. Departmᵗ of Jusᵗ**

*Executive Office for United States Att⋯ ⋯s*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757   FAX: 616-6478   (www.usdoj.gov/usao)*

Requester: Johnny L. Bullock_____    Request No.: 07-3831-R_____

Government Component that referred material: Drug Enforcement Administration_____

Dear Requester:

This is in reply to your Freedom of Information Act/Privacy Act request of July 8, 2005. Records were referred to us by the government component above for direct response to you.

The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information. The exemptions cited are marked below. An enclosure to this letter explains the exemptions in more detail.

| Section 552 | | | Section 552a |
|---|---|---|---|
| [  ] (b)(1) | [  ] (b)(4) | [  ] (b)(7)(B) | [  ] (j)(2) |
| [  ] (b)(2) | [  ] (b)(5) | [ X ] (b)(7)(C) | [  ] (k)(2) |
| [  ] (b)(3) | [  ] (b)(6) | [  ] (b)(7)(D) | [  ] (k)(5) |
| _____ | [  ] (b)(7)(A) | [  ] (b)(7)(E) | [  ] _____ |
| _____ | | [  ] (b)(7)(F) | |

We have reviewed approximately___2___page(s) of material:

__1__ page(s) are being released in full (RIF);
__1__ page(s) are being released in part (RIP);
_____ page(s) are withheld in full (WIF).

This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)                                                        Form No. 024 - 3/07

# EXHIBIT O



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

January 7, 2008

MR. JOHNNY LEE BULLOCK
   07890-032
UNITED STATES PENITENTIARY MCCREARY
POST OFFICE BOX 3000
PINE KNOT, KY 42635

                        Request No.: 1056345-003
                        Subject: JOHNNY LEE BULLOCK

Dear Requester:

        This is in reference to the November 19, 2007 referral
to the FBI from the Drug Enforcement Administration (DEA). DEA
located FBI documents in their file and referred them to us for
release determination and direct response to you.

        The material referred were copies of documents located
in the file the FBI processed for you as part of FOIA No.
1056345-2. As stated in our November 22, 2007 and September 26,
2007 letters, material located in the file remains exempt from
disclosure pursuant to Title 5, United States Code, Section 552,
subsection (b)(7)(A). Five pages of the referred material are
duplicates of public source documents you received with our
release dated September 26, 2007.

                        Sincerely yours,

                        David M. Hardy
                        Section Chief
                        Record/Information
                         Dissemination Section
                        Records Management Division

# EXHIBIT P

PAGE ITEMIZATION

PAGE NUMBER:    1
DOCUMENT TYPE: DEFENDANT DISPOSITION REPORT (DEA 210)

DATE:      SEPTEMBER 10, 2002

                                    ( X ) RELEASED
                                    (   ) WITHHELD
     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 5 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER |
| BLOCKS 24 & 25 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |

PAGE ITEMIZATION

PAGE NUMBER:   2 - 3
DOCUMENT TYPE: PERSONAL HISTORY REPORT (DEA 202) PAGES 1 AND 2 OF 2

DATE:      JANUARY 29, 2001

                                    ( X ) RELEASED
                                    (   ) WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCKS 5, 46 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP QUALITATIVE & QUANTITATIVE CRITERIA |
| BLOCKS 41a,c, 42a, 43a, 43b | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
| BLOCK 43b | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | THIRD PARTY NADDIS IDENTIFIER CODES |
| BLOCK 68, 71, 74 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |

PAGE ITEMIZATION

PAGE NUMBER:    4
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6)

DATE:      OCTOBER 8, 2002

                                        ( X )  RELEASED
                                        (   )  WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

  FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14; PARA 2 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |

PAGE ITEMIZATION

PAGE NUMBER:    5
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6)

DATE:      SEPTEMBER 11, 2002

( X ) RELEASED
(   ) WITHHELD

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCK 10; PARA 2; INDEXING SECTION | THIRD-PARTY NAME, IDENTIFIER AND INFORMATION | (b)(7)(C) | NAME OF INFORMATION RELATED TO A THIRD-PARTY |
| INDEXING SECTION | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |

PAGE ITEMIZATION

PAGE NUMBER: · 6 - 7
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6) PAGES 1 AND 2 OF 2

DATE:     JANUARY 24, 2001

                                        ( X ) RELEASED
                                        (    ) WITHHELD
        TO:  CRIMINAL INVESTIGATIVE FILE

     FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| PAGE 1: BLOCK 4; PAGE 2: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 12 & 14; DETAILS: PARA 4; PAGE 2: NON-DRUG EVIDENCE SECTION | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS, FBI SPECIAL AGENT, & LAW ENFORCEMENT PERSONNEL |
| PAGE 1: DETAILS: PARA 2; PAGE 2: INDEXING SECTION | THIRD-PARTY NAMES, INFORMATION AND IDENTIFIERS | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 2: INDEXING SECTION | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS IDENTIFIERS CODES |

PAGE ITEMIZATION

PAGE NUMBER:  8 - 10
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6 AND 6a) PAGES 1 - 3 OF 3

DATE:      JANUARY 17, 2001

                                    (   ) RELEASED
                                    ( X ) WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  TASK FORCE OFFICER

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) (b)(7)(F) | IDENTITY OF CONFIDENTIAL SOURCE |
|  | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4; PAGE 2, 3: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 9, 12 & 14; DETAILS: PARA 2; PAGE 2: PARA 3, 6 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENT, FBI SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| PAGE 1: SYNOPSIS; DETAILS: PARA 2; PAGE 2: DETAILS: PARA 3-6; CUSTODY OF EVIDENCE; NON-DRUG EVIDENCE; INDEXING SECTION | THIRD-PARTY NAMES, INFORMATION AND IDENTIFIERS | (b)(7)(C) | NAMES AND NADDIS IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 3: INDEXING SECTION | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

PAGE ITEMIZATION

PAGE NUMBER:   11 - 12
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6 and 6a) PAGE 1 AND 2 OF 2

DATE:      DECEMBER 8, 2000

( X ) RELEASED
(   ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  TASK FORCE OFFICER

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| PAGE 1:BLOCK 4; PAGE 2: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 9, 12 & 14 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICER |
| PAGE 1: DETAILS: PARA 2 | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |

PAGE ITEMIZATION

PAGE NUMBER:  13 - 15
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6 AND 6a) PAGES 1 - 3 OF 3

