UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHNNY LEE BULLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 07-01013 (ESH) |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
CROSS MOTION FOR SUMMARY JUDGMENT**

The Defendants[1], the Federal Bureau of Investigation (FBI)[2] and the Drug Enforcement Administration (DEA), through counsel, the United States Attorney's Office for the District of Columbia, respectfully submit this opposition to Plaintiff's Cross Motion for Summary Judgment.

---

[1] Defendants United States Marshals Service (USMS) and Executive Office of U.S. Attorneys (EOUSA) do not oppose Plaintiffs' Cross Motion because in that motion Plaintiff requested that this Court grant summary judgment to these defendants because "Plaintiff has no materials [sic] facts in dispute with said agencies." See Dkt. 17 at p. 1.

[2] Defendant FBI does not oppose Plaintiff's Cross Motion for Summary Judgment to the extent that it requests this Court to grant the FBI summary judgment as to main files 76-HQ-40139, 76-HQ-51525, 26-HQ-436858, and 76-HQ-40319. See Dkt. 17 at p. 1.

**I. Introduction**

Plaintiff requests that this Court grant him summary judgment[3] regarding "main investigative file 245-LS-64574." Pl. Cr. Mot. at p. 1. Plaintiff asks that this Court order the FBI to release an audio tape. Pl. Cr. Mot. at p. 4. He also requests the release of DEA-6 reports "attendant" to these audio tapes. Id. Plaintiff argues that these materials are releasable under the public domain doctrine. Id. at pp.2, 4. He is not entitled to either item because he has not met the burden of production under the public domain doctrine.

Plaintiff notes that the FBI maintains that it located one responsive audio tape which it withheld pursuant to several FOIA exemptions. Id. at p. 2. Plaintiff alleges that two tapes, labeled "12/7/00, 1/4 oz. meth buy" and "1/16/01, 245C-LS-64574, CW and Johnny Lee Bullock, 1/2 oz. meth buy," had been released to him through discovery. Pl. Cr. Mot. at p. 2 & Exh. A. Plaintiff maintains that three tapes were involved in the case and that the third tape also concerned transactions that took place on January 16, 2001. Id. at p. 5. Without any sufficient

---

[3] Plaintiff failed to comply with LCvR 7(h) because his motion for summary judgment was not accompanied by a statement of material facts not in genuine dispute. He has submitted no separate opposition to Defendants' Motion for Summary Judgment with a statement of material facts not in genuine dispute. Accordingly, Defendants ask that this Court treat the facts identified by Defendants in their statement of material facts as admitted. See LCvR 7(h); EMILY's List v. Federal Election Com'n,--- F.Supp.2d ----, No. 05-0049 (CKK), 2008 WL 2938558 at *2, n. 3 (D.D.C. July 31, 2008) ("This Court strictly adheres to the text of Local Civil Rule 56.1 (identical to Local Civil Rule 7(h)). As such, in resolving the instant cross-motions for summary judgment, the Court assumes that facts identified by the moving party in the statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.") (internal quotations and citations omitted); see also Johnson v. Washington Gas Light Co., 404 F.Supp.2d 179, 181 (D.D.C.,2005) ("Washington Gas submitted with its motion a statement of material facts to which it claims that there is no genuine issue. Since plaintiff has neither opposed this motion, nor submitted a statement of facts to which there are genuine issues of material fact, the motion will be treated as conceded pursuant to LCvR 7(b), and this Court will admit the facts identified by Washington Gas in its statement of material facts."). (internal citations omitted).

evidence, he asserts that the audio tape withheld by the FBI should be released to him either under the public domain doctrine or under Brady v. Maryland, 373 U.S. 83 (1963). Id. at pp. 3, 12. The public domain doctrine does not apply to this tape because Plaintiff has failed to present the specific evidence necessary to meet his burden of production.

Plaintiff also asks this Court to order the DEA to release five pages which describe "the acquisition of a drug exhibit from the Plaintiff." Id. at p.1. He asserts that the DEA cannot assert FOIA exemptions regarding these pages because the United States Attorney released them to him during his criminal trial so they are already in the public domain. Id. at 2, 4 ("The government can not claim Exemption 7 as they do not apply to these DEA 6 reports because they became public records once the government released them to Plaintiff's attorney."). He further argues that DEA cannot claim Exemption 7(D) because the United States District Court for the Eastern District of Kentucky released discovery tapes that identified the confidential informant. Id. Plaintiff states that Exemptions 7 (C) and (D) are inapplicable because the identity of a confidential informant (CW) had been released and the CW died on May 5, 2001 so there was no need to protect CW's identity. Id. at pp. 2, 12.

