UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
AUG 2 5 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JOHNNY LEE.BULLOCK, )
    PLAINTIFF, )
)
VS. ) CIVIL ACTION NO;07-CV-1013-ESH.
)
FEDERAL BUREAU OF INVESTIGATION,et.al, )
    DEFENDANT'S, )
_____/

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION MOTION

COMES NOW, Plaintiff, Johnny Lee.Bullock, pro se and brings this motion before this Honorable Court as a reply to defendant's opposition motion as the court will see the defendant's attempt to miss-lead this Court as to Plaintiff's cross motion for summary judgment on page (10) of defendant's opposition motion counsel for defendant's state that Plaintiff believes he detected a "[c]onflict between the DEA's December 8,2000 Report of investigation, and the Uniform Offense Report so defendant's counsel summarized it up that these reports do not conflict. That the FBI only had taken custody of the recorder not the tape. Plaintiff has presented evidence that the FBI did take custody of two tape's, once again Plaintiff will place proof in his reply motion, testimony of Thomas McKnigh before the Honorable Jenniffer B.Coffman, United States District Judge,and Jury as to the "[f]act the FBI did take possession and control of

1.

this tape, See Exhibit,A pages 71-73, witness Thomas McKnigh direct by Mr.Smith. This tape was in custody of the FBI's property room in Louisville in custody of Special Agent Briggs, so Plaintiff does'nt just believe he detected a conflict as the court, and defendant's counsel can see. There is a conflict just as Plaintiff stated in his cross motion for summary judgement "two different reports, "two different stories, "[s]ame tape. Not a recorder that is merely equipment as the defedant's ask this court to believe. As to the January 16,2001 investigation DEA Report defendant's do agree that the FBI had taken custody of any and all non-drug evidence (video/audio/tapes,ext).

    These two tapes has been released into the Public Domain, and Plaintiff has presented evidence that show's the FBI S.A. Briggs did take custody of two tape's, and each one was played in open court once opened to the public purview and played in open court then they have entered the public domain. Defendant's argue that these tapes had not been played for the Court and Jury. Open Court is a public place with or without a jury tape labeled 12/7/00 ¼ oz. meth buy "was played to the jury by way of the use of headphones, "see Exhibit B, pages 14-17, Transcript of Jury Trial January 14, 2002 requestier has carried his burden of prodution, once these tapes were used in public hearing they became public record.

    That the Plaintiff now ask this Court to review his exhibit B page,16,witness Johnathon Cromer Direct by Mr.Smith the United States Attorney ask witness Cromer to identify the voice of Stacy Crain,as Plaintiff's cross motion for summary judgement states the Government made no effort as the court can see in Exhibit B to protect the identity of C.W. Stacy Crain, The Government not the Planitiff was the one who ask that her identity be made public when the United States

direct by Mr.Smith. The United States Attorney ask witness Cromer to identify the voice of Stacy Crain, and as Plaintiff's cross motion for summary judgement states the Government made no effort as shown in Exhibit B, to protect the identity of C.W.Crain. The Government not the Plaintiff was the one who ask that her identity be made public when the United States Attorney ask witness Johnathon Cromer can you identify that voice.

The United States Attorney knew who's voice it was, that it was the Government's C.W.Stacy Crain's voice as to the DEA-6 Report's.

These documents are court-filed documents. Again, defendant's alledge that the only way these reports could enter the Public Domain is through some criminal trial. (See, <u>Nixion v. Warner Communications Inc,</u> 435 U.S.589,98 S.Ct.1306,55 L.Ed.2d (1978). We have long observed "the general rule...that a trial is a public event, and what transpires in the court room is public property." See Exhibit, I, page,109 of Plaintiff's cross motion for summary judgement. The January 16th DEA-6 report prepared by Detective Alan Lewis was entered into court See, Discovery in Plaintiff's cross motion Exhibit A, there were no DEA-6 Reports released to Plantiff through discovery.

That Plaintiff has placed a hard copy of the January 16th,2001 DEA-6 Report in all of his motion's when the Government released this DEA-6 report they did so knowing it was'ent a "[t]rue, and "[a]uthenticity copy. Exemptions do not obscure the basic policy that disclosure not secrecy is the dominant objection of the Act." <u>Dept. of the Airforce v. Rose,</u> 425 U.S.352,361,96 S.Ct.1592,1599,48 L.Ed.2d 11 (1976).