DATE:     DECEMBER 8, 2000

(   ) RELEASED
( X ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE REPORT | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) (b)(7)(F) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF AND INFORMATION PROVIDED BY A CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4; PAGES 2 - 4: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 9, 12 & 14; DETAILS: PARA 2, 4; PAGE 2: PARA 4, 5 | NAMES OF LAW ENFORCEMENT PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS, FBI SPECIAL AGENT & LAW ENFORCEMENT OFFICERS |
| PAGE 1: PARA 2-4; PAGE 2: PARA 4-6, CUSTODY OF EVIDENCE; PAGE 3: INDEXING SECTION | THIRD-PARTY NAMES, INFORMATION AND IDENTIFIERS | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 3: INDEXING SECTION | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

PAGE ITEMIZATION

PAGE NUMBER:   16 - 17
DOCUMENT TYPE:   PERSONAL HISTORY REPORT (DEA 202) PAGES 1 -2 OF 2

DATE:      MAY 29, 2001

( ) RELEASED
( X ) WITHHELD

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:   DEA SPECIAL AGENT

PURPOSE:   FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES, IDENTIFIERS AND INFORMATION RELATED TO A THIRD-PARTY |
| BLOCKS 5, 45, 46 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP QUALITATIVE & QUANTITATIVE CRITERIA |
| BLOCK 68, 71, 74 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |

PAGE ITEMIZATION

PAGE NUMBER:  18 - 20
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6) PAGES 1 - 3 OF 3

DATE:    JUNE 27, 2001

                                        (   ) RELEASED
                                        ( X ) WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  DEA DIVERSION INVESTIGATOR

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) (b)(7)(F) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4; PAGES 2, 3: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 9,12 & 14; DETAILS: PARA 1, 3: PAGE 2: PARA 3 | NAMES AND SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES AND SIGNATURES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| PAGE 1: BLOCK 6; PAGES 2-3: BLOCK 3; PAGES 1-2: PARA 2-7; PAGE 3: INDEXING SECTION | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 3: INDEXING SECTION | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

PAGE ITEMIZATION

PAGE NUMBER:   21
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6)

DATE:      SEPTEMBER 4, 2002

( X ) RELEASED
(   ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCK 6; DETAILS: PARA 2; INDEXING SECTION | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| INDEXING SECTION | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

PAGE ITEMIZATION

PAGE NUMBER:   22 - 23
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 AND 2 OF 2

DATE:      MAY 23, 2002

( X ) RELEASED
(   ) WITHHELD

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| PAGE 1: BLOCK 4; PAGE 2: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 12 & 14 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| PAGE 1: BLOCK 6; DETAILS: PARA 3, 4; PAGE 2:PARA 5; INDEXING SECTION | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 2: INDEXING SECTION | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

PAGE ITEMIZATION


PAGE NUMBER:    24
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6)

DATE:       JANUARY 17, 2002

                                    ( X )  RELEASED
                                    (   )  WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCK 6; DETAILS: PARA 2; INDEXING SECTION | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| INDEXING SECTION | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS IDENTIFIERS CODE |

PAGE ITEMIZATION

PAGE NUMBER:   25 - 28
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6) PAGE 1 - 4 OF 4

DATE:      DECEMBER 6, 2000

                                        (   ) RELEASED
                                        ( X ) WITHHELD

     TO:   CRIMINAL INVESTIGATIVE FILE

   FROM:   TASK FORCE OFFICER

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) (b)(7)(F) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14;SYNOPSIS; DETAILS: PARA 2 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICER |
| BLOCK 10; SYNOPSIS; DETAILS: PARA 1-3 | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAMES OF INDIVIDUALS/PERSONAL INFORMATION |
| | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |

PAGE ITEMIZATION

PAGE NUMBER:   26 - 28
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6a) PAGES 2-4 OF 4

DATE:      DECEMBER 6, 2000

                                      (   ) RELEASED
                                    X (   ) WITHHELD

      TO:  CRIMINAL INVESTIGATIVE FILE

    FROM:  TASK FORCE OFFICER

PURPOSE:   FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 2:PARA 4-6; PAGE 3: PARA 7,8; INDEXING SECTION: PAGE 4: INDEXING SECTION | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 2: PARA 4-6; PAGE 3: PARA 7, 8 | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |
| PAGES 3 & 4: INDEXING SECTION | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS IDENTIFIERS CODES |

PAGE ITEMIZATION

PAGE NUMBER:    29-30
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 AND 2 OF 2

DATE:        APRIL 16, 2001

                                        ( X ) RELEASED
                                        (   ) WITHHELD
        TO:  CRIMINAL INVESTIGATIVE FILE

    FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PAGE 1: BLOCK 4; PAGE 2: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 12 & 14; PAGE 2: PARA 5 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS; FBI SPECIAL AGENT; ATF SPECIAL AGENT, DUSM AND LAW ENFORCEMENT OFFICERS |
| PAGE 1: BLOCK 6; DETAILS: PARA 2 -4; PAGE 2: PARA 4; INDEXING SECTION | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 2: INDEXING SECTION | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS IDENTIFIERS CODES |

PAGE ITEMIZATION

PAGE NUMBER:   44 - 45
DOCUMENT TYPE: DEA DETROIT FIELD DIVISION - ENFORCEMENT OPERATIONAL PLAN
               PAGES 1 AND 2 OF 2
DATE:      APRIL 16, 2001

                                        ( X ) RELEASED
                                        (   ) WITHHELD

       TO:  CRIMINAL INVESTIGATIVE FILE

     FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PAGE 1: TOP SECTION; MISSION OF OPERATION SECTION; PAGE 2: SIGNATURE BLOCKS | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| PAGE 1: FOURTH SECTION; MISSION OF OPERATION SECTION; | THIRD-PARTY NAMES | (b)(7)(C) | NAMES OF INDIVIDUALS |

PAGE ITEMIZATION

PAGE NUMBER:    46 - 47
DOCUMENT TYPE: ARREST PLAN   PAGES 1 AND 2 OF 12

DATE:       APRIL 9, 2001

( X ) RELEASED
(   ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| PAGE 1: WARRANT INFORMATION SECTION; PAGE 2: CONCEPT OF OPERATION SECTION; CAUTION STATEMENT | THIRD-PARTY NAMES, PERSONAL IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAME AND PERSONAL IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 1: CASE AGENT AND OFFICER SECTION | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS AND LAW ENFORCEMENT OFFICERS |
| | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | INTERNAL TELEPHONE NUMBERS |