Defendants FBI and DEA have properly withheld the information at issue. Plaintiff has not presented the specific evidence necessary to meet his burden of production under the public domain doctrine. Defendant has met its burden of persuasion in showing that the applicable exemptions apply to the withheld information.

**II. PLAINTIFF HAS FAILED TO SATISFY HIS BURDEN OF PRODUCTION TO SHOW THAT ANY AUDIO TAPE PREVIOUSLY ENTERED THE PUBLIC DOMAIN.**

Plaintiff has not satisfied his initial burden of production under the public domain doctrine because he has not sufficiently shown that any tape was played in court and received into evidence. Therefore, he has failed to show that the public domain doctrine applies to any of his requested audio tape material.

The government cannot rely on an otherwise valid exemption claim to justify withholding information that has been "officially acknowledged" or is in the "public domain." Afshar v. Department of State, 702 F.2d 1125, 1130-34 (D.C.Cir.1983); accord Fitzgibbon v. CIA, 911 F.2d 755, 765-66 (D.C.Cir.1990); see also CNA Holdings, Inc. v. DOJ, No. 07-2084-B, 2008 WL 2002050 at *6 (N.D. Tex. May 9, 2008) (DOJ's Vaughn Index indicates that these documents match documents listed in PACER entries in a related criminal case in the Western District of North Carolina. Thus, these documents are in the public domain and, as such, cannot be withheld.). Under the public domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record. Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999) (internal citations omitted). "[T]he party advocating disclosure [under the public domain doctrine] bears the initial burden of production; for were it otherwise, the government would face the daunting task of proving a negative: that requested information had not been previously disclosed." Id. (citing Niagara Mohawk Power Corp. v. United States Dep't of Energy, 169 F.3d 16, 19 (D.C.Cir.1999); Davis v. United States Dep't of Justice, 968 F.2d 1276, 1279 (D.C.Cir.1992)). The government, however, still bears the ultimate burden of persuasion. Davis, 968 F.2d at 1279. Once the FOIA

requester has carried his burden of production, it is up to the government, if it so chooses, to rebut the plaintiff's proof by demonstrating that the specific tapes or records identified have since been destroyed, placed under seal, or otherwise removed from the public domain. Id. If a requester is unable to establish that the material he seeks is in the public domain, the government, to continue withholding the information, still must prove that it falls within a statutory exemption. Davis, 968 F.2d at 1280.

Audio tapes enter the public domain once played [in court] and received into evidence. Cottone, 193 F.3d at 554 (internal citations omitted). A constitutionally compelled disclosure to a single party (for example, Brady material) simply does not enter the public domain so such a disclosure does not constitute the waiver of a FOIA exemption. Id. at 556. "There is no public right of access to evidence obtained in the discovery process prior to use in public hearings or trials." Grundberg v. Upjohn Co., 137 F.R.D. 372, 390 (D.Ut.1991).

Cottone sets out the level of specificity required for a Plaintiff to prove that material was disclosed under the public disclosure doctrine. The issue in that case was "whether wiretapped recordings, otherwise exempt from disclosure under the Freedom of Information Act ("FOIA"), must nevertheless be released when a requester **precisely identifies specific tapes** that have been introduced into evidence and played in open court during a public criminal trial." Cottone, 193 F.3d at 554 (emphasis added). In Cottone, the Court held that the public domain doctrine applied because with each tape that the government played at the plaintiff's criminal trial, the court reporter indicated in the transcript the precise date and time that the conversation had been recorded, the unique identification number assigned to that tape at trial, and noted that it had been "played for the Court and jury." Id. at 552, 555.

Unlike the plaintiff in Cottone, Mr. Bullock has not precisely identified the specific tapes played in court. Plaintiff states that he received two tapes labeled "12/7/00" and "1/16/01, 245C-LS-64574, CW" and Johnny Lee Bullock, 1/2 oz. meth buy" but he fails to show that either tape was played in court or introduced into evidence. Pl. Cr. Mot. at p. 2 & Exh. A. His allegation regarding the existence of a third tape (a second tape made on January 16, 2001) is even more speculative. He uses disjointed excerpts of the transcript from his criminal trial (Cr. No. 01-0021, U.S. District Court for the Eastern District of Kentucky) (Pl. Cr. Mot. at Exhibit I) to speculate that two of the three tapes named by him were played in open court and that a third tape exists.