This Court must order defendant's FBI, and DEA to release the two DEA-6 reports and order the FBI to release the tapes.

WHEREFORE, Plaintiff respectfully request that this Honorable Court to Grant him his cross motion for summary judgement.

Respectfully submitted
on this _19_ day of _AUGUST_ 2008.

Johnny Lee.Bullock
Register No;07890-032
United State Penitentary
P.O.Box,1000
Marion,Illinois 62959

### Certificate of Service

I, Johnny Lee.Bullock certify that a copy of the foregoing "Plaintiff's Reply To Defendant's Opposision To Plaintiff's Cross Motion For Summary Judgement was served upon the Defendant's by depositing cpoies in the U.S.Mail First Class postage preraid addressed to:

Alexander D.Shoaibi,
Assistant United States Attorney
Civil Division
555 Fourth Street,N.W. Room E-4218
Washington,D.C. 20530

Deposited on this _19_ day of _AUGUST_ 2008.

*Johnny Lee Bullock*
Johnny Lee.Bollock
Register No;07890-032

4.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 07-CV-1013(ESH) |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE (FBI), et al., ) | |
| ) | |
| Defendants. ) | |

# EXHIBIT A

COPY

1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LONDON


UNITED STATES OF AMERICA,      )  London Criminal
                               )  No. 01-21
         Plaintiff,            )
                               )
-vs-                           )  January 10, 2002
                               )  9:20 a.m.
JOHNNY LEE BULLOCK,            )
TROY KIRBY,                    )  VOLUME V
                               )
         Defendants.           )
_____)