PAGE ITEMIZATION

PAGE NUMBER:   48 - 51
DOCUMENT TYPE: ARREST PLAN (CONT'D) PAGES 3 - 7 OF 12

DATE:     APRIL 9, 2001

                                         (   ) RELEASED
                                         ( X ) WITHHELD

     TO:   CRIMINAL INVESTIGATIVE FILE

   FROM:   DEA SPECIAL AGENT

PURPOSE:   FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE PAGES | THIRD-PARTY NAMES, PERSONAL IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAME AND PERSONAL IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| TOP MARGINS | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | INTERNAL TELEPHONE NUMBERS |

PAGE ITEMIZATION

PAGE NUMBER:   52
DOCUMENT TYPE: ARREST PLAN (CONT'D) PAGES 8 OF 12

DATE:     APRIL 9, 2001

                                        (   ) RELEASED
                                        ( X ) WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

     FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE PAGE | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAME OF AND INFORMATION RELATED TO THIRD-PARTIES |
| | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS AND LAW ENFORCEMENT OFFICERS |
| TOP MARGIN | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | INTERNAL TELEPHONE NUMBERS |

PAGE ITEMIZATION

PAGE NUMBER:   53 - 54
DOCUMENT TYPE: ARREST PLAN (CONT'D) PAGES 9 - 10 OF 12

DATE:     APRIL 9, 2001

( X ) RELEASED
(   ) WITHHELD

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| TOP MARGINS | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | INTERNAL TELEPHONE NUMBERS |
| CONTINGENCIES | NAME OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAME LAW ENFORCEMENT PERSONNEL |

PAGE ITEMIZATION

PAGE NUMBER:   53 - 54
DOCUMENT TYPE: ARREST PLAN (CONT'D) PAGES 9 - 10 OF 12

DATE:      APRIL 9, 2001

                                        ( X ) RELEASED
                                        (   ) WITHHELD

       TO:  CRIMINAL INVESTIGATIVE FILE

     FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| TOP MARGINS | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | INTERNAL TELEPHONE NUMBERS |

PAGE ITEMIZATION

PAGE NUMBER:  56
DOCUMENT TYPE: ARREST PLAN  PAGE 11 OF 12

DATE:    APRIL 9, 2001

(   ) RELEASED
( X ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE PAGE | INVESTIGATIVE TECHNIQUES | (b)(7)(E) | INFORMATION RELATED TO RULES OF ENGAGEMENT AND OPERATIONAL SPECIFICS |
| | PERSONNEL RULES AND PRACTICES | (b)(2) | INFORMATION RELATED TO RULES OF ENGAGEMENT AND OPERATIONAL SPECIFICS |
| CONTROL AND COMMUNICATIONS SECTION | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENT, FBI SPECIAL AGENT & LAW ENFORCEMENT OFFICERS |
| TOP MARGIN | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | INTERNAL TELEPHONE NUMBERS |

PAGE ITEMIZATION

PAGE NUMBER:    57
DOCUMENT TYPE: ARREST PLAN (CONT'D) PAGE 12 OF 12

DATE:     APRIL 9, 2001

(   ) RELEASED
( X ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE PAGE | PERSONNEL RULES AND PRACTICES | (b)(2) | INFORMATION RELATED TO RULES OF ENGAGEMENT AND OPERATIONAL SPECIFICS |
| TOP MARGIN | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | INTERNAL TELEPHONE NUMBERS |
| CAUTION STATEMENT | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAME OF AND INFORMATION RELATED TO THIRD-PARTIES |

PAGE ITEMIZATION


PAGE NUMBER:   65 - 75
DOCUMENT TYPE: RAP SHEET  PAGES 1 - 11 OF 11

DATE:     NONE

( X )  RELEASED
(   )  WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  NCIC

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| P PAGE 1: ATN SECTION: | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAME OF SUPPORT STAFF |
| PAGES 1 - 11: TOP RIGHT MARGIN | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | COMPUTER TERMINAL IDENTIFIER CODES |

PAGE ITEMIZATION

PAGE NUMBER:    76
DOCUMENT TYPE: NLETS RAP SHEET

DATE:      NONE

                                              ( X )  RELEASED
                                              (   )  WITHHELD

      TO:  CRIMINAL INVESTIGATIVE FILE

    FROM:  FLORIDA CRIMINAL HISTORY

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| ATN SECTION: | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAME OF SUPPORT STAFF |
| TOP RIGHT MARGIN | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | COMPUTER TERMINAL IDENTIFIER CODE |

PAGE ITEMIZATION

PAGE NUMBER:   77 - 78
DOCUMENT TYPE: NCIC RAP SHEET  - PAGES 1 - 2 OF 2

DATE:   NONE

( X ) RELEASED
(     ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  NCIC

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PAGES 1, 2 TOP RIGHT MARGIN | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | COMPUTER TERMINAL IDENTIFIER CODE |

PAGE ITEMIZATION

PAGE NUMBER:   80 - 81
DOCUMENT TYPE: DETROIT FIELD DIVISION - ENFORCEMENT OPERATIONAL PLAN
                PAGES 1 AND 2 OF 7
DATE:      JANUARY 23, 2001

( X ) RELEASED
(   ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PAGE 1: AGENT(S) BLOCK; CASE BACKGROUND; BOTTOM MARGIN; PAGE 2: MISSION OF OPERATION | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF FBI SPECIAL AGENT & LAW ENFORCEMENT OFFICERS |
| | THIRD-PARTY NAMES, PERSONAL IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAME AND PERSONAL IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) (b)(7)(F) | IDENTITY OF CONFIDENTIAL SOURCE |

PAGE ITEMIZATION

PAGE NUMBER:   84
DOCUMENT TYPE: DETROIT FIELD DIVISION - ENFORCEMENT OPERATIONAL PLAN (CONT'D)
               PAGE 5 OF 7
DATE:  JANUARY 23, 2001

                                        (   ) RELEASED
                                        ( X ) WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE PAGE | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS, FBI SPECIAL AGENT, & LAW ENFORCEMENT OFFICERS |
| | PERSONNEL PRACTICES AND PROCEDURES | (b)(2) | INFORMATION RELATED TO OPERATIONAL SPECIFICS |
| | INTERNAL MARKINGS & IDENTIFIERS | (b)(2) | INTERNAL TELEPHONE NUMBERS |