At most, Plaintiff shows that two tapes were played in court and that one of those tapes was referred to as December 7th. See Exhibit I, page 28, line 9 of trial transcript. Page 28 of the Transcript mentions only two tapes- one six minutes long and the other seven minutes long. Pl. Cr. Mot. at Exhibit I (p. 23)[4]. It also mentions that one of those tapes is dated December 7. See id. Page 51 of the transcript concerns a December 7, 2000 drug transaction and does not discuss any transaction on January 16, 2001. Pl. Cr. Mot. at Exhibit I (p. 25). Page 109 is an exchange between the Court and the Government's attorneys. Pl. Cr. Mot. at Exhibit I (p. 26). On that page, the Court refers to "that first transaction on the first tape". See id. Counsel for the United States, Stephen Smith stated "It was the second transaction on January 16th that she related to Detective Alan Lewis which was recorded in a DEA-6." See id.; Pl. Cr. Mot. at Exhibit H .

---

[4] The page numbers referenced in parentheses regarding the January 7, 2002 transcript excerpts are the page numbers assigned by the Pacer System, not the page numbers of the transcripts as originally composed by the Court Reporter.

There is very little context for this conversation so it is impossible to determine whether or not a tape involving a January 16, 2001 transaction was played in open court.

Also, the transcript excerpts do not show that any tapes were admitted into evidence. Plaintiff's criminal trial took place before a jury. See Pl. Cr. Mot. at Exhibit H (Cover Sheet reads "Transcript of Jury Trial Before the Honorable Jennifer B. Coffman United States District Judge and A Jury"). Pages 28 and 29 state that the audiotapes were "heard by the Court, attorneys, and parties in open court by the use of headphones." Id. at Exhibit H (p.23). It is significant that the transcript does not mention that a jury heard the tapes. Furthermore, it appears that these tapes were the subject of a motion brought by Mr. Bullock's attorney, Mr. White, and that after the tapes were played, the Court entertained argument by counsel. See Pl. Cr. Mot. at Exhibit H (pp.23-24), page 28, lines 1-2 (The Court states "Now, let's listen to those tapes, and then I will hear your arguments") and page 29, lines 18-19 (After listening to the second tape, the Court states "Mr. White, it is your motion. Let's hear what you have to say about those tapes."). If anything, these circumstances suggest that a jury was not present during the playing of these tapes. Plaintiff has only shown that tapes were the subject of a motion, he has not shown what tapes were the subject of that motion and whether those tapes were admitted into evidence. Compare Davis, 968 F.2d at 1278 (finding that the public domain doctrine did not vitiate Exemption 3's protection for the wiretapped recordings in that case because "apparently no one, including the court reporter, kept any official record of the conversations played for the jury.") to Cottone, 193 F.3d at 555 (noting that the official transcript of Cottone's trial showed at "least five audio tapes that the court reporter specifically noted had been 'played for the Court and jury' and subsequently admitted into evidence."). Like the plaintiff in Davis, Mr. Bullock

has merely shown some tapes were played and this showing is insufficient to meet his burden of production. See Davis, 968 F.2d at 1280. This Circuit has refused to compel disclosure under such uncertain circumstances because such disclosure would ignore "'injury that disclosure might cause innocent third parties,' who we believed, 'should not suffer because neither the government nor [the requester] can establish whether references to them on the tapes are available elsewhere.'" Cottone, 193 F.3d at 555 (quoting Davis, 968 F.2d at 1280.). A court must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before it concludes that a FOIA Exemption has been waived. See Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C.Cir.1990); Afshar v. Department of State, 702 F.2d 1125, 1130-32 (D.C.Cir.1983); Military Audit Project v. Casey, 656 F.2d 724, 752 (D.C.Cir.1981).