                    TRANSCRIPT OF JURY TRIAL
         BEFORE THE HONORABLE JENNIFER B. COFFMAN
            UNITED STATES DISTRICT JUDGE AND A JURY
```

APPEARANCES:

For the Plaintiff:           Stephen Smith, Esq.
                             Martin Hatfield, Esq.
                             601 Meyers Baker Road, Suite 200
                             London, Kentucky  40741

For the Defendant:           Fred White, Esq.
(Johnny Lee Bullock)         105 South Broad Street
                             P.O. Box 1808
                             London, Kentucky  40743-1808

For the Defendant:           Bruce Bentley, Esq.
(Troy Kirby)                 P.O. Box 915
                             London, Kentucky  40743




Court Reporter:              Peggy Westman Weber, RPR
                             Official Court Reporter
                             P.O. Box 362
                             Lexington, Kentucky  40585-0362
                             859/254-5564

Proceedings recorded by mechanical stenography,
transcript produced by computer.

Witness Thomas McKnight - Direct by Mr. Smith                    71

1  possession until at such time I met Special Agent Briggs
2  and Detective Lewis in a discreet location and released the
3  meth., the quarter ounce, approximately a quarter ounce of
4  methamphetamine, purchased by the cooperating witness, as
5  well as the recording device to Detective Briggs and
6  Detective Lewis, case officers.
7  Q.  Okay.  And when you turned it over to the case
8  officers, that would be agent -- what agency is he with?
9  A.  Mr. Briggs is with the FBI.
10 Q.  And where did this tape stay as far as your knowledge
11 of the time of the collection that you handed it to
12 Mr. Briggs until today's date?
13 A.  It was in the -- in the control of the FBI at the
14 property room in Louisville and in the FBI's custody until
15 trial -- until trial time where it has been in Special
16 Agent Briggs, and I believe the audio -- the audio
17 detective's custody.
18 Q.  You are referring to Mr. Jasper White in the courtroom?
19 A.  That's correct.
20 Q.  Did you at some point, Detective McKnight, after
21 recording this transaction on December the 7th review it?
22 A.  Yes.  I reviewed the tape immediately upon returning to
23 the London FBI office to make sure it was a good quality
24 recording, and I reviewed a copy of the tape prior to
25 trial.

Witness Thomas McKnight - Direct by Mr. Smith                          72

1  Q.  And in your review, can you state whether it is a fair
2  and accurate representation of December the 7th of 2000 to
3  the Court?
4  A.  It is.
5       MR. SMITH:  I would like to hand, Your Honor --
6       MR. WHITE:  Your Honor, I am going to object to
7  that.  He wasn't present to know whether it was a fair and
8  accurate recording.
9       THE COURT:  I am going to sustain the objection at
10 this point.  If you want to lay some more foundation for
11 what was going on at the time, you may.
12 BY MR. SMITH:
13 Q.  Detective McKnight, the Exhibit 73 is that, in fact,
14 the -- did you listen to it to make sure that's, in fact,
15 what was -- you began the tape on December the 7th at a
16 time which you have already stated and you kept that
17 recorder on that person you considered as the cooperating
18 witness until you retrieved it from them?
19 A.  That's correct.
20 Q.  And is the tape we have before the Court, Exhibit 73,
21 the same tape that you removed from that witness and
22 reviewed as being that tape from December the 7th?
23 A.  That's correct.
24 Q.  Okay.  I hand to the witness now what's marked as
25 Government's Exhibit No. 74.

Witness Thomas McKnight - Direct by Mr. Smith                      73

1    Could you identify for the Court and jury, Detective
2    McKnight, Exhibit 74?
3    A.   Yes, I can.
4    Q.   And can you tell us what that is?
5    A.   This is plastic -- clear plastic baggie containing a
6    substance which has been identified as methamphetamine that
7    I received from the cooperating witness on December
8    the 7th, 2001, at approximately 1:37 p.m.
9    Q.   And does it appear to be in the same condition or
10   similar condition as when you retrieved it from her on
11   December the 7th, 2000?
12   A.   It does.
13          MR. SMITH:  Your Honor, I move at this time to
14   introduce Government's Exhibit No. 74.
15          THE COURT:  It is admitted.
16          MR. WHITE:  No objection.
17          THE COURT:  You have no objection.  Then it is
18   admitted without objection.
19   BY MR. SMITH:
20   Q.   Detective McKnight, did you further in your
21   investigation again involve yourself in an undercover
22   capacity on the date of January the 16th, 2001?
23   A.   I did.
24   Q.   And if you could, explain to the Court and the jury how
25   you became involved in that particular date and occasion?

176

1   Adjourn court, please.

2   (Whereupon, the jury trial proceedings adjourned at
3   4:20 p.m.)

4   C E R T I F I C A T E

5   I, Peggy Westman Weber, certify that the foregoing
6   is a correct transcript from the record of proceedings in
7   the above-entitled matter.

8

9   _____           _____
    Date                     Peggy Westman Weber
10                           Registered Professional Reporter

177

1                       I N D E X

2
                                                        Pages
    PROOF ON BEHALF OF THE GOVERNMENT:
3   Testimony of Barry Adams
        Direct Examination by Mr. Smith              7
4       Cross-Examination by Mr. White              14
        Cross-Examination by Mr. Bentley            15
5
    Testimony of Joseph Johnson
6       Direct Examination by Mr. Smith             17
        Cross-Examination by Mr. White              20
7       Cross-Examination by Mr. Bentley            21

8   Testimony of Sanford Angelos
        Direct Examination by Mr. Smith             23
9       Cross-Examination by Mr. Bentley            37
        Redirect Examination by Mr. Smith           44
10      Recross-Examination by Mr. Bentley          47

11  Testimony of Peter Poole
        Direct Examination by Mr. Smith             50
12      Cross-Examination by Mr. Bentley            60

13  Testimony of Thomas McKnight
        Direct Examination by Mr. Smith             65
14      Cross-Examination by Mr. White             102
        Redirect Examination by Mr. Smith          105
15
    Testimony of Henry Hays
16      Direct Examination by Mr. Smith            107
        Continued Direct Examination by Mr. Smith  161
17      Cross-Examination by Mr. White             166
        Cross-Examination by Mr. Bentley           167
18
    Voir Dire Testimony of Alexa Crain
19      Direct Examination by Mr. Smith            129
        Examination by The Court                   138
20      Cross-Examination by Mr. White             141
        Re-Examination by The Court                143
21
    Certificate of Reporter                        176
22  Index of Witnesses                             177
    Index of Exhibits                              178
23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY LEE BULLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) Civil Action No. 07-CV-1013(ESH) | |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE (FBI), et al., ) | |
| ) | |
| Defendants. ) | |

# EXHIBIT B

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
 2                              LONDON

 3
     UNITED STATES OF AMERICA,       )  London Criminal
 4                                   )  No. 01-21
              Plaintiff,             )
 5                                   )
     -vs-                            )
                                     )  January 14, 2002
 6                                   )  9:30 a.m.
     JOHNNY LEE BULLOCK,             )
 7   TROY KIRBY,                     )  VOLUME VI
                                     )
 8            Defendants.            )
     _____)
 9
                        TRANSCRIPT OF JURY TRIAL
10             BEFORE THE HONORABLE JENNIFER B. COFFMAN
               UNITED STATES DISTRICT JUDGE AND A JURY
11
     APPEARANCES:
12
     For the Plaintiff:         Stephen Smith, Esq.
13                              Martin Hatfield, Esq.
                                601 Meyers Baker Road, Suite 200
14                              London, Kentucky  40741

15   For the Defendant:         Fred White, Esq.
     (Johnny Lee Bullock)       105 South Broad Street
16                              P.O. Box 1808
                                London, Kentucky  40743-1808
17
     For the Defendant:         Bruce Bentley, Esq.
18   (Troy Kirby)               P.O. Box 915
                                London, Kentucky  40743
19

20

21
     Court Reporter:            Peggy Westman Weber, RPR
22                              Official Court Reporter
                                P.O. Box 362
23                              Lexington, Kentucky  40585-0362
                                859/254-5564
24
     Proceedings recorded by mechanical stenography,
25   transcript produced by computer.
```