PAGE ITEMIZATION

PAGE NUMBER:   85, 86
DOCUMENT TYPE: DETROIT FIELD DIVISION - ENFORCEMENT OPERATIONAL PLAN (CONT'D)
               PAGES 6 AND 7 OF 7
DATE:     JANUARY 23, 2001

                                        ( X ) RELEASED
                                        (   ) WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PAGE 6: OPERATIONAL AUTHORIZATION SECTION; PAGE 7: MIDDLE | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES, SIGNATURES & INITIALS OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICER |
| PAGE 6: EMERGENCY NOTIFICATION SECTION | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | INTERNAL TELEPHONE NUMBERS |

PAGE ITEMIZATION

PAGE NUMBER:   87
DOCUMENT TYPE: SEARCH WARRANT

DATE:      JANUARY 23, 2001

                                        ( X ) RELEASED
                                        (    ) WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  UNITED STATES DISTRICT COURT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| AFFIANT | NAME OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAME OF FBI SPECIAL AGENT |

PAGE ITEMIZATION

PAGE NUMBER:  91
DOCUMENT TYPE: EVIDENCE RECOVERY LOG

DATE:     JANUARY 23, 2001

( X ) RELEASED
(   ) WITHHELD

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:  DETECTIVE

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| PREPARER/ ASSISTANTS; PERSONNEL SECTION; RECOVERED BY COLUMN; BOTTOM MARGIN | NAME OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS, FBI SPECIAL AGENT & LAW ENFORCEMENT OFFICERS |

PAGE ITEMIZATION

PAGE NUMBER:  95
DOCUMENT TYPE: ARREST REPORT

DATE:  JANUARY 23, 2001

( X ) RELEASED
(    ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| G-DEP BLOCKS | INTERNAL MARKINGS & IDENTI-FIERS | (b)(2) | G-DEP IDENTIFIER CODES |
| AGENTS INVOLVED: | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENT & LAW ENFORCEMENT OFFICER |

**PAGE ITEMIZATION**

PAGE NUMBER:   100 - 104
DOCUMENT TYPE: FBI FBI TRANSCRIPTION (FD-302 & 302a) PAGES 1 - 5 OF 5

DATE:  JANUARY 30, 2001

                                          (   ) RELEASED
                                          (   ) WITHHELD

     TO:  CRIMINAL INVESTIGATIVE FILE

   FROM:  FBI SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PAGE 1: PARA 2;<br>PAGE 4: PARA 2;<br>PAGE 5: PARA 1 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C)<br>(b)(7)(F) | NAMES OF SPECIAL<br>AGENTS |

PAGE ITEMIZATION

PAGE NUMBER:   111
DOCUMENT TYPE: AFFIDAVIT

DATE:     JANUARY 23, 2001

(   ) RELEASED
(   ) WITHHELD

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:   FBI SPECIAL AGENT

PURPOSE:   FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PARA 3 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C)<br>(b)(7)(F) | NAME OF DEA SPECIAL AGENT |

PAGE ITEMIZATION

PAGE NUMBER:  115
DOCUMENT TYPE: FBI FACSIMILE COVERSHEET

DATE:  APRIL 13, 2001

(   ) RELEASED
(   ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  FBI SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| SALUTATION | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C)<br>(b)(7)(F) | NAME OF DEA SPECIAL AGENT |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Johnny L. Bullock )<br><br>Plaintiff, )<br><br>v. )<br><br>DEPARTMENT OF JUSTICE, et al, )<br><br>Defendant. ) | Case No: 07-1013 ESH |

## DECLARATION

I, WILLIAM E. BORDLEY, being duly sworn upon my oath, hereby depose and say that:

1.    I am an Associate General Counsel and the Freedom of Information/Privacy

Act (FOI/PA) Officer of the United States Marshals Service (USMS), assigned to the Headquarters,

Office of General Counsel, in Arlington, Virginia.  I am experienced with the procedures for

responding to requests made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and

the Privacy Act (PA), 5 U.S.C. § 552a, for information maintained in the records and files of the

USMS.  The USMS Headquarters Office of General Counsel (OGC) is responsible for processing all

FOI/PA requests made to any USMS office located throughout the United States pursuant to USMS

policy.

2.    On October 31, 2007, the USMS received from the Drug Enforcement

Administration (DEA), two pages of information consisting of a two-page USM-312, Prisoner

Tracking System Personal History of Defendant dated January 24, 2001, which were located by

DEA during its processing of plaintiff's Freedom of Information Act request to that agency.  The

two pages originated with the USMS and were referred to the USMS for disclosure determination

GOVERNMENT
EXHIBIT
3

and direct response to plaintiff in accordance with 28 C.F.R. § 16.4(c).  (See Exhibit A)

3.    By letter dated October 31, 2007, the USMS released to plaintiff these two pages of documents pertaining to him with limited information redacted from one page pursuant to exemption 7(C) of the Freedom of Information Act, 5 U.S.C. Section 552(b)(7)(C).  The USMS asserted exemption 7(C) to withhold only the names of third party individuals.  No other information was withheld and the USMS released all reasonably segregable information to plaintiff.  (See Exhibit B)

4.    The two pages of documents referred by DEA are records maintained by the USMS in the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005.  Records maintained in this system are compiled for law enforcement purposes in connection with the USMS receipt, processing, transportation and custody of prisoners.  See Rule 4, Fed. R. Cr. Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(j),(k).  As such, this system of records is exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.101(q).  Therefore, the three pages of documents referred to the USMS by DEA in connection with plaintiff's request were processed pursuant to the FOIA, 5 U.S.C. § 552.

5.    Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes to the extent that the production of such records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy.
5 U.S.C. Section 552(b)(7)(C).  This exemption was applied on the USM-312, Prisoner Tracking System Personal History of Defendant to withhold only the names and information pertaining to third party individuals.

6.    Plaintiff presented no public interest to warrant disclosing the identity of or the names of third-party individuals which could expose these individuals to unnecessary public attention, criticism, harassment, and possible danger to life or physical safety for cooperating in a

law enforcement activity, or for being mentioned in connection with an official criminal

investigation. Further, plaintiff provides no indication as to how disclosure of such information

would meet the basic purpose of the FOIA, i.e., to shed light on an agency's performance of its

statutory duties, nor can the USMS discern any public interest in disclosure which would

outweigh the privacy of these individuals. Disclosure to plaintiff would be equivalent to

disclosure to the public and, as such, could reasonably be expected to constitute an unwarranted

invasion of personal privacy since no legitimate public interest would be served by disclosure.