Elsewhere in his Cross Motion, Plaintiff further exposes the weak and speculative nature of his assertions. Plaintiff states that because "three buys were made for the government, there must be three DEA-6 reports **and/or** three audio tapes." Pl. Cr. Mot. at p. 5 (emphasis added). He admits that he is speculating that the tape has been either released to the public or is being wrongfully withheld because it is Brady material.[5] Id. ("Plaintiff **thinks** that tape No. 3 is the one the FBI has hidden in their investigation file and is this one of the two that has been released

---

[5] Plaintiff's alleged (and unproven) need for exculpatory evidence does not override FOIA's exemptions. See Farrugia v. Executive Office for U.S. Attorneys, No. Civ.A. 04-0294 PLF, 2006 WL 335771 at *4 n.6 (Feb. 14, 2006 D.D.C.). ("A decision to withhold records because they are exempt under specific FOIA statutory exemptions therefore is not trumped by the desire for exculpatory material. Whether the government has failed to meet its responsibilities under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), of course, is an important question in trial, appellate and post-conviction proceedings, but it must be addressed in another forum.") (internal citation and quotation omitted).

into the public domain **or** is this Bready [sic] v. Maryland material that the FBI is withholding because this tape lets the cat out of the bag?"). Id. (emphasis added)  This statement belies the inappropriateness of Plaintiff's reliance on the public domain doctrine for release of this supposed third tape because Plaintiff has effectively conceded that he has not shown that this tape was played in open court and received into evidence.  See Cottone, 193 F.3d at 555 (contrasting Plaintiff Cottone to the plaintiff in Davis v. United States Dep't of Justice, 968 F.2d 1276, 1280-81 (D.C.Cir.1992) and noting that the former had "demonstrated precisely which recorded conversations were played in open court" while the latter "could not identify which specific tapes had been played during trial.").

      Plaintiff supports his assertion that two tapes exist with an unsigned document entitled "DISCOVERY" that has a case caption of United States of America v. Johnny Lee Bullock, Criminal No. 01-21 in the United States District Court, Eastern District of Kentucky, London.  See Pl. Cr. Mot. at 2 & Exh. A (¶¶ 9 &10).  This document lists two audio tapes- one labeled "12/7/00, 1/4 meth buy, Johnny Lee Bullock" and the other labeled "1/16/01, 245C-LS-64574, CW & Johnny Lee Bullock, ½ oz. meth buy." Id. at Exh. A.  The purpose of the document is to certify that discovery was received and it has signature blocks for Counsel for both the United States and Mr. Bullock.  Id. at Exh. A. Even if the United States provided these tapes to Plaintiff, the tapes are not releasable under the public domain doctrine.  Contrary to Plantiff's suggestion, any release made during criminal discovery is not a release to the public.  See Cottone, 193 F.3d at 556 ("a constitutionally compelled disclosure to a single party simply does not enter the public domain.")

Although Plaintiff believes he detected a conflict between the DEA's December 8, 2000 Report of Investigation (Pl. Cr. Mot. at 3 & Exh. E) and the Uniform Offense Report (Pl. Cr. Mot. at 3 & Exh. B), no conflict appears to exist upon closer examination.  The DEA Report states that "Any and all non-drug evidence (video/audio tapes, etc.) was taken into and will remain the custody of the Kentucky State Police [KSP]." (Pl. Cr. Mot. at p. 3 & Exh. E).  The Uniform Offense Report states that KSP Detective Thomas McKnight "released the recorder to SA Briggs." (Pl. Cr. Mot. at p. 13 & Exhibit B).  These reports do not conflict because the **recorder** was taken into the custody of the FBI while the December 7, 2000 **tape** was taken into evidence by the KSP.  The **tape, not the recorder**, is evidence.  The recorder is merely equipment.  Plaintiff is not seeking the recorder, he is seeking tapes.

Plaintiff has not presented any evidence to show that the FBI has custody of two tapes for January 16, 2001.  Defendant FBI admits to finding one audio tape that was responsive to Plaintiff's Request.  See Defendants' Motion for Summary Judgment, Exhibit 12, Second Declaration of David Hardy, ¶ 32.  DEA Report of Investigation, prepared on January 17, 2001 (Plaintiff's Exhibit H), indicates only one audio tape in FBI custody.  It states that "any and all non-drug evidence (video/audio tapes, etc.) [concerning the January 16, 2001 investigation] was taken into and will remain in the custody of the FBI." Pl. Cr. Mot. at Exh. H.

## III. PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF PRODUCTION IN SHOWING THAT ANY DEA-6 REPORT PREVIOUSLY ENTERED THE PUBLIC DOMAIN.