Witness Johnathon Cromer - Direct by Mr. Smith                    14

1    THE COURT: All right. You may go ahead and
2 question the witness, Mr. Smith.
3    MR. SMITH: I hand to the witness what has been
4 marked as Government's Exhibit 73.
5                   JOHNATHON CROMER,
6 having been previously duly placed under oath, was examined
7 and testified as follows:
8                   DIRECT EXAMINATION
9 BY MR. SMITH:
10 Q. If you would, Mr. Cromer, open up the envelope that
11 contains Exhibit 73, please.
12    Can you identify Exhibit 73?
13 A. It's a cassette tape that I listened to earlier.
14 Q. And in reviewing this tape, how do you recall that that
15 specific tape is the one you listened to?
16 A. I marked my initials on the corner of it.
17 Q. And let me ask you, Mr. Cromer, Exhibit 73 is a tape
18 you listened to. Did you identify the voice of Johnny
19 Bullock on the tape?
20 A. Yes; yes, sir.
21 Q. Mr. Cromer, have you in your testimony earlier
22 identified -- tell us a little bit how you know Johnny Lee
23 Bullock's voice. Have you had conversation with him over a
24 period of time in the past?
25 A. Yes, many conversations.

Witness Johnathon Cromer - Direct by Mr. Smith                    15

1  Q. And just tell us how long a relationship did you have
2  with Mr. Bullock? How long have you known this gentleman?
3  A. I have known who he was ever since I was about 16 years
4  old, but I have only done business with him and been
5  personal with him since '99.
6         MR. SMITH: Your Honor, I would move at this time
7  to introduce Exhibit 73 and ask that it be played for the
8  jury at this time.
9         THE COURT: All right. It is admitted. It will
10 be played.
11        Do the jurors have headphones on the arms of their
12 chairs?
13        MR. SMITH: Mr. White?
14        THE COURT: Are there headphones on the arms of
15 their chairs?
16        COURT SECURITY: No, Your Honor. We are bringing
17 them to them.
18        THE COURT: Oh, all right.
19        Members of the jury, the technician, Mr. White,
20 will show you and explain to you how to use these
21 headphones.
22        MR. SMITH: Demonstrate in front the jury, please.
23    (Whereupon, Jasper White explained the use of the
24 microphones to the juror members; and the audiotape was
25 played to the Court and jury.)