5 U.S.C. § 552(b)(7)(C).

    7. A description of the one page released to the plaintiff with excisions made pursuant to

5 U.S.C. § 552 (b)(7)(C) is provided as follows:

**Documents Located by the USMS and Disclosed with Information Deleted and Withheld**

| Document Item | Document Identification | No. Of Pages |
|---|---|---|
| **Item 1:** | USM Form 312, Personal History of Defendant, dated January 23, 2001 | 1 |

    8. In summary, the two pages of documents referred by DEA to the USMS for

disclosure determination were released to plaintiff, as described above, with limited information

deleted pursuant to exemption 7(C). All non-exempt portions of the responsive documents have

been segregated and released to plaintiff.

    I declare under penalty of perjury pursuant to 28 U.S.C, Section 1746, that the foregoing

is true and correct to the best of my information and belief.

_____
WILLIAM E. BORDLEY

Dated: November 7, 2007



RECEIVED
CHIEF OF COUNSEL

07 OCT 31 AM 10: 59

U.S. MARSHALS SERVICE

**U. S. Department of Justice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

 

OCT 2 9 2007

Mr. William E. Bordley
Associate General Counsel/FOIPA Officer
United States Marshals Service
Office of the General Counsel
1750 Crystal Drive
Crystal City, VA 22202

Re: *Johnny L. Bullock v. Department of Justice, et al.,* C.A. 07-1013 ESH
    DEA FOIA Request No. 05-1301-F

Dear Mr. Bordley:

Enclosed is a two-page United States Marshals Prisoner Tracking System Personal History Defendant Form (USM 312) and a copy, for reference, of the associated Freedom of Information Act (FOIA) request. The pages, marked as pages 117 and 118, are referred for processing and a direct response to the requester. Please acknowledge receipt by contacting me at (202) 353-9680 or by e-mail at william.c.little@usdoj.gov, or Ms. Leila Wassom at (202) 307-7605 or leila.i.wassom@usdoj.gov.

Since this matter is the subject of litigation, please process the document as soon as possible and provide a copy of your response to this office. Finally, a declaration that attests to the actions taken by your agency and provides justification for any FOIA and PA exemptions asserted may be necessary for submission to the United States District Court for the District of Columbia, in the near future. The request may come from my office or that of the Assistant United States Attorney handling the case, Mr. Alexander Shoaibi, who may be reached at (202) 7514-7236.

If you have any questions concerning this matter or require further assistance, please contact Leila Wassom at (202) 307-7606 or leila.i.wassom@usdoj.gov Or me at (202) 353-9680 or william.c.little@usdoj.gov.

Sincerely,

William C. Little, Jr.
Senior Attorney
Administrative Law Section

Enclosures

Exhibit A



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

_____

*Washington, DC 20530-1000*


October 31, 2007


Johnny Lee Bullock
07890-032
U. S. Penitentiary
PO Box 12015, Unit F2
Terre Haute, IN  47801

     **Re:  Freedom of Information/Privacy Act Request No. 2008USMS11093**
     **Subject of Request:  Self**

Dear Requester:

     The United States Marshals Service is responding to your request for records in this agency's files pertaining to the above subject.

     Pursuant to your request, [] the Marshals Service conducted a search of its files and located documents which are responsive, or [X] the Marshals Service received documents referred from another agency for disclosure determination and direct response to you.  The paragraphs checked below apply:

[] All documents located or [] all documents referred from another agency are being released to you without deletions.

[X]  Documents are being released to you; however, certain documents or portions of documents are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and/or the Privacy Act, 5 U.S.C. § 552a. Please refer to the list on page 2 of this letter for a description of information being withheld and the basis for withholding.

[] Our search located document(s) which originated with or contain(s) information which originated with (an)other component (s) of the Department of Justice or with (an)other government agency(ies).

     [] Information contained in Marshals Service records which originated with (an)other agency(ies) and a copy of your request have been referred to the originator(s) for consultation in accordance with 28 C.F.R. § 16.4 and/or § 16.42.  The Marshals Service will correspond with you again upon completion of this consultation.

     [] Records which originated with (an)other agency(ies) and a copy of your request have been referred to the originator(s) for disclosure determination and direct response to you in accordance with 28 C.F.R. § 16.4 and/or § 16.42.

Exhibit B

[] Your request is being denied pursuant to the Freedom of Information Act and/or Privacy Act exemption(s) identified by mark(s) on the following list.

[X] If you are dissatisfied with my action on this request, you may appeal from this (partial) denial by writing to the Director, Office of Information and Privacy, Office of Information and Privacy, Suite 11050, 1425 New York Avenue, N.W., Department of Justice, Washington, D.C. 20530-0001, within 60 days of the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

[X] The enclosed material is provided for your further information.

Sincerely,

William E. Bordley
Associate General
Counsel/FOIPA Officer
Office of General Counsel

Enclosures

| | |
|---|---|
| Number of Documents Located or referred from another agency: | 2 |
| Number of Documents Released: | 2 |
| Number of Documents Referred to another agency: | 0 |
| Number of Documents Withheld: | 0 |

Freedom of Information Act
5 U.S.C. § 552

Privacy Act
5 U.S.C. § 552a

Exemptions cited

Description of Information Withheld:

[] (b)(1)   [] (b)(2)  [] (b)(3) [] (d)(5) [] (j)(2)
[] (b)(4)   [] (b)(5)  [] (b)(6) [] (k)(1) [] (k)(2)
[] (b)(7)(A) [] (b)(7)(B)    [] (k)(5) [] (k)(6)
[X] (b)(7)(C) [] (b)(7)(D)
[] (b)(7)(E) [] (b)(7)(F)

[] Administrative marking(s)
[] Names of and/or information on government employees
[X] Names of and/or information pertaining to third-party individual(s)
[] Confidential source information
[] Other:_____

## FREEDOM OF INFORMATION ACT
### 5 U.S.C. § 552

Disclosure mandates of the Freedom of Information Act do not apply to matters that are—

(b)(1) specifically authorized and properly classified pursuant to an Executive order to be kept secret in the interest of national defense or foreign policy;

(b)(2) related solely to the internal rules and practices of an agency;

(b)(3) specifically exempted from disclosure by another statute;

(b)(4) privileged or confidential trade secrets and commercial or financial information obtained from a person;

(b)(5) predecisional information, including attorney work-product and attorney-client material, reflective of the deliberative process and contained in inter-agency or intra-agency correspondence which is not routinely available to a private party in litigation with an agency;

(b)(6) personnel, medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes to the extent that the production of such records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and , in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigation or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

### PRIVACY ACT
### 5 U.S.C. § 552a

(d)(5) Nothing in the Privacy Act shall allow an individual access to any information compiled in reasonable anticipation of civil action or proceeding.