Plaintiff asks this Court to order the DEA to release five pages which describe "the acquisition of a drug exhibit from the Plaintiff." Pl. Cr. Mot. at p.1. He again invokes the public domain doctrine and again fails to meet his burden of production.

Just as Plaintiff constructed a third audio tape through pure conjecture, he likewise creates a third DEA report through unsupported allegations. Pl. Cr. Motion at p.5 ("So if she made three buys for the government, then there must be three DEA-6 reports and/or three audio tapes."). He alleges that the DEA reports that he obtained were fraudulent and that a true report is being withheld from him. Id. at p. 9 ("This DEA Report is a false document. . . . This document was prepared and released to the Plaintiff's attorney so he would not investigate the false evidence that had been introduced. . . . This one DEA-6 Report of agency DEA and the one audio tape from agency FBI should shed enough light on defendants to let this court see what our government is up to . . ."). He has not put forth evidence to describe this alleged third report but rather he has formulated it through unsupported assertions alone. The excerpts from the transcript of his criminal trial do not indicate that any such report was admitted into evidence. Pages 51 and 109 of the transcript involve the testimony of Special Agent Jerel Hughes. Exhibit I (top of Page 51 reads "Witness Jerel Hughes - Cross by Mr. White" and page 109, line 19, Government's Counsel Smith states "Special Agent Hughes is on the stand now."). Page 109 does not show that the Court admitted a DEA-6 Report regarding the January 16, 2001 transaction. See Exhibit I, p. 109. It merely shows Government's Counsel refraining from questioning SA Hughes about the DEA-6 report for that date prepared by Detective Alan Lewis.

Id.  This testimony indicates nothing about two DEA-6 reports prepared on January 16, 2001. Thus, Plaintiff has not shown that the DEA-6 report that he seeks was admitted into evidence. Accordingly, he has failed to show that the public doctrine exception applied.

Failing to establish that the specific documents were admitted into evidence by the Court, Plaintiff again unsuccessfully attempts to obtain this document through a flawed interpretation of the public domain doctrine.  Plaintiff incorrectly asserts that the DEA cannot assert FOIA exemptions regarding these pages because the United States Attorney released them to him during his criminal trial so they are already in the public domain.  Id. at 2, 4 ("The government can not claim Exemption 7 as they do not apply to these DEA 6 reports because they became public records once the government released them to Plaintiff's attorney.").  As previously discussed in Section II supra, the public disclosure doctrine is inapplicable where a party merely receives material as part of discovery and that material is not admitted into evidence.  See Cottone, 193 F.3d at 556; Heggestad v. U.S. Dept. of Justice, 182 F.Supp.2d 1, 11 n. 8 (D.D.C. 2000) ("The bare assertion that portions of the grand jury materials may have been used as exhibits at trial or that plaintiff received a copy of Mr. Kamiyama's grand jury testimony is insufficient to establish that this information is in the public domain.  Plaintiff has failed to establish specifically which portions of this exempt information were disclosed at trial or how release of a transcript via discovery or through representation of Mr. Kamiyama puts this material in the public domain.").

Plaintiff further argues that DEA cannot claim Exemption 7(D) because the United States District Court for the Eastern District of Kentucky released discovery tapes that identified the confidential informant.  Pl. Cr. Mot. at pp.2-4.  This is nothing more than yet another one of

Plaintiff's failed public domain arguments. As discussed in Section II, supra, Plaintiff has provided no evidence to suggest that the discovery tapes were played to the jury (admitted into evidence) so there is no evidence that CW's name was released into the public domain through those tapes.

Plaintiff incorrectly asserts that Defendants failed to explain why the release of the DEA-6 report and the audio tape would interfere with enforcement proceedings or cause any physical harm. Pl. Cr. Mot. at p. 5. To the extent that Plaintiff is referring to the third audio tape and the third DEA report, it is impossible for Defendants to describe documents that a diligent search failed to uncover. See Yeager v. Drug Enforcement Admin., 678 F.2d 315, 321 (D.C.Cir.1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain."). To the extent that Plaintiff is referring to materials that he already possesses, Plaintiff fails to meet the level of specificity under Cottone. Defendants' declarations provide ample support for their cited FOIA exemptions.