Witness Johnathon Cromer - Direct by Mr. Smith                16

1    MR. SMITH: Stop the tape; stop the tape.
2  BY MR. SMITH:
3  Q. Mr. Cromer, we heard a female voice on the tape at this
4  point. Can you identify that voice?
5  A. Stacy Crain.
6  Q. And how do you know the voice of Stacy Crain?
7  A. She used to live with a guy that I used to buy pot
8  from, and I've done drugs with her on many occasions.
9  Q. The first male voice that you've heard at this point,
10 can you identify the name of the person who has that voice?
11 A. James Isaacs.
12 Q. And how do you know Mr. James Isaacs?
13 A. Because he always hung out at Mr. Bullock's house.
14 When I was up there, he was there almost every time.
15    MR. SMITH: Proceed to play the tape at this
16 point.
17    (Whereupon, the audiotape was played to the Court and
18 jury.)
19    MR. SMITH: Stop the tape at this point; stop the
20 tape.
21 BY MR. SMITH:
22 Q. Mr. Cromer, I would ask if you heard the last couple of
23 male voices. Can you identify those for the Court and
24 jury?
25 A. Yes. It was James Isaacs and Johnny Bullock.

Witness Johnathon Cromer - Direct by Mr. Smith                              17

1  Q.  And Johnny Bullock's statement would have been which of
2  those we heard?
3  A.  Mr. Isaacs stated that -- hear that he does make
4  mistakes, and you hear that.  And then Mr. Bullock finishes
5  the sentence, "make more mistakes than money."
6          MR. SMITH:  Okay.  Let's proceed to listen to the
7  tape then.
8       (Whereupon, the audiotape was played to the Court and
9  jury.)
10         MR. SMITH:  Stop the tape.
11 BY MR. SMITH:
12 Q.  Mr. Cromer, can you identify the last two voices there
13 as we stopped the tape?
14 A.  The last one I heard that said, "if you want to get
15 five, I can get seven out of it," that was Mr. Bullock.
16      And what other statement are you referring to?
17 Q.  There was mention of quality and something about
18 California.
19 A.  That was Freddie Denny.
20 Q.  And how do you know Mr. Freddie Denny's voice?
21 A.  Because I have done a lot of drugs with him.
22 Q.  And you have spent time talking with him?
23 A.  Yeah.
24 Q.  You are familiar with his voice as well?
25 A.  Yes.

1  (Whereupon, the jury trial proceedings adjourned at
2  4:10 p.m.)
3                    C E R T I F I C A T E
4       I, Peggy Westman Weber, certify that the foregoing
5  is a correct transcript from the record of proceedings in
6  the above-entitled matter.
7
8  _____            _____
   Date                        Peggy Westman Weber
9                              Registered Professional Reporter
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

184

1                           I N D E X

                                                         Pages
PROOF ON BEHALF OF THE GOVERNMENT:
Testimony of Wade Rasberry
    Direct Examination by Mr. Hatfield               2
    Cross-Examination by Mr. Bentley                 8

Testimony of Johnathon Cromer
    Direct Examination by Mr. Smith                 14
    Cross-Examination by Mr. White                  18
    Redirect Examination by Mr. Smith               19

Testimony of Alexa Crain
    Direct Examination by Mr. Smith                 20
    Cross-Examination by Mr. White                  33

Testimony of Wade Rasberry
    Direct Examination by Mr. Hatfield              37
    Cross-Examination by Mr. Bentley                45
    Redirect Examination by Mr. Hatfield            46

Testimony of Jerel Hughes
    Direct Examination by Mr. Smith                 51
    Cross-Examination by Mr. White                  55

Motion on Directed Verdict
    On Behalf of Defendant Johnny Lee Bullock
        By Mr. White                                65

Motion on Directed Verdict
    On Behalf of Defendant Troy Kirby
        By Mr. Bentley                              70

PROOF ON BEHALF OF DEFENDANT JOHNNY LEE BULLOCK:
Testimony of Portia Lear
    Direct Examination by Mr. White                 95
    Cross-Examination by Mr. Smith                 103

Testimony of Melissa Stark
    Direct Examination by Mr. White                107
    Cross-Examination by Mr. Smith                 113
    Redirect Examination by Mr. White              117

Testimony of Clara Patton
    Direct Examination by Mr. White                118
    Cross-Examination by Mr. Smith                 121