Further, an agency may exempt from the access provisions and other provisions of the Privacy Act:
(j)(2) Material related to the enforcement of criminal laws including efforts to prevent, control or reduce crime or to apprehend criminals;

(k)(1) Material specifically authorized and properly classified pursuant to an Executive order to be kept secret in the interest of national defense or foreign policy;

(k)(2) Material compiled during civil investigations for law enforcement purposes;

(k)(5) Investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, the disclosure of which would reveal the identity of a source who furnished information to the Government under an express promise that the source's identity would be held in confidence, or pursuant to an implied promise of confidentiality if such information was furnished prior to September 27, 1975.

(k)(6) Testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHNNY LEE BULLOCK                    )
                                      )
                    Plaintiff,        )
                                      )
                                      )   Civil Action No. 07-1013
        V.                            )
                                      )
UNITED STATES DEPARTMENT OF           )
JUSTICE, ET AL                        )
                                      )
                    Defendants        )

## DECLARATION OF DIONE J. STEARNS

I, Dione J. Stearns declare the following to be a true and correct statement of facts:

1)    I am an attorney advisor with the Executive Office for United States Attorneys ("EOUSA"),

United States Department of Justice. In that capacity, my responsibilities include: acting as liaison with

other divisions and offices of the Department of Justice ("DOJ") in responding to requests, referrals, and

the litigation filed under both the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 (1988), and the

Privacy Act of 1974, 5.U.S.C. §552a (1988) ("PA"); the review of FOIA/PA requests for access to

records located in this Office and 93 United States Attorney's Offices ("USAO's") and the case files

arising therefrom; the review of correspondence related to requests; the review of searches conducted in

response to requests; the location of responsive records; and preparation of responses thereto by EOUSA

to assure that determinations to withhold (or to release) such responsive records are in accordance with

the provisions of both the FOIA and the PA, as well as the Department of Justice regulations (28 C.F.R.

§§ 16.3 et.seq. and §16.40 et.seq.).

2)    As an attorney advisor of the FOIA/PA unit, EOUSA, I have authority to release and /or

withhold records requested under the FOIA/PA, and to advocate the position of EOUSA in actions

brought under the FOIA/PA. The statements I make hereinafter are made on the basis of my review of

the official files and records of EOUSA, on my own personal knowledge, or on the basis of information



acquired by me through the performance of my official duties.

    3)    Due to the nature of my official duties, I am familiar with procedures followed and actions taken by this Office in responding to the pages referred by Drug Enforcement Administration to EOUSA. The referred pages are associated with a FOIA request made to the DEA by the above-captioned Plaintiff, Johnny Lee Bullock (hereinafter referred to as "Mr. Bullock").

<div align="center">OVERVIEW</div>

    4)    On November 6, 2007, EOUSA received a referral of two pages of documents from DEA to process and respond directly to Mr. Bullock. *See* Exhibit A. Accompanying the documents was a copy of Mr. Bullock's request to DEA which is attached as Exhibit B.

    5)    By letter dated November 29, 2007, EOUSA released one page in full and withheld portions of one page in part; see Exhibits C, D, and E for a copy of the November 29, 2007 letter and responsive records.

<div align="center">FREEDOM OF INFORMATION ACT EXEMPTIONS</div>

    6)    The following describes the application of the exemption in general that EOUSA is asserting.

<div align="center">EXEMPTION 5 U.S.C. Section 552(b)(7)(C)</div>

    7)    Exemption (b)(7)(C) of the FOIA exempts from mandatory release records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy. All information at issue in this case was compiled for law enforcement purposes in order to prosecute Mr. Bullock and others for violations of illegal drug distribution and other laws.

    8)    Exemption (b)(7)(C) is applied to withhold the identities of and personal information about third party individuals, the release of which could subject such persons to an unwarranted invasion of their personal privacy. Release of the identifying information could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them, or cause

them harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case, all to their detriment.

9)     This exemption also applies to withhold identities of individuals such as special federal agents, government employees, and local law enforcement personnel who participated in the investigation and prosecution of this case.  Individual duties and assignments are not public and such publicity as would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting such individuals to harassment or harm. These persons have protected privacy interests in the conduct of law enforcement investigations.

10)    EOUSA determined that there is no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of EOUSA. No public interest would counterbalance the individuals' privacy right in the information withheld under this exemption.  Indeed, Mr. Bullock provided this office with no authorizations or consents from any third party individual to release otherwise personal privacy protected materials.  No additional segregable portions were determined releaseable from materials other than what is therein identified as released in part.

11)    Each step in the handling of the referred records has been entirely consistent with the EOUSA and the United States Attorney's office procedures which were adopted to insure an equitable response to all persons seeking access to records under the FOIA/PA.

I declare under penalties of perjury that the foregoing is true and correct.

Executed this 17th day of December 2007

Dione J. Stearns
Attorney Advisor



**U. S. Department of Justice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

NOV  6 2007

Mr. William Stewart
Assistant Director
Freedom of Information Section
Executive Office for United States Attorneys
600 E Street, N.W., Rm. 7300
Washington, D.C.  20530

Re: *Johnny L. Bullock v. Department of Justice, et al.,* C.A. 07-1013 ESH
    DEA FOIA Request No. 05-1301-F

Dear Mr. Stewart:

    Enclosed are two (2) pages, numbered 97 and 98 and a reference copy of the associated
Freedom of Information Act (FOIA), 5 U.S.C. § 552, request received by the Drug Enforcement
Administration. Since it appears that the pages originated with your component of the Department
of Justice, they are forwarded for processing and a direct response to the requester. Please
acknowledge receipt and, once a final determination and a release are made, provide this office with
a copy of your response to the requester.