Plaintiff argues that the death of an alleged confidential informant renders Exemption 7(D) inapplicable. Pl. Cr. Mot. at p. 2, 12. This is incorrect. Even though Defendants neither admit nor deny the identity of CW or whether the CW is alive or dead, they do note that "death of a confidential source, in contrast [to Exemption 7(C)], is not relevant under exemption 7(D)" Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 33 n. 14 (D.C. Cir. 1998). See also Blanton v. U.S. Dept. of Justice, 63 F.Supp.2d 35, 49 (D.D.C.1999) ("The inquiry under Exemption 7(D) is whether a source was given an express or implied assurance of confidentiality and the Court finds nothing in Landano or decisions of our court of appeals that suggests that a promise of confidentiality expires upon a person's death."); CNA Holdings, Inc. v. DOJ, No. 07-2084-B,

2008 WL 2002050 at *4 (N.D. Tex. May 9, 2008) (The fact that the source's identity has now been revealed does not enable DOJ to disclose the information he provided; instead, the test is whether the source understood that he would be protected at the time he spoke with the agency.).

Exemption 7(D) protects information "compiled for law enforcement purposes ... in the course of a criminal investigation" and "furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Even if the Defendants released the identity of a CW during discovery in Plaintiff's criminal case (and Defendants do not admit or deny this), this act does not waive Defendant's right to invoke Exemption 7(D). See Davis, 968 F.2d 1281 ("Both parties agree that the tapes were compiled for law enforcement purposes during a criminal investigation. And although he [Plaintiff Davis] asserts that the informant's identity is 'well-known,' Davis does not dispute that the informant was a 'confidential source.' Once these requirements are met, the application of Exemption 7(D) is automatic.") (internal citation omitted). "Even when the source testifies in open court, he does not thereby 'waive the [government's] right to invoke Exemption 7(D) to withhold ... information furnished by a confidential source not actually revealed in public.'" Davis, 968 F.2d at 1276, citing Parker v. Department of Justice, 934 F.2d 375, 379-80 (D.C.Cir.1991); see also Doolittle v. U.S. Dept. of Justice, 142 F.Supp.2d 281, 285-86 (N.D.N.Y. 2001) (rejecting the argument that any expectation of confidentiality Exemption 7(D) on the part of confidential informants was waived by the voluntary disclosure of their identities during his sentencing hearing"[b]ecause the Government's promise of confidentiality to an informant is intended to apply notwithstanding the type of limited disclosure present here, such disclosure should not constitute a waiver of the Government's promise to keep the informant's identity confidential.") . Exemption 7(D) applies because Plaintiff admits that CW was a confidential

source who furnished information in a law enforcement proceeding.  See Pl. Cr. Mot. at 2-3 (noting that CW wore a recording device and was a confidential source).  Plaintiff has not shown any information that CW actually revealed in public and Defendants have established that they properly applied Exemption 7 (D).

Plaintiff also challenges Defendants' application of Exemption 7(C), maintaining that the public interest in disclosure outweighed the privacy interests in nondisclosure.  He states "As a general rule, demonstrated wrongdoing of a serious and intentional nature by a high level government official is of sufficient public interest and outweighs almost any privacy."  Pl. Cr. Mot. at p. 10   Plaintiff cites only a general interest that is considered insubstantial when balancing interests under Exemption 7(C).  See Davis, 968 F.2d at 1282 (holding that "issues of entrapment, government overreaching and artificially created jurisdiction" during a major criminal investigation are "insubstantial" unless the requester puts forward "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and shows that the information sought "is necessary in order to confirm or refute that evidence."citing Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1205-06 (D.C.Cir.1991)); see also Adamowicz v. IRS, 552 F.Supp.2d 355, 369-70 (S.D.N.Y. 2008) (Plaintiffs claim that the information should be released because of its connection to alleged wrongdoing by IRS agents, but they have "offer[ed] nothing beyond their own unsupported allegations of improper use of taxpayer information. . . . Such a speculative public interest is not sufficient to overcome the real privacy interests of individual taxpayers.").  Plaintiff has provided no compelling evidence that either the FBI or the DEA has engaged in illegal activity.  Plaintiff is essentially challenging his own conviction and this Circuit has deemed such an challenge as not constituting a public interest for Exemption 7(C) purposes.