    The enclosed pages consist of a Fax Transmission Sheet, produced by the United States
Attorney's Office for the Eastern District of Kentucky, with accompanying Media Release. Since
the pages are associated with a FOIA request that is the subject of litigation, please process the
document as soon as possible. Finally, a declaration that attests to the actions taken by your agency
and provides justification for any FOIA and PA exemptions asserted may be necessary for
submission to the United States District Court for the District of Columbia, in the near future. The
request may come from my office or that of the Assistant United States Attorney handling the case,
Mr. Alexander Shoaibi, who may be reached at (202) 7514-7236.

    If you have any questions concerning this matter or require further assistance, please contact
Leila Wassom at (202) 307-7606 or leila.i.wassom@usdoj.gov or me at (202) 353-9680 or 302-307 7950
william.c.little@usdoj.gov.

    Thanking you in advance for your prompt attention to this matter,

        Sincerely,

        William C. Little, Jr.
        Senior Attorney
        Administrative Law Section

Enclosures

**GOVERNMENT EXHIBIT**
4

AGENCIES:
( ) UNITED STATES PAROLE COMMISSION
(●●) FEDERAL BUREAU OF INVESTIGATION
( ) BUREAU OF INDIAN AFFAIRS
( ) OFFICE OF PROFESSIONAL RESPONSIBILITY
(X) DRUG ENFORCEMENT ADMINISTRATION
( ) TREASURY DEPARTMENT
( ) FEDERAL BUREAU OF PRISONS
( ) STATE AGENCY
( ) OTHER_____

DIRECT RESPONSE TO:

**Johnny Lee Bullock**
Reg. No.:
**Terre Haute Penitentiary**
P.O.Box 12015
**Terre Haute, IN 47801**

IDENTIFICATION OF REQUESTOR

NAME. **Johnny Lee Bullock**
D.O.B.
PLACE
SOCIAL SECURITY

FREEDOM OF INFORMATION
(U.S.C. 552) PRIVACY ACT
(5 U.S.C. 552a(d)(1)
REQUEST: EXEMPTIONS
(5 U.S.C. 552(6)(c)(b)(7),
GENERAL (U.S.C. 552a(j)(2),
OR SPECIFIC (U.S.C. 552a(k)
(2) NOT APPLICABLE TO THIS
REQUEST,



```
-------------------------------
[          !               ]
[          !               ]
[          !               ]
[          !               ]
[   bⱷ     !      bⱷ       ]
[          !               ]
[          !               ]
[          !               ]
[   RT.    !     RI.       ]
-------------------------------
```

Dear Sir/Ms:
This letter will serve as my request pursuant to the provisions of the
Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C.
552a (d)(1), and the applicable State Statutes governing freedom of
information request if State Agency request, for full disclosure and
release of all records and/or an identifier assigned to my name. This
request is sought specifically for amendment,deletion and/or expungment
(5 U.S.C. 552a (d)(2)(a) of records maintained by your agency. The
records sought, but not limited to, is the completed file containing (1)
arrest records, (2) investigation and/or investigatory reports, (3)
reports or evidentiary and/or scientific information findings, (4) wants,
warrants and/or detainers, (5) final and closing investigation reports;
and (6) any and/or all information, data or reports not otherwise exempt
by statute (5 U.S.C. (66)(c)(b)(7), (5 U.S.C. 552a (j)(2), (k)(2), or
law Tarlton v. Saxbe, 507 F. 2d 1116, U.S. App. D.C. 293 (1974), Sullivan
v. Murphy, 478 F. 2d 938, 156 U.S. App. D.C. 28 (1973). Your agency is
advised that the investigation reports in toto are no longer accorded
exempt status unless specific exemption noted, and only with reference
to specific citation of authority, Paton v. La Prade, 524 F. 2d 862, 868-
69 (CA. 3 1973).

1.



GOVERNMENT
EXHIBIT
B

Examples of specific requests:

1. _____ The information that is under request is the documentation of any and all money transactions for drug buys in the case of Johnny Lee Bullock.

2. _____ The information that has been listed in (1) also refer to any and all audio recording's, statement's, and reports of any kind when it comes to Johnny Lee Bullock.

3. _____

4. _____

5. _____

6. _____

7. _____

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and/or any material therein contained has been released to any identifiable individual or agency, there name, titled, purpose and need for such information, the date of such release, the specific material that was released, the person within you Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d)(1), Paton v. LaParde, 524 F.2d 862 (CA3 1975) Tarlton v. Saxbe, 507 F.2d 1116, 165 U.S. App. D.C. 293 (1974), of Linda R.S. v. Richard D. 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d 536 (1973)

It is further requested that your Agency provide me with a copy of specific regulations or your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a)(together with the alternate means of access), to permit access to records on file with your Agency. If for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. (6)(c)(b)(7), 552a (j)(2), (k)(2), or by regulation Menard v. Mitchell, 430 F.2d 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 466 F. Supp. 102) I request specific citations to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from material for release. Paton v. LaParde, 524 F.2d 862 (CA3 1975). Chastain v. Kelly 510 F. 2d 1232. I further agree to pay any reasonable cost, or file in FORMA PAUPERIS if I am indigent. Provided by statute or regulation of your Agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. (6)(1)(1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulation and the date as to when your Agency will be able to act upon request.

Yours truly,

*Johnny Su Bullock*

Dated: 7-8-05

3.

## [CERTIFICATION OF IDENTITY]

**privacy act statement;** In accordance with **28 CFR 16.41,** personal data sufficient to identify the individual submitting a request by mail under the **PRIVACY ACT** of 1974, **5 U.S.C. 552a,** is required. The purpose of this solicitation is to ensure that the records of the individuals who are subject of U.S. Department of Justice systems of records are not wrongfully disseminated by the Department. Failure to furnish the information will result in no action being taken on the request by the systems manager. False information on this form may subject the requester to criminal penalties under 18 U.S.C. section 1001 and/or 5 U.S.C. 552a(i)(3)by a fine of no more than $5,000.

FULL NAME OF REQUESTER__**JOHNNY LEE BULLOCK**_____

CURRENT ADDRESS__**P.O.Box 12015 Terre Haute, IN 47801**_____

DATE OF BIRTH__ ﹥ｂ\ξ                _____

PLACE OF BIRTH__**Mt. Vernon, KY 40456**_____

I certify that I am the person above and I understand that any falsification of this statement is punishable under the provision of **18 U.S.C. 1001** by a fine of not more than $10.000 or by imprisonment of not more than five years or both, and that requesting or obtaining any records under false pretense is punishable under provisions of 5 U.S.C. 552a(i)(3) by a fine of no more than $5.000.