See Robinson v. Attorney General of U.S., 534 F.Supp.2d 72, 83 (D.D.C. 2008) ("The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction.") (internal citations and quotations omitted); Cole-El v. U.S. Dep't of Justice, No. 03-1013, slip op. at 10 (D.D.C. Aug. 26, 2004) ("[Plaintiff's] interest in attacking his conviction does not constitute a public interest sufficient to overcome [a third party's] privacy interests.") (Exemption 7(C)), aff'd, No. 04-5329, 2005 U.S. App. LEXIS 7358, at *2-3 (D.C. Cir. Apr. 27, 2005) ("As appellant has not demonstrated a public interest in disclosure, the countervailing interest in privacy defeated his request for documents under the Freedom of Information Act."). Plaintiff's argument that he is entitled to exculpatory information despite FOIA exemptions is incorrect. See Thomas v. U.S. Dept. of Justice, 531 F.Supp.2d 102, 108 (D.D.C. 2008) ("Plaintiff evidently believes that these records contain exculpatory evidence, see Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for use in challenging his Superior Court conviction, and that no otherwise applicable FOIA exemption takes precedence. Such is not the law."). Therefore, Plaintiff has not demonstrated a public interest in disclosure.

Defendants' affidavits provide more than adequate detail regarding the need to protect the privacy of confidential informants. See Second Hardy Declaration, ¶¶ 65-72; Wassom Declaration ¶¶ 53-58. "The United States Supreme Court has broadly interpreted the personal privacy interest that Congress intended Exemption 7(C) to protect." Barbosa v. Drug Enforcement Admin., 541 F.Supp.2d 108, 111 (D.D.C. 2008) (internal citations and quotations omitted); Canaday v. U.S. Citizenship and Immigration Services, No. 08-158, 2008 WL 1780172 at *117 (D.D.C. Apr. 21, 2008) (in the Exemption 6 context "The Court agrees that there is a

privacy interest in the identifying information of the Federal employees even though the information may have been public at one time."); Hall v. DOJ, No. 06-01540, 2008 WL 2042500 at *31 (D.D.C. May 14, 2008) (in the Exemption 6 context "plaintiff's contention that DOJ's release of employee names in some places demonstrates that these employees' privacy interests are de minimis is baseless.  Moreover, "[p]laintiffs do not demonstrate how release of the redacted information will benefit anyone but themselves.")   Even if CW is deceased, CW's interests still must be seriously considered.  See Campbell, 164 F.3d at 33 (noting in dicta that "balancing public interests in disclosure against privacy interests [courts] must therefore make a reasonable effort to account for the death of a person on whose behalf the FBI invokes exemption 7(C)" but that courts "must also account for the fact that certain reputational interests and family-related privacy expectations survive death"(internal citations and internal footnote omitted); see also Kiraly v. F.B.I., 728 F.2d 273, 277-78 (6th Cir. 1984) ("the right to recovery for invasion of privacy lapses upon the person's death does not mean that the government must disclose inherently private information as soon as the individual dies, especially when the public's interest in the information is minimal.")  Since Plaintiff has identified no public interest, the privacy interest of CW (whether dead or alive) outweighs the public interest and Defendants have satisfied Exemption 7(C).

Also, even if the CW were deceased, Exemption 7(F) would still be applicable in order to protect the family of a deceased informant.  Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter "Exemption 7(F)") protects from mandatory disclosure information compiled for law enforcement purposes if disclosure could reasonably be expected to endanger the life or physical safety of any individual.  5 U.S.C. § 552(b)(7)(F).  Although this exemption applies to

information that is also subject to the protection of Exemption 7(C), supra, there is no balancing required for the use of Exemption 7(F).  While courts generally have applied Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any individual' reasonably at risk of harm.  <u>Miller v. U.S. Dept. of Justice</u>,--- F.Supp.2d ----, 2008 WL 2544659 at *28 (D.D.C.June 24, 2008) (internal citations and quotations omitted).

## IV.   CONCLUSION

WHEREFORE, the Defendants respectfully request that the Court deny Plaintiff's cross motion for summary judgment, excluding those portions of the cross motion that ask for summary judgment in Defendants' favor, and grant Defendants' motion for summary judgment.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing Defendants' Opposition to Plaintiff's Cross Motion for Summary Judgment was served upon *pro se* Plaintiff by depositing copies in the U.S. Mail, first class postage prepaid, addressed to:

**JOHNNY LEE BULLOCK**
**R07890-032**
**MARION**
**U.S. PENITENTIARY**
**Inmate Mail/Parcels**
**P.O. BOX 1000**
**MARION, IL 62959**

on this 5th day of August 2008.

/s/
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236