SIGNATURE__*Johnny Lee Bullock*

## [AFFIDAVIT OF INDIGENCE]

In as much as the requested information is in the **"PUBLIC INTEREST"** and I have declared myself to be indigent, I ask that you **"WAVE ALL FEES, COST, AND/OR CHARGES"** in pursuant to 5 U.S.C. 552a (i)(3) et. Seq.

I__**JOHNNY LEE BULLOCK**_____, swear that the afore going **FOIA/PA** request is true and correct to the best of my knowledge and belief.

*Johnny Lee Bullock*
REG.# *07890 − 032*
P.O. BOX *12015*___, UNIT *F−2*
STATE *Indiana*_____



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757   FAX: 616-6478   (www.usdoj.gov/usao)*

Requester: Johnny L. Bullock _____    Request No.: 07-3831-R _____

Government Component that referred material: Drug Enforcement Administration _____

Dear Requester:                                                                    NOV 2 9 2007

    This is in reply to your Freedom of Information Act/Privacy Act request of July 8, 2005. Records were referred to us by the government component above for direct response to you.

    The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information. The exemptions cited are marked below. An enclosure to this letter explains the exemptions in more detail.

| Section 552 | | | Section 552a |
|---|---|---|---|
| [  ] (b)(1) | [  ] (b)(4) | [  ] (b)(7)(B) | [  ] (j)(2) |
| [  ] (b)(2) | [  ] (b)(5) | [ X ] (b)(7)(C) | [  ] (k)(2) |
| [  ] (b)(3) | [  ] (b)(6) | [  ] (b)(7)(D) | [  ] (k)(5) |
| _____ | [  ] (b)(7)(A) | [  ] (b)(7)(E) | [  ] _____ |
| _____ | | [  ] (b)(7)(F) | |

    We have reviewed approximately __2__ page(s) of material:

__1__ page(s) are being released in full (RIF);
__1__ page(s) are being released in part (RIP);
____ page(s) are withheld in full (WIF).

    This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

*Diane J. Stearns / for*

William G. Stewart II
**Assistant Director**

Form No. 024 - 3/07

Enclosure(s)



REQUESTER: _Johnny L. Bullock_

FOIA FILE#: _07-3831-R_

# DOCUMENTS RELEASED IN FULL (RIF)

PAGES: ___1___

EXEMPTIONS: _____



GOVERNMENT EXHIBIT
D

*Eastern District of Kentucky*

601 Mayers Baker Road, Suite 200     (606) 864-5523
London, Kentucky 40741     FAX (606) 864-3590

September 11, 2002

MEDIA RELEASE

Gregory F. Van Tatenhove, United States Attorney for the Eastern District of Kentucky, Assistant Special Agent in Charge Gary Oetjen of the Drug Enforcement Administration, Special Agent in Charge Karl Stankovic of the Bureau of Alcohol, Tobacco, and Firearms, J. Stephen Tidwell, Special Agent in Charge, Federal Bureau of Investigation, Kentucky, Captain Steve Brodt, Commander of the Kentucky State Police Drug Enforcement II, Shirley Smith, Rockcastle County Sheriff, Bill Mink, Chief, Mt. Vernon Police Department, Gene Hollon, Laurel County Sheriff, Don Hamblin, Chief, Williamsburg Police Department, and the Appalachia High Intensity Drug Trafficking Area office, jointly announced that **TROY KIRBY and JOHNNY LEE BULLOCK** was sentenced on September 10, 2002, in United States District Court, London, Kentucky, by United States District Judge Jennifer B. Coffman.

**TROY KIRBY and JOHNNY LEE BULLOCK,** of Rockcastle County, Kentucky, were found guilty on January 16, 2002 by a federal jury in United States District Court, London, Kentucky, of conspiring and manufacturing, possessing, and distributing methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1). **TROY KIRBY** was also found guilty of being a convicted felon in possession of a firearm and possessing a firearm not registered in the National Firearms Registration and Transfer Record, in violation of Title 18, United States Code, Section 922(g)(1) and Title 26, United States Code, Section 5861(d).

**KIRBY** was sentenced to three hundred sixty (360) months in prison to be followed by ten (10) years supervised release, and a $600.00 special assessment. **BULLOCK** was sentenced to two hundred thirty-five (235) months in prison to be followed by five (5) years supervised release, and a $400.00 special assessment.

The case was investigated by the Rockcastle County Sheriff's Office, the Mt. Vernon Police Department, the Laurel County Sheriff's Office, the Williamsburg Police Department, the Kentucky State Police, the Bureau of Alcohol, Tobacco, and Firearms, the Drug Enforcement Administration, and the Federal Bureau of Investigation. The United States was represented in this case by Assistant United States Attorney Stephen C. Smith.

- END -

REQUESTER: _Johnny L. Bullock_____

FOIA FILE#: ___07-3831-R_____

# DOCUMENTS RELEASED IN PART (RIP)

PAGES:_____1_____

EXEMPTIONS:____b7c_____



**GOVERNMENT EXHIBIT**

E



# FAX TRANSMISSION

UNITED STATES ATTORNEY'S OFFICE
EASTERN DISTRICT OF KENTUCKY
601 MEYERS BAKER ROAD
SUITE 200
LONDON, KY 40741
PHONE: (606) 864-5523
FAX: (606) 864-3590

To: b7c                                    Date: 9/11/02

From: Steve Smith                          Pages: 2

Subject: U.S. v. Kirby + Bullock

Comments:
Please review the attached press release.
Please call after you have reviewed.
Thanks.
Flo.

097

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-01013 (ESH) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**<u>ORDER</u>**

This matter comes before the Court on Defendants' Motion for Summary Judgment.

Upon consideration of the Motion, Plaintiff's Opposition, Defendants' Reply, the relevant law,

and the entire record, it is hereby this _____ day of _____, 2008,

      ORDERED that Defendants' Motion is hereby GRANTED, and it is further,

      ORDERED that summary judgment be entered in favor of Defendants pursuant to Federal

Rule of Civil Procedure 56.  This is a final, appealable order.


_____
ELLEN S. HUVELLE
United States District Judge